**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS**

VHS ACQUISITION NUMBER 7, INC.,
d/b/a SAINT VINCENT HOSPITAL,

     **Petitioner,**

**and**                                 **Cause No. 4:25-cv-40090-MRG**
                                          **Amended/Supplemental Complaint**
**MASSACHUSETTS NURSES**           **(Leave to File Granted 6/22/2026)**
**ASSOCIATION,**

     **Respondent.**

————————————————————/

**AMENDED/SUPPLEMENTAL COMPLAINT**

COMES NOW, Plaintiff VHS Acquisition Subsidiary Number 7, Inc., d/b/a Saint Vincent Hospital (St. Vincent or the Hospital) who alleges and complains against Defendant Massachusetts Nurses Association (Union), and, in support of the relief sought herein, respectfully shows the Court as follows:

**INTRODUCTION**

1.     St. Vincent seeks Court intervention to vacate an arbitration award begot through gamesmanship and partiality. The misconduct of Arbitrator Michael T. Loconto below cannot be questioned and demonstrably warrants vacatur or, at the very least, modification of his Award.

2.     The record is replete with Loconto's evident partiality, self-dealing, violations of due process, ethical and arbitral violations, vastly exceeding his authority by awarding the Union attorneys' fees in other arbitration cases (some of which are pending before other arbitrators and others which were voluntarily withdrawn by the Union) and, perhaps most telling, reversal of his own rulings on the critical contract language at issue, finding it first to be "silent" on the dispositive

issue, then "ambiguous" on the dispositive issue and finally, "clear on its face" in favor of the Union's position.

3.      Loconto possessed a clear agenda to find for the Union and protect his sources of income. Carrying out this agenda, Loconto exceeded his authority, engaged in misconduct, manifestly disregarded the law, and issued an unlawful award.

4.      Loconto's handling of this case violates the foundational tenet of the neutral process guaranteed to parties who elect arbitration: that an arbitrator shall not carry out his own brand of "industrial justice" against any party and shall not be predetermined to reach a particular result employing whatever tactics he deems necessary to reach the same.

5.      St. Vincent asks the Court for an order vacating a June 12, 2025, arbitration award issued by Loconto (Award) on the dispute submitted by the Union and arising under the collective bargaining agreement between the parties (CBA).

6.      Alternatively, St. Vincent requests that the Court modify the Award to deny the Union the relief sought in its underlying grievance based on the plain language of the CBA, and to strike the monetary sanctions levied against St. Vincent by Loconto.

7.      St. Vincent also asks that the Court vacate a May 11, 2026, remedial/sanctions award ("Remedial Award") in which Loconto ordered St. Vincent to pay the Union's attorneys' fees incurred in arbitrations for which he was never selected or presided over.

8.      St. Vincent brings action under Section 301 of the Taft-Hartley Labor Management Relations Act, 29 U.S.C. § 185, as amended (LMRA), the Federal Arbitration Act (FAA), 9 U.S.C. §§ 5, 10, 11, and 12, and the Massachusetts General Laws Chapter 150C *et. seq*.

**PARTIES**

9.      St. Vicent is an acute care hospital located in Worcester, Massachusetts.

10.     The Union is, and at all times relevant to this matter was, the National Labor Relations Board (NLRB) certified exclusive bargaining agent with respect to rates of pay, wages, hours of work, and other terms and conditions of employment for the full-time, regular part-time, and per diem registered nurses who work an average of four hour or more per week at St. Vincent.

11.     Upon information and belief, the Union may be served with process through its counsel in the underlying arbitral proceedings, Jack Canzoneri and/or Samantha E. Sinclair with McDonald Lamond Conzoneri LLC, or as otherwise proscribed by law.

**JURISDICTION AND VENUE**

12.     This Court has subject matter jurisdiction over this matter pursuant to 29 U.S.C. § 185, 9 U.S.C. § 10(a), Mass.Gen.Laws ch. 150C, and 28 U.S.C. §§ 1331 and 1367.

13.     Venue is proper because the Union's officers or agents are engaged in representing or acting for employee members within the geographical boundaries of the United States District Court for the District of Massachusetts, and the arbitration award at issue was made within the geographical boundaries of the United States District Court for the District of Massachusetts. 29 U.S.C. § 185(a), (c); 9 U.S.C. § 10(a).

**TIMELINESS OF THIS ACTION**

14.     The Award was delivered to St. Vincent on June 12, 2025 and the Remedial Award was delivered on May 11, 2026, and St. Vincent timely filed this action or moved to amend/supplement the original action within 30 days of said delivery of each as applicable. *See* 9 U.S.C. § 12 (notice of motion to vacate award under FAA must be served within three (3) months after the award is filed or delivered); Mass.Gen.Laws ch. 150C, § 11; *Local 509, Serv. Employees Intern. Union v. Fid. House, Inc.*, 518 F. Supp. 2d 317, 322 (D. Mass. 2007) (Massachusetts' 30-

3

day period applies to LMRA actions).

## FACTS AND CLAIMS FOR RELIEF

### Summary of Case

15.     St. Vincent and the Union are parties to the CBA which provides for the selection of an arbitrator through one of two agencies: Labor Relations Connection (LRC) or American Arbitration Association (AAA).

16.     In 2023, St. Vincent learned that LRC, while it was purportedly acting to "administer" arbitrations between the parties, refused to transmit papers submitted by the Hospital to arbitrators in a timely manner, which resulted in prejudice to the Hospital.

17.     In September 20, 2023, in order to protect its own interests in the face of LRC's failure to act as a neutral case administrator, the Hospital informed LRC and the Union that it was enforcing the plain language of the parties' CBA, requiring the use of LRC or AAA for the *selection* of arbitrators only, and instructed LRC to cease case "administration" of arbitrations involving the Hospital and the Union going forward.

18.     Despite the plain unambiguous language in the CBA justifying the request, the Union grieved St. Vincent's action.

19.     Loconto was selected as the arbitrator to hear that dispute and proceeded to engage in gross misconduct in violation of numerous provisions of federal and state law including but not limited to the following actions:

- Refusing to follow the plain terms of the CBA;

- Applying different procedural subpoena rules for the Union and Hospital to St. Vincent's detriment;

- Reaching opposite conclusions on substantive subpoena rulings to St. Vincent's detriment;

4

- Preventing the Hospital from subpoenaing material information pertaining to LRC's (by then) admitted failure to act as a neutral with respect to the Hospital;

- Failing to disclose his relationship with LRC at the start of the case and improperly shifting the responsibility for disclosure from himself to the Hospital;

- Failing to recuse himself after his admitted failure to disclose was discovered;

- Failing to provide adequate notice of hearing dates;

- Reversing his own rulings on the dispositive language to find in favor of the Union;

- Refusing to issue or even rule on Hospital subpoenas for key evidence in testimony—thereby depriving St. Vincent of the opportunity to present relevant evidence;

- Promising the Hospital a hearing to present its evidence and then reversing himself and denying the Hospital a hearing, first by making the Hospital's opportunity to present its evidence contingent on making an offer of proof, then making that opportunity contingent on producing an unspecified Hospital witness to testify about an unspecified "position" of the Hospital, and then ultimately stating falsely both that the Hospital requested to cancel the hearing and that St. Vincent never submitted an offer of proof;

- Fashioning remedies expressly violative of the law and CBA; and

- Retaining jurisdiction over the dispute after issuing his final Award to aid the Union with securing remedies which were unlawful in the first place.

