# PART TWO OF EXHIBITS TO COMPLAINT

# EXHIBITS 16-27

| From: | AAA Patrick Kimm <PatrickKimm@adr.org> |
|---|---|
| Sent: | Monday, January 6, 2025 8:54 AM |
| To: | Suzanne Hilli |
| Cc: | Jack Canzoneri; Samantha Sinclair; Wendy McGill; Gannon Robin; Marc A. Sugerman |
| Subject: | RE: MNA/St. Vincent Hospital - LRC Administration - Case No. 01-24-0000-7400 |
| Attachments: | 2024-12-23 MNA SDT directed to SVH signed by arb 010625.pdf |

| Follow Up Flag: | Follow up |
|---|---|
| Flag Status: | Completed |

**Caution: Originated Outside FordHarrison.**

See attached subpoena.

 **AAA Patrick Kimm**
**Case Administrator**

American Arbitration Association
T: 617 695 6014 F: 617 451 0763 E: PatrickKimm@adr.org
200 State Street, 7th Floor, Boston, MA 02109
adr.org | icdr.org | aaamediation.org



The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, discl distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immedia reply email and destroy all copies of the transmittal. Thank you.

**From:** Suzanne Hilli <shilli@masslaborlawyers.com>
**Sent:** Monday, December 23, 2024 3:22 PM
**To:** AAA Patrick Kimm <PatrickKimm@adr.org>
**Cc:** Jack Canzoneri <jcanzoneri@masslaborlawyers.com>; Samantha Sinclair <ssinclair@masslaborlawyers.com>; Wendy McGill <wmcgill@mnarn.org>; Gannon Robin <RGannon@mnarn.org>; Marc A. Sugerman <msugerman@fordharrison.com>
**Subject:** MNA/St. Vincent Hospital - LRC Administration - Case No. 01-24-0000-7400

**\*\*\* External E-Mail – Use Caution \*\*\***

Dear Patrick,
Attached please find a subpoena duces tecum directed to St. Vincent Hospital that MNA requests the arbitrator to sign in the above-referenced matter.
Thank you,

Suzanne (sent for Jack J. Canzoneri)
_____
**Suzanne M. Hilli**
McDonald Lamond Canzoneri LLC
352 Turnpike Road, Suite 210
Southborough, MA  01772
(508) 485-6600, Voice (ext. 101)
(508) 485-4477 Fax

*Exhibit 16*

email: shilli@masslaborlawyers.com
website: www.masslaborlawyers.com

This document is intended only for the use of the person to whom it is addressed.  It may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If you are not the intended recipient, any dissemination, distribution, copying or use of this document is strictly prohibited.  If you have received this communication in error, please notify me immediately at the e-mail address above and delete all copies of this communication.

*Exhibit 16*

AMERICAN ARBITRATION ASSOCIATION
BEFORE ARBITRATOR MICHAEL LOCONTO

<table>
<tr><td>

In the matter of

Massachusetts Nurses Association,

and

St. Vincent Hospital

Gr.   Instructed LRC to Cease
Purported 'Administration' of
Pending Matters

</td><td>

AAA # 01-24-0000-7400
Subpoena Duces Tecum

</td></tr>
</table>

To:   St. Vincent Hospital
c/o Marc Sugerman
FordHarrison
300 South Orange Avenue, Suite 1300
Orlando, Florida
msugerman@fordharrison.com

You are hereby commanded to produce documents responsive to the requests appearing in Attachment A, by e-mail or other agreed-upon means no later than 5:00 P.M. EST on February 14, 2025, to Jack J. Canzoneri, Esq., McDonald Lamond Canzoneri LLC, 352 Turnpike Road, Suite 210, Southborough, MA 01772, jcanzoneri@masslaborlawyers.com.

Signed:   *Michael Loconto*
         Arbitrator Michael T. Loconto

Dated:   January 6, 2025

**Exhibit 16**

## ATTACHMENT A TO SUBPOENA DUCES TECUM

### Instructions and Definitions

The words "concerning," "communication," "documents," "identify," and "relating to" are defined as set forth in the United States District Court, Massachusetts, Local Rules at Local Rule 26.5(C).

LRC - means the Labor Relations Connection

AAA - means American Arbitration Association

St. Vincent Hospital - means the party to this arbitration, St. Vincent Hospital, and all predecessors that owned and operated the subject hospital from 2000 to September 23, 2023

Possession, Custody and Control - means all documents that the current party to this arbitration, St. Vincent Hospital, may access for production, plus all documents which it may access because its current or prior counsel has possession, custody, or control of such documents

MNA - means "Massachusetts Nurses Association"

Muldoon to Henderson RFI - 12/4/2023 - shall refer to the information request attached hereto

Past Practice Arbitrations - shall refer to all arbitrations where MNA, and St. Vincent Hospital or its predecessors, were parties to an arbitration that was filed with LRC and AAA between 2000 and September 23, 2023, including the 123 arbitrations with the following case numbers:

| | | |
|---|---|---|
| 1. AAA # 11 300 02153 00 | 23. AAA #11 300 01072 10 | 45. LRC #665-20 |
| 2. AAA #11 300 01749 00 | 24. AAA #11 300 01073 10 | 46. LRC #666-20 |
| 3. AAA # 11 300 02560 03 | 25. AAA #11 300 01074 10 | 47. LRC #195-22 |
| 4. AAA #11 300 02160 04 | 26. AAA #11 300 01723 11 | 48. LRC #255-22 |
| 5. AAA #11 300 01632 05 | 27. AAA #11 300 01466 08 | 49. LRC #291-22 |
| 6. AAA #11 300 00702 0 | 28. AAA #11 390 00510 12 | 50. LRC #345-22 |
| 7. AAA #11 300 00733 04 | 29. AAA #11 390 00511 12 | 51. LRC #346-22 |
| 8. AAA #11 300 00013 05 | 30. AAA #11 390 00512 12 | 52. LRC #347-22 |
| 9. AAA #11 300 02076 06 | 31. AAA #11 390 00513 12 | 53. LRC #348-22 |
| 10. AAA #11 300 01842 07 | 32. AAA #11 390 00514 12 | 54. LRC #349-22 |
| 11. AAA #11 300 01336 07 | 33. AAA #11 390 00644 13 | 55. LRC #486-22 |
| 12. AAA #11 300 02411 07 | 34. AAA #11 390 00643 13 | 56. LRC #487-22 |
| 13. AAA #11 300 00829 08 | 35. AAA #11 390 01194 13 | 57. LRC #491-22 |
| 14. AAA #11 300 01113 08 | 36. AAA #11 390 01195 13 | 58. LRC #492-22 |
| 15. AAA #11 300 01045 08 | 37. AAA #11 390 01196 13 | 59. LRC #548-22 |
| 16. AAA #11 300 01046 08 | 38. LRC #233-16 | 60. LRC #549-22 |
| 17. AAA #11 300 02442 08 | 39. LRC #329-16 | 61. LRC #550-22 |
| 18. AAA #11 300 00659 09 | 40. LRC #309-17 | 62. LRC #553-22 |
| 19. AAA #11 390 00671 09 | 41. LRC #655-17 | 63. LRC #554-22 |
| 20. AAA #11 300 00051 10 | 42. LRC #60-18 | 64. LRC #555-22 |
| 21. AAA #11 300 00052 10 | 43. LRC #485-18 | 65. LRC #556-22 |
| 22. AAA #11 300 00354 10 | 44. LRC #50-19 | 66. LRC #557-22 |

# Exhibit 16

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 67. | LRC #558-22 | 86. | LRC #655-22 | 105. | LRC #857-22 |
| 68. | LRC #559-22 | 87. | LRC #726-22 | 106. | LRC #858-22 |
| 69. | LRC #560-22 | 88. | LRC #727-22 | 107. | LRC #859-22 |
| 70. | LRC #561-22 | 89. | LRC #728-22 | 108. | LRC #860-22 |
| 71. | LRC #562-22 | 90. | LRC #729-22 | 109. | LRC #861-22 |
| 72. | LRC #563-22 | 91. | LRC #730-22 | 110. | LRC #862-22 |
| 73. | LRC #564-22 | 92. | LRC #732-22 | 111. | LRC #863-22 |
| 74. | LRC #565-22 | 93. | LRC #733-22 | 112. | LRC #864-22 |
| 75. | LRC #566-22 | 94. | LRC #734-22 | 113. | LRC #291-23 |
| 76. | LRC #569-22 | 95. | LRC #735-22 | 114. | LRC #292-23 |
| 77. | LRC #597-22 | 96. | LRC #736-22 | 115. | LRC #293-23 |
| 78. | LRC #598-22 | 97. | LRC #813-22 | 116. | LRC #304-23 |
| 79. | LRC #599-22 | 98. | LRC #814-22 | 117. | LRC #305-23 |
| 80. | LRC #600-22 | 99. | LRC #820-22 | 118. | LRC #306-23 |
| 81. | LRC #601-22 | 100. | LRC #850-22 | 119. | LRC #307-23 |
| 82. | LRC #637-22 | 101. | LRC #851-22 | 120. | LRC #324-23 |
| 83. | LRC #638-22 | 102. | LRC #852-22 | 121. | LRC #325-23 |
| 84. | LRC #641-22 | 103. | LRC #853-22 | 122. | LRC #326-23 |
| 85. | LRC #651-22 | 104. | LRC #854-22 | 123. | LRC #328-23 |

## Requests

A.     For each of the <u>Past Practice Arbitrations</u>, identify and provide the following documents in St. Vincent Hospital's possession, custody, and control:

1.     the Demand for Arbitration;

2.     with respect to the subject of the LRC or AAA administering the arbitration process after the selection of the arbitrator ("the Subject"), any objection transmitted by the Hospital to MNA or LRC about the Subject;

3.     any exchange of positions about the Subject where the Hospital or MNA presented arguments about the Subject;

4.     any rulings by arbitrators resolving any dispute about the Subject;

5.     one example for each case of LRC and AAA administering the arbitration process after the selection of the arbitrator, such as issuance of a notice of hearing, coordinating communication and issuing notices of arbitrator decisions about any other arbitration issues; and,

6.     LRC and AAA communication relating to the final disposition of the case, including withdrawal, withdrawal upon report of the matter settled, issuance of an arbitration award, placing in abeyance, closing the case.

**Exhibit 16**

B.      For each of the reasons asserted by St. Vincent Hospital for not considering the grievance—as set forth by St. Vincent Hospital in its answers to the grievance in the above-captioned matter—identify and provide all documents concerning each such reason.

C.      Identify and provide all documents concerning communications between representatives of MNA and St. Vincent Hospital during the grievance procedure, including, but not limited to as relates to scheduling and notes of grievance meetings.

D.      Identify and provide all documents concerning and relating to the procedural arbitrability defenses raised by the Hospital in this matter.

E.      Identify and provide all documents concerning and relating to the St. Vincent Hospital's position that the collective bargaining agreement only requires MNA and St. Vincent Hospital to use of AAA or LRC for selection of the arbitrator in each case, but not for administration of the arbitration after the selection of the arbitrator, including, <u>inter alia</u>, as set forth in the email dated Sep 20, 2023, 4:02 PM from Christopher T. Borruso, on behalf of the St. Vincent Hospital to the Director of the Labor Relations Connection (LRC) Jan Teehan.

F.      Identify and provide all documents that St Vincent Hospital transmitted to MNA specifically in response to the <u>Muldoon to Henderson RFI - 12/4/2023</u>.

G.      Identify and provide all documents responsive to the <u>Muldoon to Henderson RFI - 12/4/2023</u>.

**Exhibit 16**

**Subject**: LRC INFORMATION REQUEST
**From**: DOMINIQUE A Muldoon <dominique1muldoon@gmail.com>
**To**: Francis Henderson <francis.henderson@tenethealth.com>,Wendy McGill <wmcgill@mnarn.org>,Carla LeBlanc <csleblancrn@gmail.com>,Marlena pellegrino <mjpellegrino@charter.net>
**Date Sent**: Monday, December 4, 2023 3:16:04 PM GMT-05:00
**Date Received**: Monday, December 4, 2023 3:16:15 PM GMT-05:00

Francis,

This is in response to your email dated Friday December 1, 2023 where you provided St. Vincent Hospital's Step 2 response to the grievance.  I, nor our legal team are aware of any facts that support the basis for the six arbitrability defenses you raise in that response.  So that MNA may further evaluate those six defenses I am making the following information request. Because several of the requests are time-sensitive I ask that you please  provide responsive information by Wednesday December 6.

The information request below is organized by quoting (in bold) each of the numbered arbitrability defenses and below each is the information request (lettered) relating to that defense.

**1.  The Grievant failed to present the grievance to her department manager or designee as required at step 1;**

1A.  By email dated July 9, 2022, 10:39 PM (see attached) you notified MNA that you are the designee for all steps of the grievance process.  Therefore, I am unclear on why you are raising this defense where the Step 1 grievance was filed with you.  Please identify the department manager or designee with whom you claim the grievance should have been filed at Step 1 and a copy of all documents that show St. Vincent Hospital changing the designee from you (per the July 9, 2022 email, attached) to someone else.

**2.  The department/unit representative failed to attend the step 1 meeting;**

2A.  You failed to raise a concern about this at the Step 1 meeting.  Though clearly implied by the fact that I presented the information in support of the grievance at Step 1—had you raised this issue during the grievance meeting, I would have advised you that I was presenting as the department/unit representative.  Is there any provision in the contract that you believe precludes MNA from assigning whomever it decides is appropriate to perform the role of the department/unit representative right up to the moment the grievance hearing commences?

2B. If so, please advise of the specific language that allegedly precludes MNA from making such a decision—i.e., to designate someone to be the department/unit representative at the start of a grievance hearing—and provide all documents that relate to your interpretation of the contract in that regard.

**3.  The Grievant and department/unit representative failed to discuss the grievance with the Grievant's department manager or designee within 5 days of the grievance being presented;**

There are several aspects of this defense which require clarification.  I will address each in term.

3A.  Which step of the grievance procedure does this relate to?

3B.  With respect to the term "Grievant" do you mean that a Grievant was not present at the Step 1 or Step 2 hearing?

3C.  I am expressly listed in this grievance at each step as an "aggrieved nurse" (which is the definition of a grievant in the CBA), along with all other members of the bargaining unit on the grievance.  Given this, please explain why you are saying the Grievant was not present.

3D.  Had you raised this issue during the grievance meeting, I would have advised that I was present as a Grievant.  Is there any provision in the contract that you believe prevents MNA from assigning one person to be present at the grievance hearing in the capacity as both the grievant and the department/unit representatives, and to be present on behalf of all grievants?  If so, please advise of the specific language that prevents MNA from doing so and provide all documents that relate to your interpretation of the contract in that regard.

3E.  With respect to the term "department/unit representative"—please see the information request at ¶¶2A and 2B above which relates to this same subject to the extent this defense objects to there not being a "department/unit representative" at the hearing.

**MNA-74190**

**Exhibit 16**

3F.  With respect to the term "department manager or designee"—please see the information request at ¶1A above which relates to this same subject to the extent this defense objects to the grievance not being filed with "department manager or designee" where St. Vincent Hospital has notified us that you are the designee.

3G.  With respect to the phrase -"within five days of the grievance being presented."  I know the step one was filed on October 20, 2023; I offered to meet within five business days and we could not find a date that worked for you in that.Period— Or you did not reply, until after the five days-and then through cooperative discussion we agreed upon a November 2, 2023. Also, I know contract language at article XXI under the heading " Time limit for processing" which says "there may be extensions, mutually agreed-upon and writing, and legitimate request for extension of time will not be unreasonably denied." Given these circumstances and the contract language, please explain why you are claiming that the grievance hearing on November 2 was not held within five days as a basis, for claiming the grievance is not procedurally arbitrable?

3H. With respect to the phrase within five days of the grievance being presented. I note the step two was filed on Friday, November 10, 2023; the grievance hearing was held within five business days later on Friday, November 17, 2023; and that occurred in context where I offered to meet with you even earlier on November 13 and you never responded to that date offer, and then you replied later and offered Friday, November 17. Given this, please explain why you are claiming that step two grievance hearing on November 17 was not held within five days?.

**4.  The grievance purports to be filed on behalf of several Grievants.  However, the collective bargaining agreement does not allow for the filing or processing of "class action" grievances.**

4A.  The grievance is filed on behalf of "aggrieved nurses"—the term used in the contract to define who may file a grievance. The grievance does not use the term "class action."  Given this, I'm not clear about the basis for this defense.  Please cite the provision in the contract that you rely upon for the conclusion that a grievance may not be filed on behalf of several "aggrieved nurses"—and provide all documents that relate to your interpretation of the contract in that regard.

**5.  The department/unit representative failed to attend the step 2 meeting;**

See ¶2.

**6.  The grievance chair/or designee failed to attend the step 2 meeting.**

6A.  I am the co-chair of the bargaining unit.  Please explain the basis of this defense.

Dominique

Sent from my iPhone

MNA-74191

Exhibit 16

# Henderson, Francis

| | |
|---|---|
| **From:** | Henderson, Francis |
| **Sent:** | Saturday, July 9, 2022 10:39 PM |
| **To:** | Wendy McGill; Marie Ritacco |
| **Cc:** | Holbrook, Anita |
| **Subject:** | Saint Vincent Hospital Grievance Handling |

Wendy and Marie:

Please be advised that effective immediately and until further notice, I will be the designee for all Step 1, 2 and 3 grievances under Article XXI of the collective bargaining agreement.  All grievances and all correspondence regarding grievances should be filed directly with me.

I will have limited availability Monday, July 11 and Tuesday, July 12.  Please have the appropriate person(s) contact me to schedule any grievances the Association wishes to be heard.

Francis
**Francis Henderson**
Director, Labor Relations
14201 Dallas Parkway
Dallas, TX 75254
O: 469.893.6625
C: 214.773.1092
Francis.Henderson@tenethealth.com

This email is for the sole use of the intended recipient and may contain material that is confidential.  Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you are not the intended recipient, please contact the sender and delete all copies

**Exhibit 16**

**From:** Michael Loconto <mtl@locontoadr.com>
**Sent:** Friday, January 24, 2025 3:44 PM
**To:** Jack Canzoneri
**Cc:** Marc A. Sugerman; AAA Patrick Kimm; Samantha Sinclair; Suzanne Hilli; Nicole R. Tordesillas
**Subject:** Re: MNA/St. Vincent Hospital - LRC Administration - Case No. 01-24-0000-7400

**Caution: Originated Outside FordHarrison.**

Mr. Canzoneri, Mr. Sugerman, and colleagues,

Good afternoon.  Thank you for participating in the call earlier today.  As discussed, I am providing the following written summary of my rulings on the Employer's Objections to the Union's Subpoena Duces Tecum, which I signed and issued on January 6, 2025.  Specifically:

1. Objection to Section A of the subpoena - _overruled_.
2. Objection to Section B - _withdrawn_ by the Employer.
3. Objection to Section C - _overruled_.  The Union confirmed that the request is limited to the processing of the underlying grievance in this matter (01-24-0000-7400).
4. Objection to Section D - _overruled._  The Union confirmed that the request excludes items that may be protected by the Employer's various claimed privileges, and the Employer confirmed that documentation does exist with respect to the subject matter of the request.
5. Objection to Section E - _withdrawn_ by the Employer.
6. Objection to Section F - _overruled._
7. Objection to Section G - _overruled._

The Employer shall produce responsive materials for the Union's review by close of business on Friday, February 14, 2025 as indicated in the underlying subpoena.  Additionally, and as discussed, the matter is not appropriate for summary judgment or a decision on the papers, and remains scheduled for two-days of in-person hearings in Worcester, MA (location TBD) on Monday, March 17, 2025 and Wednesday, April 2, 2025.  Parties: please confirm the exact location of the hearings by no later than one week prior to the first hearing (or, 3/10/25).

Have a nice weekend, and

Regards,

Michael Loconto
Arbitrator

On Thu, Jan 23, 2025 at 6:41 PM Michael Loconto <mtl@locontoadr.com> wrote:
 Thank you for your additional notes, counsel.  We'll address these items during the call tomorrow.

1

**Exhibit 17**

Regards,

Michael Loconto
Arbitrator

On Thu, Jan 23, 2025 at 3:44 PM Jack Canzoneri <jcanzoneri@masslaborlawyers.com> wrote:
> What provision of the contract do you cite regarding exclusion of evidence relating to extrinsic evidence (here past implementation) for purposes of clarifying alleged ambiguity?

_____
**Jack J. Canzoneri**
McDonald Lamond Canzoneri LLC
352 Turnpike Road, Suite 210
Southborough, Massachusetts 01772
(508) 485-6600 Voice (ext. 105)
(508) 485-4477 Fax
email: jcanzoneri@masslaborlawyers.com
website: www.masslaborlawyers.com

This document is intended only for the use of the person to whom it is addressed.  It may contain information that is privileged, confidential and exempt from disclosure under applicable law.    If you are not the intended recipient, any dissemination, distribution, copying or use of this document is strictly prohibited.  If you have received this communication in error, please notify me immediately at the e-mail address above and delete all copies of this communication.

On Thu, Jan 23, 2025 at 3:39 PM Marc A. Sugerman <msugerman@fordharrison.com> wrote:

Mr. Loconto,

In addition to, or perhaps in lieu of, our brief discussion regarding the Union's subpoena, I would like to discuss deciding the threshold contractual interpretation issue on the papers. It is the Hospital's position that this case can be decided solely as a matter of contract interpretation. Specifically, we will argue, among other things, that the parties' collective bargaining agreement precludes the Union from relying on past practice. If the arbitrator rules in favor of the Hospital, there will be no need for a hearing. If the arbitrator rules against the Hospital, the parties can revisit the need for document production and a hearing. The Hospital would agree to an expedited briefing schedule over the next few weeks.

Thank you and look forward to speaking with you both tomorrow morning.

Marc

**Exhibit 17**



## Marc A. Sugerman 🖼

*Attorney at Law*



# FORDHARRISON 🔗

300 South Orange Avenue, Suite 1300 | Orlando, FL 32801
msugerman@fordharrison.com | P: 407-418-2308

*FHPromise* | **Subscribe**

**From:** Michael Loconto <mtl@locontoadr.com>
**Sent:** Thursday, January 23, 2025 2:02 PM
**To:** Jack Canzoneri <jcanzoneri@masslaborlawyers.com>
**Cc:** Marc A. Sugerman <msugerman@fordharrison.com>; AAA Patrick Kimm <patrickkimm@adr.org>; Samantha Sinclair <ssinclair@masslaborlawyers.com>; Suzanne Hilli <shilli@masslaborlawyers.com>; Nicole R. Tordesillas <ntordesillas@fordharrison.com>
**Subject:** Re: MNA/St. Vincent Hospital - LRC Administration - Case No. 01-24-0000-7400

**Caution: Originated Outside FordHarrison.**

Counsel,

Good afternoon.  I have reviewed the materials submitted by the parties.  Thank you for your submissions, which are helpful for narrowing the issues in dispute.  The call will go forward tomorrow as scheduled, at 9:30 am, and I believe it can remain fairly brief.

3

**Exhibit 17**

Have a good day,


Michael Loconto

Arbitrator


On Wed, Jan 22, 2025 at 6:21 PM Michael Loconto <mtl@locontoadr.com> wrote:

Thank you, Jack.  This is received.  I will speak with the parties on Friday morning.


Regards,


Michael Loconto
Arbitrator


On Wed, Jan 22, 2025 at 5:03 PM Jack Canzoneri <jcanzoneri@masslaborlawyers.com> wrote:

Mr. Kimm, Arbitrator Loconto, and Attorney Sugerman:


Arbitrator Loconto indicated that, if MNA sought to provide a written response to the objections, then it could provide written response by today (or, if it chose to do so, rely solely upon the discussion at the telephone conference).  On behalf of MNA I have decided to provide a written response in advance of our upcoming telephone conference.


To help organize, I have structured the information as follows:  the subpoena paragraphs (lettered) are shaded in gray; then I quote the employer's objection; and then MNA's reply.


A.        For each of the Past Practice Arbitrations, identify and provide the following documents in St. Vincent Hospital's possession, custody, and control:


            1.        the Demand for Arbitration;

4

**Exhibit 17**

2.      with respect to the subject of the LRC or AAA administering the arbitration process after the selection of the arbitrator ("the Subject"), any objection transmitted by the Hospital to MNA or LRC about the Subject;

3.      any exchange of positions about the Subject where the Hospital or MNA presented arguments about the Subject;

4.      any rulings by arbitrators resolving any dispute about the Subject;

5.      one example for each case of LRC and AAA administering the arbitration process after the selection of the arbitrator, such as issuance of a notice of hearing, coordinating communication and issuing notices of arbitrator decisions about any other arbitration issues; and,

6.      LRC and AAA communication relating to the final disposition of the case, including withdrawal, withdrawal upon report of the matter settled, issuance of an arbitration award, placing in abeyance, closing the case.

**Hospital:**      A. The Hospital objects to Request A and its Subparts because the Arbitrator already ruled, in agreement with the Union and over the Hospital's objection, that production of any more documents than the cherry-picked documents the Union offered to produce would be cumulative and unduly burdensome. That the Union now takes the opposite position with respect to the Hospital is at best disingenuous and at worst a deliberate attempt to harass the Hospital and delay these proceedings.

**MNA:**  The Hospital objection is nonsensical, absurd hyperbole and should be rejected.  The Arbitrator did not issue a ruling using the word "cherry-picked documents."  Paragraph 5 says "one example" of administration after the selection of the arbitrator and the Arbitrator ruled that this was the extent of the obligation for reasons he explained.  If there is any administration after the selection of the arbitrator, then the hospital must produce one example of its choosing under paragraph A of MNA's

5

**Exhibit 17**

subpoena.  The Hospital's argument that it was "disingenuous" for MNA to make this request—a request exactly matching what the Arbitrator ruled—is hyperbole, false, and itself is bad faith.  The objection should be rejected.

B.        For each of the reasons asserted by St. Vincent Hospital for not considering the grievance—as set forth by St. Vincent Hospital in its answers to the grievance in the above-captioned matter—identify and provide all documents concerning each such reason.

     **Hospital:**  B. No objection.

     **MNA:**  There is no objection; no response required.

C.        Identify and provide all documents concerning communications between representatives of MNA and St. Vincent Hospital during the grievance procedure, including, but not limited to as relates to scheduling and notes of grievance meetings.

     **Hospital:**  C. The Hospital objects to Request C because it is vague and overbroad, seeks irrelevant information, and seeks production of privileged attorney-client communications,  attorney work product, and other privileged materials.

     **MNA:**  It is first important to note that during the grievance procedure the Hospital raised multiple procedural arbitrability issues.  For example, at Step 2 the Hospital raised these defenses:

     1.        The Grievant failed to present the grievance to her department manager or designee as required at step 1;

     2.        The department/unit representative failed to attend the step 1 meeting;

     3.        The Grievant and department/unit representative failed to discuss the grievance with the Grievant's department manager or designee within 5 days of  the grievance being presented;

**Exhibit 17**

4. The grievance purports to be filed on behalf of several Grievants. However, the collective bargaining agreement does not allow for the filing or processing of "class action" grievances

5. The department/unit representative failed to attend the step 2 meeting;

6. The grievance chair/or designee failed to attend the step 2 meeting.

The request is not vague and overbroad. It narrowly relates to communications between representatives of the Hospital and MNA during the grievance procedure. That is clear and precise and the hospital.

The information is not irrelevant. The information about what transpired during the grievance procedure is relevant to evaluate whether the defense was raised, waived, whether there was discussion of scheduling or process that shows agreement versus unilateral action that deviated from any of the standards the hospital claims in its defenses, shows discussion of the grievance—and all of that may bear on the merits and/or whether a defense is true (e.g., who attended may be shown in notes, what was said).

The information request does not seek production of privileged attorney-client communications, attorney work product, and other privileged materials. It seeks communications between representatives of the Hospital and MNA; not internal communications among Hospital representatives. The objection should be rejected.

D. Identify and provide all documents concerning and relating to the procedural arbitrability defenses raised by the Hospital in this matter.

**Hospital:** D. The Hospital objects to Request D to the extent it seeks production of

privileged attorney-client communications, attorney work product, and other privileged materials.

7

**Exhibit 17**

**MNA:**  MNA confirms that this request excludes privileged attorney-client communications and attorney work product.  However, this request encompasses documents that relate to the Hospital's procedural defenses that are not otherwise explicitly identified in this subpoena because MNA does not know what documents the Hospital relied upon and cannot explicitly describe each document.  Thus it requests documents "concerning" those defenses and that phrasing is a valid method to describe the production, consistent with the definitions in the local federal court rules cited in the subpoena.

E.      Identify and provide all documents concerning and relating to the St. Vincent Hospital's position that the collective bargaining agreement only requires MNA and St. Vincent Hospital to use of AAA or LRC for selection of the arbitrator in each case, but not for administration of the arbitration after the selection of the arbitrator, including, inter alia, as set forth in the email dated Sep 20, 2023, 4:02 PM from Christopher T. Borruso, on behalf of the St. Vincent Hospital to the Director of the Labor Relations Connection (LRC) Jan Teehan.

**Hospital:**  E. No objection. The Hospital also notes that its position is based on the plain language of the collective bargaining agreement. As such, this matter is ripe for disposition by summary judgment.

**MNA:**  There is no objection; no response required.   There is no summary judgment in labor arbitration and MNA disagrees with the premise of the hospital comment in that regard.

F.      Identify and provide all documents that St Vincent Hospital transmitted to MNA specifically in response to the Muldoon to Henderson RFI - 12/4/2023.

**Hospital:**  F. The Hospital objects to Request F on the same grounds raised by the Union in its Motion to Quash Tenet's Subpoena Request No. 6, which grounds were relied upon by the Arbitrator to quash that request—that it is overly broad, seeks evidence that is not relevant, poses and undue burden, and purports to require production of privileged attorney-client communications, attorney work product, and other privileged materials. That the Union now takes the opposite position with respect to the Hospital is at best disingenuous and at worst a deliberate attempt to harass the Hospital and delay these proceedings.

**Exhibit 17**

**MNA:**  It is important to first review subpoena request no. 6 of the Hospital subpoena that the hospital cross-references in its objection to MNA subpoena paragraph "F":

6. For the period January 1, 2022 to present, all documents concerning or relating to Saint Vincent Hospital's requests for information relating to arbitration past practices alleged by the Union, including but not limited to:

    a. The requests for information;

    b. The efforts made by MNA to collect documents responsive to those requests;

    c. MNAs responses to those requests.

MNA's Request "F" is not an open-ended request as set forth above in Hospital subpoena ¶6 which encompasses material that may fall outside the scope of relevance.  The Arbitrator ordered production of extensive material about past practices from 2000 to Sept 23, 2023.  MNA is preparing to produce that material and it will be extensive.  But the Hospital sought documents well beyond that by its expansive ¶6 of its subpoena—including internal communications, efforts to find those documents, and MNA's responses.  That's vastly more expansive than MNA's request "F."  There is no comparison between the two.  MNA directs the Arbitrator's attention to specific information request attached to the subpoena.

MNA believes that the Hospital never responded to that request, and by this request it seeks to confirm whether such documents or information were provided.  That in turn relates to the issue of waiver and/or the merits of those defenses.

Therefore, the request is not overly broad unlike Hospital subpoena ¶6; the request does not seek irrelevant evidence; the request does not pose a discernible undue burden; and to the extent it can be construed as requiring production of privileged attorney-client  communications or attorney work product MNA clarifies here that such material is excluded.

Back to the topic of hyperbole—the Hospital continues its absurd mantra and says MNA "now takes the opposite position with respect to the Hospital is at best disingenuous and at worst a deliberate  attempt to harass the Hospital and delay these proceedings."  As can be seen from the above, there is zero validity to this repetitive false narrative, and if anything it shows the Hospital's bad faith.

**Exhibit 17**

The objection should be rejected.

G.    Identify and provide all documents responsive to the Muldoon to Henderson RFI - 12/4/2023.

**Hospital:**  G. The Hospital objects to Request G on the same grounds raised by the Union in its  Motion to Quash Tenet's Subpoena Request No. 6, which grounds were relied upon by the  Arbitrator to quash that request —that it is overly broad, seeks evidence that is not relevant, poses  and undue burden, and purports to require production of privileged attorney-client  communications, attorney work product, and other privileged materials. That the Union now takes  the opposite position with respect to the Hospital is at best disingenuous and at worst a deliberate  attempt to harass the Hospital and delay these proceedings.

**MNA:**  MNA incorporates its response to the Hospital objections to paragraph "F."  In addition, this request seeks the actual material—not just what was produced at the time as requested in "F" (and which MNA expects the Hospital will say was zero documents).  MNA believes the material is relevant because the material request directly relates to the merits of the procedural arbitrability defenses raised, the validity of those defenses, and whether they were waived.  Where MNA believes that the material was never produced, and where it still wants that material, this required MNA to request the material as set forth in this paragraph.  The objection should be rejected.

Respectfully submitted,

**Jack J. Canzoneri**

McDonald Lamond Canzoneri LLC
352 Turnpike Road, Suite 210
Southborough, Massachusetts 01772
(508) 485-6600 Voice (ext. 105)
(508) 485-4477 Fax
email: jcanzoneri@masslaborlawyers.com
website:  www.masslaborlawyers.com

This document is intended only for the use of the person to whom it is addressed.  It may contain information that is privileged, confidential and exempt from disclosure under applicable law.    If you are

**Exhibit 17**

not the intended recipient, any dissemination, distribution, copying or use of this document is strictly prohibited.  If you have received this communication in error, please notify me immediately at the e-mail address above and delete all copies of this communication.

On Fri, Jan 17, 2025 at 4:32 PM Marc A. Sugerman <msugerman@fordharrison.com> wrote:

Arbitrator Loconto,

I am submitting the Hospital's Objections to the Subpoena Duces Tecum executed on January 6, 2025.

Thank you,

Marc



## Marc A. Sugerman 🔳

*Attorney at Law*



**FORDHARRISON** 𝗂𝗇

300 South Orange Avenue, Suite 1300 | Orlando, FL 32801
msugerman@fordharrison.com | P: 407-418-2308

*FHPromise* | **Subscribe**

**Exhibit 17**

**From:** Michael Loconto <mtl@locontoadr.com>
**Sent:** Wednesday, January 15, 2025 12:30 PM
**To:** Jack Canzoneri <jcanzoneri@masslaborlawyers.com>
**Cc:** Marc A. Sugerman <msugerman@fordharrison.com>; AAA Patrick Kimm <patrickkimm@adr.org>; Samantha Sinclair <ssinclair@masslaborlawyers.com>; Suzanne Hilli <shilli@masslaborlawyers.com>; Nicole R. Tordesillas <ntordesillas@fordharrison.com>
**Subject:** Re: MNA/St. Vincent Hospital - LRC Administration - Case No. 01-24-0000-7400

**Caution: Originated Outside FordHarrison.**

Jack, Marc, (cc Patrick),

Good afternoon.  I write to respond to the Union's most recent correspondence below (email dated 1/14/25 at 11:50 am) and address some other outstanding issues.

Briefly, I want to first level-set some expectations about the process for reviewing the subpoena that was executed on January 6, 2025.  By entertaining the Employer's request to challenge the subpoena, I did not set any parameters beyond the following:

1. The Employer was requested to provide a concise list of its objection(s) to the subpoena in writing, and

2. A conference call would be established to address those concerns.

I do not anticipate the need to brief this issue; by contrast, the process utilized to address the Employer's July 25, 2024 subpoena was established to address the unique issues presented by that batch of requests.  The call is intended to provide the Employer with an opportunity to be heard on its concerns, in light of the prior apparent misunderstanding with respect to process - and a concurrent opportunity for the Union to respond.  By the same token, I do not view this exercise to be an impediment to proceeding with the upcoming hearings as scheduled.

As such, I am prepared to proceed with a conference call and **ask that Mr. Kimm please distribute a conference call calendar invite for 9:30 am on Friday, January 24.**

12

**Exhibit 17**

Additionally, the Employer has not provided the written statement that I requested.  Therefore, I am establishing a deadline of the close of business on Friday, January 17 for the Employer to provide a brief statement of its objections to the Union's subpoena; please provide a copy of the statement to the Union.  If the Union wishes to respond in advance of the call (there is no obligation to do so), I would invite the filing of a response by the close of business on Wednesday, January 22.  I do not envision these statements to be formal; an email will suffice.  The goal is to narrow the issues for discussion.

On that note, it is possible that this exercise may obviate the need for a call on certain aspects of the subpoena.  To this end, the Union's correspondence correctly notes that Request A in the subpoena that I signed on January 6, 2025 leaves little room for dispute, as the request parallels the request granted relative to the Employer's July 25, 2024 request.  Practically speaking, the Employer should proceed with steps to fulfill that aspect of the Union's request.  If the Employer wishes to contest fulfillment of Request A, it may provide a rationale for doing so in its written statement.   However, the parties should focus any dispute(s) on the remaining sections of the January 6, 2025 subpoena and their relation to the underlying matter subject to arbitration in case number 01-24-0000-7400.

I hope this clarifies the path forward.

I look forward to the parties' submissions and our conversation next Friday.

Regards,

Michael Loconto

Arbitrator

On Tue, Jan 14, 2025 at 11:50 AM Jack Canzoneri <jcanzoneri@masslaborlawyers.com> wrote:

Arbitrator Loconto, Mr. Kim, and Attorney Sugerman,

I email to explain MNA's position at this point about how we should proceed regarding this issue, and also respond regarding the dates for the call.

**Exhibit 17**

1.  It is not always the case that subpoenas are subject to such extensive briefing and structure as to scheduling, oral arguments, but here, I understand we have done so for the SVH's subpoena of MNA because of complexity of the issue as relates to the past practice as to LRC after selection of the arbitrator and the potential volume of production and what the hospital requested.  In our call regarding SVH's subpoena of MNA, we covered the procedure and I don't believe that's necessary here.  We should be able to just set dates for briefing by email.

2.  I do note this.  When I drafted MNA's subpoena on the LRC past practice topic—Request "A"—I intended to quote exactly what the arbitrator ordered MNA to produce on that same topic, and clarified by including the list of arbitration case numbers.  I sent that on December 23; this was the same day as the arbitrator's ruling; and I did that to get the process going, and believing actually that it would not be controversial where it is the same scope of information in that regard.  So, as far as that particular item, I don't believe further briefing is  even required and the hospital should engage in efforts (since Dec 23) to accumulate responsive material to produce by the same deadline as applies to MNA.  However, I understand that Attorney Sugerman and/or the Arbitrator may believe otherwise and if so, we should be able to proceed now to briefing schedule.  If there is briefing schedule for that issue I propose:  10 days from today for the hospital motion to quash; 10 days from the date of hospital motion for MNA's opposition; 10 days for arbitrator decision or oral argument.  We can revise those dates somewhat, but that's what I propose and I think we should do, if there is going to be briefing.