A true and correct copy of Loconto's Award is attached hereto as **Exhibit 1.**[1]

**The Collective Bargaining Agreement**

20.     St. Vincent and the Union are parties to the CBA which is effective January 2022 through December 2025. A true and correct copy of the CBA is attached hereto as **Exhibit 2**.

21.     Article XXI of the CBA provides the appropriate steps for the Union to file a grievance, which, in pertinent part, provides that "[t]he [Union] may file a demand for arbitration

---

[1] Reference herein to Exhibits 1-31 are to the exhibits filed with the initial Complaint, Dkt. No. 1.

under Step 4 with AAA or LRC . . . ."

22.     It goes on to explain that "should the [Union] request arbitration in accordance with the time limits specified herein, an arbitrator shall be selected pursuant to the Voluntary Labor Arbitration Rules of the American Arbitration Association or the applicable procedures of the Labor Relations Connection."

23.      The CBA does not provide for an agency's further administration of the grievance or further application of agency rules/procedures during the pendency of an arbitration.[2]

**The Circumstances Leading up to St. Vincent's Action**

24.     The parties have maintained collective bargaining agreements since 2000 and have negotiated a new one approximately every three years.

25.     The CBA at issue in this case was ratified in January 2022 after a 300-day strike.

26.     After returning from strike, the Union filed hundreds of grievances and 77 demands for arbitration through LRC.

27.     As LRC began selecting arbitrators for these voluminous demands for arbitration, St. Vincent became concerned that LRC was not acting as a neutral, in part due to LRC's refusal to submit the Hospital's position statements to arbitrators as required and other suspicious actions.[3]

---

[2] In contrast, Article XXI, Section 8.05 contains an alternate process for mandatory overtime grievances which "***shall be processed*** under the ***AAA rules*** for expedited arbitration." Of course, the differences between the two provisions establish the parties' intention not to have LRC or AAA procedures apply to grievances other than those over mandatory overtime.

[3] St. Vincent's suspicions were confirmed in September 2024 during collateral NLRB proceedings, while the instant arbitration was pending. Specifically, St. Vincent learned that LRC had engaged in *ex parte* communications with arbitrators–including Loconto–to discuss St. Vincent, its outside counsel, and the "sensitive" relationship between St. Vincent and the Union. It also learned during those proceedings that LRC engaged in *ex parte* communications with Union counsel's office to move cases along in accordance with the Union's wishes.

**St. Vincent's September 20, 2023 Directive**

28.     Accordingly, on September 20, 2023, Christopher Borruso (a representative of St.

Vincent) emailed Jan Teehan (Director of LRC) and pertinent Union representatives, stating that

the CBA between St. Vincent and the Union:

> provides for the selection of arbitrators pursuant to the Voluntary Labor
> Arbitration Rules of the American Arbitration Association or the applicable
> procedures of the Labor Relations Connection. It does not provide for the
> application of either agency's rules or for the "administration" of any matters
> by either agency. Accordingly, effective as of the date and time of this email,
> you are instructed to cease any purported "administration" of, or any other
> participation of any kind in, any of St. Vincent's currently pending matters.
> Please provide me the arbitrator's contact information in each of St. Vincent's
> currently pending cases at your absolute earliest convenience, but by no later
> than the close of business tomorrow, September 21, 2023.

A true and correct copy of Mr. Borruso's September 20, 2023, directive is attached hereto as

**Exhibit 4.**

29.     In response, on October 23, 2023, the Union filed a grievance with AAA claiming

Mr. Borruso's email violated Article XXI of the CBA. A true and correct copy of the Union's initial

grievance and its submission of the grievance to arbitration are attached hereto as **Exhibit 5.**

---

Tellingly, Jan Teehan, Director of the LRC, apparently coordinated with arbitrators to issue rulings requiring St. Vincent to allow LRC to "administer" arbitrations with the Union. She also admitted under oath that she failed to act as a neutral with respect to St. Vincent on multiple occasions and that she previously informed the Union counsel's administrative assistant (*ex parte*) that if the details of St. Vincent's concerns regarding her discourse became known, "[w]e will be ruined."

To be sure, Teehan admitted LRC was assisting the Union with arbitrations, including but not limited to: (1) making disparaging comments about St. Vincent and its counsel to arbitrators engaged in active disputes (calling St. Vincent's counsel "outrageous"); (2) submitting Union positions to arbitrators without St. Vincent's response but refusing to do so for the Hospital, (3) engaging in *ex parte* communications with the Union about pending matters; and (4) suggesting to the Union it revise its submissions to arbitrators. Teehan also unabashedly testified during the hearing that, previously unbeknownst to the Hospital, she "cherry picks" arbitrators for the parties.

A true and correct copy of Teehan's sworn testimony from the NLRB proceedings is attached hereto as **Exhibit 3**.

30.     The parties were unable to resolve the grievance and the Union initiated arbitration with AAA.

**Loconto Fails to Disclose Conflicts**

31.     Article XXI of the CBA requires the parties select an arbitrator pursuant to the Voluntary Labor Arbitration rules of AAA or the applicable procedures of LRC.

32.     AAA appointed Loconto on March 11, 2024. A true and correct copy of Loconto's appointment is attached hereto as **Exhibit 6.**

33.     As a mandatory condition of accepting his appointment, Loconto was required to submit disclosures pursuant to both AAA's Labor Arbitration Rules as well as the Code of Professional Responsibility for Arbitrators of Labor-Management Disputes (Code) identifying:

> any current or past managerial, representational, or consultive relationship with any company or union included in a proceeding in which the arbitrator is being considered for appointment or has been tentatively designated to serve. Disclosure must also be made of any pertinent pecuniary interest.

A true and correct copy of AAA's Labor Arbitration Rules is attached hereto as **Exhibit 7**. A true and correct copy of the Code is attached hereto as **Exhibit 8**.

34.     Loconto failed to disclose in his AAA biography that he is an arbitrator with LRC and is therefore dependent on being appointed to cases by LRC to earn income.