3.  For the other paragraphs of the subpoena (which relate to arbitrability defenses the hospital raises, and documents it may say support its interpretation of the CBA)—I believe the schedule above can apply as well, but I carved-out the LRC past practice item because that is presumably the largest scale issue and better to get that resolved sooner than later.

4.  Assuming the arbitrator wants to schedule a call to simply schedule a briefing schedule, Jan 24 or 28 works for me.  Assuming it is just scheduling, I would have Attorney Sinclair cover Jan 28 because I have an out of state arbitration that day.

Thank you.

Jack

_____

**Jack J. Canzoneri**

14

**Exhibit 17**

McDonald Lamond Canzoneri LLC
352 Turnpike Road, Suite 210
Southborough, Massachusetts 01772
(508) 485-6600 Voice (ext. 105)
(508) 485-4477 Fax
email: jcanzoneri@masslaborlawyers.com
website:  www.masslaborlawyers.com

This document is intended only for the use of the person to whom it is addressed.  It may contain information that is privileged, confidential and exempt from disclosure under applicable law.    If you are not the intended recipient, any dissemination, distribution, copying or use of this document is strictly prohibited.  If you have received this communication in error, please notify me immediately at the e-mail address above and delete all copies of this communication.

On Tue, Jan 14, 2025 at 11:32 AM Michael Loconto <mtl@locontoadr.com> wrote:

Good morning,

Of the dates and time ranges noted below, the mornings of the 24th or 28th would work best for me. I may also be able to move something on the morning of the 22nd if that were the only other mutually available time. I'd expect the call to take less than 30 mins so hopefully we can find some time to make it work.

Best,

Michael Loconto
Labor Arbitrator
(617) 331-2112
mtl@locontoadr.com
https://locontoadr.com

On Tue, Jan 14, 2025, 11:24 AM Marc A. Sugerman <msugerman@fordharrison.com> wrote:

Could we look at some alternative dates? I have availability on 1/21, 1/22 (am only), 1/24 (am only), 1/28 (am only), and 1/29.'

Marc

15

**Exhibit 17**



## **Marc A. Sugerman** 🖼️



*Attorney at Law*

## FORDHARRISON in

300 South Orange Avenue, Suite 1300 | Orlando, FL 32801
msugerman@fordharrison.com | P: 407-418-2308

*FHPromise* | **Subscribe**

**From:** Michael Loconto <mtl@locontoadr.com>
**Sent:** Friday, January 10, 2025 6:52 PM
**To:** Jack Canzoneri <jcanzoneri@masslaborlawyers.com>
**Cc:** Marc A. Sugerman <msugerman@fordharrison.com>; AAA Patrick Kimm <patrickkimm@adr.org>; Samantha Sinclair <ssinclair@masslaborlawyers.com>; Suzanne Hilli <shilli@masslaborlawyers.com>; Nicole R. Tordesillas <ntordesillas@fordharrison.com>
**Subject:** Re: MNA/St. Vincent Hospital - LRC Administration - Case No. 01-24-0000-7400

**Caution: Originated Outside FordHarrison.**

To the parties:

Pardon my slow reply on a Friday evening; I've been in a hearing and related travel since early this morning.

**Exhibit 17**

As an initial matter: yes, I intended to offer January dates.  Thank you for self-correcting with availability below.  I understand that Jack is not available on the 15th, as Marc had first suggested.  Marc, if you have a chance to respond over the weekend and can provide availability for the 13th or 16th, I will get something scheduled.  If these dates are not acceptable to the Employer, I will look further out for alternatives.

The Employer's request for correspondence between AAA and the arbitrator in this matter is beyond the scope of the instant dispute and is denied.

Have a good evening, and

Regards,

Michael Loconto

Arbitrator

On Fri, Jan 10, 2025 at 3:59 PM Jack Canzoneri <jcanzoneri@masslaborlawyers.com> wrote:

Arbitrator Loconto and Mr. Kimm:

Arbitrator Locono has not been asked to resolve the hospital's overall concern about AAA, but rather the LRC issue in this matter.  Nor has he been charged with coordinating communications of this nature and that is why I include Mr. Kimm.  MNA disagrees with the characterization of Mr. Kimm's conduct.

Assuming Arbitrator Loconto meant January, then my availability is as follows (copied from the email below, edited to reflect January) - note I am not available on Jan 15:

- Monday, **January** 13 - between 9 am and 3 pm [I am available up to 2:45pm]

- Wednesday, **January** 15 - between 10 am and 1:30 pm [not available]

17

**Exhibit 17**

- Thursday, **January16** - between 9 am and noon [available]

- Thu., **January** 23 - between 9 am and 1 pm [not available]


Thank you.


Jack


_____

**Jack J. Canzoneri**

McDonald Lamond Canzoneri LLC
352 Turnpike Road, Suite 210
Southborough, Massachusetts 01772
(508) 485-6600 Voice (ext. 105)
(508) 485-4477 Fax
email: jcanzoneri@masslaborlawyers.com
website:  www.masslaborlawyers.com

This document is intended only for the use of the person to whom it is addressed.  It may contain information that is privileged, confidential and exempt from disclosure under applicable law.    If you are not the intended recipient, any dissemination, distribution, copying or use of this document is strictly prohibited.  If you have received this communication in error, please notify me immediately at the e-mail address above and delete all copies of this communication.



On Fri, Jan 10, 2025 at 3:31 PM Marc A. Sugerman <msugerman@fordharrison.com> wrote:

 Mr. Loconto,


Thank you for your response.  If you did mean to offer January dates, I am available on 1/15 from 10am to noon.  During that phone call I propose that we discuss how to proceed with the Union's subpoena. We had a three month briefing schedule for the Hospital's subpoena, and we do not want to rush to file objections.


As an aside, this misunderstanding was a result of your communications being routed through AAA. The Hospital relied on Mr. Kimm's July 26, 2024 e-mail which very clearly set forth rules that would apply to all subpoenas requested in these proceedings. I note from your prior email that Mr. Kimm's July 26, 2024 email

**Exhibit 17**

was an "excerpt" from some other communication. The Hospital requests that you or Mr. Kimm provide the parties with a copy of the email that prompted Mr. Kimm's July 26, 2024 email and any other communications that set forth substantive or procedural issues relevant to these arbitration proceedings, including but not limited to the cover letter to the Union's subpoena, which AAA also did not provide to the parties.

We actually have a conference call scheduled for Tuesday, January 15 with a supervisor at AAA to discuss the agency's purported administration of approximately 25 pending cases between the Hospital and the MNA. We would appreciate if you or Mr. Kimm would send us your communications in this case by close of business on Monday.

Thank you,

Marc



## Marc A. Sugerman 🪪

*Attorney at Law*



**FORD**HARRISON 🔗

300 South Orange Avenue, Suite 1300 | Orlando, FL 32801
msugerman@fordharrison.com | P: 407-418-2308

*FHPromise* | **Subscribe**

**Exhibit 17**

**From:** Jack Canzoneri <jcanzoneri@masslaborlawyers.com>
**Sent:** Friday, January 10, 2025 8:30 AM
**To:** Michael Loconto <mtl@locontoadr.com>
**Cc:** Marc A. Sugerman <msugerman@fordharrison.com>; AAA Patrick Kimm <PatrickKimm@adr.org>; Samantha Sinclair <ssinclair@masslaborlawyers.com>; Suzanne Hilli <shilli@masslaborlawyers.com>; Nicole R. Tordesillas <ntordesillas@fordharrison.com>
**Subject:**

**Caution: Originated Outside FordHarrison.**

Arbitrator Loconto and Attorney Sugerman,

Thank you for your email about this topic Arbitrator Loconto. In my opinion there is no confusion, but I understand and accept the ruling. In my own practice, if I learn that the other party has submitted a subpoena that I believe is objectionable, I communicate an objection as soon as I reasonably can, standard procedure.

Regarding dates, did you mean January?

One further detail that is that the July 25th email was sent directly to you by Attorney Sugerman, ex parte in the true sense where I was not copied. Further, in response to that you directed the parties to send communications to AAA per the usual protocol that presumably we have all observed in all contexts (not just St. Vincent or MNA cases, but general in labor relations, setting aside non-administrative services like FMCS). Here the subpoena was sent on Dec 23rd, and not signed until two weeks later on Jan 6, so well outside the norm that I have observed over several decades where one has an objection.

I will await clarification on dates and then reply.

Thank you.

Jack

20

**Exhibit 17**

_____

**Jack J. Canzoneri**

McDonald Lamond Canzoneri LLC
352 Turnpike Road, Suite 210
Southborough, Massachusetts 01772
(508) 485-6600 Voice (ext. 105)
(508) 485-4477 Fax
email: jcanzoneri@masslaborlawyers.com
website:  www.masslaborlawyers.com

This document is intended only for the use of the person to whom it is addressed.  It may contain information that is privileged, confidential and exempt from disclosure under applicable law.   If you are not the intended recipient, any dissemination, distribution, copying or use of this document is strictly prohibited.  If you have received this communication in error, please notify me immediately at the e-mail address above and delete all copies of this communication.

On Fri, Jan 10, 2025 at 8:01 AM Michael Loconto <mtl@locontoadr.com> wrote:

Mr. Sugerman,

Good morning.  Thank you for highlighting your concerns with respect to the Union's subpoena dated December 23, 2024.  As noted in the cover email that I shared with Mr. Kimm when I returned the signed subpoena to the AAA on January 6, 2025:

the Union provided the attached subpoena request for my review and signature on 12/23/24, via AAA.  As we discussed, I held my review and execution in order to provide Mr. Sugerman with time to review and, if desired, raise any objections to the subpoena.  I have a practice of doing so for at least 24 hours under normal circumstances, and have extended this period given the recent holiday season.

Hearing no objection from the Employer, today I have executed the subpoena and attach it for your distribution to the parties.  If either party wishes to discuss the matter in further detail, please let me know.

The procedure you have referenced in your email below was developed in response and was specifically applicable to the Hospital's subpoena that was first delivered to me on July 25, 2024.  In

21

**Exhibit 17**

reviewing the email that you attached to your message below, however, I can see that the excerpt may have caused confusion.  As such, I am willing to hear the Employer's objections to the Union's subpoena.

Please respond with your specific objections to the Union's subpoena in writing.  Both parties are invited to respond with availability for a brief conference call to discuss the Employer's objections.  I am available at the following dates and times in the next two weeks:

     - Monday, February 13 - between 9 am and 3 pm

     - Wednesday, Feb. 15 - between 10 am and 1:30 pm

     - Thursday, Feb. 16 - between 9 am and noon

     - Thu., Feb. 23 - between 9 am and 1 pm

Please respond to Mr. Kimm, who will host the call.

Thank you and have a good day,

Michael Loconto

Arbitrator

On Wed, Jan 8, 2025 at 7:14 PM Marc A. Sugerman <msugerman@fordharrison.com> wrote:

Arbitrator Loconto,

I am writing to inquire why the attached subpoena was issued in contravention of the procedures for requesting subpoenas that you previously established in these proceedings. More specifically, in the attached email dated July 26, 2024, the parties were advised, "if and when a subpoena is requested, the arbitrator will schedule a conference call to discuss the underlying requested items." This procedure was not followed.

22

**Exhibit 17**

The union requested that you issue the attached subpoena on December 23, 2024 by routing the request through the AAA case manager and copying the Hospital. However, a conference call was never convened to discuss the underlying requested items.

Had your established procedures been followed, the Hospital would have raised several concerns with the subpoena. In particular, the Union's request is obviously an attempt to delay this arbitration hearing and frustrate the arbitration process. This case has been pending for over a year and was previously scheduled for August 12 until the Union's last minute request for postponement, and in all that time, including numerous phone calls and a briefing scheduled that spanned several months regarding the Hospital's subpoena, the Union never gave any indication that it sought any discovery at all, let alone this volume of discovery. The content of the Union's request must also be discussed, as it seeks plainly irrelevant information, attorney work product, as well as categories of information and documents that the arbitrator has already ruled need not be produced by the Union.

Additionally, the Arbitrator never signed the subpoena directed to the Labor Relations Connection, to which the Union and LRC never objected.

The Employer respectfully demands an opportunity to file formal objections to the Union's subpoena and that the Arbitrator consider the Union's request for a subpoena according to the procedures established by the Arbitrator in these proceedings.

Thank you,

Marc





## Marc A. Sugerman 📇

*Attorney at Law*

**Exhibit 17**

# FORDHARRISON in

300 South Orange Avenue, Suite 1300 | Orlando, FL 32801
msugerman@fordharrison.com | P: 407-418-2308

*FHPromise* | **Subscribe**

**From:** AAA Patrick Kimm <PatrickKimm@adr.org>
**Sent:** Monday, January 6, 2025 8:54 AM
**To:** Suzanne Hilli <shilli@masslaborlawyers.com>
**Cc:** Jack Canzoneri <jcanzoneri@masslaborlawyers.com>; Samantha Sinclair <ssinclair@masslaborlawyers.com>; Wendy McGill <wmcgill@mnarn.org>; Gannon Robin <RGannon@mnarn.org>; Marc A. Sugerman <msugerman@fordharrison.com>
**Subject:** RE: MNA/St. Vincent Hospital - LRC Administration - Case No. 01-24-0000-7400

**Caution: Originated Outside FordHarrison.**

See attached subpoena.

**AAA Patrick Kimm**
**Case Administrator**

American Arbitration Association
T: 617 695 6014 F: 617 451 0763 E: PatrickKimm@adr.org
200 State Street, 7th Floor, Boston, MA 02109
adr.org | icdr.org | aaamediation.org

The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify reply email and destroy all copies of the transmittal. Thank you.

**From:** Suzanne Hilli <shilli@masslaborlawyers.com>
**Sent:** Monday, December 23, 2024 3:22 PM
**To:** AAA Patrick Kimm <PatrickKimm@adr.org>
**Cc:** Jack Canzoneri <jcanzoneri@masslaborlawyers.com>; Samantha Sinclair <ssinclair@masslaborlawyers.com>; Wendy McGill <wmcgill@mnarn.org>; Gannon Robin <RGannon@mnarn.org>; Marc A. Sugerman <msugerman@fordharrison.com>
**Subject:** MNA/St. Vincent Hospital - LRC Administration - Case No. 01-24-0000-7400

**Exhibit 17**

*** External E-Mail – Use Caution ***

Dear Patrick,

Attached please find a subpoena duces tecum directed to St. Vincent Hospital that MNA requests the arbitrator to sign in the above-referenced matter.

Thank you,


Suzanne (sent for Jack J. Canzoneri)

_____

**Suzanne M. Hilli**

McDonald Lamond Canzoneri LLC

352 Turnpike Road, Suite 210

Southborough, MA  01772

(508) 485-6600, Voice (ext. 101)

(508) 485-4477 Fax

email: shilli@masslaborlawyers.com

website: www.masslaborlawyers.com


This document is intended only for the use of the person to whom it is addressed.  It may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If you are not the intended recipient, any dissemination, distribution, copying or use of this document is strictly prohibited.  If you have received this communication in error, please notify me immediately at the e-mail address above and delete all copies of this communication.


*ATTORNEY WORK PRODUCT - PRIVILEGED & CONFIDENTIAL*

The information contained in this message from Ford & Harrison LLP and any attachments are privileged and confidential and intended only for the named recipient(s). If you have received this message in error, you are prohibited from reviewing, copying, distributing or using the information. Please contact the sender immediately by return email and delete the original message and attachments. In the absence of an executed engagement letter or fee contract, no attorney client relationship is established by this communication.

25

**Exhibit 17**

--

Arbitrator Michael Loconto

(617) 331-2112

mtl@locontoadr.com

The information contained in this transmission, including any attachments, are intended for the exclusive use of the addressees and may contain confidential or privileged information.  If you are not the intended recipient, please notify Arbitrator Loconto by telephone at 617-331-2112 or by email at mtl@locontoadr.com, and please destroy all copies of this message and any attachments.

Arbitrator Loconto works exclusively as a neutral, offering arbitration, mediation, and other dispute resolution services.  While Arbitrator Loconto is an attorney and a member of the Massachusetts bar, Loconto ADR is not a law practice.  Nothing in this email is intended to offer legal advice, and no attorney-client relationship is formed through any exchange of correspondence related to this email.

Receipt by anyone other than the intended recipient is not a waiver of any arbitrator's, mediator's, attorney-client, or work product immunity, privilege, or other applicable protection.

--

Arbitrator Michael Loconto

(617) 331-2112

mtl@locontoadr.com

The information contained in this transmission, including any attachments, are intended for the exclusive use of the addressees and may contain confidential or privileged information.  If you are not

26

**Exhibit 17**

the intended recipient, please notify Arbitrator Loconto by telephone at 617-331-2112 or by email at mtl@locontoadr.com, and please destroy all copies of this message and any attachments.

Arbitrator Loconto works exclusively as a neutral, offering arbitration, mediation, and other dispute resolution services. While Arbitrator Loconto is an attorney and a member of the Massachusetts bar, Loconto ADR is not a law practice. Nothing in this email is intended to offer legal advice, and no attorney-client relationship is formed through any exchange of correspondence related to this email.

Receipt by anyone other than the intended recipient is not a waiver of any arbitrator's, mediator's, attorney-client, or work product immunity, privilege, or other applicable protection.

--

Arbitrator Michael Loconto

(617) 331-2112

mtl@locontoadr.com

The information contained in this transmission, including any attachments, are intended for the exclusive use of the addressees and may contain confidential or privileged information. If you are not the intended recipient, please notify Arbitrator Loconto by telephone at 617-331-2112 or by email at mtl@locontoadr.com, and please destroy all copies of this message and any attachments.

Arbitrator Loconto works exclusively as a neutral, offering arbitration, mediation, and other dispute resolution services. While Arbitrator Loconto is an attorney and a member of the Massachusetts bar, Loconto ADR is not a law practice. Nothing in this email is intended to offer legal advice, and no attorney-client relationship is formed through any exchange of correspondence related to this email.

Receipt by anyone other than the intended recipient is not a waiver of any arbitrator's, mediator's, attorney-client, or work product immunity, privilege, or other applicable protection.

27

**Exhibit 17**

--

Arbitrator Michael Loconto

(617) 331-2112

mtl@locontoadr.com

The information contained in this transmission, including any attachments, are intended for the exclusive use of the addressees and may contain confidential or privileged information.  If you are not the intended recipient, please notify Arbitrator Loconto by telephone at 617-331-2112 or by email at mtl@locontoadr.com, and please destroy all copies of this message and any attachments.

Arbitrator Loconto works exclusively as a neutral, offering arbitration, mediation, and other dispute resolution services.  While Arbitrator Loconto is an attorney and a member of the Massachusetts bar, Loconto ADR is not a law practice.  Nothing in this email is intended to offer legal advice, and no attorney-client relationship is formed through any exchange of correspondence related to this email.

Receipt by anyone other than the intended recipient is not a waiver of any arbitrator's, mediator's, attorney-client, or work product immunity, privilege, or other applicable protection.

--

Arbitrator Michael Loconto

(617) 331-2112

mtl@locontoadr.com

The information contained in this transmission, including any attachments, are intended for the exclusive use of the addressees and may contain confidential or privileged information.  If you are not the intended

28

**Exhibit 17**

recipient, please notify Arbitrator Loconto by telephone at 617-331-2112 or by email at mtl@locontoadr.com, and please destroy all copies of this message and any attachments.

Arbitrator Loconto works exclusively as a neutral, offering arbitration, mediation, and other dispute resolution services.  While Arbitrator Loconto is an attorney and a member of the Massachusetts bar, Loconto ADR is not a law practice.  Nothing in this email is intended to offer legal advice, and no attorney-client relationship is formed through any exchange of correspondence related to this email.

Receipt by anyone other than the intended recipient is not a waiver of any arbitrator's, mediator's, attorney-client, or work product immunity, privilege, or other applicable protection.

--
Arbitrator Michael Loconto
(617) 331-2112
mtl@locontoadr.com

The information contained in this transmission, including any attachments, are intended for the exclusive use of the addressees and may contain confidential or privileged information.  If you are not the intended recipient, please notify Arbitrator Loconto by telephone at 617-331-2112 or by email at mtl@locontoadr.com, and please destroy all copies of this message and any attachments.

Arbitrator Loconto works exclusively as a neutral, offering arbitration, mediation, and other dispute resolution services.  While Arbitrator Loconto is an attorney and a member of the Massachusetts bar, Loconto ADR is not a law practice.  Nothing in this email is intended to offer legal advice, and no attorney-client relationship is formed through any exchange of correspondence related to this email.

Receipt by anyone other than the intended recipient is not a waiver of any arbitrator's, mediator's, attorney-client, or work product immunity, privilege, or other applicable protection.

--
Arbitrator Michael Loconto
(617) 331-2112
mtl@locontoadr.com

The information contained in this transmission, including any attachments, are intended for the exclusive use of the addressees and may contain confidential or privileged information.  If you are not the intended recipient, please notify Arbitrator Loconto by telephone at 617-331-2112 or by email at mtl@locontoadr.com, and please destroy all copies of this message and any attachments.

29

**Exhibit 17**

Arbitrator Loconto works exclusively as a neutral, offering arbitration, mediation, and other dispute resolution services.  While Arbitrator Loconto is an attorney and a member of the Massachusetts bar, Loconto ADR is not a law practice.  Nothing in this email is intended to offer legal advice, and no attorney-client relationship is formed through any exchange of correspondence related to this email.

Receipt by anyone other than the intended recipient is not a waiver of any arbitrator's, mediator's, attorney-client, or work product immunity, privilege, or other applicable protection.

**Exhibit 17**

| | |
|---|---|
| **From:** | Marc A. Sugerman |
| **Sent:** | Thursday, March 6, 2025 5:02 PM |
| **To:** | Frank Binda |
| **Cc:** | AAA Patrick Kimm; Jack Canzoneri; Samantha Sinclair; Chris Borruso; Nicole R. Tordesillas; Michael Loconto |
| **Subject:** | FW: MNA/St. Vincent Hospital - LRC Administration - Case No. 01-24-0000-7400 |
| **Attachments:** | Massachusetts Nurses Association vs St. Vincent Hospital - Case 01-24-0000-7400 |

Mr. Binda,

I received the attached in connection with the above referenced matter.  I want to make clear that the Employer has not yet lodged a challenge to Mr. Loconto's continued service on the grievance he was selected to decide.  As you can see from the e-mail exchange below, the Employer is seeking the required disclosures necessary to evaluate the full extent of the conflicts present in this case.  The Employer again asks Mr. Loconto and AAA to advise whether and when they will provide the required disclosures.  If not, please provide a written explanation.

In addition, because Mr. Kimm's advocacy on behalf of the union has recently graduated from subtle to explicit (see the recent correspondence in connection with cases 01-24-0004-7039 and 01-24-0006-0727), the employer also requests disclosure of all communications between and among AAA, Mr. Loconto, and the union.  This should include but not be limited to the information requested from Mr. Loconto and Mr. Kimm on January 10, 2025 but never disclosed by either of them.

On a separate but now related conflict issue, the parties' collective bargaining agreement provides the parties will use AAA only for the selection of arbitrators.  Nevertheless, for more than a year, AAA invoiced the employer for its higher "administration" fees.  For more than a year, the employer asked AAA to explain why it continued to send these invoices over its objection.  For more than a year, AAA refused to explain.  On December 17, 2024 AAA took the position that it would administer the parties' arbitrations unless the union agreed otherwise.  The employer asked for a conference call to discuss the issue.

Both the Introduction and Rule 1 of the Labor Arbitration Rules set forth the manner in which parties can agree to have AAA rules apply to their arbitrations.  Those rules are posted on the internet for all to read and rely upon.  During our January 14, 2025 conference call, the employer asked why AAA continued to invoice the employer for its higher fees in violation of both the parties collective bargaining agreement and its own rules.  You explained that in the case of these particular parties, AAA adhered to a different and unpublished rule.  You stated AAA decided to administer the arbitrations between these two particular parties (1) because the union asked you to, and (2) because "the words American Arbitration Association appear in the contract."   You then took the position (immediately adopted by the union), that you will require each and every arbitrator to decide in each and every case whether the parties' collective bargaining agreement requires AAA administration.  According to AAA's position then, Mr. Loconto will now be forced to decide that issue in this case before the case can move forward.[1]

Given that AAA has now made itself a party to the case by forcing Mr. Loconto to decide the billing dispute between AAA and the employer, given further that AAA would presumably be entitled to its higher "administration" fees if Mr. Loconto ruled against the employer, and given also that Mr. Loconto relies upon AAA for work, both Mr. Loconto and AAA have obvious financial interests in ruling against the employer in this case. These conflicts are built-in, undeniable and unavoidable. They have also proven to be irresistible.  As all parties are aware, in case 01-23-0005-9974, Arbitrator Marra ruled against the employer on this issue explicitly because he was appointed by AAA and therefore could not "rule against AAA," just as if AAA was a party to the proceeding.

1

**Exhibit 18**

Here we are left with yet another situation in which the interests of the union, the AAA, and the arbitrator are all perfectly aligned; all will personally benefit from a ruling against the employer.  Accordingly, to the extent either Mr. Loconto or AAA refuse to recuse themselves from this case based on the obvious conflicts, the employer demands both Mr. Loconto and AAA provide full and immediate disclosure of all business dealings between and among them and the union as well as any and all additional information likely to give rise to justifiable doubt as to the impartiality or independence of either of them, including any other bias, financial, pecuniary or personal interest in the outcome of the decision AAA has now put before Mr. Loconto.[2]

In closing, the Employer asks that both Mr. Loconto and AAA affirmatively state whether they will voluntarily recuse themselves.  If not, that they explain in writing the basis for their refusal and immediately provide the required disclosures.

Thank you,

Marc

----------

[1]  The employer leaves aside for the moment the obvious – that none of the arbitrators selected, including Mr. Loconto in this case, has authority to decide that separate and distinct dispute which was never submitted to them for decision.  The employer instead focuses solely on the position taken by AAA under its newly minted, unpublished rule.  In addition, the employer again notes that it is not waiving any other objection to this proceeding.

[2]  Because you indicated in your attached email that AAA intends to decide for itself whether Mr. Loconto will be disqualified from this case, I note the following as well.  First, AAA's own position is that the arbitrator assigned to this case must first decide whether AAA rules apply.  No such decision has yet been made.  According to AAA's own position, AAA's rules do not apply and AAA is without authority to act.  Second, even if AAA was authorized to act, the conflict of interest described disqualifies it from doing so.





**Marc A. Sugerman** 📇
*Attorney at Law*

**FORDHARRISON** 🔗

300 South Orange Avenue, Suite 1300 | Orlando, FL 32801
msugerman@fordharrison.com | P: 407-418-2308

*FHPromise* | Subscribe

**From:** Jack Canzoneri <jcanzoneri@masslaborlawyers.com>
**Sent:** Friday, February 28, 2025 10:51 AM
**To:** Marc A. Sugerman <msugerman@fordharrison.com>; Patrick Kimm AAA <patrickkimm@adr.org>
**Cc:** Nicole R. Tordesillas <ntordesillas@fordharrison.com>; Samantha Sinclair <ssinclair@masslaborlawyers.com>
**Subject:** Re: MNA/St. Vincent Hospital - LRC Administration - Case No. 01-24-0000-7400

**Caution: Originated Outside FordHarrison.**

2

**Exhibit 18**

Mr. Kim:

Please forward this to Arbitrator Loconto in connection with the hospital's renewed request for recusal.

All the following 12 arbitrators are assigned to AAA cases involving MNA and St. Vincent Hospital. As the hospital knows from circulation of lists in Labor Relations Connection (LRC) cases, all of those arbitrators appointed to currently pending AAA cases are also among those LRC also includes on LRC's selection lists. Of those 12, I am aware that the hospital has claimed (without good faith, reasonable basis to my knowledge) that only two of them have a conflict that requires recusal relating to a pecuniary interest in LRC, AAA, and MNA. Those two are highlighted in yellow (Loconto in this case, and Marra in Case 01-23-0004-4053/Michele McGrath-Stafinski):

1. Boulanger, Richard
2. Buckalew, Timothy
3. Cenci, Eileen
4. Evans, Will
5. Garraty, Sarah
6. Grossman, Mark
7. Holden, Larry
8. Lobel, Ira
9. **Loconto, Michael**
10. **Marra, John**
11. O'Brien, Theodore
12. Shrage, Harvey

In both highlighted cases MNA has stated that the hospital must demonstrate a good faith basis for its claim—and more specifically a good faith, reasonable basis—to trigger such evaluation for recusal of such arbitrators. Otherwise, the hospital can pinpoint arbitrators based upon its unsupported machinations as it appears is the case thus far here.

MNA does not "plea" that AAA not do its job as Attorney Sugerman rhetorically claims; rather MNA says that AAA's job includes ensuring that there is a good faith, reasonable basis and it is the hospital that pleas that AAA just proceed at the hospital whim, arbitrarily, regardless of the hospital having no good faith basis.

Thank you.

Jack

_____
**Jack J. Canzoneri**
McDonald Lamond Canzoneri LLC
352 Turnpike Road, Suite 210
Southborough, Massachusetts 01772
(508) 485-6600 Voice (ext. 105)
(508) 485-4477 Fax
email: jcanzoneri@masslaborlawyers.com
website:  www.masslaborlawyers.com

This document is intended only for the use of the person to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, any dissemination, distribution, copying or use of this document is strictly prohibited. If you

**Exhibit 18**

have received this communication in error, please notify me immediately at the e-mail address above and delete all copies of this communication.

On Thu, Feb 27, 2025 at 6:13 PM Marc A. Sugerman <msugerman@fordharrison.com> wrote:

Thank you Jack. Mr. Kimm, we await your response on whether AAA will enforce its rules and require adherence to the Code despite the Union's plea to ignore it.

Marc A. Sugerman
msugerman@fordharrison.com

On Feb 27, 2025, at 5:29 PM, Jack Canzoneri <jcanzoneri@masslaborlawyers.com> wrote:

**Caution: Originated Outside FordHarrison.**

Mr. Kimm,

This comment is frivolous:  "As you can see from the below, the Union now insists the arbitrator should make no such disclosure.   Rather, the union insists, the arbitrator should disclose such information only if the union permits him to do so and that such permission will be withheld unless and until the employer first satisfies some burden it owes to the union to prove that such permission should be granted.  That the union considers mandatory disclosure of potentially disqualifying information to be "frivolous" is further evidence of the its continuing corruption of the parties' grievance and arbitration procedure."

The reasons are as follows:

1.  One cannot just demand disclosures without a good faith basis.  Otherwise, every single arbitrator in every case can be challenged based upon a client's conspiracy theory, without any evidence that provides a good faith basis.  Therefore, the claim that we say a mandatory disclosure is not necessary is a distortion and more hyperbole.

2.  There should be no requirement for a mandatory disclosure absent the hospital demonstrating it has a good faith basis—not a evidence-free conspiracy theory, but actual evidence—that provides a good faith basis for concern, the same way Attorney Sugerman would not file an action in federal court without ensuring he has a good faith basis under Rule 11 or be subject to sanctions.

3.  Absent the hospital presenting a good faith basis, this is nothing more than more of the hospital's dillaratory, frivolous action and AAA does not need to need to accede to such action.  There needs to be a showing of good faith.

4.  Arbitrator Loconto is on the roster of AAA and LRC.  From what I have seen from the allegations below, that's the basis for this.  That's not a good faith basis as it does not provide

4

**Exhibit 18**

a reasonable basis to believe there is a pecuniary interest. He's not been shown to be an owner of AAA or LRC.

5. As for the claim that he has a pecuniary interest with MNA, that as well is one for which there is no good faith basis shown. There is no evidence showing that Arbitrator Loconto is an employee of MNA or a consultant of MNA. Rather, at most he has been selected by St. Vincent, MNA, and many other employers and unions for cases, and that does not equate to a good faith basis.

6. The follow up explanation, with distorted interpretation of the basis for MNA's objection and then leaping and calling it corruption is not only hyperbole on steroids, but shows bad faith—not MNA's request for a good faith basis for a request that has every appearance of being a conspiracy theory drummed up by the hospital.

7. MNA maintains that no action should be taken absent the hospital showing a good faith basis.

Respectfully submitted,

**Jack J. Canzoneri**
McDonald Lamond Canzoneri LLC
352 Turnpike Road, Suite 210
Southborough, Massachusetts 01772
(508) 485-6600 Voice (ext. 105)
(508) 485-4477 Fax
email: jcanzoneri@masslaborlawyers.com
website: www.masslaborlawyers.com

This document is intended only for the use of the person to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, any dissemination, distribution, copying or use of this document is strictly prohibited. If you have received this communication in error, please notify me immediately at the e-mail address above and delete all copies of this communication.

On Thu, Feb 27, 2025 at 5:08 PM Marc A. Sugerman <msugerman@fordharrison.com> wrote:

Mr. Kimm,

AAA Rule 15 and Ethical Rules 2.B.1, 3.A.1, and 3.A.2 of the Code of Professional Responsibility for Arbitrators of Labor-Management Disputes ("Code") require **mandatory** disclosure of any circumstances likely to give rise to a justifiable doubt as to the arbitrator's impartiality, independence, bias or financial, pecuniary or personal interest in the result of this arbitration. AAA Rule 15 and Ethical Rule 2.B.5 the Code place the burden of disclosure on the arbitrator.

As you can see from the below, the Union now insists the arbitrator should make no such disclosure. Rather, the union insists, the arbitrator should disclose such information only if the union permits him to do so and that such permission will be withheld unless and until the employer first satisfies some burden it owes to the union to prove that such permission should be granted. That the union considers mandatory disclosure of potentially disqualifying information to be "frivolous" is further evidence of the its continuing corruption of the parties' grievance and arbitration procedure.

**Exhibit 18**

Please advise whether AAA will enforce its Rules and require adherence to the Code despite the Union's plea to ignore them.  The employer notes again that it does not waive any objections previously raised.

Thank you,

Marc



## Marc A. Sugerman

*Attorney at Law*

 **FORDHARRISON** in

300 South Orange Avenue, Suite 1300 | Orlando, FL 32801
msugerman@fordharrison.com | P: 407-418-2308

*FHPromise* | **Subscribe**

---

**From:** Jack Canzoneri <jcanzoneri@masslaborlawyers.com>
**Sent:** Thursday, February 27, 2025 1:31 PM
**To:** Marc A. Sugerman <msugerman@fordharrison.com>
**Cc:** AAA Patrick Kimm <PatrickKimm@adr.org>; Nicole R. Tordesillas <ntordesillas@fordharrison.com>; Samantha Sinclair <ssinclair@masslaborlawyers.com>
**Subject:** Re: FW: MNA/St. Vincent Hospital - LRC Administration - Case No. 01-24-0000-7400

**Exhibit 18**

**Caution: Originated Outside FordHarrison.**

**Mr. Kimm,**

Please forward this to Arbitrator Loconto.

MNA objects to the hospital's request for the arbitrator to respond to questions posed by the hospital in the email below absent the hospital showing that this is not a frivolous request.  My information request below outlines the information that must be provided to evaluate whether the claim (or claim of a concern) that Arbitrator Loconto has a pecuniary interest is frivolous.  Attorney Sugerman below states that the hospital has information in its possession that shows a pecuniary interest that poses a conflict and the request below seeks that information.  Attorney Sugerman also states that Arbitrator Loconto "did not deny his obvious financial interest in Labor Relations Connection, Inc."  This comment appears to be hyperbole because it does not appear that the arbitrator has a pecuniary interest in LRC, AAA, or MNA, and the information request goes to that claim as well.

**Mr. Sugerman,**

On behalf of MNA I am making the following information request.  Please provide me this information by Friday, Feb 28, 2025—with copy to AAA.  The term "document(s)" and "concerning" and other terms used in this information request below conform to the definition of those terms in the Local Rules of USDC for Massachusetts.  Click here for those rules and see Rule 26.5.  The following information request  relates to the hospital claim that Arbitrator Loconto has a pecuniary interest in LRC, AAA, and MNA, and the hospital's request that the arbitrator produce information related to that (apparently baseless) allegation.  With regard to this, please provide:

1.  All documents concerning the basis for making those allegations and the request for information from the arbitrator, including but not limited to St. Vincent's alleged belief that the arbitrator has such pecuniary interest in LRC, AAA, or MNA.

2.  If there are bases for the hospital's request for information from the arbitrator not set forth in documents that you provide in response to ¶1, provide a detailed description of all evidence relating to the bases for the belief, including, date, witness and other sources, and specifics for each such basis.

7

**Exhibit 18**

3.  With respect to the further motion that you have advised you plan to make regarding recusal of Arbitrator Loconto, please clarify whether you mean a motion to the arbitrator or in federal court and why you have not filed such a motion prior to the most recent communications here and on Feb 13 where this case has been pending for months.


Thank you.


_____

**Jack J. Canzoneri**

McDonald Lamond Canzoneri LLC
352 Turnpike Road, Suite 210
Southborough, Massachusetts 01772
(508) 485-6600 Voice (ext. 105)
(508) 485-4477 Fax
email: jcanzoneri@masslaborlawyers.com
website:  www.masslaborlawyers.com

This document is intended only for the use of the person to whom it is addressed.  It may contain information that is privileged, confidential and exempt from disclosure under applicable law.    If you are not the intended recipient, any dissemination, distribution, copying or use of this document is strictly prohibited.  If you have received this communication in error, please notify me immediately at the e-mail address above and delete all copies of this communication.


On Thu, Feb 27, 2025 at 1:07 PM Marc A. Sugerman <msugerman@fordharrison.com> wrote:

> Mr. Kimm,
>
>
> As you can see from the below, Mr. Loconto has refused to voluntarily recuse himself from this case. In so doing, he did not deny his obvious financial interest in Labor Relations Connection, Inc. and therefore in the result of this arbitration. He simply ignored it.
>
>
> Mr. Loconto did, however, acknowledge that he failed to disclose that financial interest to AAA. This is in plain violation of AAA Rule 15 and Ethical Rules 2.B.1, 3.A.1, and 3.A.2 of the Code of Professional

**Exhibit 18**

Responsibility for Arbitrators of Labor-Management Disputes ("Code"). Mr. Loconto also shifted the burden of disclosure from himself to the employer. This is in plain violation AAA Rule 15 and Ethical Rule 2.B.5 the Code.

Based on other information now in its possession, the employer has other serious bias and ethical concerns regarding Mr. Loconto as well. Accordingly, the employer will be moving to disqualify Mr. Loconto from this case. Prior to filing its motion, and so that the parties may be fully informed about the qualifications of the arbitrator in this matter, the employer asks that Mr. Loconto be required to make full and immediate disclosure of any and all other previously undisclosed information likely to give rise to a justifiable doubt as to his impartiality, independence, bias or financial or personal interest in the result of this arbitration. This disclosure should include, **at a minimum**:

1. All personal, financial or pecuniary interests in connection with his dealings with the Massachusetts Nurses Association, Labor Relations Connection, Inc. and the American Arbitration Association. This should include all such interests and dealings from January 1, 2022 to the present.