35.     He also failed to reveal his affiliation in the required AAA disclosure–specifically noting he had "nothing to disclose" despite the Disclosure Guidelines stating that "[a]ny doubt as to whether or not disclosure needs to be made should be resolved in favor of disclosure."

36.     Notwithstanding, Loconto accepted the assignment—knowing full well the merits of the dispute involved an agency (LRC) with whom he had a financial interest—without making the required disclosure and commenced the proceedings.

37.     Of note, at the outset of the proceedings, Loconto told the parties to communicate

8

directly with him. He then reversed himself when, as discussed below, receiving, considering, and ruling on St. Vincent's request for documents, Loconto's recusal, and his disclosure of relevant communications–apparently finding these latter requests "inappropriate" for direct submission.

**Pre-Hearing Dispute Over St. Vincent's Subpoenas Duces Tecum**

38.     While preparing its defenses to the underlying grievance, on July 25, 2025, St. Vincent requested that Loconto issue two subpoenas duces tecum: one to the Union and one to LRC. A true and correct copy of St. Vincent's request is attached hereto as **Exhibit 9.**

39.     The subpoenas sought tailored information from both organizations to support St. Vincent's defenses: all e-mail communications between the LRC, the Union, and the Union's attorneys that specifically discussed St. Vincent and its attorneys as well as communications demonstrating LRC's improper relationship with the Union.

40.     The Union moved to quash St. Vincent's subpoena claiming it was over broad, sought irrelevant and cumulative material, and that the production would impose an undue burden. A true and correct copy of the Union's Motion to Quash is attached hereto as **Exhibit 10**.

41.     To address the issue, on July 26, 2024, Loconto established a procedure for the handling subpoenas in this matter, conveying the same through AAA as follows:

> A reminder that all correspondence with the arbitrator is to be routed through the AAA case manager.
>
> If a subpoena is requested, it must be shared with the other side prior to submission to the arbitrator for consideration.
>
> If and when a subpoena is requested, the arbitrator will schedule a conference call to discuss the underlying requested items.

A true and accurate copy of Loconto's ordered procedure is attached hereto as **Exhibit 11**.

42.     Following this procedure Loconto did the following:

- **On August 29, 2024**: Held a telephone conference to discuss the subpoena and provided the parties an opportunity to submit briefs about the same.

9

- **By November 15, 2024**: Accepted the parties' respective briefs for consideration.

- **On November 25, 2024**: Held oral argument about the subpoenas.[4]

43.     Meanwhile, while the parties were engaged in extensive briefing of the Union's Motion to Quash the subpoena directed to the Union, LRC's attorney sent two e-mails to AAA in which he stated that LRC was never served with the subpoena requested by St. Vincent and requested two weeks to review the subpoena and submit an appropriate response. A true and correct copy of these communications are attached hereto as **Exhibit 12**.

44.     St. Vincent learned the Union's attorney told LRC's attorney about the subpoena and directed AAA to engage with LRC's attorney directly for any other information.

45.     Thus, although the Union, LRC, AAA, and Loconto were all aware that a subpoena was requested and that LRC intended to respond, the subpoena was ignored by Loconto and never issued.

46.     On December 18, 2024, Loconto requested an extension of time to submit his order on the subpoenas in accordance with AAA's rules, which the parties consented to that same day. A true and accurate copy of the email correspondence is attached hereto as **Exhibit 13**.

**Loconto's Order on St. Vincent's Subpoenas Duces Tecum**

47.     On December 23, 2024, Loconto issued his order on the Union's Motion to Quash St. Vincent's subpoenas duces tecum. A true and accurate copy of the order is attached hereto as **Exhibit 14**.

48.     Therein, he concluded St. Vincent's requests concerning past practice were relevant

---

[4] This was the first and last time Loconto would follow this procedure. When the Union later requested subpoenas, they were issued without scheduling a telephone conference to discuss the underlying requests. And when the Hospital later submitted witness subpoenas, Loconto required the Hospital to submit an "offer of proof" to substantiate the testimony it sought to illicit, declined to issue any of the Hospital's subpoenas, and then, in his Award, falsely stated the subpoenas were not issued because the Hospital never submitted an offer of proof.

to the dispute, but granted the Union's proposed limitations which, in effect, restricted St. Vincent's ability to obtain the relevant information it sought related to the improper relationship between the Union and LRC that prompted the Hospital to enforce the CBA and demand LRC cease administration of arbitrations between St. Vincent and the Union.

49.    Expressly, Loconto granted the Union's specific request that it be required to produce no more than a single, self-selected document from each arbitration it intended to identify to support its past practice argument in support of the grievance. Loconto ruled that producing more than one document per case would be cumulative and cause delay with the proceedings.

50.    Loconto went on to find as "irrelevant" all information regarding the improper relationship between LRC and the Union–including information about the LRC's "case administration" communications with the Union and information about LRC's (by now) admitted failure to act as a neutral with respect to the Hospital and in favor of the Union.

51.    In part, Loconto justified his decision by claiming information related to the Union's use of AAA and LRC was "not relevant to the disposition of the underlying grievance."

**Loconto's Ruling that Applicable Contract Language was "Silent" on the Dispositive Issue**

52.    In his subpoena ruling, Loconto ruled that evidence of past practice was relevant to the dispute because Article XXI of the CBA was silent on the issue of case administration:

> "[t]he applicable contract language in this case—'an arbitration [sic] shall be selected pursuant to the' applicable rules of the AAA or the LRC—is silent on the issue of case administration."

**The Union's Subpoena Duces Tecum**

53.    Later, on the same day Loconto issued his order on St. Vincent's subpoena duces tecum (December 23), the Union served its own subpoena duces tecum, seeking much of the same information from St. Vincent that Loconto had just ruled St. Vincent could not obtain and which was already in the Union's possession. A true and accurate copy of the Union's subpoena duces

11

tecum is attached hereto as **Exhibit 15**.

54.     Loconto reversed himself and signed and issued the Union's subpoena on January 6, 2025, immediately after the holidays, without following the July 26, 2024 procedure he ordered the parties (and himself) to comply with. A true and accurate copy of the email correspondence is attached hereto as **Exhibit 16**.

55.     Given Loconto's previous directive regarding subpoenas, St. Vincent promptly lodged objections to the Union's subpoena, explaining, among other things, how it improperly sought documents Loconto previously deemed cumulative, and that producing such documents would cause undue delay, particularly considering Loconto limited the Union's own production to a single, self-selected document per arbitration. A true and correct copy of the Hospital's objection email is attached hereto as **Exhibit 17** at p. 22-23.