2. All communications, whether oral or in writing, between Mr. Loconto and representatives of LRC in connection with any cases between these parties, including but not limited to this case and case LRC #307-23. The disclosure should include but not be limited to all communications wherein Mr. Loconto and Ms. Amanda Wells or any other representative of LRC specifically referenced FordHarrison attorneys or their Southern heritage, the "sensitive relationship" between the Hospital and the MNA, and any other derogatory, biased, or unethical subject matter.

3. All communications, whether oral or in writing, between Mr. Loconto and LRC concerning LRC's "cherry picking" of Mr. Loconto for cases involving these parties.[1]

Thank you for your immediate attention to this serious matter.

Marc Sugerman

--------------

[1] Please be advised that the Employer in no way waives its objection to the position taken by both AAA and the Union, that, contrary to the plain terms of the parties' CBA and the AAA Rules, AAA will administer and apply its rules in every arbitration between the parties.

**Exhibit 18**



## **Marc A. Sugerman** 📇



*Attorney at Law*

**FORDHARRISON** 🔗

300 South Orange Avenue, Suite 1300 | Orlando, FL 32801
msugerman@fordharrison.com | P: 407-418-2308

*FHPromise* | **Subscribe**

**From:** Michael Loconto <mtl@locontoadr.com>
**Sent:** Wednesday, February 19, 2025 7:00 AM
**To:** AAA Patrick Kimm <PatrickKimm@adr.org>
**Cc:** Jack Canzoneri <jcanzoneri@masslaborlawyers.com>; Samantha Sinclair
<ssinclair@masslaborlawyers.com>; Marc A. Sugerman <msugerman@fordharrison.com>; Nicole R.
Tordesillas <ntordesillas@fordharrison.com>
**Subject:** Re: MNA/St. Vincent Hospital - LRC Administration - Case No. 01-24-0000-7400

**Caution: Originated Outside FordHarrison.**

To the parties:

**Exhibit 18**

Good morning. Thank you for sharing your views on this issue. In brief, the request for recusal is denied.

The Employer based its request on an assertion that notice of my LRC roster membership was not disclosed. However, it is clear that the Employer had had actual notice of my membership on the LRC rosters since at least 2023. On rosters where I hold membership (with the exception of the Pennsylvania Labor Relations Board, where interest arbitration appointment lists are a matter of public record), I do not know when or how many times my name is included on lists that are shared with individual parties for striking and ranking in cases subject to appointment. With respect to these parties, however, my records reflect that I was selected to hear a matter administered by the LRC in 2023. Specifically, the matter of "LRC #607-23: Colleen Romer and Dominique Muldoon et al. - flex-down/floating." I received notice of my appointment on May 19, 2023. I received notice that the Union withdrew the matter on March 7, 2024.

In summary, this matter will proceed as scheduled.

Regards,

Michael Loconto

Arbitrator

Michael Loconto
Labor Arbitrator
(617) 331-2112
mtl@locontoadr.com
https://locontoadr.com

On Tue, Feb 18, 2025, 7:44 PM AAA Patrick Kimm <PatrickKimm@adr.org> wrote:

Received and forwarded.

**Exhibit 18**



**AAA Patrick Kimm**
**Case Administrator**

American Arbitration Association
T: 617 695 6014 F: 617 451 0763 E: PatrickKimm@adr.org
200 State Street, 7th Floor, Boston, MA 02109
adr.org | icdr.org | aaaicdrfoundation.org



The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify reply email and destroy all copies of the transmittal. Thank you.

**From:** Jack Canzoneri <jcanzoneri@masslaborlawyers.com>
**Sent:** Tuesday, February 18, 2025 1:21 PM
**To:** AAA Patrick Kimm <PatrickKimm@adr.org>
**Cc:** Samantha Sinclair <ssinclair@masslaborlawyers.com>; Marc A. Sugerman <msugerman@fordharrison.com>; Michael Loconto <mtl@locontoadr.com>; Nicole R. Tordesillas <ntordesillas@fordharrison.com>
**Subject:** Re: MNA/St. Vincent Hospital - LRC Administration - Case No. 01-24-0000-7400

**\*\*\* External E-Mail – Use Caution \*\*\***

Mr. Kimm,

Please forward this to Arbitrator Loconto as MNA's response to the hospital's reply to MNA's opposition.  The hospital reply is  empty rhetoric, unpersuasive, and provides no basis for the arbitrator here to recuse himself.

1. There is nothing "conspicuously" missing from MNA's response regarding pecuniary interest.  The hospital did not develop that point in its initial email and conspicuously does so now for the first time realizing that its first explanation was inadequate.  MNA responds to that unpersuasive point below.

2.  With respect to the arbitrator appearing on LRC lists, there is no allegation by the hospital that the arbitrator's income will be impacted based upon the outcome of this arbitration.  The hospital has not alleged that.  Rather the hospital alleges the irrelevant point that the arbitrator is paid for his services as an arbitrator—and that holds true for both AAA, LRC, and any other cases in which the arbitrator is appointed.  Ultimately the

12

**Exhibit 18**

arbitrator will have to evaluate for himself under ethical standards whether he has a pecuniary interest in this matter, but nothing presented by the hospital shows a basis.

3.  What is conspicuous, is that the hospital now admits for the first time that it is aware that the arbitrator has appeared on many panels of the LRC -- and in so doing, admits as it must that it wwas on notice to this information for weeks if not months -- yet failed to object until now.  Where the hospital has so belatedly raised this issue for the first time on the day its production was due (Friday 2/14/25), one more before the arbitration, exposes that its motion is nothing more than a tactic to cause delay, and this is a factor weighing against its motion for recusal where recusal is not required.

4.  The hospital's claim about Jan Teehan's testimony is an interpretation that is in bad faith and false.  Jan Teehan testified to the process by which she selects arbitrators and her testimony showed neutrality in that process, not "cherry picking" or other action intended to bias the arbitrator.  That's a red herring and has zero bearing on the issue of recusal.

5.  The hospital's claim about a ruling of an arbitrator in another, undisclosed AAA case is more baseless rhetoric derived from the thin reed of its bad faith, baseless, conspiracy theories.

Respectfully submitted,

**Jack J. Canzoneri**

McDonald Lamond Canzoneri LLC
352 Turnpike Road, Suite 210
Southborough, Massachusetts 01772
(508) 485-6600 Voice (ext. 105)
(508) 485-4477 Fax
email: jcanzoneri@masslaborlawyers.com
website:  www.masslaborlawyers.com

This document is intended only for the use of the person to whom it is addressed.  It may contain information that is privileged, confidential and exempt from disclosure under applicable law.   If you are not the intended recipient, any dissemination, distribution, copying or use of this document is strictly prohibited.  If you have received this communication in error, please notify me immediately at the e-mail address above and delete all copies of this communication.

**Exhibit 18**

On Tue, Feb 18, 2025 at 12:46 PM Marc A. Sugerman <msugerman@fordharrison.com> wrote:

All,

The Hospital offers the following brief response to the Union's argument below, which is not all encompassing of the Hospital's position.

The Union conspicuously ignores that part of Part 2(B)(1) of the Code that requires disclosure of "any pertinent pecuniary interest." Obviously, Arbitrator Loconto has a pecuniary interest related to his business relationship with the Labor Relations Connection, and the conflict is manifest. In fact, taking the Union's assertion as true, during a single nine month period from September 2022 through May 2023, Arbitrator Loconto appeared on 14 panels offered to these same parties alone. The pecuniary interest in LRC is clear. It is also troubling because Jan Teehan of LRC just recently testified under oath, among other things, that she "cherry picks" the arbitrators she offers these parties, a fact she never previously disclosed to the Hospital. In light of Ms. Teehan's testimony, it is concerning that Arbitrator Loconto was included on an arbitration panel 14 times for arbitrations between the same parties.

The same conflict applies with respect to the implications of this arbitration on the parties' use of AAA. Ruling in favor of the Hospital (and therefore ruling the Hospital need not use either agency for the purposes of "administration"), presents an obvious conflict given the pecuniary interest in receiving work from those agencies.  This conflict came to light in another arbitration between these parties when the arbitrator was asked to rule on whether the Hospital was required to use AAA for case administration. That arbitrator ruled that the Hospital was required to use AAA not based on any contract language but because he felt he could not "rule against AAA." The conflict has therefore already proven to be very real.

We ask again that Arbitrator Loconto recuse himself from this case.

Thank you,

Marc

14

**Exhibit 18**



## Marc A. Sugerman

*Attorney at Law*



FORDHARRISON

[300 South Orange Avenue, Suite 1300 | Orlando, FL 32801](#)
[msugerman@fordharrison.com](#) | P: 407-418-2308

*FHPromise* | Subscribe

---

**From:** Samantha Sinclair <[ssinclair@masslaborlawyers.com](#)>
**Sent:** Friday, February 14, 2025 5:35 PM
**To:** AAA Patrick Kimm <[PatrickKimm@adr.org](#)>
**Cc:** Marc A. Sugerman <[msugerman@fordharrison.com](#)>; Jack Canzoneri <[jcanzoneri@masslaborlawyers.com](#)>; Nicole R. Tordesillas <[ntordesillas@fordharrison.com](#)>
**Subject:** Re: MNA/St. Vincent Hospital - LRC Administration - Case No. 01-24-0000-7400

**Caution: Originated Outside FordHarrison.**

Mr. Kimm:

Please transmit this to Arbitrator Loconto as MNA's response to St. Vincent's motion for Arbitrator Loconto to recuse himself from this matter.

15

**Exhibit 18**

MNA opposes the motion for recusal and provides the following points in support of this:

1.  Alas St. Vincent Hospital by its submission admits—as it must—the controlling force of the Code of Professional Responsibility for Arbitrator of Labor-Management Disputes (Code)—the same rules that also require that the arbitrator proceed in accordance with the labor agency rules (which require all communications be sent to the agency, not directly to the arbitrator).  Click here for the Code.

2.  With respect to Part 2(B)(¶1), cited by St. Vincent, it is not applicable and does not require recusal.  The rule reads:  "Before accepting an appointment, an arbitrator must disclose directly or through the administrative agency involved, any current or past managerial, representational, or consultative relationship with any company or union involved in a proceeding in which the arbitrator is being considered for appointment or has been tentatively designated to serve.  Disclosure must also be made of any pertinent pecuniary interest."  (emphasis added).

3. With respect to underlined language of the Code at Part 2(B)(¶1),  St. Vincent has not established that Arbitrator Loconto has functioned in any of the capacities listed on behalf of LRC.  In particular, St. Vincent has not established that he has functioned in a "managerial" capacity, nor in a "representational" capacity, nor in a "consulting relationship."  Rather, at most St. Vincent has indicated that Arbitrator Loconto is among the roster of arbitrators that are offered by the LRC for appointment as arbitrator.  This is not tantamount to Arbitrator Loconto being a manager, a representative, or consultant of LRC.

4.  Based upon the foregoing no disclosure was required under Code Part 2(B)(¶1).  Nor does the Code in any event require recusal.  There is no showing of any reason why Arbitrator Loconto has a conflict or even the appearance of a conflict.

5.  Further, St. Vincent has had notice of Arbitrator Loconto as among the arbitrators offered by LRC since at least August 10, 2022.  See attached LRC Letter dated August 10, 2022, and list of arbitrators which includes Arbitrator Loconto (highlighted in yellow).  There were further lists circulated thereafter where Arbitrator Loconto was referenced in LRC arbitrations involving St. Vincent Hospital including:  LRC #566-22 (9/2/22); LRC #569-22 (9/8/22); LRC #637-22 (9/26/22); LRC #728-22 (11/7/22); LRC #736-22 (11/7/22); LRC #814-22 (12/6/22); LRC #850-22 (12/22/22); LRC #852-22 (12/22/22); LRC #859-22 (12/28/22); LRC #863-22 (12/28/22); LRC #864-22 (12/28/22); LRC #293-23 (5/5/23); LRC #305-23 (5/10/23); LRC #307-23 (5/10/23).

**Exhibit 18**

6.  Where St. Vincent was aware of this information, yet delayed until the month before the arbitration to raise this issue, this should be considered in evaluating the request.  The request is sent on the same day that St. Vincent is due to provide documents in response to a subpoena.  The request is sent after extensive volume of activity in this case relating to subpoena and motions.  St. Vincent's request for recusal would impose an egregious, undue delay on the proceedings.  If granted, a new arbitrator would have to be selected, and further delay would ensue from that point.

7.  Finally, notwithstanding all of the foregoing, MNA recognizes that the Arbitrator must independently evaluate this issue and make a professional, ethical decision.  Given the importance of the issue at this stage of the case, MNA requests that the Arbitrator recuse **only if he** contacts the National Academy of Arbitrators Committee on Professional Responsibility, and the Committee advises that recusal is required.

Respectfully submitted,

On Fri, Feb 14, 2025 at 2:24 PM AAA Patrick Kimm <PatrickKimm@adr.org> wrote:

Attorney Canzoneri/Attorney Sinclair,

Please provide your response to Mr. Sugarman's claim below.  A response by February 20, 202 would be greatly appreciated.



**AAA Patrick Kimm**
**Case Administrator**

American Arbitration Association
T: 617 695 6014 F: 617 451 0763 E: PatrickKimm@adr.org
200 State Street, 7th Floor, Boston, MA 02109
adr.org | icdr.org | aaaicdrfoundation.org



The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any rev distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notif reply email and destroy all copies of the transmittal. Thank you.

**From:** Marc A. Sugerman <msugerman@fordharrison.com>
**Sent:** Thursday, February 13, 2025 12:22 PM
**To:** Michael Loconto <mtl@locontoadr.com>; AAA Patrick Kimm <PatrickKimm@adr.org>

**Exhibit 18**

**Cc:** Jack Canzoneri <jcanzoneri@masslaborlawyers.com>; Samantha Sinclair <ssinclair@masslaborlawyers.com>; Nicole R. Tordesillas <ntordesillas@fordharrison.com>
**Subject:** MNA/St. Vincent Hospital - LRC Administration - Case No. 01-24-0000-7400

**\*\*\* External E-Mail – Use Caution \*\*\***

Good afternoon,

The Hospital has a concern regarding the appointment of Arbitrator Loconto in this matter, specifically related to his required disclosures under the Code of Professional Responsibility for Arbitrators of Labor-Management Disputes ("CPRA-LMD").

Under Rule B.1. of the CPRA-LMD, an arbitrator is required to "disclose directly through the administrative agency involved, any current or past managerial, representational, or consultive relationship with any company or union involved in a proceedings in which the arbitrator is being considered for appointment or has been tentatively designated to serve. Disclosure must also be made of any pertinent pecuniary interest."

The issue in this proceeding is framed by the Union as follows: "The Employer has improperly instructed the Labor Relations Connection to cease any purported administration of, or any other participation of any kind, in the Employer's currently pending matters." The Labor Relations Connection provides case administration for labor arbitrations. Apparently, Mr. Loconto is on an arbitrator roster with the LRC. However, upon review of Mr. Loconto's AAA biography, the LRC is not listed among the federal, state, and local rosters on which he serves.

As the burden of disclosure rests on the arbitrator, the Hospital is requesting that the arbitrator recuse himself from these proceedings.

Thank you,

Marc

**Exhibit 18**



## **Marc A. Sugerman** 🪪

*Attorney at Law*



**FORDHARRISON** in

[300 South Orange Avenue, Suite 1300](#) | [Orlando, FL 32801](#)
[msugerman@fordharrison.com](#) | P: 407-418-2308

*FHPromise* | **Subscribe**

*ATTORNEY WORK PRODUCT - PRIVILEGED & CONFIDENTIAL*

The information contained in this message from Ford & Harrison LLP and any attachments are privileged and confidential and intended only for the named recipient(s). If you have received this message in error, you are prohibited from reviewing, copying, distributing or using the information. Please contact the sender immediately by return email and delete the original message and attachments. In the absence of an executed engagement letter or fee contract, no attorney client relationship is established by this communication.

--

_____

**Samantha E. Sinclair**

McDonald Lamond Canzoneri LLC
[352 Turnpike Road, Suite 210](#)
[Southborough, Massachusetts 01772](#)

**Exhibit 18**

(508) 485-6600 Voice (ext. 106)
(508) 485-4477 Fax
email: ssinclair@masslaborlawyers.com
website:  www.masslaborlawyers.com

This document is intended only for the use of the person to whom it is addressed.  It may contain information that is privileged, confidential and exempt from disclosure under applicable law.   If you are not the intended recipient, any dissemination, distribution, copying or use of this document is strictly prohibited.  If you have received this communication in error, please notify me immediately at the e-mail address above and delete all copies of this communication.

---

[1] Please be advised that the Employer in no way waives its objection to the position taken by both AAA and the Union, that, contrary to the plain terms of the parties' CBA and the AAA Rules, AAA will administer and apply its rules in every arbitration between the parties.

20

**Exhibit 18**

| From: | AAA Patrick Kimm <PatrickKimm@adr.org> |
|---|---|
| Sent: | Friday, March 28, 2025 4:31 PM |
| To: | Samantha Sinclair; Marc A. Sugerman; Jack Canzoneri; Jason Powalisz; Lenow@masslaborlaw.com; Michael J. Spagnola; Marc A. Sugerman |
| Cc: | Frank Binda |
| Subject: | FW: ORDER ON SUBPOENAS: MNA and St. Vincent Hospital, AAA No. 01-24-0000-7400 |

**Caution: Originated Outside FordHarrison.**

Hello All,

Please see below from Arbitrator Loconto:

**ORDER**

On March 21, 2025, Employer's representative Michael Spagnola, Esq. requested that the Arbitrator sign and issue ten subpoenas. This is the second round of Employer subpoenas in these proceedings. The subpoenas were requested for the purpose of obtaining information from the Union; the American Arbitration Association (the "AAA") and the Labor Relations Connection (the "LRC"), which are non-parties in these proceedings; and the Union's representatives, the law firm of McDonald Lamond Canzoneri LLC ("MLC"). On March 22, 2025, LRC counsel Howard Lenow, Esq. filed an opposition to the Employer's subpoenas.[1] On March 25, 2025, Union counsel Jason Powalisz, Esq., filed a timely motion to quash the Employer's subpoenas.

My Order is as follows:

**1.      AAA Subpoena Requests are Denied**

The material requested from the AAA, and testimony from representatives of the AAA, is irrelevant to the present dispute. As I made clear in my December 23, 2024 ruling on the Employer's previous subpoena requests, Rule 27 of the AAA Labor Rules governs evidence in a related labor arbitration proceeding. Relevance is the standard of review. The arbitrator retains the discretion to determine whether evidence is material and necessary to determine the disposition of the dispute. The Rule continues:

> The arbitrator shall determine the admissibility, the relevance, and materiality of the evidence offered and may exclude such evidence deemed by the arbitrator to be cumulative or irrelevant.

This matter is limited to case administration performed by the LRC. The AAA is neither a subject of nor party to these proceedings. There is nothing to be gained by subjecting AAA employees to testimony in these proceedings or by subjecting to the AAA to the burdensome production of irrelevant materials.

**2.      The Canzoneri Subpoena is Denied**

As the parties are well aware, the Employer failed to appear for the first day of hearing in this matter, March 17, 2025. The Union appeared at the March 17 hearing, presented its case in chief, and rested its case. Accordingly, the Employer is not entitled to call Jack Canzoneri as a witness in this matter. Canzoneri was the Union's sole witness. Had the Employer appeared at the hearing, it would have had ample opportunity to cross-examine Canzoneri. The Employer, however, chose to decline attendance at the first day of

1

**Exhibit 19**

hearing.  This is a matter of fundamental fairness, and the Employer's own behavior has dictated this outcome.

### 3. Other Subpoena Requests are Subject to an Employer Offer of Proof and the Presentation of Its Case

Of course, there is no rule that limits a party from calling adverse parties to testify as witnesses in support of its case.  In addition to the Employer's failure to appear at the March 17 hearing, however, the Employer's previous omissions have resulted in further restrictions on the Employer's defense.  Specifically, the Employer was warned on February 25 and March 15, 2025 that its failure to respond to the previous subpoenas issued on the Union's behalf[2] would permit the Union to request that the Arbitrator draw an adverse inference on the assumption that the material that has not been produced would be damaging to the Employer's position(s) in this matter.  The Union made such a request at the March 17 hearing, which was granted.

Despite the Employer's failure to appear at that hearing, I allowed the Employer to make a good cause showing that the second scheduled date in this matter should proceed.  As I have previously indicated, the Employer is not entitled to a second day of hearing.  The Employer's request to proceed was devoid of any showing of cause that the April 2 hearing should proceed as scheduled.  I determined that the hearing should proceed, over the Union's objection, because my decision on the merits of this grievance will benefit from the Employer's presentation of its defense.  Allowing the Employer to proceed with its defense, however, does not relieve it from the restrictions of my previous rulings.

Based on the adverse inference that has been drawn, I am unwilling at this time to order that the MLC staff, MNA representatives or LRC representatives requested appear on April 2 and provide testimony.  This will not affect the Employer's ability to put on its case.  For example, it would be of particular relevance to the merits of this dispute for the Employer to call its own employee(s) to testify about the subject matter contained in the September 20, 2023 electronic mail message that generated the grievance in this matter.  Testimony of this nature would be probative of the Employer's position on this matter.

The parties will take note that arbitrators may direct a party to focus its case on certain issues.  Rule 25 governs the Order of Proceedings:

> The arbitrator, exercising his or her discretion, shall conduct the proceedings with a view to *expediting the resolution of the dispute* and may direct the order of proof, bifurcate proceedings and *direct the parties to focus their presentations on issues the decision on which could dispose of all or part of the case*.

(*emphasis added*).  I am requiring the Employer to make an offer of proof about what will be shown or proven by its case, and the related relevance of the anticipated testimony that has been requested from the aforementioned individuals.  Further instructions are below

### 4. LRC Subpoena Duces Tecum

Finally, I will reiterate that the Employer's actions in this matter provide sufficient reason to deny the Employer's request for LRC records.  An adverse inference has been drawn, as previously discussed.  In addition, and as the Union and LRC argue in opposition to this subpoena, through its own inaction the Employer has waived its right to the material it has requested from the LRC.  I am inclined to agree.

The Employer initially made a request for LRC records on July 25, 2024, concurrent with the request for Union records that became the subject of my December 23, 2024 ruling.  The parties held a telephone conference about the subpoena for Union records, a briefing schedule was established on the key issues in that request, and oral argument was held prior to my issuance of a ruling.  My ruling followed, and the Union then requested similar records from the Employer in its own subpoena.  The parties continued to address the

**Exhibit 19**

Union's subpoena through correspondence and a telephone conference prior to my January 24, 2025 ruling, and still more correspondence followed on or around the February 14, 2025 deadline when the Employer failed to provide materials responsive to the Union's subpoena.  An additional round of correspondence followed in the days leading up to the first day of hearing, which took place on March 17, 2025.  The Employer asserted that it has had correspondence with the LRC's counsel about this subpoena, on or around October 18, 2024.  However, the Employer's March 21, 2025 request represents the first time that it has requested consideration of the LRC records by the Arbitrator over a span of eight months, despite the multiplicity of aforementioned activity on related matters.[3]  On this basis alone, it would be reasonable to conclude the Employer has waived its right to request that a non-party engage in a voluminous document production.

Additionally, and as noted in my March 15, 2025 correspondence, the Employer's sudden renewal of its request at this late date indicates the marginal relevance of the information it seeks.  As also indicated by the LRC's and the Union's opposition memoranda, the LRC has previously responded to the Employer in another forum and provided information that is cumulative or duplicative of the material requested here.  As the Union also noted, the information requested here - absent a proffer from the Employer - appears to be cumulative or duplicative of the information that the Union provided in response to my December 23, 2024 ruling on the Employer's previous subpoena.  As a practical matter, it is also clear to me that the Employer is possession of at least some of the material that has been requested, given the Employer's prior representations in its request to seek my recusal from this matter.

As such, the Employer is required to provide an make an offer of proof about what will be shown or proven by its case, and the related relevance of the materials requested from the LRC.  Further instructions are below.

-----

**Conclusion.**  The Employer shall file the offers of proof that are required by this Order with the AAA case administrator, Mr. Kimm, no later than 5 p.m. ET on Monday, March 31, 2025.  For the avoidance of doubt, the Employer shall make an offer of proof with respect to the testimony for each of the individuals noted in section 3, above, and for each of the categories of materials sought from the LRC in section 4, above.  This is not a request for the Employer to litigate its entire case through its forthcoming submission; a few sentences or paragraphs should be sufficient for each of the aforementioned items.

I will leave my final ruling on these requests open until the conclusion of the Employer's case on April 2, 2025.  Should the Employer's presentation of its case on April 2 make a sufficient showing of support for or otherwise prove the assertions made in its required offers of proof during the presentation of its case on April 2, 2025, I will consider whether any of the testimony or materials requested might be further probative of the truth in this matter and take appropriate action at that time.

This order is entered as of March 28, 2025.

---

[1] The LRC is not a party to these proceedings and Lenow's filing was unsolicited.  The filing indicated that the LRC's counsel was informed of the Employer's subpoena requests by MNA counsel.

[2] The Arbitrator issued signed subpoenas on January 6, 2025, and confirmed the subpoenas on January 24, 2025.  The Employer had a deadline of February 14, 2025 to provide the requested material to the Union.  The Employer has not done so.  By contrast, the Union was ordered on December 23, 2025 to provide information of a similar nature to the Employer, with the same deadline.  The Union made a timely and fulsome response.

[3] Lenow's email and opposition dated March 22, 2025 is the first correspondence that has the Arbitrator has received from representatives of the LRC in these proceedings.

---END MESSAGE TO THE PARTIES---

**Exhibit 19**

--



Michael T. Loconto, Esq.
Labor Arbitrator
(617) 331-2112
mtl@locontoadr.com
https://locontoadr.com
*Based in Boston, Nationwide Practice*

The information contained in this transmission, including any attachments, are intended for the exclusive use of the addressees and may contain confidential or privileged information.  If you are not the intended recipient, please notify Arbitrator Loconto by telephone at 617-331-2112 or by email at mtl@locontoadr.com, and please destroy all copies of this message and any attachments.

Arbitrator Loconto works exclusively as a neutral, offering arbitration, mediation, and other dispute resolution services.  While Arbitrator Loconto is an attorney and a member of the Massachusetts bar, Loconto ADR is not a law practice.  Nothing in this email is intended to offer legal advice, and no attorney-client relationship is formed through any exchange of correspondence related to this email.

Receipt by anyone other than the intended recipient is not a waiver of any arbitrator's, mediator's, attorney-client, or work product immunity, privilege, or other applicable protection.

 **AAA Patrick Kimm**
**Case Administrator**

American Arbitration Association
T: 617 695 6014 F: 617 451 0763 E: PatrickKimm@adr.org
200 State Street, 7th Floor, Boston, MA 02109
adr.org | icdr.org | aaaicdrfoundation.org



The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, discl distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immedia reply email and destroy all copies of the transmittal. Thank you.

**Exhibit 19**

| | |
|---|---|
| **From:** | Michael Loconto <mtl@locontoadr.com> |
| **Sent:** | Wednesday, February 19, 2025 7:00 AM |
| **To:** | AAA Patrick Kimm |
| **Cc:** | Jack Canzoneri; Samantha Sinclair; Marc A. Sugerman; Nicole R. Tordesillas |
| **Subject:** | Re: MNA/St. Vincent Hospital - LRC Administration - Case No. 01-24-0000-7400 |
| **Attachments:** | image392638.png; image476903.png; image001.png; image002.png |

**Caution: Originated Outside FordHarrison.**

To the parties:

Good morning. Thank you for sharing your views on this issue. In brief, the request for recusal is denied.

The Employer based its request on an assertion that notice of my LRC roster membership was not disclosed. However, it is clear that the Employer had had actual notice of my membership on the LRC rosters since at least 2023. On rosters where I hold membership (with the exception of the Pennsylvania Labor Relations Board, where interest arbitration appointment lists are a matter of public record), I do not know when or how many times my name is included on lists that are shared with individual parties for striking and ranking in cases subject to appointment. With respect to these parties, however, my records reflect that I was selected to hear a matter administered by the LRC in 2023. Specifically, the matter of "LRC #607-23: Colleen Romer and Dominique Muldoon et al. - flex-down/floating." I received notice of my appointment on May 19, 2023. I received notice that the Union withdrew the matter on March 7, 2024.

In summary, this matter will proceed as scheduled.

Regards,

Michael Loconto
Arbitrator

Michael Loconto
Labor Arbitrator
(617) 331-2112
mtl@locontoadr.com
https://locontoadr.com

On Tue, Feb 18, 2025, 7:44 PM AAA Patrick Kimm <PatrickKimm@adr.org> wrote:

Received and forwarded.

1

**Exhibit 20**

 **AAA Patrick Kimm**
**Case Administrator**

American Arbitration Association
T: 617 695 6014 F: 617 451 0763 E: PatrickKimm@adr.org
200 State Street, 7th Floor, Boston, MA 02109
adr.org | icdr.org | aaaicdrfoundation.org



The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

**From:** Jack Canzoneri <jcanzoneri@masslaborlawyers.com>
**Sent:** Tuesday, February 18, 2025 1:21 PM
**To:** AAA Patrick Kimm <PatrickKimm@adr.org>
**Cc:** Samantha Sinclair <ssinclair@masslaborlawyers.com>; Marc A. Sugerman <msugerman@fordharrison.com>; Michael Loconto <mtl@locontoadr.com>; Nicole R. Tordesillas <ntordesillas@fordharrison.com>
**Subject:** Re: MNA/St. Vincent Hospital - LRC Administration - Case No. 01-24-0000-7400

**\*\*\* External E-Mail – Use Caution \*\*\***

Mr. Kimm,

Please forward this to Arbitrator Loconto as MNA's response to the hospital's reply to MNA's opposition.  The hospital reply is  empty rhetoric, unpersuasive, and provides no basis for the arbitrator here to recuse himself.

1. There is nothing "conspicuously" missing from MNA's response regarding pecuniary interest.  The hospital did not develop that point in its initial email and conspicuously does so now for the first time realizing that its first explanation was inadequate.  MNA responds to that unpersuasive point below.

2.  With respect to the arbitrator appearing on LRC lists, there is no allegation by the hospital that the arbitrator's income will be impacted based upon the outcome of this arbitration.  The hospital has not alleged that.  Rather the hospital alleges the irrelevant point that the arbitrator is paid for his services as an arbitrator—and that holds true for both AAA, LRC, and any other cases in which the arbitrator is appointed.  Ultimately the arbitrator will have to evaluate for himself under ethical standards whether he has a pecuniary interest in this matter, but nothing presented by the hospital shows a basis.

2

**Exhibit 20**

3.  What is conspicuous, is that the hospital now admits for the first time that it is aware that the arbitrator has appeared on many panels of the LRC -- and in so doing, admits as it must that it wwas on notice to this information for weeks if not months -- yet failed to object until now.  Where the hospital has so belatedly raised this issue for the first time on the day its production was due (Friday 2/14/25), one more before the arbitration, exposes that its motion is nothing more than a tactic to cause delay, and this is a factor weighing against its motion for recusal where recusal is not required.

4.  The hospital's claim about Jan Teehan's testimony is an interpretation that is in bad faith and false.  Jan Teehan testified to the process by which she selects arbitrators and her testimony showed neutrality in that process, not "cherry picking" or other action intended to bias the arbitrator.  That's a red herring and has zero bearing on the issue of recusal.

5.  The hospital's claim about a ruling of an arbitrator in another, undisclosed AAA case is more baseless rhetoric derived from the thin reed of its bad faith, baseless, conspiracy theories.

Respectfully submitted,

**Jack J. Canzoneri**

McDonald Lamond Canzoneri LLC
352 Turnpike Road, Suite 210
Southborough, Massachusetts 01772
(508) 485-6600 Voice (ext. 105)
(508) 485-4477 Fax
email: jcanzoneri@masslaborlawyers.com
website:  www.masslaborlawyers.com

This document is intended only for the use of the person to whom it is addressed.  It may contain information that is privileged, confidential and exempt from disclosure under applicable law.   If you are not the intended recipient, any dissemination, distribution, copying or use of this document is strictly prohibited.  If you have received this communication in error, please notify me immediately at the e-mail address above and delete all copies of this communication.

On Tue, Feb 18, 2025 at 12:46 PM Marc A. Sugerman <msugerman@fordharrison.com> wrote:

All,

**Exhibit 20**

The Hospital offers the following brief response to the Union's argument below, which is not all encompassing of the Hospital's position.

The Union conspicuously ignores that part of Part 2(B)(1) of the Code that requires disclosure of "any pertinent pecuniary interest." Obviously, Arbitrator Loconto has a pecuniary interest related to his business relationship with the Labor Relations Connection, and the conflict is manifest. In fact, taking the Union's assertion as true, during a single nine month period from September 2022 through May 2023, Arbitrator Loconto appeared on 14 panels offered to these same parties alone. The pecuniary interest in LRC is clear. It is also troubling because Jan Teehan of LRC just recently testified under oath, among other things, that she "cherry picks" the arbitrators she offers these parties, a fact she never previously disclosed to the Hospital. In light of Ms. Teehan's testimony, it is concerning that Arbitrator Loconto was included on an arbitration panel 14 times for arbitrations between the same parties.

The same conflict applies with respect to the implications of this arbitration on the parties' use of AAA. Ruling in favor of the Hospital (and therefore ruling the Hospital need not use either agency for the purposes of "administration"), presents an obvious conflict given the pecuniary interest in receiving work from those agencies. This conflict came to light in another arbitration between these parties when the arbitrator was asked to rule on whether the Hospital was required to use AAA for case administration. That arbitrator ruled that the Hospital was required to use AAA not based on any contract language but because he felt he could not "rule against AAA." The conflict has therefore already proven to be very real.

We ask again that Arbitrator Loconto recuse himself from this case.

Thank you,

Marc

SUBSCRIBE TODAY (FH) STAY INFORMED. STAY UPDATED

4

**Exhibit 20**

## Marc A. Sugerman 📇



*Attorney at Law*

**FORD**HARRISON 🔗

[300 South Orange Avenue, Suite 1300](#) | [Orlando, FL 32801](#)
[msugerman@fordharrison.com](#) | P: 407-418-2308

*FHPromise* | **Subscribe**

**From:** Samantha Sinclair <[ssinclair@masslaborlawyers.com](#)>
**Sent:** Friday, February 14, 2025 5:35 PM
**To:** AAA Patrick Kimm <[PatrickKimm@adr.org](#)>
**Cc:** Marc A. Sugerman <[msugerman@fordharrison.com](#)>; Jack Canzoneri <[jcanzoneri@masslaborlawyers.com](#)>; Nicole R. Tordesillas <[ntordesillas@fordharrison.com](#)>
**Subject:** Re: MNA/St. Vincent Hospital - LRC Administration - Case No. 01-24-0000-7400

**Caution: Originated Outside FordHarrison.**

Mr. Kimm:

Please transmit this to Arbitrator Loconto as MNA's response to St. Vincent's motion for Arbitrator Loconto to recuse himself from this matter.

MNA opposes the motion for recusal and provides the following points in support of this:

1.  Alas St. Vincent Hospital by its submission admits—as it must—the controlling force of the Code of Professional Responsibility for Arbitrator of Labor-Management Disputes (Code)—the same rules that also

5

# Exhibit 20

require that the arbitrator proceed in accordance with the labor agency rules (which require all communications be sent to the agency, not directly to the arbitrator).  Click here for the Code.

2.  With respect to Part 2(B)(¶1), cited by St. Vincent, it is not applicable and does not require recusal.  The rule reads:  "Before accepting an appointment, an arbitrator must disclose directly or through the administrative agency involved, any current or past managerial, representational, or consultative relationship with any company or union involved in a proceeding in which the arbitrator is being considered for appointment or has been tentatively designated to serve.  Disclosure must also be made of any pertinent pecuniary interest."  (emphasis added).

3. With respect to underlined language of the Code at Part 2(B)(¶1),  St. Vincent has not established that Arbitrator Loconto has functioned in any of the capacities listed on behalf of LRC.  In particular, St. Vincent has not established that he has functioned in a "managerial" capacity, nor in a "representational" capacity, nor in a "consulting relationship."  Rather, at most St. Vincent has indicated that Arbitrator Loconto is among the roster of arbitrators that are offered by the LRC for appointment as arbitrator.  This is not tantamount to Arbitrator Loconto being a manager, a representative, or consultant of LRC.

4.  Based upon the foregoing no disclosure was required under Code Part 2(B)(¶1).  Nor does the Code in any event require recusal.  There is no showing of any reason why Arbitrator Loconto has a conflict or even the appearance of a conflict.

5.  Further, St. Vincent has had notice of Arbitrator Loconto as among the arbitrators offered by LRC since at least August 10, 2022.  See attached LRC Letter dated August 10, 2022, and list of arbitrators which includes Arbitrator Loconto (highlighted in yellow).  There were further lists circulated thereafter where Arbitrator Loconto was referenced in LRC arbitrations involving St. Vincent Hospital including:  LRC #566-22 (9/2/22); LRC #569-22 (9/8/22); LRC #637-22 (9/26/22); LRC #728-22 (11/7/22); LRC #736-22 (11/7/22); LRC #814-22 (12/6/22); LRC #850-22 (12/22/22); LRC #852-22 (12/22/22); LRC #859-22 (12/28/22); LRC #863-22 (12/28/22); LRC #864-22 (12/28/22); LRC #293-23 (5/5/23); LRC #305-23 (5/10/23); LRC #307-23 (5/10/23).

6.  Where St. Vincent was aware of this information, yet delayed until the month before the arbitration to raise this issue, this should be considered in evaluating the request.  The request is sent on the same day that St. Vincent is due to provide documents in response to a subpoena.  The request is sent after extensive volume of activity in this case relating to subpoena and motions.  St. Vincent's request for recusal would impose an egregious, undue delay on the proceedings.  If granted, a new arbitrator would have to be selected, and further delay would ensue from that point.

7.  Finally, notwithstanding all of the foregoing, MNA recognizes that the Arbitrator must independently evaluate this issue and make a professional, ethical decision.  Given the importance of the issue at this

**Exhibit 20**

stage of the case, MNA requests that the Arbitrator recuse **only if he** contacts the National Academy of Arbitrators Committee on Professional Responsibility, and the Committee advises that recusal is required.