56.     St. Vincent also emphasized that the Union's subpoena was issued "in contravention of the procedures for requesting subpoenas" that Loconto himself previously established for this matter.

57.     Loconto responded that he was handling the Union's subpoena according to an entirely new and different "practice" that he had apparently discussed with AAA, but which he never previously disclosed to the parties:

> As noted in the cover email that I shared with Mr. Kimm when I returned the signed subpoena to the AAA on January 6, 2025: "the Union provided the attached subpoena request for my review and signature on 12/23/24, via AAA. As we discussed, I held my review and execution in order to provide Mr. Sugerman with time to review and, if desired, raise any objections to the subpoena. I have a practice of doing so for at least 24 hours under normal circumstances, and have extended this period given the recent holiday season."

A true and correct copy of Loconto's email correspondence is attached hereto as **Exhibit 17** at p. 21-22.

58.     The Hospital subsequently wrote Loconto noting that whatever misunderstanding may have arisen with respect to the handling of subpoenas was apparently the result of his routing communications through AAA, which then only sent an "excerpt" of his communications. A true and correct copy of the Hospital's email is attached hereto as **Exhibit 17** at p. 18-19.

59.     As such the Hospital requested it be informed of any other substantive or procedural issues it should be aware of:

> The Hospital requests that you or Mr. Kimm provide the parties with a copy of the email that prompted Mr. Kimm's July 26, 2024 email and any other communications that set forth substantive or procedural issues relevant to these arbitration proceedings, including but not limited to the cover letter to the Union's subpoena, which AAA also did not provide to the parties.

A true and correct copy of the Hospital's email is attached hereto as **Exhibit 17** at p. 18-19.

60.     Loconto denied that request, finding that communications setting forth substantive or procedural issues relevant to these arbitration proceedings was "beyond the scope of the instant dispute."  To date, St. Vincent has never seen a copy of the "cover email" referenced by Loconto. A true and correct copy of this email is attached hereto as **Exhibit 17** at p. 16-17.

61.     Due to the clear miscommunication, the Hospital has repeatedly requested that AAA and Loconto provide copies of their *ex parte* communications and has repeatedly insisted that the Parties be permitted to communicate directly with Loconto.

62.     All requests were denied and/or ignored.

A true and accurate copy of several of these requests are attached hereto as **Exhibit 18**.

**Loconto's Inconsistent January 24, 2025 Union Subpoena Order**

63.     On January 24, 2025, Loconto overruled St. Vincent's objections in full.

64.     During a hearing involving the same, St. Vincent explained that the inconsistent subpoena approach violated St. Vincent's due process.

65. In overruling the Hospital's objections, Loconto reversed his prior rulings in several respects.

66. With respect to the Union's request that the Hospital be required to produce documents relevant to the Union's past practice argument, the Hospital noted that Loconto previously granted the Union's request that it be required to produce no more than one document per case on the grounds that producing any more than one document per case would be "cumulative" and cause "undue delay" and that its request was therefore inconsistent with its own argument.

67. Loconto reversed himself and ordered the Hospital to produce these "cumulative" documents that could cause "undue delay" and flippantly remarked "what's good for the goose is good for the gander."

68. Indeed, Loconto did not consider St. Vincent's objections with the same care and procedure as he did with the Union, electing to circumvent his established procedure in violation of the fairness attributable to arbitral proceedings nationwide.

69. Loconto signed the Union's subpoena before hearing objections, did not allow St. Vincent to file a brief on legal challenges, and gave St. Vincent just two weeks to comply with the Subpoena—even though the Union had not yet produced documents which were requested some five months prior.

70. Loconto addressed this disparate treatment in a subsequent order dated March 28, 2025. A true and correct copy of Loconto's March 28, 2025 Order is attached hereto as **Exhibit 19**.

71. Therein, Loconto acknowledged the Union requested "similar records from the Employer in its own subpoena."

14

72.     However, justifying his failure to follow the established subpoena procedure, he stated the "process utilized to address the Employer's July 25, 2024 subpoenas was established to address the *unique issues presented by that batch of requests*."

73.     Of course, Loconto failed to address what "unique issues" were involved, or his differential treatment in favor of the Union. That is because he could not: the documents sought by the Union were virtually the same as those sought by the Hospital.

**Loconto Rules the Applicable Contract Language was "Ambiguous" on the Dispositive Issue**

74.     Prior to the January 24, 2025, conference call on the Union's subpoena, the Hospital suggested the entire grievance could be decided solely as a matter of contract interpretation on the papers.

75.     During the conference call, the Hospital noted that both the Hospital and the Union had taken the position that the contract was clear on its face about case administration and that Loconto could therefore decide the issue on the papers, without the need for subpoena production or a hearing.

76.     The Union objected that a hearing was necessary to present its past practice argument.

77.     Loconto agreed with the Union.  He ruled a hearing was necessary because "I'm sure all parties can agree that the language is ambiguous."  He sent a follow up email later that day stating, "[a]dditionally, and as discussed, the matter is not appropriate for summary judgment or a decision on the papers."

**St. Vincent Requests Loconto's Recusal**

78.     By this time, Loconto's actions—including his inconsistent handling of the subpoenas, his finding that LRC's admitted lack of neutrality was "irrelevant" and his reversal of

15

his own ruling on the dispositive contract language—demonstrated his evident partiality. As such, St. Vincent further investigated Loconto's background.

79. It discovered that although he serves on LRC's roster, he failed to disclose that fact either in his AAA bio or in his disclosure.

80. Accordingly, on February 13, 2025, St. Vincent asked Loconto to recuse himself–reiterating: (1) Loconto has a potential conflict; and (2) the burden of disclosure rests on him. A true and correct copy of the Hospital's email is attached hereto as **Exhibit 20**.

81. On February 19, 2025, Loconto refused to recuse himself. Although he acknowledged his failure to comply with his disclosure obligations, he improperly shifted the burden of disclosure from himself to the Hospital, claiming, "it is clear the Employer had had actual notice of [his] membership on the LRC rosters since at least 2023."

82. Loconto's reasoning, of course, did not address the crux of the matter: that the burden of disclosure is on the arbitrator and there is no "actual notice" exception that allows him to shift that burden to one of the parties.

**St. Vincent's Request for Disclosures**

83. Because Loconto refused to recuse himself, on February 27, 2025, St. Vincent requested he make disclosures to further evaluate bases upon which recusal may otherwise be proper:

> All personal, financial or pecuniary interest in connection with his dealings with the Massachusetts Nurse Association, LRC, and the AAA;
>
> All communications between Arbitrator Loconto and representatives of LRC in connection with any cases between these parties—specifically instances where Arbitrator Loconto mentioned FordHarrison attorneys or any other biased or unethical subject matter, and;
>
> All communications between Arbitrator Loconto and LRC concerning LRC "cherry picking" Arbitrator Loconto for cases involving the parties at issue.