Respectfully submitted,

On Fri, Feb 14, 2025 at 2:24 PM AAA Patrick Kimm <PatrickKimm@adr.org> wrote:

Attorney Canzoneri/Attorney Sinclair,

Please provide your response to Mr. Sugarman's claim below.  A response by February 20, 202 would be greatly appreciated.



**AAA Patrick Kimm**
**Case Administrator**

American Arbitration Association
T: 617 695 6014 F: 617 451 0763 E: PatrickKimm@adr.org
200 State Street, 7th Floor, Boston, MA 02109
adr.org | icdr.org | aaaicdrfoundation.org



The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclo distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediat reply email and destroy all copies of the transmittal. Thank you.

**From:** Marc A. Sugerman <msugerman@fordharrison.com>
**Sent:** Thursday, February 13, 2025 12:22 PM
**To:** Michael Loconto <mtl@locontoadr.com>; AAA Patrick Kimm <PatrickKimm@adr.org>
**Cc:** Jack Canzoneri <jcanzoneri@masslaborlawyers.com>; Samantha Sinclair <ssinclair@masslaborlawyers.com>; Nicole R. Tordesillas <ntordesillas@fordharrison.com>
**Subject:** MNA/St. Vincent Hospital - LRC Administration - Case No. 01-24-0000-7400

*** External E-Mail – Use Caution ***

Good afternoon,

**Exhibit 20**

The Hospital has a concern regarding the appointment of Arbitrator Loconto in this matter, specifically related to his required disclosures under the Code of Professional Responsibility for Arbitrators of Labor-Management Disputes ("CPRA-LMD").

Under Rule B.1. of the CPRA-LMD, an arbitrator is required to "disclose directly through the administrative agency involved, any current or past managerial, representational, or consultive relationship with any company or union involved in a proceedings in which the arbitrator is being considered for appointment or has been tentatively designated to serve. Disclosure must also be made of any pertinent pecuniary interest."

The issue in this proceeding is framed by the Union as follows: "The Employer has improperly instructed the Labor Relations Connection to cease any purported administration of, or any other participation of any kind, in the Employer's currently pending matters." The Labor Relations Connection provides case administration for labor arbitrations. Apparently, Mr. Loconto is on an arbitrator roster with the LRC. However, upon review of Mr. Loconto's AAA biography, the LRC is not listed among the federal, state, and local rosters on which he serves.

As the burden of disclosure rests on the arbitrator, the Hospital is requesting that the arbitrator recuse himself from these proceedings.

Thank you,

Marc

SUBSCRIBE TODAY (FH) STAY INFORMED. STAY UPDATED

8

**Exhibit 20**

## **Marc A. Sugerman**



*Attorney at Law*

# FORDHARRISON in

300 South Orange Avenue, Suite 1300 | Orlando, FL 32801
msugerman@fordharrison.com | P: 407-418-2308

*FHPromise* | **Subscribe**

*ATTORNEY WORK PRODUCT - PRIVILEGED & CONFIDENTIAL*

The information contained in this message from Ford & Harrison LLP and any attachments are privileged and confidential and intended only for the named recipient(s). If you have received this message in error, you are prohibited from reviewing, copying, distributing or using the information. Please contact the sender immediately by return email and delete the original message and attachments. In the absence of an executed engagement letter or fee contract, no attorney client relationship is established by this communication.

--

_____

**Samantha E. Sinclair**

McDonald Lamond Canzoneri LLC
352 Turnpike Road, Suite 210
Southborough, Massachusetts 01772
(508) 485-6600 Voice (ext. 106)
(508) 485-4477 Fax
email: ssinclair@masslaborlawyers.com
website:  www.masslaborlawyers.com

This document is intended only for the use of the person to whom it is addressed.  It may contain information that is privileged, confidential and exempt from disclosure under applicable law.   If you are not the intended recipient, any dissemination, distribution, copying or use of this document is strictly prohibited.  If you have received this communication in error, please notify me immediately at the e-mail address above and delete all copies of this communication.

**Exhibit 20**

| | |
|---|---|
| **From:** | AAA Frank Binda <FrankBinda@adr.org> |
| **Sent:** | Friday, March 14, 2025 10:15 AM |
| **To:** | Marc A. Sugerman; Jack Canzoneri |
| **Cc:** | ssinclair@masslaborlawyers.com; AAA Patrick Kimm; Michael Loconto |
| **Subject:** | RE: URGENT Re: Massachusetts Nurses Association vs St. Vincent Hospital - Case 01-24-0000-7400 |

| | |
|---|---|
| **Importance:** | High |

**Caution: Originated Outside FordHarrison.**

Re: Massachusetts Nurses Association vs St. Vincent Hospital - Case 01-24-0000-7400

Dear Counsel:

Please be advised that any request for additional information from the arbitrator is voluntary, and Arbitrator Loconto has advised the AAA that he does not intend to respond to the employer's requests of February 21, 2025, and March 6, 2025.

Also, communication between the American Arbitration Association ('AAA') and the arbitrator is not shared with the parties.  The  AAA serves as a neutral administrative agency and is not a party to any proceedings that is handled by the AAA.

As requested by the arbitrator, the parties are to agree on a location for the hearing on Monday, March 17, 2025, by *noon today*; otherwise, the arbitrator shall set the site of the hearing.

Sincerely,
Frank Binda



**Frank Binda**
**Assistant Vice President**

American Arbitration Association
1301 Atwood Ave, Suite 211N, Johnston, RI 02919
T: 401 868 4627 F: 866 644 0234
adr.org | icdr.org | aaaicdrfoundation.org

Heather Santo, Assistant Vice President
Northeast Case Management Center



The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

**From:** Marc A. Sugerman <msugerman@fordharrison.com>
**Sent:** Friday, March 14, 2025 9:42 AM
**To:** AAA Patrick Kimm <PatrickKimm@adr.org>; AAA Frank Binda <FrankBinda@adr.org>; Michael Loconto <mtl@locontoadr.com>
**Cc:** ssinclair@masslaborlawyers.com; Jack Canzoneri <jcanzoneri@masslaborlawyers.com>
**Subject:** RE: URGENT Re: Massachusetts Nurses Association vs St. Vincent Hospital - Case 01-24-0000-7400

1

**Exhibit 21**

**\*\*\* External E-Mail – Use Caution \*\*\***

I am re-sending to include Arbitrator Loconto in order to make sure he is aware we are waiting on a response to the attached e-mail.

Thank you,

Marc





## Marc A. Sugerman
*Attorney at Law*

**FORDHARRISON** in

300 South Orange Avenue, Suite 1300 | Orlando, FL 32801
msugerman@fordharrison.com | P: 407-418-2308

*FHPromise* | **Subscribe**

---

**From:** Marc A. Sugerman
**Sent:** Friday, March 14, 2025 9:24 AM
**To:** AAA Patrick Kimm <PatrickKimm@adr.org>; Jack Canzoneri <jcanzoneri@masslaborlawyers.com>; AAA Frank Binda <FrankBinda@adr.org>
**Cc:** ssinclair@masslaborlawyers.com
**Subject:** RE: URGENT Re: Massachusetts Nurses Association vs St. Vincent Hospital - Case 01-24-0000-7400

As a reminder, the Hospital is also waiting on a response to this e-mail.

Marc





## Marc A. Sugerman
*Attorney at Law*

**FORDHARRISON** in

300 South Orange Avenue, Suite 1300 | Orlando, FL 32801
msugerman@fordharrison.com | P: 407-418-2308

**Exhibit 21**

*FHPromise* | Subscribe

**From:** AAA Patrick Kimm <PatrickKimm@adr.org>
**Sent:** Friday, March 14, 2025 8:31 AM
**To:** Jack Canzoneri <jcanzoneri@masslaborlawyers.com>; AAA Frank Binda <FrankBinda@adr.org>
**Cc:** Marc A. Sugerman <msugerman@fordharrison.com>; ssinclair@masslaborlawyers.com
**Subject:** RE: URGENT Re: Massachusetts Nurses Association vs St. Vincent Hospital - Case 01-24-0000-7400

## Caution: Originated Outside FordHarrison.

Good morning,

Arbitrator Loconto is aware of the matter and will respond this morning.



**AAA Patrick Kimm**
**Case Administrator**

American Arbitration Association
T: 617 695 6014 F: 617 451 0763 E: PatrickKimm@adr.org
200 State Street, 7th Floor, Boston, MA 02109
adr.org | icdr.org | aaaicdrfoundation.org



The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

**From:** Jack Canzoneri <jcanzoneri@masslaborlawyers.com>
**Sent:** Thursday, March 13, 2025 9:15 PM
**To:** AAA Patrick Kimm <PatrickKimm@adr.org>; AAA Frank Binda <FrankBinda@adr.org>
**Cc:** msugerman@fordharrison.com; ssinclair@masslaborlawyers.com
**Subject:** URGENT Re: Massachusetts Nurses Association vs St. Vincent Hospital - Case 01-24-0000-7400

### *** External E-Mail – Use Caution ***

Mr. Kim and Mr. Binda,
I am sending this to alert you that action is required immediately in the issue I describe below.  We need to I'd identify the location for the hearing.  Please advise ASAP on Friday.  The hearing is Monday.  Same court reporter question.  I'm not sure why there has been no action.   I am adding Mr. Binda because of urgency and his involvement in this matter.  Thank you.  Jack

_____
**Jack J. Canzoneri**
McDonald Lamond Canzoneri LLC
352 Turnpike Road, Suite 210
Southborough, Massachusetts 01772

**Exhibit 21**

(508) 485-6600 Voice (ext. 105)
(508) 485-4477 Fax
email: jcanzoneri@masslaborlawyers.com
website:  www.masslaborlawyers.com

This document is intended only for the use of the person to whom it is addressed.  It may contain information that is privileged, confidential and exempt from disclosure under applicable law.    If you are not the intended recipient, any dissemination, distribution, copying or use of this document is strictly prohibited.  If you have received this communication in error, please notify me immediately at the e-mail address above and delete all copies of this communication.

On Thu, Mar 13, 2025 at 3:00 PM Jack Canzoneri <jcanzoneri@masslaborlawyers.com> wrote:

> The deadline for the refund is 3:00 EDT Friday.  I note this because my follow up below did not make that clear.  Thank you.  Jack
>
> _____
> **Jack J. Canzoneri**
> McDonald Lamond Canzoneri LLC
> 352 Turnpike Road, Suite 210
> Southborough, Massachusetts 01772
> (508) 485-6600 Voice (ext. 105)
> (508) 485-4477 Fax
> email: jcanzoneri@masslaborlawyers.com
> website:  www.masslaborlawyers.com
>
> This document is intended only for the use of the person to whom it is addressed.  It may contain information that is privileged, confidential and exempt from disclosure under applicable law.    If you are not the intended recipient, any dissemination, distribution, copying or use of this document is strictly prohibited.  If you have received this communication in error, please notify me immediately at the e-mail address above and delete all copies of this communication.

On Thu, Mar 13, 2025 at 1:53 PM Jack Canzoneri <jcanzoneri@masslaborlawyers.com> wrote:

> Mr. Kimm:
>
> I have an update to the correspondence below where I ask that you set a deadline for the hospital to respond and submit any dispute to the hospital about venue.
>
> MNA believes that the three options it has proposed below for venue are fine and strongly prefers those.  However, MNA recognizes that the arbitrator may not look to impose a "non-neutral" site (i.e., the hospital or MNA offices or MNA counsel office).  Accordingly, MNA provides a fourth option for this case only and that option is not preferred by MNA as MNA prefers the three options it noted below or other neutral site that is less costly—but is a neutral site, and offered for this hearing only as follows:
>
> **Hilton Garden Inn**
> **35 Major Taylor Blvd.**
> **Worcester, MA 01608**

**Exhibit 21**

This location is around the block from the hospital, .7 miles away.  Click here for a map that shows the location.

We have secured a conference space for $400 ($200 each side splitting the cost, the other options of course that we prefer and have offered are without cost).  To avoid losing this option for the Monday hearing, we placed a $200 deposit to hold the conference room **but that deposit becomes non-refundable unless we cancel before 3:00 p.m. EDT.**  I attach a copy of that contract as well.

Finally, to reiterate MNA proposes the three locations noted below.  in the alternative, if there is a dispute and the arbitrator is not inclined to rule in favor of one of those three locations, then MNA provides the above option of the Hilton Garden Inn for this case only and in context of time sensitivity.

Thank you.

Jack


_____

**Jack J. Canzoneri**
McDonald Lamond Canzoneri LLC
352 Turnpike Road, Suite 210
Southborough, Massachusetts 01772
(508) 485-6600 Voice (ext. 105)
(508) 485-4477 Fax
email: jcanzoneri@masslaborlawyers.com
website:  www.masslaborlawyers.com

This document is intended only for the use of the person to whom it is addressed.  It may contain information that is privileged, confidential and exempt from disclosure under applicable law.   If you are not the intended recipient, any dissemination, distribution, copying or use of this document is strictly prohibited.  If you have received this communication in error, please notify me immediately at the e-mail address above and delete all copies of this communication.


On Thu, Mar 13, 2025 at 1:39 PM Jack Canzoneri <jcanzoneri@masslaborlawyers.com> wrote:

Mr. Kimm,


On behalf of MNA I request that you process the issue of the venue and court reporter, and, as necessary, provides deadlines for response by the hospital for today, and if there is a dispute, submit that dispute to the arbitrator later today.  I am making this request because the arbitration is scheduled for Monday and these two details are very time sensitive at this point.  The issues are:

**1.  What shall be the venue?**  MNA has proposed three options below.  Does the hospital concur with any of those options?  If not, what is the hospital's proposed alternative, and whether MNA agrees with that alternative or proposes another option that is at a site not connected to MNA or the hospital (i.e., not at the hospital, MNA office in Worcester, or MNA counsel's office, all of which MNA proposes).   Absent a response by the hospital MNA requests that the arbitrator rule on this issue.

5

**Exhibit 21**

**2. What company shall be the court reporter?**  We have proposed a company, the same one the parties used in another case, and it is time to contact the court reporter to confirm Monday attendance at the venue we decide upon.  Does the hospital concur with using that court reporter?  If not, then MNA would request that the arbitrator rule on that issue.

Thank you.

Jack


_____
**Jack J. Canzoneri**
McDonald Lamond Canzoneri LLC
352 Turnpike Road, Suite 210
Southborough, Massachusetts 01772
(508) 485-6600 Voice (ext. 105)
(508) 485-4477 Fax
email: jcanzoneri@masslaborlawyers.com
website:  www.masslaborlawyers.com

This document is intended only for the use of the person to whom it is addressed.  It may contain information that is privileged, confidential and exempt from disclosure under applicable law.   If you are not the intended recipient, any dissemination, distribution, copying or use of this document is strictly prohibited.  If you have received this communication in error, please notify me immediately at the e-mail address above and delete all copies of this communication.


On Wed, Mar 12, 2025 at 6:06 PM Jack Canzoneri <jcanzoneri@masslaborlawyers.com> wrote:

> Mr. Kimm,
>
>
> In addition MNA wants the hearing to be transcribed by a court reporter.  In the past the parties have disagreed with who the court reporter should be.  That was resolved in the most recent arbitration by use of the firm Rebecca Forte Court Reporters.  This is not the court reporter we normally use, but we are fine to proceed with that court below.  I ask Attorney Sugerman to advise whether the hospital is in agreement with using the same court reporter we used in the last caes, as noted below by tomorrow morning, and if so we will be happy to contact the court reporter to secure services.
>
> Thank you.
>
> Jack

**Exhibit 21**

# In The

## Massachusetts N

## St. Vince

## Arb

## V

## Februa

**Exhibit 21**

_____
**Jack J. Canzoneri**
McDonald Lamond Canzoneri LLC
352 Turnpike Road, Suite 210
Southborough, Massachusetts 01772
(508) 485-6600 Voice (ext. 105)
(508) 485-4477 Fax
email: jcanzoneri@masslaborlawyers.com
website:  www.masslaborlawyers.com

This document is intended only for the use of the person to whom it is addressed.  It may contain information that is privileged, confidential and exempt from disclosure under applicable law.    If you are not the intended recipient, any dissemination, distribution, copying or use of this document is strictly prohibited.  If you have received this communication in error, please notify me immediately at the e-mail address above and delete all copies of this communication.


On Wed, Mar 12, 2025 at 5:00 PM Jack Canzoneri <jcanzoneri@masslaborlawyers.com> wrote:


Mr. Kimm,

Thank you for your reminder email yesterday.  I did not review email history, but my memory is that this is to be an in-person hearing.  I email to confirm that and propose a location as follows.

There are three locations that MNA proposes.

1.  **St. Vincent Hospital** - we propose a conference room at the hospital.  This was the practice for many years prior to 2022, and MNA proposes to resume that practice.

2.  **Region 2 MNA Office** - 11 E. Central Street, Worcester, MA 01605, .8 miles from the hospital, ample space and free parking.  Click here for a map to see its location.

3.  **McDonald Lamond Canzoneri LLC** - office, 352 Turnpike Rd, Suite 210, Southborough, MA 01772.  This is 24 miles from the hospital, about a 25 minute drive, free and ample parking, and a large conference room and smaller conference room for caucuses.  Click here for a map to see its location in relation to the hospital.

Thank you.

Jack


_____
**Jack J. Canzoneri**
McDonald Lamond Canzoneri LLC
352 Turnpike Road, Suite 210
Southborough, Massachusetts 01772
(508) 485-6600 Voice (ext. 105)
(508) 485-4477 Fax
email: jcanzoneri@masslaborlawyers.com

8

**Exhibit 21**

website: www.masslaborlawyers.com

This document is intended only for the use of the person to whom it is addressed. It may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, any dissemination, distribution, copying or use of this document is strictly prohibited. If you have received this communication in error, please notify me immediately at the e-mail address above and delete all copies of this communication.

On Tue, Mar 11, 2025 at 1:41 PM <PatrickKimm@adr.org> wrote:

Hello,

Please review the attached correspondence regarding the above-referenced case.

Feel free to contact me with any questions, comments or concerns you have related to this matter.

Thank you.

*ATTORNEY WORK PRODUCT - PRIVILEGED & CONFIDENTIAL*

The information contained in this message from Ford & Harrison LLP and any attachments are privileged and confidential and intended only for the named recipient(s). If you have received this message in error, you are prohibited from reviewing, copying, distributing or using the information. Please contact the sender immediately by return email and delete the original message and attachments. In the absence of an executed engagement letter or fee contract, no attorney client relationship is established by this communication.

9

**Exhibit 21**

| From: | Michael Loconto <mtl@locontoadr.com> |
|---|---|
| Sent: | Friday, March 14, 2025 11:05 AM |
| To: | AAA Frank Binda |
| Cc: | Marc A. Sugerman; Jack Canzoneri; ssinclair@masslaborlawyers.com; AAA Patrick Kimm |
| Subject: | VENUE and COURT REPORTER STATUS: Massachusetts Nurses Association vs St. Vincent Hospital - Case 01-24-0000-7400 |

**Caution: Originated Outside FordHarrison.**

To the parties:

Good morning.  I am in receipt of the Union's recent request for action on the questions of venue and a court reporter.  I am also in receipt of AAA's response to the Employer's previous requests.

I will first address one inaccuracy in Mr. Binda's note from earlier this morning; the deadline for receipt of the Employer's response on venue was close of business yesterday (5 pm ET on 3/13/25).  I previously shared with Mr. Kimm that I would make a ruling on the requests for venue and court reporter by noon today, in recognition of the impending hearing and other time constraints that have been identified.

As such, please be advised of the following:

1. **Venue.**  I have not received a response from the Employer on a venue preference.  As the parties will recall, it was previously determined that the hearings in this matter would proceed, and would take place as in-person hearings in the Worcester area.  The Union initially suggested three venues: St. Vincent; the MNA regional offices in Worcester; or the offices of Union counsel, in Southborough.  Noting the partisan nature of each of the previously suggested venue sites, the Union subsequently proposed a fourth, neutral site - the Hilton Garden Inn in Worcester, a hotel near the work site.

> Ruling:  **The hearing will take place at the Hilton Garden Inn, 35 Major Taylor Blvd., Worcester, MA 01608.  The hearing is slated to begin promptly at 10 am on Monday, March 17, 2025.**  The parties will split all fees associated with the reservation of this hearing room.  Should the second day of hearing that is currently reserved for this matter remain necessary (Wednesday, April 2, 2025), the parties are invited to agree upon an alternative venue.  If no such agreement can be reached, the second day of hearing will also be held at a neutral site (i.e., the Hilton Garden Inn, or a similar venue if the Hilton Garden Inn is not available) and the same fee-splitting arrangement will apply.

2. **Court Reporter.**  The Union has identified a court reporter for use in Monday's hearing, and has asked for the Employer's assent in the selection of the court reporter.  The Union has also asked the Employer to split the fee associated with the court reporter.  I have not received an Employer response on this issue.

> Ruling:  **The Union is permitted to obtain a court reporter for Monday's hearing.**  Please make arrangements for the provision of an arbitrator's copy of the transcript to be produced.

1

**Exhibit 22**

In making this ruling, I note that some CBAs address the issue of court reporters, but no such argument has been put before me and the record indicates that the parties have previously used court reporters in prior disputes.  To this end, the Union has offered that the court reporter previously used in a dispute between the parties, Rebecca Forte Court Reporters, is not available for Monday's hearing.  As an alternative, the Union has identified another court reporter previously used in a dispute between the parties, Jones and Fuller, and is currently making inquiries about availability.  As time is of the essence given Monday's scheduled hearing, the Union may make a good faith effort to confirm the availability of Jones and Fuller at its earliest convenience.  If the Jones and Fuller service is not available, the Union may seek an alternative with availability.   Of course, nothing in the foregoing would prevent the Employer from collaborating with the Union in obtaining an available alternative court reporter for Monday's hearing.

The Employer may also agree to share in the cost of the selected court reporter.  However, there are numerous prior examples where parties may disagree about the cost, use or selection of a court reporter.  If the Union bears the full cost of the court reporter, the Employer will not be entitled to a copy of the transcript, but in-person access to review the Arbitrator's copy would be available upon request.

The foregoing rulings comprise the remainder of open pre-hearing issues known to the Arbitrator at this time.  Any other matters pending or which may arise in the interim may be addressed at the hearing.  I wish the parties a good weekend, and I will see you at 10 am on Monday in Worcester.

Regards,

Michael Loconto
Arbitrator

On Fri, Mar 14, 2025 at 10:15 AM AAA Frank Binda <FrankBinda@adr.org> wrote:

Re: Massachusetts Nurses Association vs St. Vincent Hospital - Case 01-24-0000-7400

Dear Counsel:

Please be advised that any request for additional information from the arbitrator is voluntary, and Arbitrator Loconto has advised the AAA that he does not intend to respond to the employer's requests of February 21, 2025, and March 6, 2025.

Also, communication between the American Arbitration Association ('AAA') and the arbitrator is not shared with the parties.  The  AAA serves as a neutral administrative agency and is not a party to any proceedings that is handled by the AAA.

**Exhibit 22**

As requested by the arbitrator, the parties are to agree on a location for the hearing on Monday, March 17, 2025, by **noon today**; otherwise, the arbitrator shall set the site of the hearing.

Sincerely,

Frank Binda



**Frank Binda**
**Assistant Vice President**

American Arbitration Association
1301 Atwood Ave, Suite 211N, Johnston, RI 02919
T: 401 868 4627 F: 866 644 0234
adr.org | icdr.org | aaaicdrfoundation.org

Heather Santo, Assistant Vice President
Northeast Case Management Center



The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, dis... distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immed... reply email and destroy all copies of the transmittal. Thank you.

**From:** Marc A. Sugerman <msugerman@fordharrison.com>
**Sent:** Friday, March 14, 2025 9:42 AM
**To:** AAA Patrick Kimm <PatrickKimm@adr.org>; AAA Frank Binda <FrankBinda@adr.org>; Michael Loconto <mtl@locontoadr.com>
**Cc:** ssinclair@masslaborlawyers.com; Jack Canzoneri <jcanzoneri@masslaborlawyers.com>
**Subject:** RE: URGENT Re: Massachusetts Nurses Association vs St. Vincent Hospital - Case 01-24-0000-7400

**\*\*\* External E-Mail – Use Caution \*\*\***

I am re-sending to include Arbitrator Loconto in order to make sure he is aware we are waiting on a response to the attached e-mail.

Thank you,

Marc

3

**Exhibit 22**



### Marc A. Sugerman 📇



*Attorney at Law*

# FORDHARRISON in

300 South Orange Avenue, Suite 1300 | Orlando, FL 32801
msugerman@fordharrison.com | P: 407-418-2308

*FHPromise* | **Subscribe**

**From:** Marc A. Sugerman
**Sent:** Friday, March 14, 2025 9:24 AM
**To:** AAA Patrick Kimm <PatrickKimm@adr.org>; Jack Canzoneri <jcanzoneri@masslaborlawyers.com>;
AAA Frank Binda <FrankBinda@adr.org>
**Cc:** ssinclair@masslaborlawyers.com
**Subject:** RE: URGENT Re: Massachusetts Nurses Association vs St. Vincent Hospital - Case 01-24-0000-7400

As a reminder, the Hospital is also waiting on a response to this e-mail.

Marc

4

**Exhibit 22**



## Marc A. Sugerman 🔳

*Attorney at Law*



**FORD**HARRISON  in

300 South Orange Avenue, Suite 1300 | Orlando, FL 32801
msugerman@fordharrison.com | P: 407-418-2308

*FHPromise* | **Subscribe**

---

**From:** AAA Patrick Kimm <PatrickKimm@adr.org>
**Sent:** Friday, March 14, 2025 8:31 AM
**To:** Jack Canzoneri <jcanzoneri@masslaborlawyers.com>; AAA Frank Binda <FrankBinda@adr.org>
**Cc:** Marc A. Sugerman <msugerman@fordharrison.com>; ssinclair@masslaborlawyers.com
**Subject:** RE: URGENT Re: Massachusetts Nurses Association vs St. Vincent Hospital - Case 01-24-0000-7400

**Caution: Originated Outside FordHarrison.**

Good morning,

Arbitrator Loconto is aware of the matter and will respond this morning.

**Exhibit 22**



**AAA Patrick Kimm**
**Case Administrator**

American Arbitration Association
T: 617 695 6014 F: 617 451 0763 E: PatrickKimm@adr.org
200 State Street, 7th Floor, Boston, MA 02109
adr.org | icdr.org | aaaicdrfoundation.org



The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, dis... distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immed... reply email and destroy all copies of the transmittal. Thank you.

**From:** Jack Canzoneri <jcanzoneri@masslaborlawyers.com>
**Sent:** Thursday, March 13, 2025 9:15 PM
**To:** AAA Patrick Kimm <PatrickKimm@adr.org>; AAA Frank Binda <FrankBinda@adr.org>
**Cc:** msugerman@fordharrison.com; ssinclair@masslaborlawyers.com
**Subject:** URGENT Re: Massachusetts Nurses Association vs St. Vincent Hospital - Case 01-24-0000-7400

**\*\*\* External E-Mail – Use Caution \*\*\***

Mr. Kim and Mr. Binda,

I am sending this to alert you that action is required immediately in the issue I describe below.  We need to I'd identify the location for the hearing.  Please advise ASAP on Friday.  The hearing is Monday.  Same court reporter question.  I'm not sure why there has been no action.  I am adding Mr. Binda because of urgency and his involvement in this matter.  Thank you.  Jack

_____

**Jack J. Canzoneri**

McDonald Lamond Canzoneri LLC
352 Turnpike Road, Suite 210
Southborough, Massachusetts 01772
(508) 485-6600 Voice (ext. 105)
(508) 485-4477 Fax
email: jcanzoneri@masslaborlawyers.com
website:  www.masslaborlawyers.com

This document is intended only for the use of the person to whom it is addressed.  It may contain

**Exhibit 22**

information that is privileged, confidential and exempt from disclosure under applicable law.   If you are not the intended recipient, any dissemination, distribution, copying or use of this document is strictly prohibited.  If you have received this communication in error, please notify me immediately at the e-mail address above and delete all copies of this communication.

On Thu, Mar 13, 2025 at 3:00 PM Jack Canzoneri <jcanzoneri@masslaborlawyers.com> wrote:

The deadline for the refund is 3:00 EDT Friday.  I note this because my follow up below did not make that clear.  Thank you.  Jack

_____

**Jack J. Canzoneri**

McDonald Lamond Canzoneri LLC
352 Turnpike Road, Suite 210
Southborough, Massachusetts 01772
(508) 485-6600 Voice (ext. 105)
(508) 485-4477 Fax
email: jcanzoneri@masslaborlawyers.com
website:  www.masslaborlawyers.com

This document is intended only for the use of the person to whom it is addressed.  It may contain information that is privileged, confidential and exempt from disclosure under applicable law.    If you are not the intended recipient, any dissemination, distribution, copying or use of this document is strictly prohibited.  If you have received this communication in error, please notify me immediately at the e-mail address above and delete all copies of this communication.

On Thu, Mar 13, 2025 at 1:53 PM Jack Canzoneri <jcanzoneri@masslaborlawyers.com> wrote:

Mr. Kimm:

I have an update to the correspondence below where I ask that you set a deadline for the hospital to respond and submit any dispute to the hospital about venue.

7

**Exhibit 22**

MNA believes that the three options it has proposed below for venue are fine and strongly prefers those.  However, MNA recognizes that the arbitrator may not look to impose a "non-neutral" site (i.e., the hospital or MNA offices or MNA counsel office).  Accordingly, MNA provides a fourth option <u>for this case only</u> and that option is not preferred by MNA as MNA prefers the three options it noted below or other neutral site that is less costly—but is a neutral site, and offered for this hearing only as follows:

**Hilton Garden Inn**

**35 Major Taylor Blvd.**

**Worcester, MA 01608**

This location is around the block from the hospital, .7 miles away.  Click <u>here</u> for a map that shows the location.

We have secured a conference space for $400 ($200 each side splitting the cost, the other options of course that we prefer and have offered are without cost).  To avoid losing this option for the Monday hearing, we placed a $200 deposit to hold the conference room **but that deposit becomes non-refundable unless we cancel before 3:00 p.m. EDT.**  I attach a copy of that contract as well.

Finally, to reiterate MNA proposes the three locations noted below.  in the alternative, if there is a dispute and the arbitrator is not inclined to rule in favor of one of those three locations, then MNA provides the above option of the Hilton Garden Inn for this case only and in context of time sensitivity.

Thank you.

Jack

8

**Exhibit 22**

_____

**Jack J. Canzoneri**

McDonald Lamond Canzoneri LLC
352 Turnpike Road, Suite 210
Southborough, Massachusetts 01772
(508) 485-6600 Voice (ext. 105)
(508) 485-4477 Fax
email: jcanzoneri@masslaborlawyers.com
website:  www.masslaborlawyers.com

This document is intended only for the use of the person to whom it is addressed.  It may contain information that is privileged, confidential and exempt from disclosure under applicable law.    If you are not the intended recipient, any dissemination, distribution, copying or use of this document is strictly prohibited.  If you have received this communication in error, please notify me immediately at the e-mail address above and delete all copies of this communication.

On Thu, Mar 13, 2025 at 1:39 PM Jack Canzoneri <jcanzoneri@masslaborlawyers.com> wrote:

Mr. Kimm,

On behalf of MNA I request that you process the issue of the venue and court reporter, and, as necessary, provides deadlines for response by the hospital for today, and if there is a dispute, submit that dispute to the arbitrator later today.  I am making this request because the arbitration is scheduled for Monday and these two details are very time sensitive at this point.  The issues are:

**1.  What shall be the venue?**  MNA has proposed three options below.  Does the hospital concur with any of those options?  If not, what is the hospital's proposed alternative, and whether MNA agrees with that alternative or proposes another option that is at a site not connected to MNA or the hospital (i.e., not at the hospital, MNA office in Worcester, or MNA counsel's office, all of which MNA proposes).   Absent a response by the hospital MNA requests that the arbitrator rule on this issue.

**2.  What company shall be the court reporter?**  We have proposed a company, the same one the parties used in another case, and it is time to contact the court reporter to confirm Monday

9

**Exhibit 22**

attendance at the venue we decide upon.  Does the hospital concur with using that court reporter?  If not, then MNA would request that the arbitrator rule on that issue.


Thank you.


Jack


_____

**Jack J. Canzoneri**

McDonald Lamond Canzoneri LLC
352 Turnpike Road, Suite 210
Southborough, Massachusetts 01772
(508) 485-6600 Voice (ext. 105)
(508) 485-4477 Fax
email: jcanzoneri@masslaborlawyers.com
website:  www.masslaborlawyers.com

This document is intended only for the use of the person to whom it is addressed.  It may contain information that is privileged, confidential and exempt from disclosure under applicable law.    If you are not the intended recipient, any dissemination, distribution, copying or use of this document is strictly prohibited.  If you have received this communication in error, please notify me immediately at the e-mail address above and delete all copies of this communication.


On Wed, Mar 12, 2025 at 6:06 PM Jack Canzoneri <jcanzoneri@masslaborlawyers.com> wrote:

 Mr. Kimm,

**Exhibit 22**

In addition MNA wants the hearing to be transcribed by a court reporter.  In the past the parties have disagreed with who the court reporter should be.  That was resolved in the most recent arbitration by use of the firm Rebecca Forte Court Reporters.  This is not the court reporter we normally use, but we are fine to proceed with that court below.  I ask Attorney Sugerman to advise whether the hospital is in agreement with using the same court reporter we used in the last caes, as noted below by tomorrow morning, and if so we will be happy to contact the court reporter to secure services.

Thank you.

Jack

11

**Exhibit 22**

**In Th**

*Massachusetts*

*St. Vin*

*A:*

*Febru*

12

**Exhibit 22**

_____

**Jack J. Canzoneri**

McDonald Lamond Canzoneri LLC
352 Turnpike Road, Suite 210
Southborough, Massachusetts 01772
(508) 485-6600 Voice (ext. 105)
(508) 485-4477 Fax
email: jcanzoneri@masslaborlawyers.com
website:  www.masslaborlawyers.com

This document is intended only for the use of the person to whom it is addressed.  It may contain information that is privileged, confidential and exempt from disclosure under applicable law.    If you are not the intended recipient, any dissemination, distribution, copying or use of this document is strictly prohibited.  If you have received this communication in error, please notify me immediately at the e-mail address above and delete all copies of this communication.

On Wed, Mar 12, 2025 at 5:00 PM Jack Canzoneri <jcanzoneri@masslaborlawyers.com> wrote:

Mr. Kimm,

Thank you for your reminder email yesterday.  I did not review email history, but my memory is that this is to be an in-person hearing.  I email to confirm that and propose a location as follows.

There are three locations that MNA proposes.

1.  **St. Vincent Hospital** - we propose a conference room at the hospital.  This was the practice for many years prior to 2022, and MNA proposes to resume that practice.

13

**Exhibit 22**

2. **Region 2 MNA Office** - 11 E. Central Street, Worcester, MA 01605, .8 miles from the hospital, ample space and free parking.  Click here for a map to see its location.

3. **McDonald Lamond Canzoneri LLC** - office, 352 Turnpike Rd, Suite 210, Southborough, MA 01772.  This is 24 miles from the hospital, about a 25 minute drive, free and ample parking, and a large conference room and smaller conference room for caucuses.  Click here for a map to see its location in relation to the hospital.

Thank you.

Jack

_____

**Jack J. Canzoneri**

McDonald Lamond Canzoneri LLC
352 Turnpike Road, Suite 210
Southborough, Massachusetts 01772
(508) 485-6600 Voice (ext. 105)
(508) 485-4477 Fax
email: jcanzoneri@masslaborlawyers.com
website:  www.masslaborlawyers.com

This document is intended only for the use of the person to whom it is addressed.  It may contain information that is privileged, confidential and exempt from disclosure under applicable law.    If you are not the intended recipient, any dissemination, distribution, copying or use of this document is strictly prohibited.  If you have received this communication in error, please notify me immediately at the e-mail address above and delete all copies of this communication.

On Tue, Mar 11, 2025 at 1:41 PM <PatrickKimm@adr.org> wrote:

Hello,

Please review the attached correspondence regarding the above-referenced case.

Feel free to contact me with any questions, comments or concerns you have related to this

14

**Exhibit 22**

matter.

Thank you.

*ATTORNEY WORK PRODUCT - PRIVILEGED & CONFIDENTIAL*

The information contained in this message from Ford & Harrison LLP and any attachments are privileged and confidential and intended only for the named recipient(s). If you have received this message in error, you are prohibited from reviewing, copying, distributing or using the information. Please contact the sender immediately by return email and delete the original message and attachments. In the absence of an executed engagement letter or fee contract, no attorney client relationship is established by this communication.

--
Arbitrator Michael Loconto
(617) 331-2112
mtl@locontoadr.com

The information contained in this transmission, including any attachments, are intended for the exclusive use of the addressees and may contain confidential or privileged information.  If you are not the intended recipient, please notify Arbitrator Loconto by telephone at 617-331-2112 or by email at mtl@locontoadr.com, and please destroy all copies of this message and any attachments.

Arbitrator Loconto works exclusively as a neutral, offering arbitration, mediation, and other dispute resolution services.  While Arbitrator Loconto is an attorney and a member of the Massachusetts bar, Loconto ADR is not a law practice.  Nothing in this email is intended to offer legal advice, and no attorney-client relationship is formed through any exchange of correspondence related to this email.

Receipt by anyone other than the intended recipient is not a waiver of any arbitrator's, mediator's, attorney-client, or work product immunity, privilege, or other applicable protection.

**Exhibit 22**

| From: | Michael Loconto <mtl@locontoadr.com> |
|---|---|
| Sent: | Tuesday, March 18, 2025 6:35 PM |
| To: | Marc A. Sugerman |
| Cc: | AAA Frank Binda; AAA Patrick Kimm; Jack Canzoneri; ssinclair@masslaborlawyers.com; Chris Borruso; Nicole R. Tordesillas |
| Subject: | Re: VENUE and COURT REPORTER STATUS: Massachusetts Nurses Association vs St. Vincent Hospital - Case 01-24-0000-7400 |

**Caution: Originated Outside FordHarrison.**

Confirmed.

On Tue, Mar 18, 2025 at 5:02 PM Marc A. Sugerman <msugerman@fordharrison.com> wrote:

Mr. Loconto,

Please confirm that the correspondence we received from AAA below is accurate and complete, and that there are no other current existing deadlines besides (1) the Hospital must respond by 5:00pm ET on March 19, 2025 to show cause for the second day of hearing; and (2) briefs are due by 5:00pm ET on May 2, 2025. A direct response is necessary to avoid any further miscommunication of deadlines.