A true and accurate copy of the email correspondence is attached hereto as **Exhibit 18** at p. 8-10.

16

84.     Given Loconto's flagrant violations of both the AAA rules and the Code, and St. Vincent's other serious bias and ethical concerns based on Loconto's behavior to date, St. Vincent also wrote AAA to explain: (1) Loconto did not deny his financial interest in LRC yet refused to voluntarily recuse himself; (2) Loconto acknowledged that he failed to disclose this information to the AAA, which was in plain violation of AAA rules and the Code; and (3) St. Vincent suspected that Loconto was "cherry-picked" by LRC on several arbitration panels.

85.     In response, the Union repeatedly insisted that no disclosures be made, and the Hospital asked AAA whether it would enforce its rules to require the requested disclosure despite the Union's pleas to the contrary.

86.     The Hospital again wrote AAA and Loconto on March 4, 2025. Among other things, it reiterated its request for the disclosures above and outlined the other conflicts of interest that had arisen while the arbitration had been pending, including that AAA had inserted itself into the parties' dispute by requiring each arbitrator in each case between the parties to resolve AAA's own billing dispute with the Hospital. The Hospital pointed out that as a result, all the parties' interests—the Union's, Loconto's, LRC's and AAA's—were now perfectly aligned against the Hospital as each would personally benefit from a ruling against the Hospital. It noted further that one arbitrator had already acted on this conflict of interest ruling against the Hospital, explicitly because he felt he could not rule "against AAA."

87.     Neither AAA nor Loconto responded to that email until March 14, 2024, the last business day before the scheduled hearing.

88.     On behalf of AAA, Frank Binda responded to the parties on March 14, 2025, stating St. Vincent's requested disclosures by Loconto were "voluntary" and further advised that Loconto told AAA he did not intend to respond to the employer's requests at all. He also refused to provide

17

the disclosures requested of AAA. A true and accurate copy of the email correspondence is attached hereto as **Exhibit 21**.

89.    This representation by Binda directly contradicts the Code and AAA Arbitrator's Oath executed by Loconto, which both provide that these disclosures are "mandatory." A true and correct copy of the Arbitrator's Oath signed by Loconto is attached hereto as **Exhibit 6**.

90.    Neither Loconto nor Binda explained why the requested information was "voluntary" to disclose—especially given the underlying merits of the dispute in this case.

**The Arbitration Hearings**

91.    On September 20, 2024, AAA issued a notice of hearing to the parties scheduling two evidentiary hearing dates for March 17, 2025, and April 2, 2025.

92.    AAA Rule 17 requires that parties "receive formal written Notice of Hearing detailing the arrangements agreed to be the parties or ordered by the arbitrator at least five days in advance of the hearing date . . . ."

93.    Accordingly, the deadline for the parties to confirm a location for the hearing was March 10, 2025 (one week before the hearing), which Arbitrator Loconto confirmed by email telling the parties to "confirm the exact location of the hearings by no later than one week prior to the first hearing (or, 3/10/25)."

94.    Considering St. Vincent's outstanding recusal and disclosure requests and lack of communication regarding a hearing location in advance of the AAA deadline, St. Vincent did not believe the first scheduled hearing date would move forward.

95.    However, Binda wrote the parties at 10:15 am on Friday, March 14, 2025, stating that "as requested by the arbitrator, the parties are to agree on a location for the hearing on Monday, March 17, 2025 by noon today; otherwise, the arbitrator shall set the site of the hearing." A true

18

and accurate copy of the email correspondence is attached hereto as **Exhibit 21**.

96.     Even before the self-imposed two-hour deadline lapsed, at 11:05 a.m., Loconto unilaterally set a location for the hearing in complete violation of both AAA and the Code.  He contradicted Binda, stating he had actually set a deadline of 5 p.m. the previous day and that since the Hospital missed that deadline, he would unilaterally decide the location of the hearing without the Hospital's input. A true and accurate copy of the email correspondence is attached hereto as **Exhibit 22**.

97.     The Hospital was never informed of this purported deadline.[5]

98.     The next day, Saturday March 15, 2025, the Hospital wrote Loconto, notifying him that for the reasons expressed therein, the Hospital would not attend the hearing he scheduled for Monday March 17.

99.     St. Vincent objected to the March 17 hearing for several reasons including: Loconto: (1) had not recused himself or, alternatively, made required disclosures; (2) denied St. Vincent a fair opportunity to obtain evidence; and (3) failed to follow procedural rules leading up to the hearing depriving St. Vincent of adequate notice of an in-person hearing.

100.     The Hospital also notified Loconto that to protect its interests, it was sending a court reporter to the *ex parte* hearing to ensure an accurate record was made of the proceedings.

101.     Loconto ruled that the hearing would go forward nonetheless. To justify his decision, Loconto assured St. Vincent it would suffer no prejudice if it did not attend the March 17 hearing because the parties had already reserved a second hearing date (April 2), and the Employer could "certainly" present its case then.

---

[5] Although the Hospital requested Loconto and AAA disclose a copy of the notice of this deadline, neither responded to that request.

102.    In direct violation of AAA rule 19, Loconto denied St. Vincent its right to have a court reporter present, and moved forward with the hearing, allowing the Union to have its own stenographer.

103.    Relying on Loconto's assurance, explicitly preserving its objection to the March 17 hearing altogether, and reserving its right to appear on April 2, St. Vincent did not attend the March 17 hearing.

104.    In sum, Loconto completely curtailed St. Vincent's ability to put on its defenses to the underlying grievance.

**The April 2, 2025 Hearing**

105.    Although Loconto already confirmed in writing that the April 2 hearing date would move forward, he inexplicably reversed himself on March 18. He now demanded St. Vincent show "good cause" for why a second hearing date was necessary. A true and accurate copy of the email correspondence is attached hereto as **Exhibit 23**.

106.    St. Vincent promptly reminded Loconto of his promise that St. Vincent would not be inhibited to present its case during the second hearing date if it did not attend the first.

107.    Loconto responded that the promise had been contingent on the Hospital attending the March 17 hearing, a contingency he never before shared with the Hospital.

108.    Loconto thereafter allowed St. Vincent to move forward with its case, but not without further prejudicing its efforts.[6]

---

[6] In his Award, Loconto recasts this maneuver to portray himself as fair and evenhanded for "permitting" St. Vincent to present its defenses on April 2, even though it was nothing more than the fulfillment of his earlier promise, which he studiously omits in the Award.