Thank you,

Marc



**Marc A. Sugerman** 📇

*Attorney at Law*



FORDHARRISON 🔗

1

**Exhibit 23**

300 South Orange Avenue, Suite 1300 | Orlando, FL 32801
msugerman@fordharrison.com | P: 407-418-2308

*FHPromise* | Subscribe

---

**From:** AAA Patrick Kimm <PatrickKimm@adr.org>
**Sent:** Tuesday, March 18, 2025 9:53 AM
**To:** Marc A. Sugerman <msugerman@fordharrison.com>; Jack Canzoneri <jcanzoneri@masslaborlawyers.com>
**Cc:** AAA Frank Binda <FrankBinda@adr.org>; ssinclair@masslaborlawyers.com; Chris Borruso
<Christopher.Borruso@tenethealth.com>; Nicole R. Tordesillas <ntordesillas@fordharrison.com>
**Subject:** RE: VENUE and COURT REPORTER STATUS: Massachusetts Nurses Association vs St. Vincent Hospital - Case 01-24-0000-7400

**Caution: Originated Outside FordHarrison.**

Good morning,

Please see below from Arbitrator Loconto:

To the parties:

A hearing was held in this matter on March 17, 2025, which is now closed.  The Employer did not appear for the hearing.  I have held the record open, over Union objection, through 5 pm ET on Wednesday, March 19, 2025 for the purpose of allowing the Employer - if it desires to do so - to show good cause for the second day of hearing in this matter to go forward as scheduled.

As the parties are aware, the next day of hearing is scheduled in this matter for Wednesday, April 2, 2025.  It is the Union's position that a full hearing has been held; the Employer had notice and opportunity to appear, and failed to do so.  The second day of hearing was only scheduled in reserve, and outside of the arbitrator's cancellation period, for use in the event that the hearing could not be completed in one day.  Accordingly, it is the Union's position that the matter should be closed and marked for briefing.

2

**Exhibit 23**

If the Employer wishes to be heard on this matter on April 2, please inform Mr. Kimm no later than 5 pm ET this Wednesday. Failure to respond or declination of this offer will result in closure of the hearing record. In either case, post-hearing briefs will be due for electronic delivery to Mr. Kimm no later than 5 pm on Friday, May 2, 2025.

Thank you,

Michael Loconto

Arbitrator



**AAA Patrick Kimm**
**Case Administrator**

American Arbitration Association
T: 617 695 6014 F: 617 451 0763 E: PatrickKimm@adr.org
200 State Street, 7th Floor, Boston, MA 02109
adr.org | icdr.org | aaaicdrfoundation.org



The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, dis distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immed reply email and destroy all copies of the transmittal. Thank you.

**From:** Marc A. Sugerman <msugerman@fordharrison.com>
**Sent:** Monday, March 17, 2025 9:36 AM
**To:** Michael Loconto <mtl@locontoadr.com>
**Cc:** AAA Frank Binda <FrankBinda@adr.org>; Jack Canzoneri <jcanzoneri@masslaborlawyers.com>; ssinclair@masslaborlawyers.com; AAA Patrick Kimm <PatrickKimm@adr.org>; Chris Borruso <Christopher.Borruso@tenethealth.com>; Nicole R. Tordesillas <ntordesillas@fordharrison.com>
**Subject:** RE: VENUE and COURT REPORTER STATUS: Massachusetts Nurses Association vs St. Vincent Hospital - Case 01-24-0000-7400

**\*\*\* External E-Mail – Use Caution \*\*\***

Given your ruling that the Employer is not permitted to have its own court reporter at its own expense to ensure that a record is made of any proceeding that takes place today, the Employer has cancelled its court reporter.

Thank you,

**Exhibit 23**

Marc



## **Marc A. Sugerman** 🔲

*Attorney at Law*



# FORD HARRISON 🔳

300 South Orange Avenue, Suite 1300 | Orlando, FL 32801
msugerman@fordharrison.com | P: 407-418-2308

*FHPromise* | **Subscribe**

**From:** Michael Loconto <mtl@locontoadr.com>
**Sent:** Saturday, March 15, 2025 6:27 PM
**To:** Marc A. Sugerman <msugerman@fordharrison.com>
**Cc:** AAA Frank Binda <FrankBinda@adr.org>; Jack Canzoneri <jcanzoneri@masslaborlawyers.com>; ssinclair@masslaborlawyers.com; AAA Patrick Kimm <PatrickKimm@adr.org>; Chris Borruso <Christopher.Borruso@tenethealth.com>; Nicole R. Tordesillas <ntordesillas@fordharrison.com>
**Subject:** Re: VENUE and COURT REPORTER STATUS: Massachusetts Nurses Association vs St. Vincent Hospital - Case 01-24-0000-7400

**Caution: Originated Outside FordHarrison.**

Mr. Sugerman,

**Exhibit 23**

My last message indicated that any other pre-hearing issues would be addressed at the hearing site on Monday. However, given your current position that the Employer will not participate in the hearing, I am compelled to respond to and correct your assertions.

I have also chosen to respond in a prompt manner for the purpose of providing the Employer with an opportunity to reconsider its position on participating in Monday's hearing. I will address the logistical basis for the Employer's participation below.

1. **Scheduled Hearing.** As the Employer has acknowledged, this matter has been scheduled for months and the parties are aware of my cancellation period. At no time has the Employer requested a cancellation, continuance or any other modification of the hearing that is scheduled for Monday, March 17, 2025. I will specifically direct your attention to my response to the Employer's initial request for recusal, which stated specifically that this matter would proceed as scheduled. To suggest that the hearing would not proceed because the Employer assumed as much is simply not supported by the record or by practice.

2. **Requests for Recusal.** As noted above, I responded to the Employer's initial request for recusal. It was denied. The Employer made additional assertions thereafter, which Mr. Sugerman specifically denied were either a request for reconsideration of the initial recusal request or a request for the AAA to consider disqualification of my appointment to hear this matter. The AAA subsequently elected to conduct a further review. I deferred to the AAA in the discharge of that process. The AAA has now reviewed the Employer's assertions and has declined to take action. There is no live controversy with respect to my status as the duly appointed fact finder in these proceedings.

3. **Subpoenas.** The parties made several subpoena requests in these proceedings. The parties initially conferred with the Arbitrator, who set a pre-hearing schedule for briefing and oral argument on the Employer's subpoena for Union records. I issued a written order for production on the Employer's subpoena, and subsequently issued another subpoena that was requested by the Union. The Employer raised process issues at the time that the Union subpoena was issued. I provided the Employer an opportunity to be heard and addressed the issues that were raised at that time. In stark contrast, at no time throughout these proceedings has the Employer requested further consideration of its subpoena for records from the LRC. In fact, your message of earlier today makes no such request, which calls into question the relevance of the underlying material.

Furthermore, I will remind the Employer that it failed to respond to the Union's subpoena by the deadline set by the Arbitrator. By contrast, the Union made a timely production of records subject to the subpoena ordered in this matter. The Employer then failed to respond to my request for an explanation of its failure to timely produce the records ordered through the subpoena, despite my warning that a

5

**Exhibit 23**

failure to provide an explanation - or to promptly produce the records requested in the alternative - would result in an adverse inference that the materials contained in those requested records were damaging to the Employer's position in these proceedings.

4. **The Employer's Other Requests for Information.**  The Employer has made a number of other requests for information from the AAA and the Arbitrator.  The AAA has responded, and I previously declined to respond.  I will briefly elaborate on my reason to decline the requests.

In this regard, it is important to set the context for the Employer's requests.  Practically speaking, the parties to these proceedings are extensively experienced with labor disputes in the arbitration forum.  Indeed, records produced in these proceedings to date demonstrate that well over 100 demands for arbitration have been filed since the parties began their collective bargaining relationship over two decades ago.  As such, the parties are well aware of the norms, standards, rules, processes and procedures in traditional labor arbitration.  For reference, the parties' collective bargaining agreement and the AAA Labor Rules substantially comprise the basis for these proceedings.  A simple review of these materials demonstrate the lack of any basis therein for the Employer's assertion that it is entitled to production on its putative information requests.  I am compelled to remind the Employer that the parties to a proceeding are not the finders of fact.  Simply put - that is my role, and as I have previously made clear in my ruling on the Employer's subpoena, relevance is the key consideration.

It is with this context in mind that I have declined to respond to the Employer's additional requests for information, which I have regarded as spurious, lacking in merit or any factual basis, and evidently intended to delay these proceedings and obfuscate the issues at hand.

5. **Court Reporter for Monday's Hearing.**  The Employer's request for an additional court reporter to attend the hearing, at the Employer's expense, is denied.  As the Employer is aware, the Union has made efforts to secure a court reporter for the hearing.  I have previously issued a ruling on the options for the Employer to access a record of Monday's hearing: specifically, the Employer may split the fee for the court reporter that the Union has secured for such purpose.  I will not permit the presence of multiple court reporters and the production of dueling records in these proceedings.

---

In closing, the Employer is certainly invited to reconsider its position and appear at the scheduled hearing on Monday.  As a threshold matter, I will state explicitly what has otherwise been implied in my previous correspondence: the Employer's assertions will not impact my ability to hear and decide this

6

**Exhibit 23**

dispute in a fair and impartial manner.  I respect that counsel is entitled to zealously advocate on behalf of its client, and in my role I am called upon to consider and issue rulings on party assertions.  In these proceedings, I have issued rulings and orders that are adverse to each party.  Accordingly, any assertions of prejudice are unfounded.

Likewise, the Employer is not adversely affected by the hearing proceeding as scheduled on Monday.  As a practical matter, the underlying dispute in this matter is one of contract interpretation and, accordingly, the Union will proceed with its case on Monday.  The parties have previously reserved a second day of hearing for April 2, at which time the Employer may certainly present its theory of the case.

As previously stated, I will not entertain further pre-hearing correspondence on this matter.  Anything further may be addressed at the hearing site on Monday.

Regards,

Michael Loconto
Arbitrator

On Sat, Mar 15, 2025 at 2:23 PM Marc A. Sugerman <msugerman@fordharrison.com> wrote:

All,

I was in bargaining all day yesterday and did not have a chance to get up to speed until this morning.  I was surprised to see so much transpire in so little time after so much inactivity for weeks.

First, for the last several weeks, neither AAA nor the Arbitrator responded to nor even acknowledged my repeated e-mails asking for the status of the Hospital's request for voluntary recusal or in the alternative that they make all required disclosures in light of the Arbitrator's admitted prior failure to disclose disqualifying information and AAA's subsequent insertion of its billing dispute with the Employer into this case. The Arbitrator and AAA both ignored my emails altogether.

**Exhibit 23**

At the same time, the deadline for the parties to confirm the location of the hearing expired on Monday, March 10, 2025. (*See attached* Email dated 1/24/25 from Arbitrator Loconto).  Although a Notice of Hearing was issued on September 20, 2024, I did not receive a single email or phone call from Mr. Canzoneri to discuss the location of the hearing before the deadline. Instead, both the Union and the Arbitrator ignored that deadline.  Because they did, and because the conflict of interest issues remained outstanding, the Hospital naturally assumed the hearing would not be going forward.  Beginning at 5:01 pm on Wednesday, March 12, 2025, two days after the deadline, Mr. Canzoneri began emailing AAA asking it to set a location for the hearing.  AAA and the Arbitrator ignored those emails as well, further buttressing the Employer's natural conclusion.

Then, on a Friday morning, the last business day before a hearing that nobody has mentioned for months, all of a sudden it's a fire drill.

At 8:30 yesterday morning, I got an e-mail from Mr. Kimm stating the Arbitrator was aware of the Union's emails and would respond to them later in the morning.

At 10:15 am, Mr. Binda responded to my repeated emails regarding the Arbitrator and AAA's conflicts of interest.  He advised that AAA considered disclosure of potentially disqualifying information to be "voluntary" and that the Arbitrator had no intention of responding to the Employer.  He further told the Employer it had until noon to agree with the Union on a venue for a hearing that was now purportedly going forward on Monday.

At 11:05 am, while I was sitting in a bargaining session for another client, Mr. Loconto issued an order on venue.  In that e-mail, Mr. Loconto contradicted Mr. Binda.  He stated he previously advised Mr. Kimm there was a March 13 deadline for the Employer to propose a venue and that the Employer already missed that deadline.  Mr. Kimm never advised the Employer of any such deadline and, as all parties are aware, this is not the first time Mr. Kimm has failed to provide information to the Employer in this case.  The Employer therefore asks that either the Arbitrator or AAA provide a copy of this deadline notice for its files.

Second, to date, the Employer has still not received an affirmative answer from either the Arbitrator or AAA on whether they will recuse themselves based on their obvious conflicts of interest.  Both continue to ignore the issue.  It was not until yesterday morning that AAA even bothered to inform the Employer that it considers what are normally mandatory disclosures to be (in this case at least) "voluntary."  This, of course, is contrary to the Code of Professional Responsibility for Arbitrators of Labor-Management Disputes, AAA's own rules and the Arbitrator's Oath the Arbitrator executed in this very case  (*See attached* Arbitrator's Oath).

Third, the Arbitrator has already precluded the Employer from subpoenaing Union documents regarding the Union and LRC's corruption of the parties' grievance and arbitration procedure, to which the owner of LRC has already admitted under oath.  The Employer knows (and assumes the Arbitrator also knows) that this information includes inappropriate communications between LRC and him. Compounding that problem further,

8

**Exhibit 23**

the Arbitrator has, without explanation, refused to sign the subpoena to LRC the Employer requested of him on July 25, 2024.  For the last eight months, he has simply ignored the Employer's requests for that subpoena.

Fourth, because the Arbitrator refused to communicate with the Employer until yesterday morning, the Employer now has no opportunity to subpoena witnesses to be present at a hearing on Monday.

In light of these and other considerations, the Employer obviously will not be appearing at any hearing on Monday.  To prevent additional deprivation of its rights, the Employer has secured a court reporter to ensure a record is made of any proceeding that may take place.  We ask that there be no interference with the Employer's attempt to protect itself in this regard.  The Employer also requests that it be provided with any exhibits the Arbitrator may take and that it be provided the opportunity to submit a brief should the Arbitrator and the Union proceed in this matter.  Please note however, that any participation by the Employer in this case will be under protest of the union's continuing corruption of the parties' grievance and arbitration procedure, the conflicts of interest of both the Arbitrator and AAA, the Arbitrator and AAA's refusal to provide required disclosures or communicate with the Employer, the lack of notice and the various denials of due process.

Thank you,

Marc



**Marc A. Sugerman** 🖼️

*Attorney at Law*



**FORDHARRISON** in

300 South Orange Avenue, Suite 1300 | Orlando, FL 32801
msugerman@fordharrison.com | P: 407-418-2308

*FHPromise* | **Subscribe**

9

**Exhibit 23**

**From:** Michael Loconto <mtl@locontoadr.com>
**Sent:** Friday, March 14, 2025 11:05 AM
**To:** AAA Frank Binda <FrankBinda@adr.org>
**Cc:** Marc A. Sugerman <msugerman@fordharrison.com>; Jack Canzoneri <jcanzoneri@masslaborlawyers.com>; ssinclair@masslaborlawyers.com; AAA Patrick Kimm <PatrickKimm@adr.org>
**Subject:** VENUE and COURT REPORTER STATUS: Massachusetts Nurses Association vs St. Vincent Hospital - Case 01-24-0000-7400

**Caution: Originated Outside FordHarrison.**

To the parties:

Good morning.  I am in receipt of the Union's recent request for action on the questions of venue and a court reporter.  I am also in receipt of AAA's response to the Employer's previous requests.

I will first address one inaccuracy in Mr. Binda's note from earlier this morning; the deadline for receipt of the Employer's response on venue was close of business yesterday (5 pm ET on 3/13/25).  I previously shared with Mr. Kimm that I would make a ruling on the requests for venue and court reporter by noon today, in recognition of the impending hearing and other time constraints that have been identified.

As such, please be advised of the following:

1.  **Venue.**  I have not received a response from the Employer on a venue preference.  As the parties will recall, it was previously determined that the hearings in this matter would proceed, and would take place as in-person hearings in the Worcester area.  The Union initially suggested three venues: St. Vincent; the MNA regional offices in Worcester; or the offices of Union counsel, in Southborough.  Noting the partisan nature of each of the previously suggested venue sites, the Union subsequently proposed a fourth, neutral site - the Hilton Garden Inn in Worcester, a hotel near the work site.

10

**Exhibit 23**

Ruling:  **The hearing will take place at the Hilton Garden Inn, 35 Major Taylor Blvd., Worcester, MA 01608.  The hearing is slated to begin promptly at 10 am on Monday, March 17, 2025.**  The parties will split all fees associated with the reservation of this hearing room.  Should the second day of hearing that is currently reserved for this matter remain necessary (Wednesday, April 2, 2025), the parties are invited to agree upon an alternative venue.  If no such agreement can be reached, the second day of hearing will also be held at a neutral site (i.e., the Hilton Garden Inn, or a similar venue if the Hilton Garden Inn is not available) and the same fee-splitting arrangement will apply.

2.  **Court Reporter.**  The Union has identified a court reporter for use in Monday's hearing, and has asked for the Employer's assent in the selection of the court reporter.  The Union has also asked the Employer to split the fee associated with the court reporter.  I have not received an Employer response on this issue.

Ruling:  **The Union is permitted to obtain a court reporter for Monday's hearing.**  Please make arrangements for the provision of an arbitrator's copy of the transcript to be produced.

In making this ruling, I note that some CBAs address the issue of court reporters, but no such argument has been put before me and the record indicates that the parties have previously used court reporters in prior disputes.  To this end, the Union has offered that the court reporter previously used in a dispute between the parties, Rebecca Forte Court Reporters, is not available for Monday's hearing.  As an alternative, the Union has identified another court reporter previously used in a dispute between the parties, Jones and Fuller, and is currently making inquiries about availability.  As time is of the essence given Monday's scheduled hearing, the Union may make a good faith effort to confirm the availability of Jones and Fuller at its earliest convenience.  If the Jones and Fuller service is not available, the Union may seek an alternative with availability.  Of course, nothing in the foregoing would prevent the Employer from collaborating with the Union in obtaining an available alternative court reporter for Monday's hearing.

The Employer may also agree to share in the cost of the selected court reporter.  However, there are numerous prior examples where parties may disagree about the cost, use or selection of a court reporter.  If the Union bears the full cost of the court reporter, the Employer will not be entitled to a copy of the transcript, but in-person access to review the Arbitrator's copy would be available upon request.

**Exhibit 23**

The foregoing rulings comprise the remainder of open pre-hearing issues known to the Arbitrator at this time.  Any other matters pending or which may arise in the interim may be addressed at the hearing.  I wish the parties a good weekend, and I will see you at 10 am on Monday in Worcester.

Regards,

Michael Loconto

Arbitrator

On Fri, Mar 14, 2025 at 10:15 AM AAA Frank Binda <FrankBinda@adr.org> wrote:

Re: Massachusetts Nurses Association vs St. Vincent Hospital - Case 01-24-0000-7400

Dear Counsel:

Please be advised that any request for additional information from the arbitrator is voluntary, and Arbitrator Loconto has advised the AAA that he does not intend to respond to the employer's requests of February 21, 2025, and March 6, 2025.

Also, communication between the American Arbitration Association ('AAA') and the arbitrator is not shared with the parties.  The  AAA serves as a neutral administrative agency and is not a party to any proceedings that is handled by the AAA.

As requested by the arbitrator, the parties are to agree on a location for the hearing on Monday, March 17, 2025, by **noon today**; otherwise, the arbitrator shall set the site of the hearing.

Sincerely,

Frank Binda

**Exhibit 23**



**Frank Binda**
**Assistant Vice President**

American Arbitration Association
1301 Atwood Ave, Suite 211N, Johnston, RI 02919
T: 401 868 4627 F: 866 644 0234
adr.org | icdr.org | aaaicdrfoundation.org

Heather Santo, Assistant Vice President
Northeast Case Management Center



The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me imm reply email and destroy all copies of the transmittal. Thank you.

**From:** Marc A. Sugerman <msugerman@fordharrison.com>
**Sent:** Friday, March 14, 2025 9:42 AM
**To:** AAA Patrick Kimm <PatrickKimm@adr.org>; AAA Frank Binda <FrankBinda@adr.org>; Michael Loconto <mtl@locontoadr.com>
**Cc:** ssinclair@masslaborlawyers.com; Jack Canzoneri <jcanzoneri@masslaborlawyers.com>
**Subject:** RE: URGENT Re: Massachusetts Nurses Association vs St. Vincent Hospital - Case 01-24-0000-7400

**\*\*\* External E-Mail – Use Caution \*\*\***

I am re-sending to include Arbitrator Loconto in order to make sure he is aware we are waiting on a response to the attached e-mail.

Thank you,

Marc



**Exhibit 23**

## Marc A. Sugerman 📇



*Attorney at Law*

## FORDHARRISON 🔗

300 South Orange Avenue, Suite 1300 | Orlando, FL 32801
msugerman@fordharrison.com | P: 407-418-2308

*FHPromise* | **Subscribe**

---

**From:** Marc A. Sugerman
**Sent:** Friday, March 14, 2025 9:24 AM
**To:** AAA Patrick Kimm <PatrickKimm@adr.org>; Jack Canzoneri <jcanzoneri@masslaborlawyers.com>; AAA Frank Binda <FrankBinda@adr.org>
**Cc:** ssinclair@masslaborlawyers.com
**Subject:** RE: URGENT Re: Massachusetts Nurses Association vs St. Vincent Hospital - Case 01-24-0000-7400

As a reminder, the Hospital is also waiting on a response to this e-mail.

Marc

SUBSCRIBE TODAY (FH) STAY INFORMED. STAY UPDATED

14

**Exhibit 23**

## Marc A. Sugerman 📇



*Attorney at Law*

**FORDHARRISON** in

300 South Orange Avenue, Suite 1300 | Orlando, FL 32801
msugerman@fordharrison.com | P: 407-418-2308

---

*FHPromise* | **Subscribe**

**From:** AAA Patrick Kimm <PatrickKimm@adr.org>
**Sent:** Friday, March 14, 2025 8:31 AM
**To:** Jack Canzoneri <jcanzoneri@masslaborlawyers.com>; AAA Frank Binda <FrankBinda@adr.org>
**Cc:** Marc A. Sugerman <msugerman@fordharrison.com>; ssinclair@masslaborlawyers.com
**Subject:** RE: URGENT Re: Massachusetts Nurses Association vs St. Vincent Hospital - Case 01-24-0000-7400

**<span style="color:red">Caution: Originated Outside FordHarrison.</span>**

Good morning,

Arbitrator Loconto is aware of the matter and will respond this morning.

 **AAA Patrick Kimm**
**Case Administrator**

American Arbitration Association
T: 617 695 6014 F: 617 451 0763 E: PatrickKimm@adr.org
200 State Street, 7th Floor, Boston, MA 02109
adr.org | icdr.org | aaaicdrfoundation.org



15

**Exhibit 23**

The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me imm reply email and destroy all copies of the transmittal. Thank you.

**From:** Jack Canzoneri <jcanzoneri@masslaborlawyers.com>
**Sent:** Thursday, March 13, 2025 9:15 PM
**To:** AAA Patrick Kimm <PatrickKimm@adr.org>; AAA Frank Binda <FrankBinda@adr.org>
**Cc:** msugerman@fordharrison.com; ssinclair@masslaborlawyers.com
**Subject:** URGENT Re: Massachusetts Nurses Association vs St. Vincent Hospital - Case 01-24-0000-7400

**\*\*\* External E-Mail – Use Caution \*\*\***

Mr. Kim and Mr. Binda,

I am sending this to alert you that action is required immediately in the issue I describe below.  We need to I'd identify the location for the hearing.  Please advise ASAP on Friday.  The hearing is Monday.  Same court reporter question.  I'm not sure why there has been no action.  I am adding Mr. Binda because of urgency and his involvement in this matter.  Thank you.  Jack

_____

**Jack J. Canzoneri**

McDonald Lamond Canzoneri LLC
352 Turnpike Road, Suite 210
Southborough, Massachusetts 01772
(508) 485-6600 Voice (ext. 105)
(508) 485-4477 Fax
email: jcanzoneri@masslaborlawyers.com
website:  www.masslaborlawyers.com

This document is intended only for the use of the person to whom it is addressed.  It may contain information that is privileged, confidential and exempt from disclosure under applicable law.    If you are not the intended recipient, any dissemination, distribution, copying or use of this document is strictly prohibited.  If you have received this communication in error, please notify me immediately at the e-mail address above and delete all copies of this communication.

16

**Exhibit 23**

On Thu, Mar 13, 2025 at 3:00 PM Jack Canzoneri <jcanzoneri@masslaborlawyers.com> wrote:

The deadline for the refund is 3:00 EDT Friday.  I note this because my follow up below did not make that clear.  Thank you.  Jack

_____

**Jack J. Canzoneri**

McDonald Lamond Canzoneri LLC
352 Turnpike Road, Suite 210
Southborough, Massachusetts 01772
(508) 485-6600 Voice (ext. 105)
(508) 485-4477 Fax
email: jcanzoneri@masslaborlawyers.com
website:  www.masslaborlawyers.com

This document is intended only for the use of the person to whom it is addressed.  It may contain information that is privileged, confidential and exempt from disclosure under applicable law.    If you are not the intended recipient, any dissemination, distribution, copying or use of this document is strictly prohibited.  If you have received this communication in error, please notify me immediately at the e-mail address above and delete all copies of this communication.

On Thu, Mar 13, 2025 at 1:53 PM Jack Canzoneri <jcanzoneri@masslaborlawyers.com> wrote:

Mr. Kimm:

I have an update to the correspondence below where I ask that you set a deadline for the hospital to respond and submit any dispute to the hospital about venue.

MNA believes that the three options it has proposed below for venue are fine and strongly prefers those.  However, MNA recognizes that the arbitrator may not look to impose a "non-neutral" site (i.e., the hospital or MNA offices or MNA counsel office).  Accordingly, MNA provides a fourth option for this case only and that option is not preferred by MNA as MNA prefers the three options it noted below or other neutral site that is less costly—but is a neutral site, and offered for this hearing only as follows:

17

**Exhibit 23**

**Hilton Garden Inn**

**35 Major Taylor Blvd.**

**Worcester, MA 01608**

This location is around the block from the hospital, .7 miles away.  Click <u>here</u> for a map that shows the location.

We have secured a conference space for $400 ($200 each side splitting the cost, the other options of course that we prefer and have offered are without cost).  To avoid losing this option for the Monday hearing, we placed a $200 deposit to hold the conference room **but that deposit becomes non-refundable unless we cancel before 3:00 p.m. EDT.**  I attach a copy of that contract as well.

Finally, to reiterate MNA proposes the three locations noted below.  in the alternative, if there is a dispute and the arbitrator is not inclined to rule in favor of one of those three locations, then MNA provides the above option of the Hilton Garden Inn for this case only and in context of time sensitivity.

Thank you.

Jack

_____

**Jack J. Canzoneri**

18

**Exhibit 23**

McDonald Lamond Canzoneri LLC
352 Turnpike Road, Suite 210
Southborough, Massachusetts 01772
(508) 485-6600 Voice (ext. 105)
(508) 485-4477 Fax
email: jcanzoneri@masslaborlawyers.com
website:  www.masslaborlawyers.com

This document is intended only for the use of the person to whom it is addressed.  It may contain information that is privileged, confidential and exempt from disclosure under applicable law.    If you are not the intended recipient, any dissemination, distribution, copying or use of this document is strictly prohibited.  If you have received this communication in error, please notify me immediately at the e-mail address above and delete all copies of this communication.

On Thu, Mar 13, 2025 at 1:39 PM Jack Canzoneri <jcanzoneri@masslaborlawyers.com> wrote:

Mr. Kimm,

On behalf of MNA I request that you process the issue of the venue and court reporter, and, as necessary, provides deadlines for response by the hospital for today, and if there is a dispute, submit that dispute to the arbitrator later today.  I am making this request because the arbitration is scheduled for Monday and these two details are very time sensitive at this point.  The issues are:

**1.  What shall be the venue?**  MNA has proposed three options below.  Does the hospital concur with any of those options?  If not, what is the hospital's proposed alternative, and whether MNA agrees with that alternative or proposes another option that is at a site not connected to MNA or the hospital (i.e., not at the hospital, MNA office in Worcester, or MNA counsel's office, all of which MNA proposes).   Absent a response by the hospital MNA requests that the arbitrator rule on this issue.

**2.  What company shall be the court reporter?**  We have proposed a company, the same one the parties used in another case, and it is time to contact the court reporter to confirm Monday attendance at the venue we decide upon.  Does the hospital concur with using that court reporter?  If not, then MNA would request that the arbitrator rule on that issue.

Thank you.

19

**Exhibit 23**

Jack

_____

**Jack J. Canzoneri**

McDonald Lamond Canzoneri LLC
352 Turnpike Road, Suite 210
Southborough, Massachusetts 01772
(508) 485-6600 Voice (ext. 105)
(508) 485-4477 Fax
email: jcanzoneri@masslaborlawyers.com
website:  www.masslaborlawyers.com

This document is intended only for the use of the person to whom it is addressed.  It may contain information that is privileged, confidential and exempt from disclosure under applicable law.    If you are not the intended recipient, any dissemination, distribution, copying or use of this document is strictly prohibited.  If you have received this communication in error, please notify me immediately at the e-mail address above and delete all copies of this communication.

On Wed, Mar 12, 2025 at 6:06 PM Jack Canzoneri <jcanzoneri@masslaborlawyers.com> wrote:

Mr. Kimm,

In addition MNA wants the hearing to be transcribed by a court reporter.  In the past the parties have disagreed with who the court reporter should be.  That was resolved in the most recent arbitration by use of the firm Rebecca Forte Court Reporters.  This is not the court reporter we normally use, but we are fine to proceed with that court below.  I ask Attorney Sugerman to advise whether the hospital is in agreement with using the same court reporter we used in the last caes, as noted below by tomorrow morning, and if so we will be happy to contact the court reporter to secure services.

20

**Exhibit 23**

Thank you.

Jack

21

**Exhibit 23**



**Exhibit 23**

_____

**Jack J. Canzoneri**

McDonald Lamond Canzoneri LLC
352 Turnpike Road, Suite 210
Southborough, Massachusetts 01772
(508) 485-6600 Voice (ext. 105)
(508) 485-4477 Fax
email: jcanzoneri@masslaborlawyers.com
website:  www.masslaborlawyers.com

This document is intended only for the use of the person to whom it is addressed.  It may contain information that is privileged, confidential and exempt from disclosure under applicable law.    If you are not the intended recipient, any dissemination, distribution, copying or use of this document is strictly prohibited.  If you have received this communication in error, please notify me immediately at the e-mail address above and delete all copies of this communication.

On Wed, Mar 12, 2025 at 5:00 PM Jack Canzoneri <jcanzoneri@masslaborlawyers.com> wrote:

Mr. Kimm,

Thank you for your reminder email yesterday.  I did not review email history, but my memory is that this is to be an in-person hearing.  I email to confirm that and propose a location as follows.

There are three locations that MNA proposes.

1.  **St. Vincent Hospital** - we propose a conference room at the hospital.  This was the practice for many years prior to 2022, and MNA proposes to resume that practice.

23

**Exhibit 23**

2. **Region 2 MNA Office** - 11 E. Central Street, Worcester, MA 01605, .8 miles from the hospital, ample space and free parking.  Click here for a map to see its location.

3. **McDonald Lamond Canzoneri LLC** - office, 352 Turnpike Rd, Suite 210, Southborough, MA 01772.  This is 24 miles from the hospital, about a 25 minute drive, free and ample parking, and a large conference room and smaller conference room for caucuses.  Click here for a map to see its location in relation to the hospital.

Thank you.

Jack

_____

**Jack J. Canzoneri**

McDonald Lamond Canzoneri LLC
352 Turnpike Road, Suite 210
Southborough, Massachusetts 01772
(508) 485-6600 Voice (ext. 105)
(508) 485-4477 Fax
email: jcanzoneri@masslaborlawyers.com
website:  www.masslaborlawyers.com

This document is intended only for the use of the person to whom it is addressed.  It may contain information that is privileged, confidential and exempt from disclosure under applicable law.    If you are not the intended recipient, any dissemination, distribution, copying or use of this document is strictly prohibited.  If you have received this communication in error, please notify me immediately at the e-mail address above and delete all copies of this communication.

On Tue, Mar 11, 2025 at 1:41 PM <PatrickKimm@adr.org> wrote:

Hello,

Please review the attached correspondence regarding the above-referenced case.

**Exhibit 23**

Feel free to contact me with any questions, comments or concerns you have related to this matter.

Thank you.

*ATTORNEY WORK PRODUCT - PRIVILEGED & CONFIDENTIAL*

The information contained in this message from Ford & Harrison LLP and any attachments are privileged and confidential and intended only for the named recipient(s). If you have received this message in error, you are prohibited from reviewing, copying, distributing or using the information. Please contact the sender immediately by return email and delete the original message and attachments. In the absence of an executed engagement letter or fee contract, no attorney client relationship is established by this communication.

--

Arbitrator Michael Loconto

(617) 331-2112

mtl@locontoadr.com

The information contained in this transmission, including any attachments, are intended for the exclusive use of the addressees and may contain confidential or privileged information.  If you are not the intended recipient, please notify Arbitrator Loconto by telephone at 617-331-2112 or by email at mtl@locontoadr.com, and please destroy all copies of this message and any attachments.

Arbitrator Loconto works exclusively as a neutral, offering arbitration, mediation, and other dispute resolution services.  While Arbitrator Loconto is an attorney and a member of the Massachusetts bar, Loconto ADR is not a law practice.  Nothing in this email is intended to offer legal advice, and no attorney-client relationship is formed through any exchange of correspondence related to this email.

Receipt by anyone other than the intended recipient is not a waiver of any arbitrator's, mediator's, attorney-client, or work product immunity, privilege, or other applicable protection.

25

**Exhibit 23**

--

Arbitrator Michael Loconto

(617) 331-2112

mtl@locontoadr.com

The information contained in this transmission, including any attachments, are intended for the exclusive use of the addressees and may contain confidential or privileged information.  If you are not the intended recipient, please notify Arbitrator Loconto by telephone at 617-331-2112 or by email at mtl@locontoadr.com, and please destroy all copies of this message and any attachments.

Arbitrator Loconto works exclusively as a neutral, offering arbitration, mediation, and other dispute resolution services.  While Arbitrator Loconto is an attorney and a member of the Massachusetts bar, Loconto ADR is not a law practice.  Nothing in this email is intended to offer legal advice, and no attorney-client relationship is formed through any exchange of correspondence related to this email.

Receipt by anyone other than the intended recipient is not a waiver of any arbitrator's, mediator's, attorney-client, or work product immunity, privilege, or other applicable protection.

--
Arbitrator Michael Loconto
(617) 331-2112
mtl@locontoadr.com

The information contained in this transmission, including any attachments, are intended for the exclusive use of the addressees and may contain confidential or privileged information.  If you are not the intended recipient, please notify Arbitrator Loconto by telephone at 617-331-2112 or by email at mtl@locontoadr.com, and please destroy all copies of this message and any attachments.

Arbitrator Loconto works exclusively as a neutral, offering arbitration, mediation, and other dispute resolution services.  While Arbitrator Loconto is an attorney and a member of the Massachusetts bar, Loconto ADR is not a law practice.  Nothing in this email is intended to offer legal advice, and no attorney-client relationship is formed through any exchange of correspondence related to this email.

Receipt by anyone other than the intended recipient is not a waiver of any arbitrator's, mediator's, attorney-client, or work product immunity, privilege, or other applicable protection.

**Exhibit 23**

| | |
|---|---|
| **From:** | Michael J. Spagnola |
| **Sent:** | Friday, March 21, 2025 1:03 PM |
| **To:** | mtl@locontoadr.com |
| **Cc:** | PatrickKimm@adr.org; RGannon@mnarn.org; jpinkham@mnarn.org; Nicole R. Tordesillas; Borruso, Christopher; Henderson, Francis; jcanzoneri@masslaborlawyers.com; shilli@masslaborlawyers.com; wmcgill@mnarn.org; Marc A. Sugerman; ldefazio@masslaborlawyers.com; ssinclair@masslaborlawyers.com |
| **Subject:** | Massachusetts Nurses Association vs St. Vincent Hospital - Case 01-24-0000-7400 |
| **Attachments:** | SVH - LRC Arbitration - AAA Subpoena.pdf; SVH - LRC Arbitration - Amanda Wells Subpoena.pdf; SVH - LRC Arbitration - Frank Binda Subpoena.pdf; SVH - LRC Arbitration - Jack Canzoneri Subpoena.pdf; SVH - LRC Arbitration - Jan Teehan Subpoena.pdf; SVH - LRC Arbitration - Lisa DeFazio Subpoena.pdf; SVH - LRC Arbitration - LRC Subpoena.pdf; SVH - LRC Arbitration - Patrick Kimm Subpoena.pdf; SVH - LRC Arbitration - Suzanne Hilli Subpoena.pdf; SVH - LRC Arbitration - Wendy McGill Subpoena.pdf; LRC and Case 01-24-0000-7400 - Email 20241018.pdf |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

Good afternoon – on St. Vincent Hospital's behalf, I am attaching eight subpoenas ad testificandum and two subpoenas duces tecum for Arbitrator Loconto to sign and return.   With respect to the subpoena duces tecum for LRC, on October 18, 2024, counsel for LRC requested two weeks from that date to review the subpoena and file any motion in response (see attached email chain).  To date, counsel for LRC has not filed any response or motion to quash.  As such, LRC has defaulted in opposing the subpoena and should be ordered to produce the documents.

Thank you.



**Michael J. Spagnola** 🪪
*Attorney at Law*

# FORDHARRISON ✈

CityPlace II, 185 Asylum Street, Suite 820 | Hartford, CT 06103
MSpagnola@fordharrison.com | P: 860-740-1364

**LTC4 Certified Legal Professional | *FHPromise* | Subscribe**

**Exhibit 24**

| From: | AAA Patrick Kimm <PatrickKimm@adr.org> |
|---|---|
| Sent: | Friday, March 28, 2025 4:31 PM |
| To: | Samantha Sinclair; Marc A. Sugerman; Jack Canzoneri; Jason Powalisz; Lenow@masslaborlaw.com; Michael J. Spagnola; Marc A. Sugerman |
| Cc: | Frank Binda |
| Subject: | FW: ORDER ON SUBPOENAS: MNA and St. Vincent Hospital, AAA No. 01-24-0000-7400 |

**Caution: Originated Outside FordHarrison.**

Hello All,

Please see below from Arbitrator Loconto:

**ORDER**

On March 21, 2025, Employer's representative Michael Spagnola, Esq. requested that the Arbitrator sign and issue ten subpoenas.  This is the second round of Employer subpoenas in these proceedings.  The subpoenas were requested for the purpose of obtaining information from the Union; the American Arbitration Association (the "AAA") and the Labor Relations Connection (the "LRC"), which are non-parties in these proceedings; and the Union's representatives, the law firm of McDonald Lamond Canzoneri LLC ("MLC").  On March 22, 2025, LRC counsel Howard Lenow, Esq. filed an opposition to the Employer's subpoenas.[1]  On March 25, 2025, Union counsel Jason Powalisz, Esq., filed a timely motion to quash the Employer's subpoenas.