**Loconto Denies Non-Party Subpoenas**

109.    On March 21, 2025, Loconto invited St. Vincent to submit witness subpoena requests by March 26, 2025.

110.    St. Vincent promptly submitted subpoenas for the April 2 hearing to Loconto for his signature. A true and accurate copy of the email correspondence is attached hereto as **Exhibit 24.**

111.    On March 28, 2025, Loconto once again reversed himself on his previously announced subpoena process. He now, for the first time, denied some subpoenas out of hand and refused to issue others unless and until the Hospital submitted offers of proof as to why he should issue subpoenas at all.[7] A true and accurate copy of the email correspondence is attached hereto as **Exhibit 25**.

112.    On March 31, 2025, St. Vincent objected to Loconto's demand, but nevertheless submitted offers of proof for each subpoena, providing detailed information on each witness's testimony and the documents requested. A true and accurate copy of the email correspondence is attached hereto as **Exhibit 26.**

113.    On April 1, Loconto acknowledged receipt of the offers of proof.[8]

114.    However, he now made ruling on those subpoenas contingent upon the Hospital first producing at the hearing scheduled for the following day, an unspecified witness to testify about unspecified subject matter contained in the September 20, 2023 email, which he stated would be probative of unspecified positions of the Hospital.

---

[7] Among other things, Loconto also stated he had granted the Union's request for an adverse inference at the March 17 hearing and that the Union had provided a "timely and fulsome response" to the Hospital's subpoena.  Both statements were false.

[8] Absurdly, Loconto penned in his Award that the Hospital never submitted these offers of proof.

115.    The Hospital responded that it could not present its own witnesses the next day because Loconto refused to allow it to subpoena its own witnesses. It further noted that the Hospital did not intend to call an unspecified hospital witness to testify to unspecified content in the September 20, 2023 email nor would it even know how to satisfy such a dictate. Finally, Hospital counsel asked that prior to his boarding his plane that day, Loconto please confirm whether he would be required to attend the hearing as a precondition of Loconto ruling on the Hospital's subpoenas.

116.    Loconto responded by cancelling the hearing altogether.  His basis for doing so was that the Hospital's email earlier that day "may only be interpreted as a request to cancel tomorrow's hearing. The Employer's request is granted. My cancellation fee for tomorrow's hearing is $1,850, as provided in my AAA biography."

117.    Loconto thus deprived the Hospital from any opportunity to present its case.

118.    Both St. Vincent and the Union submitted their respective post-hearing briefs on May 9, 2025. A true and correct copy of St. Vincent's post-hearing brief and the Union's brief are attached hereto as **Exhibits 27** and **28** respectively.

**Loconto's Late Issuance of the Award**

119.    Loconto's Award was due thirty days after briefs were submitted: June 8, 2025.

120.    On June 9, 2025, AAA wrote the parties, advising them that Loconto would require additional time to issue his award and that Loconto intended to deliver his Award by June 16, 2025; he did not ask for permission from AAA or the parties as required by the rules. A true and accurate copy of the email correspondence is attached hereto as **Exhibit 29**.

121.    AAA Rules 34 and 36 prohibit an arbitrator from unilaterally extending the time to make an award. Specifically, Rule 34 states in relevant part that "[t]he AAA or the arbitrator may

for good cause extend any period of time established by these rules, except the time for making the award."

122.   Rule 36 establishes that "[t]he award shall be rendered promptly by the arbitrator and, unless otherwise agreed by the parties or specified by law, no later than 30 days from the date of closing the hearing…the award shall be rendered no later than 30 days from the date of transmitting the final statements and proofs to the arbitrator."

123.   Loconto failed to obtain the requisite agreement from the parties although he was fully aware that AAA Rules 34 and 36 required that he request an extension from the parties, as he had previously done so when seeking additional time to issue his order on the Union's motion to quash St. Vincent's subpoena.

124.   On June 11, 2025, St. Vincent objected to the extension. A true and accurate copy of the email correspondence is attached hereto as **Exhibit 30**.

125.   In response, AAA confirmed that any extension of the award issuance timeframe required party consent, which Loconto did not obtain.

126.   As such, AAA confirmed that the due date for the award remained June 9, 2025.

127.   Loconto failed to comply with AAA's directive and submitted his Award on June 12, 2025.

128.   Tellingly, Loconto's invoices do not reflect that he performed any work on the Award from June 9 through June 12, 2025. Nevertheless, Loconto has failed, as of the date of this Complaint, to comply with St. Vincent's request to provide an accounting of his fees in accordance with his ethical obligations under the Code.

**Loconto's Award Ruling that the Applicable Contract Language was "Clear on its Face" in Favor of the Union on the Dispositive Issue**

129.   In his Award, Loconto takes liberties with the facts underlying his decision to justify

23

his misconduct.

130.    In addition to those examples noted above, Loconto reversed both his December 23, 2024 ruling that the CBA was silent on the issue of case administration and his January, 2025 ruling that the CBA was ambiguous on the issue of case administration to find in favor of the Union and its position that St. Vincent was prohibited from prohibiting further agency case administration during arbitrations.

131.    Although Loconto himself originally ruled the dispositive language was "silent" on the issue of case administration, he now (after learning the Hospital agreed with his reading of that language), accused the Hospital of engaging in "bad faith" for reading the language in exactly the same way he did: "[T]he only reasonable conclusion" for the Employer taking the same position he originally took, Loconto stated, "can be that the Employer's position was taken in bad faith."

132.    Worse still, in his June 12, 2025 award, Loconto awarded attorneys' fees to the Union even though the CBA does not authorize such a remedy and that the Union's grievance did not request attorneys' fees as a remedy; thus, the Award was based on this same "bad faith" reading of the CBA.

133.    Loconto went even further, however, to award the Union attorneys' fees associated with other arbitrations between the Union and Hospital for which he was not the selected arbitrator.

134.    Of those other arbitrations Loconto awarded attorneys' fees for, at least three had been closed and thirteen had been withdrawn by the Union. Loconto's Award resulted in the Union submitting fees on LRC initiated cases.

135.    As such, those cases could not be revisited at all, by any arbitrator, yet Loconto nevertheless presumed to issue attorneys' fees in those cases even though he never presided over them and had no personal knowledge of what arguments were (and were not) made in those

proceedings.

136.    Since the issuance of the Award, Loconto has further aided the Union by modifying his Award (without the consent of St. Vincent) and in violation of AAA rules, to allow the Union extra time to provide records associated with their purported fees incurred in other arbitrations. A true and correct copy of this email is attached hereto as **Exhibit 31**.

137.    This decision further evidences the lengths to which Loconto has been willing to assist the Union to the prejudice of St. Vicent by changing the deadline for which the Union was obligated to submit these records in the first place.