My Order is as follows:

**1.      AAA Subpoena Requests are Denied**

The material requested from the AAA, and testimony from representatives of the AAA, is irrelevant to the present dispute.  As I made clear in my December 23, 2024 ruling on the Employer's previous subpoena requests, Rule 27 of the AAA Labor Rules governs evidence in a related labor arbitration proceeding.  Relevance is the standard of review.  The arbitrator retains the discretion to determine whether evidence is material and necessary to determine the disposition of the dispute.  The Rule continues:

> The arbitrator shall determine the admissibility, the relevance, and materiality of the evidence offered and may exclude such evidence deemed by the arbitrator to be cumulative or irrelevant.

This matter is limited to case administration performed by the LRC.  The AAA is neither a subject of nor party to these proceedings.  There is nothing to be gained by subjecting AAA employees to testimony in these proceedings or by subjecting to the AAA to the burdensome production of irrelevant materials.

**2.      The Canzoneri Subpoena is Denied**

As the parties are well aware, the Employer failed to appear for the first day of hearing in this matter, March 17, 2025.  The Union appeared at the March 17 hearing, presented its case in chief, and rested its case.  Accordingly, the Employer is not entitled to call Jack Canzoneri as a witness in this matter.  Canzoneri was the Union's sole witness.  Had the Employer appeared at the hearing, it would have had ample opportunity to cross-examine Canzoneri.  The Employer, however, chose to decline attendance at the first day of

1

**Exhibit 25**

hearing.  This is a matter of fundamental fairness, and the Employer's own behavior has dictated this outcome.

**3.      Other Subpoena Requests are Subject to an Employer Offer of Proof and the Presentation of Its Case**

Of course, there is no rule that limits a party from calling adverse parties to testify as witnesses in support of its case.  In addition to the Employer's failure to appear at the March 17 hearing, however, the Employer's previous omissions have resulted in further restrictions on the Employer's defense.  Specifically, the Employer was warned on February 25 and March 15, 2025 that its failure to respond to the previous subpoenas issued on the Union's behalf[2] would permit the Union to request that the Arbitrator draw an adverse inference on the assumption that the material that has not been produced would be damaging to the Employer's position(s) in this matter.  The Union made such a request at the March 17 hearing, which was granted.

Despite the Employer's failure to appear at that hearing, I allowed the Employer to make a good cause showing that the second scheduled date in this matter should proceed.  As I have previously indicated, the Employer is not entitled to a second day of hearing.  The Employer's request to proceed was devoid of any showing of cause that the April 2 hearing should proceed as scheduled.  I determined that the hearing should proceed, over the Union's objection, because my decision on the merits of this grievance will benefit from the Employer's presentation of its defense.  Allowing the Employer to proceed with its defense, however, does not relieve it from the restrictions of my previous rulings.

Based on the adverse inference that has been drawn, I am unwilling at this time to order that the MLC staff, MNA representatives or LRC representatives requested appear on April 2 and provide testimony.  This will not affect the Employer's ability to put on its case.  For example, it would be of particular relevance to the merits of this dispute for the Employer to call its own employee(s) to testify about the subject matter contained in the September 20, 2023 electronic mail message that generated the grievance in this matter.  Testimony of this nature would be probative of the Employer's position on this matter.

The parties will take note that arbitrators may direct a party to focus its case on certain issues.  Rule 25 governs the Order of Proceedings:

> The arbitrator, exercising his or her discretion, shall conduct the proceedings with a view to *expediting the resolution of the dispute* and may direct the order of proof, bifurcate proceedings and *direct the parties to focus their presentations on issues the decision on which could dispose of all or part of the case*.

(*emphasis added*).  I am requiring the Employer to make an offer of proof about what will be shown or proven by its case, and the related relevance of the anticipated testimony that has been requested from the aforementioned individuals.  Further instructions are below

**4.      LRC Subpoena Duces Tecum**

Finally, I will reiterate that the Employer's actions in this matter provide sufficient reason to deny the Employer's request for LRC records.  An adverse inference has been drawn, as previously discussed.  In addition, and as the Union and LRC argue in opposition to this subpoena, through its own inaction the Employer has waived its right to the material it has requested from the LRC.  I am inclined to agree.

The Employer initially made a request for LRC records on July 25, 2024, concurrent with the request for Union records that became the subject of my December 23, 2024 ruling.  The parties held a telephone conference about the subpoena for Union records, a briefing schedule was established on the key issues in that request, and oral argument was held prior to my issuance of a ruling.  My ruling followed, and the Union then requested similar records from the Employer in its own subpoena.  The parties continued to address the

**Exhibit 25**

Union's subpoena through correspondence and a telephone conference prior to my January 24, 2025 ruling, and still more correspondence followed on or around the February 14, 2025 deadline when the Employer failed to provide materials responsive to the Union's subpoena.  An additional round of correspondence followed in the days leading up to the first day of hearing, which took place on March 17, 2025.  The Employer asserted that it has had correspondence with the LRC's counsel about this subpoena, on or around October 18, 2024.  However, the Employer's March 21, 2025 request represents the first time that it has requested consideration of the LRC records by the Arbitrator over a span of eight months, despite the multiplicity of aforementioned activity on related matters.[3]  On this basis alone, it would be reasonable to conclude the Employer has waived its right to request that a non-party engage in a voluminous document production.

Additionally, and as noted in my March 15, 2025 correspondence, the Employer's sudden renewal of its request at this late date indicates the marginal relevance of the information it seeks.  As also indicated by the LRC's and the Union's opposition memoranda, the LRC has previously responded to the Employer in another forum and provided information that is cumulative or duplicative of the material requested here.  As the Union also noted, the information requested here - absent a proffer from the Employer - appears to be cumulative or duplicative of the information that the Union provided in response to my December 23, 2024 ruling on the Employer's previous subpoena.  As a practical matter, it is also clear to me that the Employer is possession of at least some of the material that has been requested, given the Employer's prior representations in its request to seek my recusal from this matter.

As such, the Employer is required to provide an make an offer of proof about what will be shown or proven by its case, and the related relevance of the materials requested from the LRC.  Further instructions are below.

-----

**Conclusion.**  The Employer shall file the offers of proof that are required by this Order with the AAA case administrator, Mr. Kimm, no later than 5 p.m. ET on Monday, March 31, 2025.  For the avoidance of doubt, the Employer shall make an offer of proof with respect to the testimony for each of the individuals noted in section 3, above, and for each of the categories of materials sought from the LRC in section 4, above.  This is not a request for the Employer to litigate its entire case through its forthcoming submission; a few sentences or paragraphs should be sufficient for each of the aforementioned items.

I will leave my final ruling on these requests open until the conclusion of the Employer's case on April 2, 2025.  Should the Employer's presentation of its case on April 2 make a sufficient showing of support for or otherwise prove the assertions made in its required offers of proof during the presentation of its case on April 2, 2025, I will consider whether any of the testimony or materials requested might be further probative of the truth in this matter and take appropriate action at that time.

This order is entered as of March 28, 2025.

---

[1] The LRC is not a party to these proceedings and Lenow's filing was unsolicited.  The filing indicated that the LRC's counsel was informed of the Employer's subpoena requests by MNA counsel.

[2] The Arbitrator issued signed subpoenas on January 6, 2025, and confirmed the subpoenas on January 24, 2025.  The Employer had a deadline of February 14, 2025 to provide the requested material to the Union.  The Employer has not done so.  By contrast, the Union was ordered on December 23, 2025 to provide information of a similar nature to the Employer, with the same deadline.  The Union made a timely and fulsome response.

[3] Lenow's email and opposition dated March 22, 2025 is the first correspondence that has the Arbitrator has received from representatives of the LRC in these proceedings.

---END MESSAGE TO THE PARTIES---

**Exhibit 25**

--



Michael T. Loconto, Esq.
Labor Arbitrator
(617) 331-2112
mtl@locontoadr.com
https://locontoadr.com
*Based in Boston, Nationwide Practice*

The information contained in this transmission, including any attachments, are intended for the exclusive use of the addressees and may contain confidential or privileged information.  If you are not the intended recipient, please notify Arbitrator Loconto by telephone at 617-331-2112 or by email at mtl@locontoadr.com, and please destroy all copies of this message and any attachments.

Arbitrator Loconto works exclusively as a neutral, offering arbitration, mediation, and other dispute resolution services.  While Arbitrator Loconto is an attorney and a member of the Massachusetts bar, Loconto ADR is not a law practice.  Nothing in this email is intended to offer legal advice, and no attorney-client relationship is formed through any exchange of correspondence related to this email.

Receipt by anyone other than the intended recipient is not a waiver of any arbitrator's, mediator's, attorney-client, or work product immunity, privilege, or other applicable protection.

 **AAA Patrick Kimm**
**Case Administrator**

American Arbitration Association
T: 617 695 6014 F: 617 451 0763 E: PatrickKimm@adr.org
200 State Street, 7th Floor, Boston, MA 02109
adr.org | icdr.org | aaaicdrfoundation.org



The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, discl distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immedi reply email and destroy all copies of the transmittal. Thank you.

**Exhibit 25**

| | |
|---|---|
| **From:** | Marc A. Sugerman |
| **Sent:** | Tuesday, April 1, 2025 11:55 AM |
| **To:** | AAA Patrick Kimm; Jason Powalisz; Samantha Sinclair; Jack Canzoneri; Michael J. Spagnola |
| **Cc:** | Frank Binda |
| **Subject:** | RE: ORDER ON SUBPOENAS: MNA and St. Vincent Hospital, AAA No. 01-24-0000-7400 |

Mr. Kimm, please send to Arbitrator Loconto immediately as this is time sensitive due to a flight scheduled this evening.

---

Arbitrator Loconto,

I do not know how to be any more clear. The Employer is obviously not prepared to proceed with its own witnesses tomorrow as you have refused to allow the Employer to subpoena any of its own witnesses.

To the extent you are asking whether the Employer will present an unidentified Hospital employee who you have predetermined must testify about unspecified subject matter contained in a September 20, 2023 email that you have prejudged would be probative of an unspecified position of the Employer, please be advised that the Employer has no intention of doing so. Nor would it even know how to satisfy any such improper and unprecedented dictate.

I have a 6:30 pm flight booked for this evening. I ask that you please respond by 1:00 pm whether you will require me to incur time and expense on behalf of my client to appear at a hearing at which I have been denied the ability to call any of the Employer's witnesses as a precondition to your issuing a ruling on the Employer's subpoena requests.

Thank you,

Marc





**Marc A. Sugerman** 🔖
*Attorney at Law*

**FORDHARRISON** 🔗
300 South Orange Avenue, Suite 1300 | Orlando, FL 32801
msugerman@fordharrison.com | P: 407-418-2308

*FHPromise* | **Subscribe**

---

**From:** AAA Patrick Kimm <PatrickKimm@adr.org>
**Sent:** Tuesday, April 1, 2025 10:30 AM

**Exhibit 26**

**To:** Jason Powalisz <jpowalisz@masslaborlawyers.com>; Marc A. Sugerman <msugerman@fordharrison.com>; Samantha Sinclair <ssinclair@masslaborlawyers.com>; Jack Canzoneri <jcanzoneri@masslaborlawyers.com>; Michael J. Spagnola <MSpagnola@fordharrison.com>
**Cc:** Frank Binda <BindaF@adr.org>
**Subject:** RE: ORDER ON SUBPOENAS: MNA and St. Vincent Hospital, AAA No. 01-24-0000-7400

### Caution: Originated Outside FordHarrison.

Good morning,

See below from Arbitrator Loconto:

To the parties:

Good morning.  I am in receipt of the Employer's last correspondence, an email message dated 3/31/25 at 4:42 pm.

On the matter of the requested offers of proof: the Employer's offers of proof with respect to AAA materials and witnesses and Mr. Canzoneri are not responsive, as those requests have already been denied.  On the remaining offers of proof: thank you for submitting your view with respect to the relative probative value of testimony from each witness or the material requested.  The balance of the Employer's correspondence is not responsive to my March 28, 2025 Order and will not be addressed in further detail - save for the status of the upcoming evidentiary hearing.

Specifically, the Employer has raised the question of proceeding with Wednesday's hearing.  As my Order noted, "it would be of particular relevance to the merits of this dispute for the Employer to call its own employee(s) to testify about the subject matter contained in the September 20, 2023 electronic mail message that generated the grievance in this matter.  Testimony of this nature would be probative of the Employer's position on this matter."   It would appear, however, that the Employer is not prepared to proceed with any of its own witnesses on the merits of this matter.

I did not have a chance to review the Union's correspondence regarding room and reporter cancellation fees until approximately 10:15 am this morning.  In order to provide the Employer with an opportunity to provide a clear response about whether it wishes to proceed tomorrow, the Employer is directed to confirm with Mr. Kimm by email no later than 2 pm ET today whether it will proceed with the presentation of its case tomorrow, Wednesday, April 2, 2025.

Regards,

Michael Loconto
Arbitrator



**AAA Patrick Kimm**
**Case Administrator**

American Arbitration Association
T: 617 695 6014 F: 617 451 0763 E: PatrickKimm@adr.org
200 State Street, 7th Floor, Boston, MA 02109
adr.org | icdr.org | aaaicdrfoundation.org



The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately b reply email and destroy all copies of the transmittal. Thank you.

**From:** Jason Powalisz <jpowalisz@masslaborlawyers.com>
**Sent:** Tuesday, April 1, 2025 8:09 AM

**Exhibit 26**

**To:** AAA Patrick Kimm <PatrickKimm@adr.org>
**Cc:** Marc A. Sugerman <msugerman@fordharrison.com>; Samantha Sinclair <ssinclair@masslaborlawyers.com>; Jack Canzoneri <jcanzoneri@masslaborlawyers.com>; Frank Binda <BindaF@adr.org>; Michael J. Spagnola <MSpagnola@fordharrison.com>
**Subject:** Re: ORDER ON SUBPOENAS: MNA and St. Vincent Hospital, AAA No. 01-24-0000-7400

### *** External E-Mail – Use Caution ***

Mr. Kimm - based on the Employer's email below we understand there will not be a hearing tomorrow but would like to have that confirmed if possible before 10am so we can contact the Hotel and the Court Reporter in an effort to save on any cancellation fees.  As well, if the Arbitrator orders a briefing schedule as mentioned in that email we are fine with any date 30-35 or so days from today (May 5-9 week) per usual.  Thank you.

---

**Jason Powalisz**
McDonald Lamond Canzoneri LLC
352 Turnpike Road, Suite 210
Southborough, Massachusetts 01772
(508) 485-6600 Voice (ext. 108)
(508) 485-4477 Fax
email: jpowalisz@masslaborlawyers.com
website:  www.masslaborlawyers.com

This document is intended only for the use of the person to whom it is addressed.  It may contain information that is privileged, confidential and exempt from disclosure under applicable law.    If you are not the intended recipient, any dissemination, distribution, copying or use of this document is strictly prohibited.  If you have received this communication in error, please notify me immediately at the e-mail address above and delete all copies of this communication.

On Mon, Mar 31, 2025 at 4:45 PM AAA Patrick Kimm <PatrickKimm@adr.org> wrote:

Received and forwarded to Arbitrator Loconto.



**AAA Patrick Kimm**
**Case Administrator**

American Arbitration Association
T: 617 695 6014 F: 617 451 0763 E: PatrickKimm@adr.org
200 State Street, 7th Floor, Boston, MA 02109
adr.org | icdr.org | aaaicdrfoundation.org



The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.

---

**From:** Marc A. Sugerman <msugerman@fordharrison.com>
**Sent:** Monday, March 31, 2025 4:42 PM
**To:** AAA Patrick Kimm <PatrickKimm@adr.org>; Samantha Sinclair <ssinclair@masslaborlawyers.com>; Jason Powalisz <jpowalisz@masslaborlawyers.com>; Jack Canzoneri <jcanzoneri@masslaborlawyers.com>

**Exhibit 26**

**Cc:** Frank Binda <BindaF@adr.org>; Michael J. Spagnola <MSpagnola@fordharrison.com>
**Subject:** RE: ORDER ON SUBPOENAS: MNA and St. Vincent Hospital, AAA No. 01-24-0000-7400

**\*\*\* External E-Mail – Use Caution \*\*\***

Mr. Kimm,

Please transmit this to Arbitrator Loconto:

---

Arbitrator Loconto,

**<u>Preliminary Objections</u>**

In response to the Arbitrator's March 28, 2025 Order, the Employer lodges the following objections, which are not all inclusive:

1. The Arbitrator issued his rulings on the Employer's subpoenas without input or argument from the Employer. This is improper, prejudicial and indicative of bias.

2. With respect to an adverse inference, the Arbitrator states, "the union made such a request at the March 17 hearing, which was granted." The transcript, however, shows no such adverse inference being granted nor does it show what the inference is. This is improper, prejudicial and indicative of bias.

3. With respect to the Employer's subpoena to MNA, the Arbitrator states, "[t]he union made a timely and fulsome response." There is nothing in the record to support this finding. Moreover, it is false as a matter of fact. This is improper, prejudicial and indicative of bias.

4

**Exhibit 26**

4. With respect to the Employer's subpoena to LRC, the arbitrator states, "the Employer's March 21, 2025 request represents the first time that it has requested consideration of the LRC records by the arbitrator over a span of eight months." This is false as a matter of fact. This is improper, prejudicial and indicative of bias.

5. With respect to the Employer's subpoena to LRC, the arbitrator states, "Lenow's email and opposition dated March 22, 2025 is the first correspondence that has [sic] the Arbitrator has received from representatives of the LRC in these proceedings." The Employer has no knowledge of whether this statement is accurate. However, Attachment A to Lenow's own filing suggests the Arbitrator had *ex parte* communications with AAA on LRC's behalf, which communications were never made known to the Employer by AAA or the Arbitrator. This is improper, prejudicial and indicative of bias.

6. The Arbitrator notes, "[o]f course, there is no rule that limits a party from calling adverse parties to testify as witnesses in support of its case." The Arbitrator nevertheless prevents the Employer from calling some such witnesses altogether. This is improper, prejudicial and indicative of bias.

7. The Arbitrator notes, "[o]f course, there is no rule that limits a party from calling adverse parties to testify as witnesses in support of its case." The Arbitrator nevertheless prevents the Employer from calling such witnesses unless and until if first presents unnamed witnesses he has decided the Employer must present to testify about unspecified "subject matter contained in the September 20, 2023 electronic mail message…," which he has determined the Employer's witness must testify about. This is improper, prejudicial and indicative of bias.

8. The Arbitrator notes, "[o]f course, there is no rule that limits a party from calling adverse parties to testify as witnesses in support of its case." The Arbitrator nevertheless now requires the Employer to make this offer of proof, which will provide the subpoenaed parties advance notice of the matters on which they will be examined as well as the opportunity to coordinate their testimony. This is improper, prejudicial and indicative of bias.

9. Shortly after receiving the Arbitrator's March 28, 2025 Order, the Employer requested the Arbitrator reveal the nature of the adverse inference he stated he granted during the March 17 hearing, which inference is not reflected in the record. This afternoon at 3:38 pm on March 31, 2025, just over an hour before the deadline for the Employer to submit its offer of proof, the Arbitrator responded indicating that his March 28, 2025 Order "is sufficiently clear on its face" which is obviously not the case considering that he references a ruling on the requested adverse inference that was never made in writing or on the record, which the Union does not appear to dispute. This is improper, prejudicial and indicative of bias.

10. In light of the above and other considerations, the Employer does not know how it is expected to proceed in this matter. Notwithstanding, the Employer submits the following offers of proof.

**AAA and its Employees**

**Exhibit 26**

AAA

The documents subpoenaed by the Employer will be used to elicit testimony from Frank Binda and Patrick Kimm demonstrating that AAA did not act as a neutral with respect to the Employer, as indicated below, which would (1) deprive the Employer of the benefit of its bargain, and (2) constitute a change in the underlying circumstances that gave rise to any purported past practice of using AAA to administer arbitration proceedings between the Employer and the Union.

Frank Binda

Binda will testify, among other things, that:

- At the Union's request, AAA violated its own rules to conclude it should "administer" arbitrations between the Employer and the Union;
- AAA does not act as a neutral with respect to the Employer;
- AAA has effectively made itself a party to this and other proceedings between the parties by requiring Arbitrators to resolve a billing dispute between it and the Employer;
- AAA "administers" arbitrations between the parties in accordance with the wishes of the Union.

Patrick Kimm

Kimm will testify, among other things, that:

- AAA does not act as a neutral with respect to the Employer;
- AAA withholds information from the Employer to the benefit of the Union;
- AAA advocates the Union's position in front of arbitrators;
- AAA delays delivery of Employer communications to arbitrators to the benefit of the Union;
- AAA "administers" arbitrations between the parties in accordance with the wishes of the Union.

**LRC and its Employees**

LRC

The documents subpoenaed by the Employer will be used to elicit testimony from Jan Teehan and Amanda Wells demonstrating that LRC did not act as a neutral with respect to the Employer, as indicated below, which would (1) deprive the Employer of the benefit of its bargain, and (2) constitute a change in the underlying circumstances that gave rise to any purported past practice of using LRC to administer arbitration proceedings between the Employer and the Union.

Jan Teehan

6

**Exhibit 26**

Teehan will testify, among other things, that:

- LRC does not act as a neutral with respect to the Employer;
- LRC publicly holds itself out as a neutral agency to serve the parties, but represents to arbitrators that LRC serves them;
- LRC edits union submissions when it benefits the Union to do so, but does not do so when it would be detrimental to the union;
- LRC engages in *ex parte* communications with employees of MNA and its counsel's law firm to "administer" cases to the Union's benefit;
- LRC refused to submit employer submissions to arbitrators when they was adverse to the union's position;
- LRC edits arbitrator's decisions and issues its own decisions in place of arbitrators';
- LRC "cherry picks" arbitrators to serve the union's interests;
- LRC coordinated with arbitrators to provide the very rulings adverse to the Employer that the Union introduced as Exhibits in this case;
- If details of her communications with MNA and its counsel's office became known, "we will be ruined."

Amanda Wells

Wells will testify, among other things:

- She purports to argue the Employer's position directly to arbitrators without the Employer's knowledge or permission, to the detriment of the Employer;
- She engages in *ex parte* communications with employees of MNA and its counsel's law firm to "administer" cases to the Union's benefit.

**McDonald Lamond Canzoneri, LLC and its Employees**

The testimony of McDonald Lamond Canzoneri, LLC and its employees will demonstrate that LRC did not act as a neutral with respect to the Employer, as indicated below, which would (1) deprive the Employer of the benefit of its bargain, and (2) constitute a change in the underlying circumstances that gave rise to any purported past practice of using LRC and/or AAA to administer arbitration proceedings between the Employer and the Union.

Jack Canzoneri

Canzoneri will testify to matters not raised during his testimony in the Union's case in chief, among other things, that:

- The parties' grievance and arbitration procedure has been corrupted by the MNA and its representatives;
- Employees of his firm regularly engage in *ex parte* communications with LRC to instruct them on how to administer cases to the benefit of the union;
- MNA did not timely comply with the subpoena issued to it by the Employer in this case;
- During the course of these proceedings, he made false representations about LRC and his own actions with respect to LRC;

7

**Exhibit 26**

- During these and other proceedings between the parties, he worked with LRC to prevent the true relationship between MNA and LRC from becoming known.

Suzanne Hilli

Hilli will testify, among other thing, that:

- She engages in *ex parte* communications with LRC to instruct LRC to administer cases to benefit the union;

- If details of her communications with LRC became known, "we will be ruined."

Lisa DeFazio

DeFazio will testify, among other thing, that:

- She engages in *ex parte* communications with LRC to instruct LRC to administer cases to benefit the union.

**MNA Representative**

The testimony of MNA's representative will demonstrate that LRC did not act as a neutral with respect to the Employer, as indicated below, which would (1) deprive the Employer of the benefit of its bargain, and (2) constitute a change in the underlying circumstances that gave rise to any purported past practice of using LRC and/or AAA to administer arbitration proceedings between the Employer and the Union.

Wendy McGill

McGill will testify, among other things:

- She engages in *ex parte* communications with LRC staff to the benefit of the Union.

**April 2, 2025 Hearing Date**

The Employer had intended to present its case through the foregoing witnesses. As the Arbitrator has now ruled the Employer may not call any of its intended witnesses at the hearing on April 2, 2025, there appears to be no value in holding a hearing on Wednesday. If the Arbitrator will not allow the Employer to present its case, then the Employer requests that the Arbitrator set a briefing schedule. If the Arbitrator will allow the Employer to present its case, then he

**Exhibit 26**

should afford the Employer the opportunity to present its witnesses on a later date and requests that the Arbitrator order that the hearing date be re-scheduled.


---


Thank you,


Marc




## Marc A. Sugerman 🪪

*Attorney at Law*

**FORDHARRISON** 🔗

300 South Orange Avenue, Suite 1300 | Orlando, FL 32801
msugerman@fordharrison.com | P: 407-418-2308

*FHPromise* | **Subscribe**

---

**From:** AAA Patrick Kimm <PatrickKimm@adr.org>
**Sent:** Monday, March 31, 2025 3:38 PM
**To:** Samantha Sinclair <ssinclair@masslaborlawyers.com>; Jason Powalisz <jpowalisz@masslaborlawyers.com>; Marc A. Sugerman <msugerman@fordharrison.com>; Jack Canzoneri <jcanzoneri@masslaborlawyers.com>

**Exhibit 26**

**Cc:** Frank Binda <BindaF@adr.org>; Michael J. Spagnola <MSpagnola@fordharrison.com>
**Subject:** RE: ORDER ON SUBPOENAS: MNA and St. Vincent Hospital, AAA No. 01-24-0000-7400

**Caution: Originated Outside FordHarrison.**

Good afternoon,

See below from Arbitrator Loconto:

To the parties:

I have received and reviewed the parties' correspondence.  My order of March 28, 2025 is sufficiently clear on its face.

Regards,

Michael Loconto

Arbitrator



**AAA Patrick Kimm**
**Case Administrator**

American Arbitration Association
T: 617 695 6014 F: 617 451 0763 E: PatrickKimm@adr.org
200 State Street, 7th Floor, Boston, MA 02109
adr.org | icdr.org | aaaicdrfoundation.org



The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosur distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately reply email and destroy all copies of the transmittal. Thank you.

**From:** Samantha Sinclair <ssinclair@masslaborlawyers.com>
**Sent:** Monday, March 31, 2025 1:55 PM

10

**Exhibit 26**

**To:** AAA Patrick Kimm <PatrickKimm@adr.org>
**Cc:** Jason Powalisz <jpowalisz@masslaborlawyers.com>; Marc A. Sugerman <msugerman@fordharrison.com>; Frank Binda <BindaF@adr.org>; Jack Canzoneri <jcanzoneri@masslaborlawyers.com>; Michael J. Spagnola <MSpagnola@fordharrison.com>
**Subject:** Re: ORDER ON SUBPOENAS: MNA and St. Vincent Hospital, AAA No. 01-24-0000-7400

**\*\*\* External E-Mail – Use Caution \*\*\***

Thank you.

On Mon, Mar 31, 2025 at 2:00 PM AAA Patrick Kimm <PatrickKimm@adr.org> wrote:

Received and forwarded to Arbitrator Loconto.



**AAA Patrick Kimm**
**Case Administrator**

American Arbitration Association
T: 617 695 6014 F: 617 451 0763 E: PatrickKimm@adr.org
200 State Street, 7th Floor, Boston, MA 02109
adr.org | icdr.org | aaaicdrfoundation.org



The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately reply email and destroy all copies of the transmittal. Thank you.

**From:** Samantha Sinclair <ssinclair@masslaborlawyers.com>
**Sent:** Monday, March 31, 2025 1:46 PM
**To:** AAA Patrick Kimm <PatrickKimm@adr.org>
**Cc:** Jason Powalisz <jpowalisz@masslaborlawyers.com>; Marc A. Sugerman <msugerman@fordharrison.com>; Frank Binda <BindaF@adr.org>; Jack Canzoneri <jcanzoneri@masslaborlawyers.com>; Michael J. Spagnola <MSpagnola@fordharrison.com>
**Subject:** Re: ORDER ON SUBPOENAS: MNA and St. Vincent Hospital, AAA No. 01-24-0000-7400

**\*\*\* External E-Mail – Use Caution \*\*\***

Mr. Kimm:

**Exhibit 26**

Please transmit this further point that we inadvertently omitted from our email this morning about the adverse inference issue raised by the hospital.

Arbitrator Loconto:

In our email earlier today we inadvertently failed to reference a **second adverse inference** that clearly should be drawn regarding the merits of this case. In Arbitrator Loconto's February 25, 2025, directive to the Employer to immediately produce all documents, he explained that a failure to do so would result in an adverse inference that the material the Hospital failed to produce "**would be damaging to the Employer's position(s) in this matter.**"

Regarding those documents, we mentioned already that there should be an adverse inference relating to the past practice of labor agency administration of arbitration demands. However, there is another aspect of the subpoena which also warrants an adverse inference that the failure to produce documents implies that all such material would be damaging to the Employer's position. That aspect is covered in paragraph "E" of the MNA subpoena for records from the hospital, MNA requested documents as follows:

**"E. Identify and provide all documents concerning and relating to the St. Vincent Hospital's position that the collective bargaining agreement only requires MNA and St. Vincent Hospital to use of AAA or LRC for selection of the arbitrator in each case, but not for administration of the arbitration after the selection of the arbitrator, including, inter alia, as set forth in the email dated Sep 20, 2023, 4:02 PM from Christopher T. Borruso, on behalf of the St. Vincent Hospital to the Director of the Labor Relations Connection (LRC) Jan Teehan."**

MNA understands from the hospital submissions during the briefing relating to the motion to quash subpoenas (that lead to your Dec 23rd decision), that the hospital intends to raise a defense that the LRC is corrupt, that it is biased, and that this permitted it to declare on Sept 20, 2023 that LRC should cease administration after arbitrator appointment. For example at page 10 of its opposition to MNA's motion to quash the SVH subpoena, SVH wrote: "The Hospital intends to investigate, as a defense, whether the Union's use of LRC was premised on LRC's established bias against the Hospital, rather than a purported past practice."

Therefore, given the above paragraph "E" and the hospital's defense, <u>**the second adverse inference for the hospital failure and refusal to produce documents should be that documents show there is no bias by LRC**</u>. This is a very important second aspect of the adverse inference that should be drawn.

Respectfully submitted,

**Exhibit 26**

Samantha Sinclair

On Mon, Mar 31, 2025 at 8:28 AM AAA Patrick Kimm <PatrickKimm@adr.org> wrote:

Received and forwarded to Arbitrator Loconto,



**AAA Patrick Kimm**
**Case Administrator**

American Arbitration Association
T: 617 695 6014 F: 617 451 0763 E: PatrickKimm@adr.org
200 State Street, 7th Floor, Boston, MA 02109
adr.org | icdr.org | aaaicdrfoundation.org



The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclo
distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediat
reply email and destroy all copies of the transmittal. Thank you.

**From:** Jason Powalisz <jpowalisz@masslaborlawyers.com>
**Sent:** Monday, March 31, 2025 8:25 AM
**To:** AAA Patrick Kimm <PatrickKimm@adr.org>
**Cc:** Marc A. Sugerman <msugerman@fordharrison.com>; Frank Binda <BindaF@adr.org>; Jack Canzoneri <jcanzoneri@masslaborlawyers.com>; Samantha Sinclair <ssinclair@masslaborlawyers.com>; Michael J. Spagnola <MSpagnola@fordharrison.com>
**Subject:** Re: ORDER ON SUBPOENAS: MNA and St. Vincent Hospital, AAA No. 01-24-0000-7400

**\*\*\* External E-Mail – Use Caution \*\*\***

Mr. Kimm,

Please send this reply to the hospital email below about the adverse inference.

Arbitrator Loconto,

We write in response to the Employer's 5:52pm Friday email re adverse inference.  We note again that no one should even be in this position - the hearing should have unequivocally closed on March 17, but here we all are dealing with the (sadly foreseeable) consequences of giving the Employer more rope when

13

**Exhibit 26**

none was due.  See V.A. Medical Center 83 BNA LA 546 (1984)  ("Where a party has been accorded full opportunity to appear before the Arbitrator, and be heard, he cannot complain with the result if he voluntarily chooses to stay away, or fails to appear for reasons that would not constitute unavoidable casualty, or excusable neglect…."); see also Musicians Local 336 v. Bonatz, 90 LRRM 2956, D.C. NJ (1974) ( **"Where a party boycotts an arbitration proceeding after receiving due notice, a default judgment duly entered under the terms of a labor contract will be honored and _enforced_ in a subsequent judicial proceeding." )**

The Union could go on and on with citations as we understand this to be an unprecedented opportunity given to a willful defaulting party to have a second day of hearing.  For the time being, MNA responds as follows:

1.  We think it's outrageous that the hospital says to Mr. Kimm that he should "direct" you to clarify.  That's disrespectful.  We are all sophisticated parties with a keen understanding of diction and they chose "direct."  How do we know that shows they are further, thumbing their nose at the arbitrator?  Because we can be sure that if this was federal or state court, they would not contact the clerk of the courts and command that the clerk "direct" the judge to issue a ruling.  So this email continues that type of disregard and ignores that arbitrators have the authority to weigh arguments and make decisions under the AAA rules.

2.  Contrary to its Friday claim, the hospital was fully on notice that you might draw an adverse inference; it had an opportunity to argue against that at multiple key junctures but defaulted, and that you then drew an adverse inference, as follows:

    **(a)** By email on Feb 25, 2025, 1:32 PM AAA sent an email that contained your response:  "In lieu of holding a status conference, Mr. Sugerman is **directed** to respond to this message **with an explanation** for the Employer's failure to meet the production timeline outlined in my December 23, 2024 order.  The Employer is further **directed to produce the information as ordered without further delay**.  **Failure** to do so will **permit the Union to request that I draw an adverse inference** against the Employer on the assumption that the material that has not been produced would be damaging to the Employer's position(s) in this matter."  The hospital issued no response to your direction for an explanation, and no documents in response to the subpoena—just silence, no response under protest, just nothing.  That's a perilous course of action and you clearly outlined the risk at that point.

    **(b)** At the arbitration hearing Union counsel requested that you draw an adverse inference and on transcript page 64 we understood your response as stating  that the adverse inference would be drawn ("would be in play").  The hospital had an opportunity at that point to argue but was silent.  It said nothing in response to that.  It said nothing at the hearing because, despite clear notice, it chose not to attend, and that's part of the peril of doing that, not showing up means you lose the opportunity to make an argument.

14

**Exhibit 26**

The Hospital could have been present, attended, and made whatever argument it wanted, presented whatever issue he believed, cross examined, proposed exhibits, and argued for the hospital to have an opportunity to present its case on April 2, a point that you opened (over the union objection) in your ruling.  Rather, the hospital took on that risk and failed to show up. So, in the face of you saying the adverse inference "would be in play" the hospital was silent.

(c) Even though the hospital had the transcript showing the foregoing since March 19th, which at most was ambiguous about whether an adverse inference was drawn (and MNA was clear and understood the arbitrator's statement that an adverse inference "would be in play" as indicating that one was drawn), the hospital sent no communication to oppose that.

(d) So it was in this context that you issued a ruling on the objections and confirmed what MNA understood from the hearing -- that you drew an adverse inference, if not at the hearing when you said "it would be in play" **then fully clarified that you were drawing one in making the Order**.

And then, having waived its right to make an argument about that repeatedly, and if they were in federal court they wouldn't dare make such an absurd argument because of Rule 11, **the hospital unsurprisingly makes the frivolous claim that there may have been deliberations or communications without being captured by the court reporter.  Of course that didn't happen.**

**3.**  Then the hospital pretends it does not know the meaning of the adverse inference.  it had multiple opportunities to clarify that, but was silent all along because it either didn't attend or never communicated a request in response to your email of Feb 25 or the ruling at the hearing that it "would be in play."  Well, we know the reason why all of the documents were subpoenaed by both sides.  Both sides argued they were relevant to past practice on the question of whether the AAA and LRC under the contract language <u>for over 100 cases administered arbitrations</u>, without objection, after the selection of the arbitrator as MNA contends -- or whether that is not true for whatever reason the hospital would pretend.

<u>Where it failed to produce those records the adverse inference is that there was such a past practice as MNA contends, an overwhelming, longstanding, unequivocal past practice that supports MNA's preferred interpretation of the CBA</u>.  That is obvious from the extensive arguments submitted by the parties orally and in writing about two subpoenas, one by MNA and one by the hospital, that sought production of those records, with one party producing (MNA) and one failing and refusing to produce (the hospital).

Respectfully submitted,

15

**Exhibit 26**

Jason

---

**Jason Powalisz**
McDonald Lamond Canzoneri LLC
352 Turnpike Road, Suite 210
Southborough, Massachusetts 01772
(508) 485-6600 Voice (ext. 108)
(508) 485-4477 Fax
email: jpowalisz@masslaborlawyers.com
website:  www.masslaborlawyers.com

This document is intended only for the use of the person to whom it is addressed.  It may contain information that is privileged, confidential and exempt from disclosure under applicable law.    If you are not the intended recipient, any dissemination, distribution, copying or use of this document is strictly prohibited.  If you have received this communication in error, please notify me immediately at the e-mail address above and delete all copies of this communication.

On Mon, Mar 31, 2025 at 7:59 AM AAA Patrick Kimm <PatrickKimm@adr.org> wrote:

Good morning,

Received and forwarded to Arbitrator Loconto.



**AAA Patrick Kimm**
**Case Administrator**

American Arbitration Association
T: 617 695 6014 F: 617 451 0763 E: PatrickKimm@adr.org
200 State Street, 7th Floor, Boston, MA 02109
adr.org | icdr.org | aaaicdrfoundation.org



The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disc distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immedia reply email and destroy all copies of the transmittal. Thank you.

**Exhibit 26**

**From:** Marc A. Sugerman <msugerman@fordharrison.com>
**Sent:** Friday, March 28, 2025 5:52 PM
**To:** AAA Patrick Kimm <PatrickKimm@adr.org>
**Cc:** Frank Binda <BindaF@adr.org>; Jason Powalisz <jpowalisz@masslaborlawyers.com>; Jack Canzoneri <jcanzoneri@masslaborlawyers.com>; Samantha Sinclair <ssinclair@masslaborlawyers.com>; Michael J. Spagnola <MSpagnola@fordharrison.com>
**Subject:** RE: ORDER ON SUBPOENAS: MNA and St. Vincent Hospital, AAA No. 01-24-0000-7400

**\*\*\* External E-Mail – Use Caution \*\*\***

Mr. Kimm,

Please transmit this to Arbitrator Loconto immediately upon receipt and direct him to respond promptly.