138.    To that end, on July 12, 2025, the Union sent St. Vincent documents that purported to be invoices, all dated July 7, 2025, after the issuance of Loconto's Award.

139.    On August 11, 2025, St. Vincent wrote the Union objecting to the purported invoices on various grounds.

140.    Doing so, St. Vincent explained, among other things, that the purported invoices did not appear to be contemporaneously generated at the time the work was performed, reflected work the Union knew or should have known was unnecessary, did not contain any matter number to indicate the particular matter to which the time entry related, did not indicate whether an attorney, paralegal or support person performed the work, did not indicate an hourly rate of such person, and included substantial block billing entries.

141.    On August 22, 2025, the Union demanded that Loconto invoke jurisdiction over the matter again to "resolv[e] the dispute on the attorney's fees".

142.    On August 26, 2025, St. Vincent responded to the Union's notification by requesting information from AAA about (1) the basis upon which it continued to purport to administer the case, (2) why Loconto possessed jurisdiction to rule as AAA had closed the case

according to its own internal docket, (3) the rule AAA was relying upon to purportedly continue to administer the case knowing that Loconto had already issued a final award, which was late in violation of the AAA rules in the first place, and (4) inquiring about AAA's efforts to disqualify Loconto.

143. On September 5, 2025, Kimm notified St. Vincent that he would submit the Union's and St. Vincent's respective notice and response to Loconto for consideration and invited the parties to submit additional information they wanted Loconto to consider before ruling on the Union's request that Loconto invoke jurisdiction over the matter.

144. On September 8, 2025, St. Vincent again requested clarification regarding the questions it raised on August 26, 2025 and, further, what information AAA sought for St. Vincent to supply considering the same.

145. On September 12, 2025, Loconto granted the Union's request to invoke his jurisdiction and invited the Union to propose next steps for addressing the jurisdictional issue.

146. On September 19, 2025, September 29, 2025, and October 29, 2025 St. Vincent again asked AAA for a response to its August 26, 2025 correspondence.

147. St. Vincent received no response.

148. On September 25, 2025, the Union requested that the issue of whether St. Vincent should pay the awarded attorneys' fees from the original Award be decided based upon "submissions", not an evidentiary hearing.

149. St. Vincent emailed AAA – for transmittal to Loconto – that Loconto should not entertain the Union's request for further submissions because it was clear that the submitted "invoices" failed to establish any incurred fees or costs during the relevant period.

150. Nevertheless, St. Vincent stated that, should Loconto consider awarding the Union

a monetary award based on the unsubstantiated invoices, Loconto must hold an evidentiary hearing on the issue and permit discovery into the purported "invoices" the Union provided St. Vincent.

151. Loconto denied St. Vincent's request for an evidentiary hearing and for discovery and ordered the parties to brief their respective positions.

152. Among other bases, St. Vincent argued the Union failed to comply with Loconto's directive that the Union "provide the Employer's representatives with copies of all invoices, redacted to protect any privileged information, to substantiate the attorney's fees and cost incurred during the period described above."

153. For instance, the Union's submitted invoices were all dated July 7, 2025, and all purported to bill for services allegedly performed no less than sixteen months before the purported invoices were created.

154. Subsequently, the Union admitted the "invoices" it provided St. Vincent were  not "invoices" at all.  It now claimed those documents were "reports" that were supposedly generated from invoices; thereby admitting it failed to comply with Loconto's because, in the Union's opinion, it would be "massively inefficient" to produce the actual invoices as ordered.

155. Loconto issued the Remedial Award on May 11, 2026. A true and correct copy of the Remedial Award is attached hereto as **Exhibit 32**.

156. Despite the deficiencies noted by St. Vincent regarding the purported invoices and the Union's subsequent admission that it did not provide any invoices at all, Loconto granted the Union its request for unsubstantiated attorneys' fees.

157. Notably, although Loconto denied St. Vincent an evidentiary hearing or any discovery into what by now were admittedly not invoices at all, Loconto faulted St. Vincent for not providing the very evidence he denied it in the first place, stating St. Vincent "provided no

substantive evidence or analysis to advance its contentions that the Union's fees were unreasonable or otherwise unsubstantiated."

158. Indeed, in his Remedial Award, Loconto acknowledged the Union not only failed to produce the required invoices but also that the Union's summation of the invoices was incorrect in certain instances.

159. Nevertheless, despite the Union's failure to comply with his direct instructions and despite finding inaccuracies in the submitted reports, Loconto still concluded that the Union's request was reasonable and that the Employer failed to establish that the Union's fees were unsubstantiated.

160. Moreover, in the Remedial Award, Loconto claimed "the factual basis upon which [he] rendered [his] June 12, 2025 Award established the basis for the remedy awarded therein." In other words, Loconto admits in the Remedial Award that he granted himself the authority to award attorneys' fees without any basis in the CBA to do so.

161. Perhaps most troubling, Loconto granted the Union attorneys' fees for matters that were not before him – therefore over which he lacked jurisdiction entirely – and based the fee award on documents that were admittedly not invoices at all.

162. Considering the extraordinary lengths to which Loconto went to deny St. Vincent due process and to unfairly administer the proceedings below, his Award and Remedial Award further evidences his partiality and misconduct.

163. As such, St. Vincent initiated this action to redress the same.

## COUNT I

164. St. Vincent re-alleges and incorporates paragraphs 1-163 of this Amended/Supplemental Complaint as if fully set forth herein.

28

165.    During the underlying proceedings, Loconto demonstrated evident partiality in favor of the Union and against the Hospital and/or misconduct prejudicing the rights of the Hospital.

166.    Accordingly, this Court should vacate and/or modify the Award pursuant to the Labor Management Relations Act, 29 U.S.C. § 185 et. seq., Federal Arbitration Act, 9 U.S.C. §10(a)(2), and the Labor Management Relations Act, 29 U.S.C. § 185 *et. seq*. and Mass.Gen.Laws ch. 150C, §12(2).

## COUNT II

167.    St. Vincent re-alleges and incorporates paragraphs 1-166 of this Amended/Supplemental Complaint as if fully set forth herein.

168.    Loconto engaged in misconduct and misbehavior substantially prejudicing the rights of the Hospital, including, among other actions or omissions, refusing to hear evidence pertinent and material to the controversy, and/or allowing the Hospital to present material evidence relevant to the controversy during the hearing thereby denying the Hospital of a fair hearing altogether.

169.    Accordingly, this Court should vacate and/or modify the Award pursuant to the Labor Management Relations Act, 29 U.S.C. § 185 *et. seq*., Federal Arbitration Act, 9 U.S.C. §10(a)(3), and the Labor Management Relations Act, 29 U.S.C. § 185 et. seq. and Mass.Gen.Laws ch. 150C, §12 (2) & (4).