---

Arbitrator Loconto,

The Hospital is still trying to understand your order regarding the restrictions placed on the Hospital's presentation of evidence.

Of immediate concern is your statement that "[t]he Union made such a request [for an adverse inference] at the March 17 hearing, which was granted." The hearing transcript does not reflect that ruling. You state on the record, "The statement was made by the arbitrator, either in a call or in an e-mail or both, that an adverse inference would be drawn or could be requested by the union to be drawn. I'll interpret your statement to be your request that an adverse inference be drawn and that is taken under advisement." The transcript does not reflect any further ruling on that issue. Were there other proceedings that were not transcribed? Did you issue a written order that was not transmitted to the Hospital?

If you have granted the Union's request for an unspecified "adverse inference," please identify what adverse inference has been drawn. The record contains no indication whatsoever of the substance of the "adverse inference" that you have already drawn. It is crucial to understand how you have already pre-judged the evidence, likely without any substantive consideration of any of the evidence presented by the Union and certainly without receiving the Hospital's evidence, which it has told you would be presented on April 2, or the Hospital's legal argument, which it has consistently made clear it intended to present.

17

**Exhibit 26**

Thank you,

Marc Sugerman



## Marc A. Sugerman 📇

*Attorney at Law*



**FORDHARRISON** in

300 South Orange Avenue, Suite 1300 | Orlando, FL 32801
msugerman@fordharrison.com | P: 407-418-2308

*FHPromise* | **Subscribe**

**From:** AAA Patrick Kimm <PatrickKimm@adr.org>
**Sent:** Friday, March 28, 2025 4:31 PM
**To:** Samantha Sinclair <ssinclair@masslaborlawyers.com>; Marc A. Sugerman <msugerman@fordharrison.com>; Jack Canzoneri <jcanzoneri@masslaborlawyers.com>; Jason Powalisz <jpowalisz@masslaborlawyers.com>; Lenow@masslaborlaw.com; Michael J. Spagnola <MSpagnola@fordharrison.com>; Marc A. Sugerman <msugerman@fordharrison.com>
**Cc:** Frank Binda <BindaF@adr.org>
**Subject:** FW: ORDER ON SUBPOENAS: MNA and St. Vincent Hospital, AAA No. 01-24-0000-7400

**Caution: Originated Outside FordHarrison.**

Hello All,

**Exhibit 26**

Please see below from Arbitrator Loconto:

**ORDER**

On March 21, 2025, Employer's representative Michael Spagnola, Esq. requested that the Arbitrator sign and issue ten subpoenas. This is the second round of Employer subpoenas in these proceedings. The subpoenas were requested for the purpose of obtaining information from the Union; the American Arbitration Association (the "AAA") and the Labor Relations Connection (the "LRC"), which are non-parties in these proceedings; and the Union's representatives, the law firm of McDonald Lamond Canzoneri LLC ("MLC"). On March 22, 2025, LRC counsel Howard Lenow, Esq. filed an opposition to the Employer's subpoenas.[1] On March 25, 2025, Union counsel Jason Powalisz, Esq., filed a timely motion to quash the Employer's subpoenas.

My Order is as follows:

**1.     AAA Subpoena Requests are Denied**

The material requested from the AAA, and testimony from representatives of the AAA, is irrelevant to the present dispute. As I made clear in my December 23, 2024 ruling on the Employer's previous subpoena requests, Rule 27 of the AAA Labor Rules governs evidence in a related labor arbitration proceeding. Relevance is the standard of review. The arbitrator retains the discretion to determine whether evidence is material and necessary to determine the disposition of the dispute. The Rule continues:

> The arbitrator shall determine the admissibility, the relevance, and materiality of the evidence offered and may exclude such evidence deemed by the arbitrator to be cumulative or irrelevant.

This matter is limited to case administration performed by the LRC. The AAA is neither a subject of nor party to these proceedings. There is nothing to be gained by subjecting AAA employees to testimony in these proceedings or by subjecting to the AAA to the burdensome production of irrelevant materials.

**2.     The Canzoneri Subpoena is Denied**

19

**Exhibit 26**

As the parties are well aware, the Employer failed to appear for the first day of hearing in this matter, March 17, 2025.  The Union appeared at the March 17 hearing, presented its case in chief, and rested its case.  Accordingly, the Employer is not entitled to call Jack Canzoneri as a witness in this matter.  Canzoneri was the Union's sole witness.  Had the Employer appeared at the hearing, it would have had ample opportunity to cross-examine Canzoneri.  The Employer, however, chose to decline attendance at the first day of hearing.  This is a matter of fundamental fairness, and the Employer's own behavior has dictated this outcome.

**3.      Other Subpoena Requests are Subject to an Employer Offer of Proof and the Presentation of Its Case**

Of course, there is no rule that limits a party from calling adverse parties to testify as witnesses in support of its case.  In addition to the Employer's failure to appear at the March 17 hearing, however, the Employer's previous omissions have resulted in further restrictions on the Employer's defense.  Specifically, the Employer was warned on February 25 and March 15, 2025 that its failure to respond to the previous subpoenas issued on the Union's behalf[2] would permit the Union to request that the Arbitrator draw an adverse inference on the assumption that the material that has not been produced would be damaging to the Employer's position(s) in this matter.  The Union made such a request at the March 17 hearing, which was granted.

Despite the Employer's failure to appear at that hearing, I allowed the Employer to make a good cause showing that the second scheduled date in this matter should proceed.  As I have previously indicated, the Employer is not entitled to a second day of hearing.  The Employer's request to proceed was devoid of any showing of cause that the April 2 hearing should proceed as scheduled.  I determined that the hearing should proceed, over the Union's objection, because my decision on the merits of this grievance will benefit from the Employer's presentation of its defense.  Allowing the Employer to proceed with its defense, however, does not relieve it from the restrictions of my previous rulings.

Based on the adverse inference that has been drawn, I am unwilling at this time to order that the MLC staff, MNA representatives or LRC representatives requested appear on April 2 and provide testimony.  This will not affect the Employer's ability to put on its case.  For example, it would be of particular relevance to the merits of this dispute for the Employer to call its own employee(s) to testify about the subject matter contained in the September 20, 2023 electronic mail message that generated the grievance in this matter.  Testimony of this nature would be probative of the Employer's position on this matter.

The parties will take note that arbitrators may direct a party to focus its case on certain issues.  Rule 25 governs the Order of Proceedings:

> The arbitrator, exercising his or her discretion, shall conduct the proceedings with a view to *expediting the resolution of the dispute* and may direct the order of proof,

**Exhibit 26**

bifurcate proceedings and *direct the parties to focus their presentations on issues the decision on which could dispose of all or part of the case*.

(*emphasis added*). I am requiring the Employer to make an offer of proof about what will be shown or proven by its case, and the related relevance of the anticipated testimony that has been requested from the aforementioned individuals. Further instructions are below

### 4. LRC Subpoena Duces Tecum

Finally, I will reiterate that the Employer's actions in this matter provide sufficient reason to deny the Employer's request for LRC records. An adverse inference has been drawn, as previously discussed. In addition, and as the Union and LRC argue in opposition to this subpoena, through its own inaction the Employer has waived its right to the material it has requested from the LRC. I am inclined to agree.

The Employer initially made a request for LRC records on July 25, 2024, concurrent with the request for Union records that became the subject of my December 23, 2024 ruling. The parties held a telephone conference about the subpoena for Union records, a briefing schedule was established on the key issues in that request, and oral argument was held prior to my issuance of a ruling. My ruling followed, and the Union then requested similar records from the Employer in its own subpoena. The parties continued to address the Union's subpoena through correspondence and a telephone conference prior to my January 24, 2025 ruling, and still more correspondence followed on or around the February 14, 2025 deadline when the Employer failed to provide materials responsive to the Union's subpoena. An additional round of correspondence followed in the days leading up to the first day of hearing, which took place on March 17, 2025. The Employer asserted that it has had correspondence with the LRC's counsel about this subpoena, on or around October 18, 2024. However, the Employer's March 21, 2025 request represents the first time that it has requested consideration of the LRC records by the Arbitrator over a span of eight months, despite the multiplicity of aforementioned activity on related matters.[3] On this basis alone, it would be reasonable to conclude the Employer has waived its right to request that a non-party engage in a voluminous document production.

Additionally, and as noted in my March 15, 2025 correspondence, the Employer's sudden renewal of its request at this late date indicates the marginal relevance of the information it seeks. As also indicated by the LRC's and the Union's opposition memoranda, the LRC has previously responded to the Employer in another forum and provided information that is cumulative or duplicative of the material requested here. As the Union also noted, the information requested here - absent a proffer from the Employer - appears to be cumulative or duplicative of the information that the Union provided in response to my December 23, 2024 ruling on the Employer's previous subpoena. As a practical matter, it is also clear to me that the Employer is possession of at least some of the material that has been requested, given the Employer's prior representations in its request to seek my recusal from this matter.

As such, the Employer is required to provide an make an offer of proof about what will be shown or proven by its case, and the related relevance of the materials requested from the LRC. Further instructions are below.

21

**Exhibit 26**

-----

**Conclusion.**  The Employer shall file the offers of proof that are required by this Order with the AAA case administrator, Mr. Kimm, no later than 5 p.m. ET on Monday, March 31, 2025.  For the avoidance of doubt, the Employer shall make an offer of proof with respect to the testimony for each of the individuals noted in section 3, above, and for each of the categories of materials sought from the LRC in section 4, above.  This is not a request for the Employer to litigate its entire case through its forthcoming submission; a few sentences or paragraphs should be sufficient for each of the aforementioned items.

I will leave my final ruling on these requests open until the conclusion of the Employer's case on April 2, 2025.  Should the Employer's presentation of its case on April 2 make a sufficient showing of support for or otherwise prove the assertions made in its required offers of proof during the presentation of its case on April 2, 2025, I will consider whether any of the testimony or materials requested might be further probative of the truth in this matter and take appropriate action at that time.

This order is entered as of March 28, 2025.

---

[1] The LRC is not a party to these proceedings and Lenow's filing was unsolicited.  The filing indicated that the LRC's counsel was informed of the Employer's subpoena requests by MNA counsel.

[2] The Arbitrator issued signed subpoenas on January 6, 2025, and confirmed the subpoenas on January 24, 2025.  The Employer had a deadline of February 14, 2025 to provide the requested material to the Union.  The Employer has not done so.  By contrast, the Union was ordered on December 23, 2025 to provide information of a similar nature to the Employer, with the same deadline.  The Union made a timely and fulsome response.

[3] Lenow's email and opposition dated March 22, 2025 is the first correspondence that has the Arbitrator has received from representatives of the LRC in these proceedings.

---END MESSAGE TO THE PARTIES---

--

22

**Exhibit 26**



Michael T. Loconto, Esq.
Labor Arbitrator

(617) 331-2112

mtl@locontoadr.com

https://locontoadr.com

*Based in Boston, Nationwide Practice*

The information contained in this transmission, including any attachments, are intended for the exclusive use of the addressees and may contain confidential or privileged information.  If you are not the intended recipient, please notify Arbitrator Loconto by telephone at 617-331-2112 or by email at mtl@locontoadr.com, and please destroy all copies of this message and any attachments.

Arbitrator Loconto works exclusively as a neutral, offering arbitration, mediation, and other dispute resolution services.  While Arbitrator Loconto is an attorney and a member of the Massachusetts bar, Loconto ADR is not a law practice.  Nothing in this email is intended to offer legal advice, and no attorney-client relationship is formed through any exchange of correspondence related to this email.

Receipt by anyone other than the intended recipient is not a waiver of any arbitrator's, mediator's, attorney-client, or work product immunity, privilege, or other applicable protection.

 **AAA Patrick Kimm**
**Case Administrator**

American Arbitration Association
T: 617 695 6014 F: 617 451 0763 E: PatrickKimm@adr.org
200 State Street, 7th Floor, Boston, MA 02109
adr.org | icdr.org | aaaicdrfoundation.org



The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disc distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immedia reply email and destroy all copies of the transmittal. Thank you.

**Exhibit 26**

*ATTORNEY WORK PRODUCT - PRIVILEGED & CONFIDENTIAL*

The information contained in this message from Ford & Harrison LLP and any attachments are privileged and confidential and intended only for the named recipient(s). If you have received this message in error, you are prohibited from reviewing, copying, distributing or using the information. Please contact the sender immediately by return email and delete the original message and attachments. In the absence of an executed engagement letter or fee contract, no attorney client relationship is established by this communication.

--

_____

**Samantha E. Sinclair**

McDonald Lamond Canzoneri LLC
352 Turnpike Road, Suite 210
Southborough, Massachusetts 01772
(508) 485-6600 Voice (ext. 106)
(508) 485-4477 Fax
email: ssinclair@masslaborlawyers.com
website:  www.masslaborlawyers.com

This document is intended only for the use of the person to whom it is addressed.  It may contain information that is privileged, confidential and exempt from disclosure under applicable law.    If you are not the intended recipient, any dissemination, distribution, copying or use of this document is strictly prohibited.  If you have received this communication in error, please notify me immediately at the e-mail address above and delete all copies of this communication.

--

_____

**Samantha E. Sinclair**

McDonald Lamond Canzoneri LLC
352 Turnpike Road, Suite 210
Southborough, Massachusetts 01772
(508) 485-6600 Voice (ext. 106)
(508) 485-4477 Fax
email: ssinclair@masslaborlawyers.com
website:  www.masslaborlawyers.com

This document is intended only for the use of the person to whom it is addressed.  It may contain information that is privileged, confidential and exempt from disclosure under applicable law.    If you are not the intended recipient, any dissemination, distribution, copying or use of this document is strictly prohibited.  If you have received this

**Exhibit 26**

communication in error, please notify me immediately at the e-mail address above and delete all copies of this communication.

25

**Exhibit 26**

A MATTER IN ARBITRATION BEFORE
ARBITRATOR MICHAEL LOCONTO

ST. VINCENT HOSPITAL,

     Employer,

and                                 AAA Case No. 01-24-0000-7400

MASSACHUSETTS NURSES
ASSOCIATION,

     Union.

                              /

## **EMPLOYER'S ARBITRATION BRIEF**

### I.    **INTRODUCTION**

This is a simple case. The Union asks the Arbitrator to ignore the clear and unambiguous language of the parties' collective bargaining agreement and then rewrite that agreement to add a provision requiring the parties to use Labor Relations Connection ("LRC") to "administer" arbitrations so that the Union can continue to corrupt the parties' grievance and arbitration procedure and weaponize that procedure against the Employer. The matter before the Arbitrator arose from a grievance filed in October 2023 (*see* Ux-1, hereinafter the "Grievance) by the Massachusetts Nurses Association ("Union") pursuant to its collective bargaining agreement with St. Vincent Hospital ("Hospital"), effective January 2022 through December 2025 (*see* Ux-7, hereinafter the "CBA"). The Grievance urges the Arbitrator to ignore clear and unambiguous language in Article XXI of the CBA which provides that "the ***applicable procedures*** of the Labor Relations Connection" will be used ***for the selection of arbitrators*** but does not provide that LRC procedures shall otherwise be used for processing grievances under Article XXI of the CBA. (*See* Ux-7 at p. 67).  There is no question that the CBA does not provide for the use of LRC procedures beyond the selection of an arbitrator, which is evident by the parties' use of clear and unambiguous

1

**Exhibit 27**

language in Article XXI limiting the applicability of LRC procedures to the arbitrator selection process, as well as the clear and unambiguous language in Article VIII, Section 8.05 of the CBA (hereinafter "Section 8.05") which provides that grievances related to mandatory overtime "***shall be processed*** under the AAA rules for expedited arbitration." There is a clear distinction between selecting an arbitrator and processing a grievance at arbitration, and the bargained-for language in Article XXI and Section 8.05 is conclusive that the applicability of LRC procedures is limited to the selection of an arbitrator and not beyond.

The Arbitrator is bound by this clear and unambiguous language and is not permitted to look beyond the four corners of the CBA for at least two reasons. First, because the CBA is clear and unambiguous regarding the use of LRC procedures to select arbitrators only, the Arbitrator lacks authority to consider any extrinsic evidence presented by the Union or any discussion regarding past practice of allowing LRC to "administer" arbitrations. Where, as here, the CBA is clear and unambiguous, it makes no difference whether the Parties have previously processed grievances pursuant to LRC procedures or AAA rules because the Arbitrator must enforce the CBA as written.

Second, even if the language were not clear and unambiguous, two separate CBA provisions each explicitly precludes the Arbitrator from granting the relief the Union seeks here. The Arbitrator has already ruled in his December 23, 2024 Order on Motion to Quash Subpoena Duces Tecum that while Article XXI requires the use of LRC and AAA for the purposes of selecting an arbitrator, it is silent as to the "administration" of grievances. Article XXI, Step 4 provides, "The arbitrator shall have no authority to add to, subtract from, modify, alter or disregard any of the provisions of this Agreement." Because Article XXI is silent on the matter, the Arbitrator would necessarily have to add to the CBA a requirement that the parties use LRC to administer

2

**Exhibit 27**

arbitrations. Under the clear and unambiguous language of Article XXI, it is beyond his authority to do so. Nevertheless, that is exactly what the Union asks the Arbitrator to do here.

Furthermore, Article XXV of the CBA is an integration clause that prohibits any "additions, waivers, deletions, changes or amendments… during the life of [the CBA], unless evidenced in writing, dated and signed by the parties hereto." (Ux-7 at p. 70). This provision specifically precludes the Union from relying on any alleged past practice which is not in a writing, signed and dated by the parties. The record, however, contains no evidence of any writing amending the CBA to require the parties to use LRC or AAA to administer arbitrations or to otherwise follow LRC procedures or AAA rules beyond the selection of an arbitrator. That is because no such writing exists. The Arbitrator therefore has no authority to enforce any past practice alleged by the Union, which is precisely what the Union seeks as a remedy here.

Consequently, the Union has not met its burden to establish that the Hospital violated the CBA because Article XXI does not obligate the Hospital to use LRC for case administration or to follow LRC procedures or AAA rules for the processing of grievances beyond selecting an arbitrator. The Grievance must therefore be denied.

**II.**     **THE GRIEVANCE MUST BE DENIED BECAUSE THE CLEAR AND UNAMBIGUOUS PROVISIONS OF ARTICLE XXI LIMIT THE USE OF LRC PROCEDURES TO THE SELECTION OF AN ARBITRATOR ONLY.**

A.     <u>THRESHOLD ISSUE</u>

As framed by the Union, the issue is whether the Hospital violated the CBA as alleged in the Union's October 20, 2023 grievance, which in turn alleges that the Hospital's decision not to use LRC for administration of pending arbitrations violated Article XXI of the CBA or a past practice of using LRC to administer arbitrations "from inception of the arbitration to conclusion." (Ux-1). Because the CBA language regarding the use of arbitral agencies is clear and

3

# Exhibit 27

unambiguous, the Arbitrator must decide in the Hospital's favor without consideration of any extrinsic evidence beyond the four corners of the CBA.

B.        <u>LEGAL FRAMEWORK</u>

"This is a matter of contract interpretation, and the burden falls to the Union to demonstrate that the [Hospital] failed to comply with the requirements of the collective bargaining agreement." *Labor Arbitration Decision*, 2024 LA 373 (Loconto, 2024). To evaluate whether the Hospital complied with the CBA, the Arbitrator must first look to the explicit terms of the collective bargaining agreement negotiated by the parties. *See Atlas, Inc.*, 102 LA 69, 71 (Daniel, 1993) ("Because the arbitrator is called upon to interpret and apply the collective bargaining agreement that should be the beginning of his investigation and consideration."); *see also Bard Mfg. Co.*, 92 LA 616, 619 (Daniel, 1989) ("The arbitrator is but a creature of the contract as negotiated by the parties and may not substitute his own brand of justice or fair play for the contract language."); *Stanley Black & Decker*, 128 LA 1639, 1642 (Weatherspoon, 2011) (the role of an arbitrator "is to interpret the bargained for agreement").

In his review and interpretation of the CBA, the Arbitrator must give the language negotiated by the parties its plain and ordinary meaning. *Bard Mfg.*, 92 LA at 619 ("The intent of an agreement is generally to be determined by the words which the parties have used to express themselves."); *Mason County*, 127 LA 141, 142 (Siegel, 2009) ("Much of the arbitration case authority supports the 'plain meaning rule' which provides that when bargaining agreement language is clear and unambiguous, arbitrators will not look outside the four corners of the bargaining agreement to determine the meaning of the language."); *Brown Williamson Tobacco Co.*, 92 LA 722, 725 (Nicholas, 1989) (reaching outside the terms of a collective bargaining agreement would usurp the arbitrator's authority). "Plain and unambiguous words are undisputed

4

**Exhibit 27**

facts," and an Arbitrator can discern the meaning of the CBA from the language they used. *Phelps Dodge Copper Prods. Corp.*, 16 LA 229, 233 (Justin, 1951). One arbitrator elaborated:

> [A]n arbitrator's function in a contract case is limited to finding what the parties intended by the language they chose. Where contract language is clear and can be applied in a common sense manner, a[n] Arbitrator is obliged to construe the language as it is written. Likewise, the fact that the competing parties disagree as to the meaning of a clause does not necessarily mean the language is ambiguous.

*Wilson Trophy Co.*, 104 LA 529, 533 (Suardi, 1995) (internal citations omitted).

Arbitrators must evaluate the 'four corners of the instrument' without resort to extrinsic evidence of any kind" unless the contract is deemed ambiguous. Elkouri & Elkouri, *How Arbitration Works*, Chapter 9, *Interpreting Contract Language*. Another arbitrator explained:

> Although [the Arbitrator] may use his/her expertise in interpreting and applying the contractual provisions, he/she cannot substitute his/her own sense of equity and justice but the award must be grounded in the terms of the agreement. To do otherwise would, in effect, be to change or alter the agreement through indirection. This, an arbitrator cannot, and should not do in the interests of *all* parties and the collective bargaining process. In other words, it is the duty of the arbitrator to interpret the contract as precisely as he/she can, and not to rewrite it.

*Johnston-Tombigbee Mfg. Co.*, 113 LA 1015, 1020 (Howell, 2000) (emphasis in original); *Stanley*, 128 LA at 1642 ("The rights the Union seeks to enforce must draw its essence from the CBA or the Closure Agreement.").

"When reviewing a negotiated contract, the words the parties chose are presumed to reflect their intentions and expectations… [and] [i]t can also be presumed that when the parties signed their agreement, they knew what it said and how it was to be performed." *Feld Chevrolet Co.*, 123 LA 1688, 1691 (Suardi, 2007). In interpreting a written instrument, the primary rule is to determine the meaning of the CBA from the instrument as a whole. *City of Bellingham*, 115 LA 944 (Gaba,

**Exhibit 27**

2001) (quoting *How Arbitration Works*, Elkouri and Elkouri, at p. 352-353 (4th ed. 1985)); *see also Riley Stoker Corp.*, 7 LA 764, 767 (Platt and Lavery, 1947) ("The primary rule in construing a written instrument is to determine, not alone from a single word or phrase, but from the instrument as a whole, the true intent of the parties, and to interpret the meaning of a questioned word, or part, with regard to the connection in which it is used, the subject matter and its relation to all other parts or provisions."). The meaning of any questioned word or part should be considered in its context, subject matter, and relation to other provisions. *Id.*; *see also Sto-Rox Sch. Dist.*, 138 LA 201, 204 (Felice, 2017) ("One axiom of contract construction applicable in the instant case is that in order to determine the meaning of any part of an agreement, the provision in dispute must be considered in the context of the entire agreement.").

If the contractual language is clear and unambiguous, the Arbitrator must enforce the CBA as written. *Id.* ("It is a well-founded principle of arbitrable authority that when the words are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit or intent."); *see also National Linen Serv.*, 95 LA 829, 833-834 (Abrams, 1990) (holding that the terms of a signed collective bargaining agreement must be enforced despite union's claim that completed contract language was not the same language agreed to at the bargaining table). Only if the language is ambiguous and susceptible to more than one interpretation, the Arbitrator may refer to tools such as bargaining history or past practices. *See City of St. Petersburg, Fla.*, 115 LA 615, 618-619 (Deem, 2001) (holding that if contract language is clear, specific, and unambiguous, the arbitrator does not need to consider any past practice in order to determine its intended meaning). Therefore, the Arbitrator must interpret the contract based on the language as it is written, without adding new terms or altering its provisions.

**Exhibit 27**

C.        RELEVANT AND UNAMBIGUOUS CONTRACT TERMS

The CBA contains three provisions that clearly and unambiguously specify which arbitral

agency may be used in each circumstance and the exact purpose for which each agency is to be

used. Together, these provisions conclusively demonstrate that the CBA does not require the use

of LRC to "administer" arbitrations of grievances subject to Article XXI:

**ARTICLE VIII.**
**WORK SCHEDULE**

**8.05. Overtime**

* * * * *

**Any grievance submitted under this Section shall be processed under the AAA rules for**
**expedited arbitration** rather than the procedure set forth in Article XXI ("Grievance and
Arbitration").

**ARTICLE XXI.**
**GRIEVANCE AND ARBITRATION**

* * * * *

**Step 4:** Should the MNA request arbitration in accordance with the time limits specified herein,
*an arbitrator shall be selected* **pursuant to the Voluntary Labor Arbitration Rules of the**
**American Arbitration Association or the applicable procedures of the Labor Relations**
**Connection**. The decision of the arbitrator shall be final and binding. The arbitrator shall be
requested to issue a written decision within 30 days after the conclusion of the hearing. **The**
**arbitrator shall have no authority to add to, subtract from, modify, alter or disregard any of**
**the provisions of this Agreement**. Costs of the arbitrator and the American Arbitration
Association or the Labor Relations Connection shall be borne equally by the Hospital and the
MNA.

**ARTICLE XXV.**
**COMPLETENESS OF AGREEMENT**

This Agreement contains the complete agreement of the parties, and no additions, waivers,
deletions, changes or amendments shall be effective during the life of this Agreement, unless
evidenced in writing, dated and signed by the parties hereto. An oral waiver or a failure to enforce
any provision in a specific case shall not constitute a precedent or preclude either party from
relying upon or enforcing such provision in any other case.

7

**Exhibit 27**

D.     UNDERLINE{ARGUMENT}

Because the clear and unambiguous language in Article XXI "neither restricts nor obligates" the Hospital to use LRC to administer arbitrations or adhere to LRC procedures for the processing of grievances beyond arbitrator selection, the Hospital is not obligated to use LRC for case administration and therefore did not violate the CBA when it notified the Union that it would no longer use LRC for case administration. *See Labor Arbitration Decision*, 2024 LA 373 (Loconto, 2024) (holding that employer did not violate collective bargaining agreement by offering overtime to drivers where the agreement neither restricted nor obligated the assignment of overtime). The Arbitrator is bound by the express terms of Article XXI which limit the applicability of LRC procedures to the arbitrator selection process and do not contain any requirement or obligation to use LRC procedures for any other purpose. *See* Exhibit 7 at p. 67, Article XXI, Step 4 ("The arbitrator shall have no authority to add to, subtract from, modify, alter or disregard any of the provisions of this Agreement."); *see also San Francisco Unified Sch. Dist.*, 1996 BNA LA Supp. 116926 (Bogue, 1996) ("It is axiomatic that the parties are bound by the express terms of the negotiated agreement."). Accordingly, and because the operative language in Article XXI is clear and can be applied using common sense not to require the use of LRC and its procedures to administer arbitrations, the Hospital did not violate the clear and unambiguous terms of the CBA and the Grievance should be denied.

First and foremost, the Arbitrator's prior ruling that the applicable language in Article XXI "is silent on the issue of case administration" is determinative and the law of the case. *See* Order on Motion to Quash Subpoena Duces Tecum at p. 12 (Loconto, Dec. 23, 2024; *see also MNA Motion to Quash Subpoenas Proffered* (sic) *by St. Vincent Hospital* at p. 9 (Union states that Arbitrator's December 23, 2024 ruling is "law of the case"). The Arbitrator considered a similar

8

**Exhibit 27**

issue as recently as last year in *Labor Arbitration Decision*, 2024 BNA LA 373 (Loconto, 2024), which involved a contract interpretation grievance regarding the assignment of drivers to perform helper duties on certain delivery routes. In denying the grievance, the Arbitrator held that the CBA was clear and unambiguous on its face because it neither restricted nor obligated the company to assign overtime to certain classifications. *Id.*

Similarly here, the CBA is clear and unambiguous because while Article XXI is silent on the issue of case administration—which the Union has acknowledged is "the law of the case" (*see MNA Motion to Quash Subpoenas Proffered* (sic) *by St. Vincent Hospital* at p. 9)—Section 8.05 demonstrates that the parties knew how to address the use of agency rules to govern arbitration proceedings. The contrast between the language in Section 8.05, which provides that AAA rules are applicable to the processing of grievances relating to mandatory overtime, and the language in Article XXI, which limits the applicability of LRC procedures and AAA rules to arbitrator selection, necessarily invokes the "well-established principle of contract interpretation known as the theory of '*expressio unius est exclusio alterius*,' which means, as applied to the present case, that since the additional language was used as related to the contract provision at one place and was not used at another place, it was the intention of the parties that such additional language would not be applicable where it was omitted." *Armco Steel Corp.*, 59 LA 1058 (Lugar, 1972). Pursuant to this principle, "[a]rbitrators follow an interpretive assumption that if parties specifically enumerated a list of items from a general class to which a provision is applicable, they meant to cover only the specific items listed and to exclude other items of that class from coverage." *City and Borough of Juneau*, 135 LA 81 (Landau, 2015).

The Arbitrator in this case must likewise make several interpretative assumptions pursuant to the principle of *expressio unius est exclusio alterius*:

**Exhibit 27**

- Because the parties used language requiring them to use agency rules to process grievances submitted under Section 8.05 but did not use that same language in Article XXI, the parties are not required to use agency rules to process arbitrations submitted pursuant to the grievance procedure in Article XXI.

- Because Section 8.05 provides that grievances submitted under that section "***shall be processed*** under the AAA rules for expedited arbitration" whereas Article XXI does not use the word "processed" and instead provides only that an arbitrator "***shall be selected***" pursuant to AAA Voluntary Arbitration Rules or "the applicable procedures of the Labor Relations Connection," the parties are not required to use LRC procedures or AAA rules to process the arbitration of grievances submitted under Article XXI.

- Because Article XXI specifies that an arbitrator "shall be selected" under the "applicable procedures" of LRC, LRC procedures not applicable to the selection of an arbitrator do not apply to grievances submitted under Article XXI.

*See Labor Arbitration Decision*, 199188-AAA, [Number redacted], 2015 BNA LA Supp. 199188 (Soll, 2015) ("Frequently, arbitrators apply the principle that [ ] when parties list specific items, without any more general or inclusive term[s], they intend to exclude unlisted items, even though they are similar to those listed.").

Article XXI cannot be read in isolation; it "must be read so that it is consistent with the contract as a whole, and so that it renders no part of the contract meaningless." *KPIX-TV*, 115 LA 1300 (Bogue, 2001). The Union's interpretation of Article XXI to require the Hospital to use LRC or AAA for case administration would render the clear and unambiguous provisions of Section 8.05 and Article XXI meaningless. More specifically, Section 8.05 provides that mandatory

10

**Exhibit 27**

overtime grievances "shall be processed under the AAA rules for expedited arbitration *rather than the procedure set forth in Article XXI*." (Ux-7 at p. 20). This differentiation between using agency rules for mandatory overtime grievances versus following the procedures set forth in Article XXI for all other grievances would be rendered meaningless if the Arbitrator were to adopt the Union's self-serving interpretation of Article XXI.

If the Hospital and the Union meant for LRC procedures or AAA rules to apply for case administration and "processing" grievances under Article XXI, then the parties would have used the Section 8.05 language which clearly provides that AAA rules shall be used to process grievances at arbitration. For example, had the parties intended for Article XXI grievances to be processed pursuant to LRC procedures, the description of Step 4 might read something to the effect of the following, using legislative markings to distinguish current language:

> Should the MNA request arbitration in accordance with the time limits specified herein, ~~an arbitrator shall be selected~~ the arbitration shall be processed pursuant to the Voluntary Labor Arbitration Rules of the American Arbitration Association or the ~~applicable~~ procedures of the Labor Relations Connection.

Clearly, Article XXI does not state that the arbitration shall be processed pursuant to LRC procedures or AAA rules, and the Arbitrator is obligated to give effect to the intent of the parties' agreement, which "is generally to be determined by the words which the parties have used to express themselves." *Bard Mfg.*, 92 LA at 619.

Moreover, the parties had the opportunity to include the Section 8.05 language related to processing a grievance when they amended Article XXI in the 2010-2013 CBA. (*Compare* Ux-8 at p. 9-12 *and* Ux-8 at p. 19-22). Section 8.05 has not changed since the 2000-2003 CBA; it has always included the same provision that "[a]ny grievance submitted under this Section [8.05] shall be processed under the AAA rules for expedited arbitration rather than the procedure set forth in

11

**Exhibit 27**

Article XXI." (*See* Ex-1). Thus, because the parties did not revise Article XXI to include the Section 8.05 language providing that grievances submitted under Article XXI shall be processed under LRC procedures or AAA rules, those rules and procedures do not apply under Article XXI.

The Arbitrator may also draw the meaning of plain contract language "with assistance of plain/dictionary definitions and 'other rules of construction.'" *Greer Steel Co.*, 136 LA 257, 268 (Szuter, 2016). Merriam-Webster defines "processed" as "having been subjected to a special process or treatment." *Processed – Merriam-Webster.com Dictionary,* Merriam-Webster, https://www.merriam-webster.com/dictionary/processed (last accessed May 2, 2025). It defines "selected" as "singled out from a number or group as more to one's liking." *Selected – Merriam-Webster.com Dictionary,* Merriam-Webster, https://www.merriam-webster.com/dictionary/selected (last accessed May 2, 2025). Section 8.05 provides that mandatory overtime grievances are "processed" pursuant to AAA rules, while all other grievances are processed pursuant to the procedure set forth in Article XXI. In turn, Article XXI only references "applicable" LRC procedures in the context of selecting an arbitrator, which is a discrete event. Further, the reference to "applicable" LRC procedures necessarily means that the parties contemplated the existence of "inapplicable" LRC procedures that do not relate to the selection of an arbitrator. Thus, by the plain meaning of the words in the CBA, Section 8.05 grievances are processed under AAA rules whereas Article XXI grievances are processed under "the procedure set forth in Article XXI," which process only follows LRC procedures or AAA rules for the purposes of arbitrator selection.

The meaning of the provision in Article XXI providing that the only LRC procedures the parties will follow are those applicable to the *selection of an arbitrator* is clearly ascertainable and not susceptible to more than one interpretation. *See Labor Arbitration Decision*, 200847-AAA, [Number redacted], 2017 BNA LA Supp. 200847 (Simmelkjaer, 2017) (holding that contract

12

**Exhibit 27**

language was not ambiguous because the words used were "clearly ascertainable and not susceptible to more than one interpretation"). Although the Union will undoubtedly manufacture an interpretation of the words on the page of the CBA to serve its interests in this case—to waste the Hospital's time and money and to keep LRC doing its bidding against the Hospital—the Union's self-serving interpretation does not render the CBA language ambiguous. *See Wilson Trophy*, 104 LA at 533 ("Likewise, the fact that the competing parties disagree as to the meaning of a clause does not necessarily mean the language is ambiguous."); *see also Canton City Sch. Dist.¸* 2003 BNA LA Supp. 110376 (Paolucci, 2003) (holding that although contract language was not ambiguous, it did not support the union's interpretation).

Indeed, the parties know the difference between "processing" a grievance at the arbitral step and the process for selecting an arbitrator, and any suggestion by the Union that there is no difference is insincere and absurd. The American Arbitration Association offers arbitrator selection services without case administration services, and there is an obvious and well-defined difference between arbitrator selection and case administration. (*See* Ux-10 at p. 24) (detailing "Optional Labor Services" including "List Only Service" and "List with Appointment" service among others). Of note, AAA rules also acknowledge that the parties must agree to "arbitration by the American Arbitration Association… or under its rules." The parties could have used language in the CBA that mirrors the language under AAA Labor Arbitration Rule 1, but instead used language restricting the use of AAA rules to arbitrator selection. (*See* Ux-10 at p. 8) ("The parties shall be deemed to have made these rules a part of their arbitration agreement whenever, in a collective bargaining agreement or submission, they have provided for arbitration by the [AAA] or under its rules."). The Federal Mediation & Conciliation Service also provides a service limited to appointing an arbitrator. *See FMCS Arbitration and the Arbitrator Roster*, available at

**Exhibit 27**

https://www.fmcs.gov/services/arbitration/ (last visited April 30, 2025). Likewise, LRC owner Jan Teehan testified under oath that LRC has a specific procedure applicable to the selection of an arbitrator. (*See* Ex-2 at p. 361-362). Thus, every single lawyer and every single union representative who has ever handled a labor arbitration—as well as every single case administrator to include LRC and AAA—understands what it means to select an arbitrator and what it means to process a grievance at the arbitral step of the grievance process, and no lawyer or union negotiator of sound mind would agree to language providing that only the procedure applicable to arbitrator selection would be used if they meant for *all* procedures to apply to *all* aspects of an arbitration including case administration.[1]

Accordingly, it is abundantly clear that the Union has failed to meet its burden to show that the Hospital violated the CBA. The Arbitrator must deny the Union's grievance because he is constrained by the clear and unambiguous terms of Article XXI:

> Plain and unambiguous words are undisputed facts. The conduct of Parties may be used to fix a meaning to words and phrases of uncertain meaning. Prior acts cannot be used to change the explicit terms of a contract. An arbitrator's function is not to rewrite the Parties' contract. His function is limited to finding out what the Parties intended under a particular clause. The intent of the Parties is to be found in the words which they, themselves, employed to express their intent. When the language used is clear and explicit, the arbitrator is constrained to give effect to the thought expressed by words used.

*Phelps Dodge*, 16 LA at 233. The language used to describe the Step 4 grievance process is clear and explicit that the only LRC procedures the parties are to follow are those applicable to the arbitrator selection process. The Arbitrator is therefore constrained to give effect to the limitations expressed in the negotiated provisions of Article XXI of the CBA.