## COUNT III

170.    St. Vincent re-alleges and incorporates paragraphs 1-170 of this Amended/Supplemental Complaint as if fully set forth herein.

171.    Loconto's Award exceeded his powers under the Collective Bargaining Agreement.

172.    Loconto's Award ignores and contravenes the plain, unambiguous contractual

29

language contained in the Collective Bargaining Agreement.

173.    Loconto's Award does not draw its essence from the Collective Bargaining Agreement.

174.    Loconto's Award is without rational support and cannot be rationally derived from the terms of the Collective Bargaining Agreement.

175.    Accordingly, this Court should vacate and/or modify the Award pursuant to the Labor Management Relations Act, 29 U.S.C. § 185 *et. seq.*, Federal Arbitration Act, 9 U.S.C. §10(a)(4), and the Labor Management Relations Act, 29 U.S.C. § 185 *et. seq.* and Mass.Gen.Laws ch. 150C, §12(3).

## COUNT IV

176.    St. Vincent re-alleges and incorporates paragraphs 1-176 of this Amended/Supplemental Complaint as if fully set forth herein.

177.    Loconto substituted his own judgment for that of St. Vincent and dispensed his own brand of industrial justice in place of the terms of the Collective Bargaining Agreement.

178.    Accordingly, this Court should vacate and/or modify the Award pursuant to the Labor Management Relations Act, 29 U.S.C. § 185 *et. seq.*

## COUNT V

179.    St. Vincent re-alleges and incorporates paragraphs 1-179 of this Amended/Supplemental Complaint as if fully set forth herein.

180.    Loconto's award is unfounded in reason and fact.

181.    Loconto's Award is based on reasoning so palpably faulty that no judge, or group of judges, could ever conceivably have made such a ruling.

182.    Loconto, in articulating his Award, considered and relied on, but nevertheless

30

disregarded, the authorities to which he was bound.

183.    Loconto acted in bad faith and manifestly disregarded the law and this Court should vacate and/or modify the Award consistent with applicable law.

## COUNT VI

184.    St. Vincent re-alleges and incorporates paragraphs 1-183 of this Amended/Supplemental Complaint as if fully set forth herein.

185.    The Award must be vacated because Arbitrator Loconto did not issue it within 30 days.

## COUNT VII

186.    St. Vincent re-alleges and incorporates paragraphs 1-185 of this Amended/Supplemental Complaint as if fully set forth herein.

187.    Loconto issued the Remedial Award on matters that were not before him and over which he had no jurisdiction.

188.    Loconto's Remedial Award is therefore unfounded in reason and fact.

189.    In issuing the Remedial Award, Loconto dispensed his own brand of industrial justice in further defiance of his obligation to act as a neutral and to not render awards based on his evident partiality and misconduct.

190.    Accordingly, this Court should vacate and/or modify the Remedial Award pursuant to Mass.Gen.Laws ch. 150C, §12(2) and the Federal Arbitration Act, 9 U.S.C. §10(a)(1)-(4).

## COUNT VIII

191.    St. Vincent re-alleges and incorporates paragraphs 1–190 of this Amended/Supplemental Complaint as if fully set forth herein.

192.    Loconto's Remedial Award exceeded his powers under the Collective Bargaining Agreement.

193.    Loconto's Remedial Award is without rational support and cannot be rationally derived from the terms of the Collective Bargaining Agreement.

194.    Loconto acted in bad faith and manifestly disregarded the law when rendering the Remedial Award – particularly considering he issued monetary sanctions against St. Vincent in the form of attorneys' fees allegedly incurred by the Union in arbitrations for which Loconto was never selected or presided over.

195.    Accordingly, this Court should vacate and/or modify the Remedial Award pursuant to Labor Management Relations Act, 29 U.S.C. § 185 *et. seq.*, Federal Arbitration Act, 9 U.S.C. §10(a)(4), and the Labor Management Relations Act, 29 U.S.C. § 185 *et. seq.* and Mass.Gen.Laws ch. 150C, §12(1) – (3).

## COUNT IX

196.    St. Vincent re-alleges and incorporates paragraphs 1-195 of this Amended/Supplemental Complaint as if fully set forth herein.

197.    Loconto engaged in misconduct and misbehavior substantially prejudicing the rights of the Hospital, including, among other actions or omissions, refusing to an evidentiary hearing or limited discovery on issues pertinent and material to the Remedial Award.

198.    Accordingly, this Court should vacate and/or modify the Award pursuant to the Labor Management Relations Act, 29 U.S.C. § 185 *et. seq*., Federal Arbitration Act, 9 U.S.C. §10(a)(3), and the Labor Management Relations Act, 29 U.S.C. § 185 et. seq. and Mass.Gen.Laws ch. 150C, §12 (2) & (4).

## PRAYER FOR RELIEF

WHEREFORE, St. Vincent Hospital prays that pursuant Section 301 of the Taft-Hartley Labor Management Relations Act, 29 U.S.C. § 185, as amended (LMRA), the Federal Arbitration Act (FAA), 9 U.S.C. §§ 10, 11, and 12, and the Massachusetts Arbitration Act, Mass.Gen.Laws ch. 150C *et. seq.*, that this Honorable Court issues judgment as follows:

1. That the June 12, 2025 arbitration award of Michael Loconto be vacated entirely or, alternatively, modified consistent with the express terms of the CBA and applicable federal and state law, denying the Union's requested relief and the sanctions issued against the Hospital in the form of attorneys' fees and costs;

2. That Loconto's May 11, 2026 Remedial Award regarding attorney's fees be vacated or, alternatively, modified consistent with the express terms of the CBA and applicable federal and state law;

3. That in the event the Court finds it necessary to remand in this case, that it do so only to a true neutral unaffiliated with LRC or AAA.

4. That St. Vincent Hospital be awarded its reasonable costs and attorneys' fees incurred in bringing this Amended/Supplemental Complaint; and

5. That St. Vincent Hospital be awarded such other and further relief, in law or in equity, as the Court may deem appropriate and proper.

Dated: June 10, 2026

Respectfully submitted,

FORD & HARRISON LLP


By:  */s/ David R. Anderson*
    Nancy Van der Veer Holt
    Massachusetts Bar No. 668916
    nholt@fordharrison.com
    David Roger Anderson*
    Texas Bar No. 24128388
    danderson@fordharrison.com
    Marc A. Sugerman*
    Florida Bar No. 0081876
    msugerman@fordharrison.com
    Rachel Saady-Saxe
    D.C. Bar No. 1738392
    rsaady-saxe@fordharrison.com

    Attorneys for St. Vincent Hospital
    *Pro Hac Vice Application Forthcoming*

WSActiveLLP:115271558.1

34