---

[1] If the Arbitrator had issued a subpoena to Jan Teehan, she would have testified consistent with her prior testimony that LRC has a "set process" for "selecting an arbitrator" and that LRC permits parties to select their own arbitrator without the assistance of LRC and then use LRC for case administration (*See* Ex-2 at p. 361; Ex-3 at p. 442-443).

14

**Exhibit 27**

III.     **THE ARBITRATOR IS NOT PERMITTED TO RELY ON PAST PRACTICE DUE TO THE ARTICLE XXV INTEGRATION CLAUSE.**

     A.     <u>SECOND ISSUE</u>

Even if the Arbitrator were to ignore the precise language of Article XXI and conclude that the CBA was somehow ambiguous and subject to an interpretation that would allow the Union to force the Hospital to use and pay for case administration services that are not required by the CBA, the Arbitrator still has no authority to re-write the CBA to include any such past practice asserted by the Union because the CBA includes a "Completeness of Agreement" provision which operates as an integration clause precluding revisions to the CBA absent a written agreement signed and dated by both parties. (Ux-7 at p. 70). That clause completely forecloses the Union from relying on past practice to attempt to add to or otherwise amend Article XXI.

     B.     <u>ARGUMENT</u>

Even if the Arbitrator ignores the clear and unambiguous language of the CBA that limits the applicability of LRC procedures to the arbitrator selection process, the Hospital nonetheless had the right to cease using LRC procedures for case administration pursuant to the integration clause set forth in Article XXV – Completeness of Agreement which specifically precludes the Union from seeking to enforce any and all alleged past practices not specifically preserved "in writing, dated, and signed by the parties hereto."

First and foremost, Article XXV is an integration clause, sometimes also referred to as a "zipper clause," which explicitly "nullifies existing past practices." *See Midwest Dental Prods. Corp.*, 94 LA 467, 472 (Wies, 1990); *see also George E. Failing Co.*, 93 LA 598, 602 (Fox, 1989) (holding that a company could not rely on past practice where integration clause provided that "[n]o amendments, modifications, change or interpretive alteration shall be effective unless it is executed in writing, dated and signed by the individuals who have executed this Agreement, or

15

**Exhibit 27**

their successors."); *WKYC-TV, Inc.*, 94-07090, 1994 BNA LA Supp. 107307 (Talarico, 1994) (holding that a typical integration clause or "completeness of agreement" clause states that it supersedes all previous agreements and understandings and the collective bargaining agreement is silent regarding a past practice, the practice has no effect). "Integration clauses generally serve the purpose of identifying a particular written agreement as the sole repository of terms the parties have agreed are enforceable against one another." *Canton Township Bd. of Supervisors*, 55 390 00340 04, 2005 BNA LA Supp. 111195 (Dissen, 2005). "By declaring through such a clause that the writing in which that clause is contained is the final, complete and exclusive expression of the parties' obligations, the parties may mutually reject prior memoranda, unwritten understandings, and courses of conduct that have not been made explicitly a part of the final writing." *Id.* Even where there is an ambiguity in a collective bargaining agreement, past practice may only be used for interpreting the ambiguity where not excluded by an integration clause. *Commonwealth of Penn.*, 86 LA 1229 (Zirkel, 1985). Thus, where a contract contains an integration clause invalidating previous commitments and providing that alterations to the agreement must be in writing, any purported past practices may be nullified. *Midwest Dental*, 94 LA at 472.

Article XXV of the CBA in this case is an integration clause that precludes the Union from attempting to rely on practices established during prior contract terms and prohibits additions, changes, and amendments to the CBA during the life of the current contract unless they are reduced to a writing, dated and signed by the Union and the Hospital:

> This Agreement contains the complete agreement of the parties, and no additions, waivers, deletions, changes or amendments shall be effective during the life of this Agreement, unless evidenced in writing, dated and signed by the parties hereto. An oral waiver or a failure to enforce any provision in a specific case shall not constitute a precedent or preclude either party from relying upon or enforcing such provision in any other case.

16

**Exhibit 27**

(Exhibit 7 at p. 70). The record contains no evidence whatsoever of any writing that is signed and dated by both parties, much less one that contains any addition, waiver, or amendment to Article XXI. And that is because no such written instrument exists.

Accordingly, "even assuming arguendo, that the Union was able to demonstrate the existence of a binding past practice [which to be clear it cannot], the inclusion of the 'integration/zipper' clause [in Article XXV] would act as a complete bar to the continued validity of that unwritten practice." *The City of Belpre, Ohio*, 96-17591-6, 1997 BNA LA Supp. 101871 (Talarico, 1996). If the "broad integration clause [in Article XXV] is to mean anything, it clearly negates the notion that the parties meant to include any terms or conditions (including those based only on past practice such as alleged [in the Grievance] not specifically incorporated into the written contract, or reasonably inferable in its provisions." *Id.*

Thus, even if the Union could successfully establish the existence of a past practice that would otherwise bind the parties to using LRC or AAA to administer arbitrations under Article XXI, that past practice would be of no moment here. The Completeness of Agreement clause at Article XXV completely forecloses the Union's ability to enforce any such practice against the Hospital. Awarding the Union the relief it seeks here would therefore require the Arbitrator to render this clause meaningless, effectively deleting the provision from the CBA. This is beyond his authority to do.

## IV.  THE HOSPITAL HAD A RIGHT TO STOP USING LRC BASED CHANGED CIRCUMSTANCES.

### A.  THIRD ISSUE

Even if the Arbitrator were to grant the Union's request to effectively ignore the clear and unambiguous language of Article XXI and Section 8.05 and then also ignore the integration clause of Article XXV, the Arbitrator would then necessarily have to decide, prior to reviewing extrinsic

**Exhibit 27**

evidence or considering the Union's alleged past practice, whether the circumstances underlying the parties past use of LRC or AAA have changed such that the Hospital was justified in limiting the use of applicable LRC procedures to the arbitrator selection process.

B.      ARGUMENT

In addition to the clear language of Article XXI, Section 8.05, and the Article XXV integration clause nullifying any purported practice of using LRC or AAA to administer arbitrations, the Hospital was also justified to enforce the plain terms of Article XXI based on changed circumstances underlying the parties' past use of LRC and AAA to administer arbitrations. "It must be stated as a general proposition that, absent language in a collective bargaining agreement expressly or impliedly to the contrary, once the conditions upon which past practice has been based are changed or eliminated, the practice may no longer be given effect." *Gulf Oil Corp.*, 34 LA 99, 100 (Cahn, 1959); *see also Saginaw Mining Co.*, 76 LA 911, 915 (Ruben, 1981) ("When a change in the set of conditions that gives rise to the practice takes place, a change in the practice may be made to the extent that the changed conditions affect the practice."). To elaborate:

> In general, arbitrators believe that past practice, no matter how clear and mutually accepted, cannot become ossified forever. Simply because a method of doing something has existed for a period of time does not automatically imply that it cannot be changed. The nature of the practice and the circumstance under which it arose must be examined. Arbitral theory holds that a past practice is legitimized by the underlying conditions upon which it is based. Once these conditions change, the practice is not necessarily binding any longer. The underlying circumstances that gave rise to the practice will determine its application and limitations. When these underlying conditions change, then the need for and the validity of the past practice itself may also change.

*Independent School Dist. 197*, 97 LA 364, 367 (Fogelberg, 1991).

Thus, even if a past practice existed—which the Hospital will demonstrate below in Section V is not the case—the Hospital acted within its right to cease the practice of agreeing to use LRC

18

**Exhibit 27**

procedures for case administration based on significant changes to the circumstances related to processing grievances. Those changes include the fact that after the current contract was ratified, the Union filed for 66 arbitrations in just one year, most of them frivolous, and then delayed their review of the merits of the cases for months or years thereby forcing the Hospital to incur unnecessary case administration and attorney's fees before ultimately making extortionate type "settlement" demands and then withdrawing them, all in an effort to weaponize the grievance and arbitration process against the Hospital and to cause it as much damage as possible. (*See e.g.* Ex-4, wherein the Union demanded $575,000.00 to settle only 28 of the more than 400 grievances it has filed since the new CBA was ratified). Perhaps most importantly, those changes also included the fact that LRC ***admittedly failed to act as a neutral*** with respect to the Hospital, thereby depriving the Hospital of any benefit of using LRC.  In fact, LRC went so far as to actively collude with the Union to the detriment of the Hospital.

The conditions upon which the parties may have previously agreed to use LRC and AAA to administer arbitrations changed drastically beginning in 2022. First, the volume of grievances advanced to arbitration by the Union increased from an average of under two per year to 66 in 2022 alone. From 2000 through 2009, the Union advanced to arbitration a total of 15 grievances against the Hospital, and from 2010 through 2019, the Union advanced a total of 23 grievances to arbitration. Then, ***in 2022 the Union advanced 66 grievances to arbitration***. In September 2022 alone, the Union advanced 26 grievances to arbitration. To put this into perspective, the Union never filed more than six arbitrations per year until 2022 when it filed an average of almost six per month.

| Year | Grievances Advanced to Arbitration | #/Year |
|---|---|---|
| 2000 | AAA #11 300 11749 00 (MNA415-MNA420) | 1 |
| 2001 | None | 0 |
| 2002 | None | 0 |

**Exhibit 27**

| 2003 | AAA #11 300 02560 03 (MNA421-MNA425) | 2 |
| | AAA #11 300 02160 03 (MNA426-MNA452) | |
| 2004 | None | 0 |
| 2005 | AAA #11 300 01632 05 (MNA453:MNA496) | 1 |
| 2006 | AAA #11 300 02076 06 (MNA497:MNA522) | 1 |
| 2007 | AAA #11 300 01842 07 (MNA523:MNA526) | 3 |
| | AAA #11 300 01336 07 (MNA527:MNA528) | |
| | AAA #11 300 02411 07 (MNA529:MNA531) | |
| 2008 | AAA #11 300 00829 08 (MNA532:MNA534) | 5 |
| | AAA #11 300 01045 08 (MNA535:MNA537) | |
| | AAA #11 300 01046 08 (MNA538:MNA540) | |
| | AAA #11 300 02442 08 (MNA541:MNA544) | |
| | AAA #11 300 01466 08 (MNA577:MNA580) | |
| 2009 | AAA #11 300 00659 09 (MNA545:MNA548) | 2 |
| | AAA #11 390 00671 09 (MNA549:MNA553) | |
| 2010 | AAA #11 300 00051 10 (MNA554:MNA558) | 6 |
| | AAA #11 300 00052 10 (MNA559:MNA560) | |
| | AAA #11 300 00354 10 (MNA561:MNA563) | |
| | AAA #11 300 01072 10 (MNA654:MNA565) | |
| | AAA #11 300 01073 10 (MNA566:MNA567) | |
| | AAA #11 300 01074 10 (MNA568:MNA569) | |
| 2011 | AAA #11 300 01723 11 (MNA570:MNA576) | 1 |
| 2012 | AAA #11 390 00510 12 (MNA581:MNA586) | 5 |
| | AAA #11 390 00511 12 (MNA587:MNA591) | |
| | AAA #11 390 00512 12 (MNA592:MNA597) | |
| | AAA #11 390 00513 12 (MNA598:MNA604) | |
| | AAA #11 390 00514 12 (MNA605:MNA613) | |
| 2013 | AAA #11 390 00643 13 (MNA614:MNA617) | 4 |
| | AAA #11 390 01194 13 (MNA618:MNA624) | |
| | AAA #11 390 01195 13 (MNA625:MNA629) | |
| | AAA #11 390 01196 13 (MNA630:MNA639) | |
| 2014 | None | 0 |
| 2015 | None | 0 |
| 2016 | LRC 233-16 (MNA001-MNA004) | 2 |
| | LRC 329-16 (MNA005-MNA009) | |
| 2017 | LRC 309-17 (MNA010-MNA014) | 2 |
| | LRC 655-17 (MNA015-MNA018) | |
| 2018 | LRC 60-18 (MNA019-MNA022) | 2 |
| | LRC 485-18 (MNA023-MNA026) | |
| 2019 | LRC 50-19 (MNA027-MNA030) | 1 |
| 2020 | LRC 655-20 (MNA031-MNA034) | 2 |
| | LRC 666-20 (MNA035-MNA048) | |
| 2021 | None | 0 |
| 2022 | LRC 195-22 (MNA049-MNA053) | 66 |
| | LRC 255-22 (MNA054-MNA057) | |
| | LRC 291-22 (MNA058-MNA061) | |

20

**Exhibit 27**

| | |
|---|---|
| LRC 345-22 (MNA062-MNA075) | |
| LRC 346-22 (MNA076-MNA079) | |
| LRC 347-22 (MNA080-MNA082) | |
| LRC 348-22 (MNA083-MNA086) | |
| LRC 349-22 (MNA087-MNA092) | |
| LRC 486-22 (MNA093-MNA098) | |
| LRC 487-22 (MNA099-MNA103) | |
| LRC 491-22 (MNA104-MNA107) | |
| LRC 492-22 (MNA108-MNA113) | |
| LRC 548-22 (MNA114-MNA116) | |
| LRC 549-22 (MNA117-MNA120) | |
| LRC 550-22 (MNA121-MNA126) | |
| LRC 553-22 (MNA127-MNA134) | |
| LRC 554-22 (MNA135-MNA138) | |
| LRC 555-22 (MNA139-MNA142) | |
| LRC 556-22 (MNA143-MNA147) | |
| LRC 557-22 (MNA148-MNA152) | |
| LRC 558-22 (MNA153-MNA157) | |
| LRC 559-22 (MNA158-MNA165) | |
| LRC 560-22 (MNA166-MNA174) | |
| LRC 561-22 (MNA175-MNA180) | |
| LRC 562-22 (MNA181-MNA183) | |
| LRC 563-22 (MNA184-MNA189) | |
| LRC 564-22 (MNA190-MNA196) | |
| LRC 565-22 (MNA197-MNA202) | |
| LRC 566-22 (MNA203-MNA219) | |
| LRC 569-22 (MNA220-MNA222) | |
| LRC 597-22 (MNA223-MNA226) | |
| LRC 598-22 (MNA227-MNA229) | |
| LRC 599-22 (MNA230-MNA232) | |
| LRC 600-22 (MNA233-MNA237) | |
| LRC 601-22 (MNA238-MNA241) | |
| LRC 637-22 (MNA242-MNA246) | |
| LRC 238-22 (MNA247-MNA251) | |
| LRC 641-22 (MNA252-MNA254) | |
| LRC 651-22 (MNA255-MNA257) | |
| LRC 655-22 (MNA258-MNA260) | |
| LRC 726-22 (MNA261-MNA264) | |
| LRC 727-22 (MNA265-MNA267) | |
| LRC 728-22 (MNA268-MNA271) | |
| LRC 729-22 (MNA272-MNA274) | |
| LRC 730-22 (MNA275-MNA278) | |
| LRC 732-22 (MNA279-MNA281) | |
| LRC 733-22 (MNA282-MNA293) | |
| LRC 734-22 (MNA294-MNA299) | |
| LRC 735-22 (MNA300-MNA305) | |

**Exhibit 27**

|  | LRC 736-22 (MNA306-MNA309) |  |
|  | LRC 813-22 (MNA310-MNA312) |  |
|  | LRC 814-22 (MNA313-MNA316) |  |
|  | LRC 820-22 (MNA317-MNA322) |  |
|  | LRC 850-22 (MNA323-MNA325) |  |
|  | LRC 851-22 (MNA326-MNA328) |  |
|  | LRC 852-22 (MNA329-MNA331) |  |
|  | LRC 853-22 (MNA332-MNA344) |  |
|  | LRC 854-22 (MNA345-MNA347) |  |
|  | LRC 857-22 (MNA348-MNA350) |  |
|  | LRC 858-22 (MNA351-MNA353) |  |
|  | LRC 859-22 (MNA354-MNA356) |  |
|  | LRC 860-22 (MNA357-MNA359) |  |
|  | LRC 861-22 (MNA360-MNA365) |  |
|  | LRC 862-22 (MNA366-MNA371) |  |
|  | LRC 863-22 (MNA372-MNA380) |  |
|  | LRC 864-22 (MNA381-MNA383) |  |
| 2023 | LRC 292-23 (MNA384-MNA386) | 10 |
|  | LRC 293-23 (MNA387-MNA390) |  |
|  | LRC 304-23 (MNA391-MNA393) |  |
|  | LRC 305-23 (MNA394-MNA396) |  |
|  | LRC 306-23 (MNA397-MNA399) |  |
|  | LRC 307-23 (MNA400-MNA402) |  |
|  | LRC 324-23 (MNA403-MNA405) |  |
|  | LRC 325-23 (MNA406-MNA408) |  |
|  | LRC 326-23 (MNA409-MNA411) |  |
|  | LRC 328-23 (MNA412-MNA414) |  |

Thus, to the extent a case administrator such as LRC or AAA might have been useful in the past when the Union was only pursuing a handful of arbitrations, the factors underlying the parties' bargaining relationship and the Union's weaponization of the grievance process "had become seriously adverse to the Company." *Saginaw Mining CO.*, 76 LA at 915. In particular, the Union began using LRC as a way to effectively hold in abeyance every single grievance—real, imagined, or in some cases intentionally frivolous—while the Union took its time to sort through the mess it created by filing so many grievances in the first place. The vast majority of grievances that were advanced to arbitration by the Union in 2022 were ultimately withdrawn or abandoned months or in some cases more than a year after the demand for arbitration was submitted. Some are still

22

**Exhibit 27**

pending, with no action from the Union for more than three years. The Arbitrator can reasonably surmise that these withdrawn grievances were at best not worth pursuing and at worst frivolous when filed, intended to be used only for the purpose of making extortionate type "settlement" demands against the Hospital. (*See* Ex-4). Thus, case administration became not only superfluous as LRC was essentially charging the Hospital a repository fee for the Union's lack of diligence in reviewing the merits of its grievances, but also a costly weapon to wield against the Hospital.

For this reason alone, the Hospital would have been fully justified in ceasing any purported practice of allowing LRC or AAA to administer arbitrations in the past. "[A]ny experienced arbitrator knows few practices are etched in stone. The most common test in Management's changing a practice is whether it has a legitimate business reason and whether the change is reasonable." *United Refining Company*, 105 LA 411, 416 (Harlan, 1995). *United Refining* is particular instructive, because in that case, the volume of grievances and mediation hearings between the union and the employer "exploded" due to the worsening of a relatively harmonious relationship between the union and the employer. *Id.* at 416-417. The volume of grievances "eroded the work schedule… [a]nd Management did not have a lot of options." *Id.* at 417. When the employer unilaterally changed "the long time held past practice of holding mediations during normal daylight working hours of between 7AM and 4PM to a time after normal working hours of 4PM," the arbitrator rejected the union's assertion of a past practice, denied the grievance, and held that the employer did not violate the collective bargaining agreement. *Id.*

Here, the Hospital had perfectly legitimate business reasons to cease using LRC to administer arbitrations in much the same way the employer in *United Refining* changed the way it scheduled grievance mediations. Indeed, case administration became wholly unnecessary after the Union began filing frivolous grievances without conducting any review of the merits and with no

23

**Exhibit 27**

earnest intention of actually pursuing those grievances before demanding arbitration. After the Union advanced more than 76 grievances to arbitration in 2022 and 2023 (the Union has only produced records through July 2023 in this proceeding), there was no longer any legitimate business reason for the Hospital to incur a case administration fee for cases that were used only to harass the Hospital and would ultimately be withdrawn by the Union. Indeed, the Hospital would effectively be subsidizing the Union's efforts to intentionally cause it harm.

From January 3, 2022 to date, the Union has only pursued six of the more than 100 arbitrations it demanded to completion and then even withdrew one of those cases after an award had already issued. That is why the "thousands of pages" of "evidence" of case administration the Union proffers shows nothing more than the Union forced the hospital to create thousands of pages of useless "busywork" that ultimately served no purpose except to impose hundreds of thousands of dollars of unnecessary costs and fees on the Hospital for arbitrations that ultimately went nowhere. LRC was quite literally being paid to do nothing. And the Union now asks the Arbitrator to force the Hospital to continue to subsidize its effort to intentionally harm the Hospital.

As if this were not bad enough, the Hospital was fully justified in limiting LRC to the selection of arbitrators only for the additional reason that LRC *admittedly ceased acting as a neutral* with respect to the Hospital. LRC owner Jan Teehan has already testified under oath that she failed to act as a neutral by among other things: suggesting that the Union make corrections to submissions before transmitting the submission to an arbitrator; refusing to immediately transmit submissions on behalf of the Hospital without input from the Union, but immediately transmitting the Union's submissions without input from the Hospital; suggesting to the Union that it revise its subpoenas; and presuming to provide arbitrators with summaries of the parties' submissions. (*See* Ex-3 at p. 444-452, 460-465, 469-470, 476). In addition, and among other things, LRC actively

24

**Exhibit 27**

colluded with the Union to the detriment of the Hospital. For example, LRC refused to transmit Hospital arguments that were detrimental to the Union's position to arbitrators; LRC had inappropriate ex parte communications with arbitrators about the Hospital, the Hospital's attorneys, and facts related to the bargaining relationship between the Hospital and the Union without the Hospital's knowledge or consent, telling an arbitrator, for example, that the parties were "at war"; labeling the Hospital's submissions "outrageous" and long; telling an arbitrator that the arbitration "should be fun" sarcastically; and LRC employees presuming to argue the Hospital's position to arbitrators resulting in rulings adverse to the Hospital. (*See* Ex-3 at p. 464-465, 469-470, 523-526; Ex-5).

The Union repeatedly likens LRC to a clerk of the court, which is laughable considering the informal and admittedly biased nature of LRC's case administration. A clerk of court would never in a million years write an e-mail commenting on a lawyer's southern accent or have candid conversations with a judge about their impressions of counsel. Such communications also begged the question whether LRC was communicating with the Union regarding its impression of arbitrators, which is clearly unethical and shows partiality, and which was later confirmed during a recent unfair labor practice trial. Nor would a clerk wait to remit a pleading to a judge until the other party responds and then attempt to explain its failure to remit the pleading to the parties by explaining that the judge is on vacation and will not review the pleading anyway. Yet it is undisputed that LRC, a purported neutral case administrator, not only engaged in such conduct, but defended its actions and "took sides" with the Union by insisting on charging the Hospital for services it refused without any valid ruling by an arbitrator. Given these and other inappropriate behaviors by LRC, the Hospital has a legitimate business reason not to stop using LRC, which instead of acting as a neutral had clearly began working on behalf of the Union.

25

**Exhibit 27**

Setting aside the Arbitrator's refusal to hear evidence of changed circumstances justifying the Hospital's actions being challenged by the Union in this arbitration,[2] the Union has disproven its own case by limiting its case in chief to presenting dozens of frivolous arbitrations which demonstrate the Union's weaponization of the grievance process and which conclusively establish that the Hospital had a legitimate business reason to stop using LRC for case administration and instead to direct arbitrators to process grievances at the arbitral step without a case administrator and limit the applicability of the applicable LRC procedures to the selection of arbitrators consistent with the provisions of Article XXI of the CBA.

## V.     THE UNION FAILED TO ESTABLISH A PAST PRACTICE.

### A.     FOURTH ISSUE

Only if the arbitrator ignores the plain language of Article XXI, Section 8.05, and Article XXV as well as all of the evidence of changed circumstances and the admitted bias of LRC, then the Arbitrator must decide whether the Union has met its burden to establish the existence of a past practice that obligated the Hospital to use LRC to "administer" arbitrations of grievances filed under Article XXI of the CBA, in the Union's own words, "from inception of the arbitration to conclusion." As demonstrated below, the Union has failed to prove any such practice.

---

[2] The Arbitrator improperly refused to allow the Hospital the benefit of a hearing in this matter and improperly refused to issue the Hospital's requested subpoenas to LRC and its administrators, to AAA and its administrators, and to the Union's attorneys and their firm's administrators, all who the Hospital proffered had knowledge that AAA and LRC did not act as neutrals; that AAA and LRC made themselves parties to proceedings between the Union and the Hospital; that AAA and LRC withheld information from the Hospital to the benefit of the Union; that AAA and LRC advocated the Union's position to arbitrators; that AAA and LRC delayed delivery of Hospital communications to arbitrators to the benefit of the Union; that AAA and LRC purportedly administer arbitrations in accordance with the wishes of the Union and without regard for the wishes of the Hospital; that LRC refuses to submit the Hospital's submissions to arbitrators; and that LRC edits arbitrator's decisions and issues its own decisions instead, and that LRC cherry picks arbitrators to benefit of the Union. The Hospital proffers Ex-4, which is a compilation of just some of the e-mails demonstrating the foregoing which could have been authenticated by the subpoenaed witnesses had the Arbitrator seen fit to allow the Hospital the benefit of a hearing and to call relevant witnesses at that hearing, in which case the evidence against the Union and administrators would have been worse even than is evident by these few emails.

**Exhibit 27**

B.  FACTS

The Union has introduced into evidence only a single hand-selected document from each arbitration between the Union and the Hospital from 2016 through 2023 that it claims were administered by LRC or AAA "from inception of the arbitration to conclusion." Some arbitrations were submitted to LRC, while others were submitted to AAA. Most of the arbitration demands submitted to LRC by the Union contain two statements:

> 1. "This letter constitutes notice under Article XXI, Step 4, Grievance Procedure of the collective bargaining agreement between the [Union] and [the Hospital] of the submission to arbitration in the above referenced matter."
>
> 2. "Kindly note that by agreement the parties ask that the Labor Relations Connection administer this case."

(*See e.g.* Ux-27 at MNA002, MNA 006, MNA011).

On September 20, 2023, Christopher T. Borruso, Director and Senior Counsel of Labor Relations for Tenet Healthcare, wrote the following e-mail to LRC:

> Ms. Teehan,
>
> Please be advised that the collective bargaining agreement between Saint Vincent Hospital ("Hospital") and the Massachusetts Nursing Association ("MNA") provides for the selection of arbitrators pursuant to the Voluntary Labor Arbitration Rules of the American Arbitration Association or the applicable procedures of the Labor Relations Connection. It does not provide for the application of either agency's rules or for the "administration" of any matters by either agency.
>
> Accordingly, effective as of the date and time of this email, you are instructed to cease any purported "administration" of, or any other participation of any kind in, any of the Hospital's currently pending matters. Please provide me the arbitrator's contact information in each of the Hospital's currently pending cases at your absolute earliest convenience, but by no later than the close of business tomorrow, September 21, 2023.

(Ux-9).

27

**Exhibit 27**

C.      ARGUMENT

        *1.     The Union failed to meet its burden to establish a past practice.*

Even if the Arbitrator exceeds his authority and reaches the issue of past practice as the Union asks him to do, the Union's grievance must nevertheless be denied because the Union has not met its burden to establish the existence of a past practice. "For a past practice to be binding on both parties, it must be (1) unequivocal; (2) clearly enunciated and acted upon; and (3) readily ascertainable over a reasonable period of time as a fixed and established practice accepted by both parties." *Labor Arbitration Decision*, 199214-AAA, [Number redacted], 2015 BNA LA Supp. 199214 (D. Gaba, 2015). "However, past practice cannot be used to vary clear contract language; it can only be used to demonstrate or clarify ambiguity in the language." *Crown Cork and Seal USA, Inc.*, 130 LA 1015 (D. Gaba, 2012). "One commonly used formulation of the elements constituting a past practice requires clarity, consistency, and acceptability." *Harbison-Walker Refractories*, 114 LA 1302 (Smith, 2000). The Union's evidence of a purported past practice is deficient in several ways: first that it is not unequivocal; second that it was not clearly enunciated; third that it is not readily ascertainable as a fixed and established practice accepted by both parties; and fourth that the Union is using the purported past practice to modify the terms of the CBA and not to clarify any ambiguity in the language.

First, prior use of LRC to administer arbitrations was not unequivocal. To the extent that the practice evolved as "the convenient way of doing things at the time," there is no evidence that it was ever intended to be a mandatory practice in every single arbitration case. *See Warren County*, 128 LA 1109, 1116 (Wilson, 2010) (holding that a past practice that evolved as "the convenient way of doing things" and the result of management discretion was not unequivocal). The evidence submitted by the Union shows that using LRC to administer arbitrations was never intended to be

**Exhibit 27**

automatic or mandatory in every case. In fact, it shows the exact opposite. It shows that the Union found it necessary in every single case to specifically point out that the parties were "requesting" case administration for "this case" only and then only "by agreement of the parties." The wording of this request, which was made in the same manner in every arbitration demand submitted to LRC, proves that the Union understood that the use of LRC to administer arbitrations required the agreement of the parties in each individual case. The use of LRC to administer arbitrations was therefore equivocal in that it was never automatic or mandatory, but always made by "agreement [of] the parties" and therefore conditional upon the parties' assent in each particular case.

Second, the past practice was not clearly enunciated. The record evidence establishes no more than that one party professed an agreement to request LRC to "administer the case" in each individual matter. There is no record evidence of an agreement to follow LRC procedures to process grievances or what the parties meant by the phrase "administer the case." While the Union has provided examples of LRC sending e-mails related to numerous arbitrations, the record contains no evidence that LRC ever applied its procedures at the direction of the parties and certainly not as required by language set forth in the CBA. If there ever existed an actual agreement between the parties—verbal or written—the record in this proceeding contains no evidence of a clearly enunciated agreement for the parties to abide by LRC procedures in every single grievance raised under Article XXI and advanced to arbitration by the Union. As noted above, the evidence submitted by the Union shows the opposite.

Third, the use of LRC procedures by the parties is not readily ascertainable as a fixed and established process accepted by both parties. There is no evidence in the record demonstrating affirmative agreement by the Hospital or its attorneys to follow LRC procedures. The Union itself framed the issue in this case as whether there was a practice of allowing LRC to administer

**Exhibit 27**

arbitrations "from inception of the arbitration to conclusion." Yet it failed to provide evidence - either documents or testimony – sufficient to show that in any particular arbitration, LRC actually did "administer" that case "from inception to conclusion." "An arbitrator will not be impressed… by general witness testimony to the effect that 'the company always does this or that.'" Abrams, *Inside Arbitration: How an Arbitrator Decides Labor and Employment Cases* (Bloomberg BNA 2013, at 272. While Canzoneri (who was not involved in many of these cases and therefore had no first-hand knowledge of what actually occurred in those cases) provided generalized hearsay testimony about what he speculated the alleged "administration" of arbitrations might have been, that is not enough to establish that the concrete past practice the Union alleges actually existed here. This does not prove that the claimed practice was readily ascertainable or unequivocal. *See United Mine Workers of America Local 1791*, 1994 BNA LA Supp. 107345 (Brunner, 1994) (holding that testimony and evidence that a claimed practice "was the way this has been done in the past" does not render the practice unequivocal or readily ascertainable); *see also Labor Arbitration Decision*, 149222-AAA, [Number redacted], 2012 BNA LA Supp. 149222 (Block, 2012) (holding that a presumed practice is not clearly enunciated or readily ascertainable over a period of time as a fixed and established practice).

Nor is there any evidence in the record of an oral waiver or failure to enforce, neither of which would in any case constitute precedent or preclude the Hospital from enforcing the plain terms of Article XXI. To the contrary, the record includes only unilateral and boilerplate statements made by the Union's attorneys, which can serve to prove no more than that the Union understood the Hospital's agreement to allow LRC to administer arbitrations was required in each individual case. Indeed, most of the arbitration demands submitted to LRC by the Union contain two statements:

30

**Exhibit 27**

3. "This letter constitutes notice under Article XXI, Step 4, Grievance Procedure of the collective bargaining agreement between the [Union] and [the Hospital] of the submission to arbitration in the above referenced matter."

4. "Kindly note that by agreement the parties ask that the Labor Relations Connection administer this case."

(*See e.g.* Ux-27 at MNA002, MNA 006, MNA011). On one hand, the Union's attorneys make clear that notice of a demand to arbitrate is being made pursuant to the CBA. On the other hand, the Union's attorneys request that the LRC administer the arbitration was based on an unspecified "agreement" of the parties in that particular case with no reference to the CBA. In fact, the Union never indicated in any of these letters that the CBA required the parties to use LRC for case administration. The use of LRC was always a "request" by the "agreement of this parties" to administer "*this case*."

These letters were not signed by the Hospital or its attorneys, and the Union has presented no evidence whatsoever of any mutual agreement to permit LRC to administer any particular case, let alone every single case, including those to be filed in the future. The Union did not even question the authors of those arbitration demands—Mr. Canzoneri and his law partners—about the purported agreement by the parties. The Union has therefore left the Arbitrator in the position that he can only speculate—which is not within his authority— about what was meant by the purported "agreement [between] the parties." Who are the parties—the Union and the Hospital or the Union's attorneys and the Hospital's attorneys? Was the "agreement" in writing or verbal? Was the agreement discussed before each and every arbitration, or was it discussed years ago when the Union made its first request to LRC? What are the terms of the agreement? What is the duration of the agreement? The Arbitrator cannot answer any of these questions because the Union has failed to meet its evidentiary burden to show that there was any actual agreement between the

31

**Exhibit 27**

Hospital and the Union to amend Article XXI regarding the use of LRC procedures to administer arbitrations.

Finally, the claimed past practice does not clarify any language in the CBA. Instead, and as discussed above, the Union is seeking to add a provision to Article XXI that would require the parties to follow LRC procedures or AAA rules to process grievances beyond the selection of an arbitrator. In essence, the Union is seeking to add the Section 8.05 language providing that grievances "shall be processed" pursuant to AAA rules to Article XXI. The arbitrator lacks authority to add this language to the agreement, regardless of any purported past practice, pursuant to Article XXI itself and Article XXV of the CBA, which provides that "no additions…, changes or amendments shall be effective during the life of this Agreement, unless evidenced in writing, dated and signed by the parties hereto." (Exhibit 7 at p. 70).

2.      *Rulings by prior arbitrators have no precedential value.*

The Union's anticipated argument that prior rulings by arbitrators that the parties must use LRC for case administration in other grievances are binding on the Arbitrator in this proceeding must be rejected for numerous reasons. First and foremost, those arbitrators lacked authority to decide issues not submitted for arbitration. The issue of whether the Hospital is required to use LRC for case administration and follow LRC rules when processing arbitrations was not a grievance submitted by the MNA in those cases, but rather, in this case. Although the Union purported to frame the issue in those other cases as a procedural motion related to the litigation of each particular grievance, that was not in fact the case. In fact, aside from the Hospital pointing out to those arbitrators that it was beyond their authority to decide that issue, none of the Arbitrators in those cases had the benefit of the Hospital's position and the Union left them in the dark about the true state of affairs between the parties. Arbitrator Cooper, for example, acknowledged the

32

**Exhibit 27**

Union's failure to raise this issue in the context of a grievance in his October 16, 2023 Pre-Arbitration Ruling on Direct Communication in Case No. 641-22. (Ux-13). Therein, he stated, "To my knowledge, the MNA has not filed a grievance over [the Hospital's] interpretation of the Agreement." (Ux-13). Furthermore, Arbitrator Greenbaum also described his ruling as a resolution of a "pre-trial procedural dispute," which has no precedential value beyond the procedure to be followed in that arbitration case. (Ux-14).

Moreover, other rulings on the issue blatantly violate the arbitrator's authority by adding language to Article XXI. For example, Arbitrator Boulanger concluded, "When the Union submitted its arbitration request to the LRC, LRC procedures govern case administration of the grievance from the filing of the grievance to arbitration through the issuance of the award, and thereafter, if there are any post-award disputes such as a clarification request, remedial calculations, etc." (Ux-14). This language obviously does not appear in the CBA. Arbitrator O'Brien held that he was "required to comply with the policies of LRC" because he "received and accepted an appointment to serve as arbitrator through the [LRC]." (Ux-16). Again, this requirement does not appear in the CBA, and the Arbitrator is not bound by the attempts by other arbitrators to modify or re-write the provisions of Article XXI. Moreover, to the extent Arbitrator O'Brien and other arbitrators based their decision not on the CBA language between the parties, but on their relationship with the administering agencies or their purported ethical obligations to those agencies, they were clearly conflicted on the issue and were required to recuse themselves.

Finally, had the Hospital been permitted to subpoena relevant documents and witnesses at a hearing, the evidence would have shown that LRC actively colluded with several arbitrators to convince them to rule in such a way as to benefit both the Union and LRC itself. (*See e.g.* Ex-6).

33

**Exhibit 27**

"Arbitral precedent favors resolutions of disputes on the merits, over procedural forfeitures that avoid reaching the merits of a case." *Sterling Packaging Corp.*, 115 LA 304, 307 (Franckiewicz, 2000). If an "earlier award was… 'analytically unsound,' then it was not binding on the subsequent arbitration proceedings." *Connecticut Light & Power Co. v. Local 420, Int'l Brotherhood of Elec. Workers, AFL-CIO*, 718 F.2d 14, 20 (2d Cir. 1983). The Arbitrator cannot afford any significant precedential value to analytically unsound rulings on the use of LRC in other arbitration proceedings that were already being administered by LRC based on the Union's unilateral request for case administration services, especially when the Union has submitted the issue to this Arbitrator for resolution in these proceedings. The Arbitrator must begin his analysis of the Union's grievance raising the actual issue at hand with a review of the plain terms of the CBA, which in this case merits denial of the grievance without regard to any extrinsic facts beyond the four corners of the CBA, including orders by prior arbitrators that exceeded their jurisdiction, contained analytically unsound legal analysis, and attempted to re-write the CBA.

## VI.     CONCLUSION

Based on the clear provisions of the CBA, as well as the other factual and legal grounds set forth above, the Hospital respectfully submits that the Union's grievance be denied.[3] The CBA does not require that the Hospital use LRC and its procedures for case administration of the Union's grievances. The CBA does, however, require that any additions, changes, or amendments to the CBA be dated and signed by the Hospital and the Union, and because the Union has failed to

---

[3] As previously noted, the Hospital's participation in this arbitration proceeding is under protest of the Union's continuing corruption of the parties' grievance and arbitration procedure, the conflicts of interest of both the Arbitrator and AAA, the refusal by AAA and the Arbitrator to provide required disclosures and communicate with the Hospital, lack of notice regarding the arbitration hearing, the Arbitrator's refusal to issue subpoenas on behalf of the Hospital, the Arbitrator's refusal to permit the Hospital the benefit of a hearing and various other denials of due process. No objection previously raised is waived by the Hospitals submission of this brief.

34

**Exhibit 27**

present any evidence of an effective amendment to the CBA, the Arbitrator must reject the Union's

claimed practice and deny the Grievance on its merits.

May 9, 2025                                        Respectfully submitted,

                                                  */s/ Marc A. Sugerman*
                                                  Marc A. Sugerman
                                                  Florida Bar No. 0081876
                                                  FordHarrison LLP
                                                  300 South Orange Avenue, suite 1300
                                                  Orlando, Florida 32801
                                                  (407) 418-2300
                                                  msugerman@fordharrison.com

**Exhibit 27**