# Exhibit 32

## AMERICAN ARBITRATION ASSOCIATION
## BEFORE ARBITRATOR MICHAEL T. LOCONTO

---

**In the Matter of the Arbitration between**

**MASSACHUSETTS NURSES ASSOCIATION**

**and**

**ST. VINCENT'S HOSPITAL.**

AAA Case No. 01-24-0000-7400.

Issue:  Case Administration
(Class Action).

---

### ARBITRATOR'S RULING ON REQUEST FOR REMEDIAL ORDER

On August 22, 2025, counsel for the Massachusetts Nurses Association (the "MNA" or "Union") requested and was granted a timely invocation of my retained jurisdiction in this dispute.  A process was established for reviewing the underlying remedial dispute and, on December 8, 2025, counsel for St. Vincent Hospital (the "Hospital" or "Employer") filed its objections to the Union's July 12, 2025 request of the for a remedial payment in satisfaction of the Award that I issued in this matter on June 12, 2025.  Specifically, the Union requested payment from the Employer in the amount of five thousand five hundred and fifty dollars ($5,550,00), which represented 30 hours of attorney work billed at a rate of $185 per hour.  The Union submitted its response to the Employer's objections on January 5, 2026, and the Employer was permitted an additional reply, which was submitted on January 16, 2026.

In brief, the underlying grievance challenged the Employer's unilateral demand that the Labor Relations Connection ("LRC") cease active case administration of grievances submitted for arbitration between the parties.  My June 12, 2025 Opinion and Award determined that the

Employer violated the parties' collective bargaining agreement ("CBA" or "Agreement") and provided the following remedy for the Union's benefit:

> The Union is entitled to an Award of damages as compensation for the Employer's violation of the Agreement. The appropriate measure of damages is dependent on the extent of the Employer's violation. The violation began on September 20, 2023 when the Employer's representative unilaterally directed the LRC to "cease any purported "administration" of, or any other participation of any kind in, any of the Hospital's currently pending matters." The record further reflects that the Employer directly contacted arbitrators assigned to matters between the parties that were being administered by the LRC. The Employer did so in violation of LRC Rule 8, which prohibits direct contact between the parties and the arbitrator and is incorporated as a term of the Agreement under Article XXI. The record also reflects that the Union obtained at least 15 procedural rulings from arbitrators assigned to the matters in dispute. Union counsel provided undisputed testimony to substantiate the efforts undertaken by the Union and its legal representatives to engage in varying amounts of correspondence, conferences, document review, research and briefing to obtain the rulings in each matter, which were uniformly in favor of the Union's position.
>
> The Employer's unilateral directive to the LRC was without apparent basis in fact or the parties' Agreement. The Employer failed to provide any evidence to support its position in this dispute, and the only reasonable conclusion can be that the Employer's position was taken in bad faith. As articulated in the Union's post hearing brief, labor arbitrators permit damages in the form of attorney's fees incurred as a result of the opposing party's bad-faith refusal to comply with the terms of a CBA. This principle is consistent with Massachusetts law, which holds the breaching party is responsible for damages that are the natural and direct consequences of a contractual breach.
>
> The Employer's bad faith violation of Article XXI was the direct and proximate cause of the Union's expenditures associated with defending its rights under the Agreement. As such, I am hereby ordering the Employer to compensate the Union for all attorney's fees and related costs incurred in obtaining procedural rulings from arbitrators in matters assigned through the LRC. The period of liability shall commence on September 20, 2023, and shall continue until the Employer abandons its position on the LRC's role in administering arbitration disputes between the parties.

In this regard, the Employer shall immediately cease and desist from all actions that may inhibit the LRC from administering pending or future arbitrations between the parties. I decline to issue a letter to the LRC or the AAA as requested by the Union, as further correspondence is unnecessary in light of this cease and desist order.

In satisfaction of this Award, the Union shall promptly provide the Employer's representatives with copies of all invoices, redacted to protect any privileged information, to substantiate the attorney's fees and costs incurred during the period described above. For the avoidance of doubt, promptly shall mean no later than 30 days following the date of this Award. Upon timely receipt of the materials produced for the Employer's review, the Employer shall issue payment to the Union no later than 30 days following receipt of said materials.

…

## POSITION OF THE EMPLOYER

The Employer asserted that the Union failed to comply with my June 12, 2025 Award by failing to use the "lodestar approach" for calculating an award of attorney's fees. *See Conservation Law Foundation, Inc. v. Patrick*, 767 F.Supp.2d 244, 250 (D. Mass. 2011). In brief, the Employer asserted that the Arbitrator must calculate whether the time expended on matters relating to the Union's request were reasonable and whether the fees for such work were reasonably based upon the prevailing rates for comparable attorneys in the community. *See id. (additional citations omitted).*

In challenging the Union's request for payment, the Employer asserted that the Union failed to present competent evidence to support its request. Specifically, the Employer asserted that the Union failed to provide contemporaneous records, and instead provided a summary report composed after the date of the Award in this dispute. The Employer also asserted that the report did not contain matter numbers, identify the individual who performed the work, or the hourly rate relating to each individual involved in the underlying disputes.

3

The Employer further objected to the Arbitrator's directive that the Employer establish specific challenges to the Union's request.  The Employer asserted that the Arbitrator denied its request to subpoena pertinent records, to question relevant timekeepers about the records or to otherwise conduct discovery necessary to disprove the Union's request.  *Conservation Law Foundation*, at 251, 256.

The Employer made other general objections to the invoices submitted by the Union as support for its requested remedial payment.  These include: the post-dated nature of the invoices; the lack of matter numbers, timekeepers or hourly rates on the invoices; the settlement or withdrawal of a substantial number of the arbitrations subject to the remedial order; and the relation between the fees claimed and the underlying subject matter.  Other objections go to the merits of this dispute and will not be reviewed.

The Employer also presented specific objections to individual invoices that were provided by the Union as support for its requested remedial payment.  In LRC #562-22, the Employer asserted that the Union submitted a bill for two hours despite the underlying work requiring no more than one hour and 21 minutes.  In LRC #599-22 and 655-22, the Union billed for "drafting a pre-hearing motion" yet did not submit a motion on the date indicated.  In LRC #598-22, 641-22, 727-233, 813-22, 861-22, 862-22, 863-22, 864-22, 292-23, 306-23, and 324-23, the Employer variously asserted that the matters were withdrawn and should not have generated fees, some of which were duplicative; moreover, the Employer asserted that the time that the Union billed was excessive or not sufficiently explained by *pro rata* distribution of work performed on multiple matters.  The Employer asserted that the Union's bill in LRC #857-22 was unnecessary.  The Employer asserted that the bill for #304-23 covered items not related to case administration.  Finally, the Employer also objected to the invoice covering the "Master"

4

motion developed by the Union as duplicative of the work performed on other matters explicitly identified by an LRC case number.

In its reply brief, the Employer reasserted its objections to the nature of the Union's invoices that were submitted to substantiate its July 12, 2025 remedial request.

**POSITION OF THE UNION**

The Union asserted that the Employer's objections are without merit.  First, the Union asserted that the Employer's reliance on the lodestar approach is misplaced.  Unlike *Conservation Law Foundation, Inc. v. Patrick*, 767 F.Supp.2d 244 (D.Mass 2011), which addressed a statutory award of attorney's fees, the present dispute relates to damages in a breach of contract dispute.  The Union further asserted that the Employer failed to address damages during the case on the merits in this dispute.

Alternatively, the Union asserted that even if the lodestar approach were applied, the award of attorney's fees would be significantly higher than the amount requested by Union.  Specifically, the Union's requested rate of $185 per hour is well below the comparable rates charged by other attorneys in this community with similar backgrounds, practices and experience.  The *Conservation Law Foundation* dispute cited by the Employer awarded rates between $190 and $580 per hour in a case decided 15 years ago.  *Id.* at 251.  In other local cases involving experienced employment litigators and discrimination, ERISA, FLSA and labor disputes, courts awarded hourly rates in a range from $355 in a 2011 decision to $700 per hour in a 2022 decision (*citations omitted*).  Rather than argue for a theoretical rate, the Union properly requested reimbursement at the applicable rate for work actually incurred.

The Union further asserted that the Employer's other objections are without merit.  Specifically, no specific names or rates are necessary because the Union is billed at $185 per

hour regardless of the attorney assigned to the matter, with no paralegals assigned to perform work on Union disputes.  Additionally, the Union asserted that the Employer failed to object to the reasonableness of the rate charged.  The Union also asserted that it provided materials to substantiate actual billing in the underlying disputes that form the basis for relief in this matter.

The Union also asserted that the Employer holds the burden to rebut evidence of damages in this dispute.  In this regard, the Union further asserted that the Employer never sought any subpoenas in this remedial dispute to address the question of remedy; evidently the Employer referred to its previous subpoena requests, which were offered during the merits phase in this dispute, as proof that it was not afforded an opportunity to test the accuracy of the Union's request for damages.  However, the Union asserted that those requests were properly rejected and had no bearing on the present question of damages.  As a practical matter, the Union further asserted that, even under the lodestar approach, the calculation of attorney's fees should not require extensive additional litigation.  *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (*additional citations omitted*).

The Union further asserted that the Employer's general objections to the Union's request are meritless and should be rejected.  Principally, the billing reports that were provided by the Union to support its request for a remedial payment in this dispute were summative of extensive invoices that would have required extensive redaction and covered a significant number of matters that were not relevant to this dispute.  The reports provided included itemized entries that identified the date work was performed, the related matter, and the specific activities undertaken. Although the Employer generally asserted that multiple disputes covered by the invoices submitted were filed in "bad faith," the Employer failed to appear for the hearing on the merits in this dispute and advance such arguments.  The Union also asserted that the Employer mischaracterized the disposition of the underlying disputes, some of which resulted in a

6

settlement or other resolution, while others advanced to a hearing and two resulted in awards at least partially in the Union's favor.

With regard to the Employer's specific objections, the Union asserted that the two hours billed in LRC #562-22 were accurate and related to internal communications and a *pro rata* billing arrangement between the Union and its counsel, and was not limited to the period between the emails that the Employer purported to govern the Union's work in this dispute.  In LRC #599-22 and other similar matters that were withdrawn (598-22, 641-22, 655-22, 861-22, 862-22, 863-22, 864-22 and 292-23), the Union asserted that the withdrawal of the underlying claim was immaterial because the Union was nevertheless forced to address the Employer's bad faith repudiation of the Agreement – which was the basis for the award of damages in this dispute.  The Union also rejected the Employer's assertion that no motions were filed in the 599-22 matter as demonstrably false.

The Union further asserted that the Employer ignored critical context – the matters that were withdrawn in LRC #598-22 and 641-22 were the result of a settlement that followed an award in the Union's favor involving the same grievant in all three cases.  The Union also asserted that the Employer mischaracterized the status of other matters, LRC #727-22, 304-23, 306-23 and 324-23, which required the Union and its counsel to defend LRC case administration – which was the underlying issue in this dispute.  The Union also asserted that the Employer failed to provide any substantive challenge to the Union's billing for a "master" motion in response to the Employer's continued challenges to the LRC's authority to administer cases.  The Union also asserted that it relitigated a previous ruling by Arbitrator Holden when it requested him to consider additional theories in LRC #857-22.

Upon further review of other billing items challenged by the Employer, the Union agreed that a 4.5-hour charge dated October 12, 2025 should be reduced to two hours, and a 2.5-hour charged dated October 16, 2023 should be reduced to one hour.

**OPINION**

The Union's requested remedy is supported by the record in this dispute. As the Court opined in *Hensley v. Echerhart*, 461 U.S. 424, 437 (1983), "[a] request for attorney's fees should not result in a second major litigation." This is not a fee-shifting dispute that arises out of a statutory provision, or some other formalized process. The remedy in this dispute, which I have reproduced at the outset of this memorandum, was founded in the Employer's violation of the Agreement.

Specifically, the remedy ordered on June 12, 2025 is unremarkable when compared to other contract violations in the field of collective bargaining. Collective bargaining remedies are grounded in equity and are intended to make the injured party whole. By ordering the Employer to compensate the Union for costs incurred to defend against its "bad faith" interpretation of Article XXI of the Agreement, and to perform other remedies that were not challenged, the Union shall be approximately restored to its position prior to the Employer's violation.

**The Union's Request is Reasonable.** The Employer sought to impose a "lodestar approach" to the evaluation of the Union's request. I disagree. As noted, this is contract dispute that does not require a formulaic approach or statutory fee shifting analysis. Although the basis for damages in this dispute are attorney's fees incurred by the Union in defending against the Employer's bad faith contract violations, the similarities between this dispute and those subject to lodestar approach end there.

The factual basis upon which I rendered my June 12, 2025 Award established the basis for the remedy awarded therein.  In opposing the Union's requested remedial payment, the Employer has sought to relitigate factual issues relating to timekeeping records.  However, the Employer offered little beyond conjecture to attack the billable hours attributable to defending against its bad faith violations of the Agreement.  The Employer provided no substantive evidence or analysis to advance its contentions that the Union's fees were unreasonable or otherwise unsubstantiated.

*Nexus Between Time Billed and Related Disputes Subject to the Remedial Order.*  On the other hand, the Union's supporting documentation, which accompanied its request for payment, was clear and reasonably related to the cases that formed a basis for the requested remedy.   In context, the Union submitted bills totaling 30 hours to defend against the Employer's bad faith violations that formed the basis for this dispute.  Those violations spanned the litigation of at least sixteen other grievance arbitrations.  The Union established a threshold showing of actual work performed in each of these cases.  Indeed, the Employer was a participant in the underlying disputes, and its counsel was undoubtedly aware of time and processes required for their Union counterparts to respond to the Employer's contract violations.

 Practically speaking, the minor adjustments that have been made to the Union's original demand for payment could have been resolved through correspondence rather than the extensive briefing and concurrent delay incurred through this briefing process.  In two instances, the Employer's challenges led to the Union's further review of its request and a corresponding reduction of 4 hours, which I have accepted.  Accordingly, the Union's remedial award in this dispute shall be reduced by $740.

*The Union's Fee Structure Reflected Actual Billing Practices.*  The Union also provided clear context for the requested payment and the underlying records that support the request.

9

Critically, the Employer failed to assert that the $185 per hour rate that the Union's counsel submitted for all attorney billing in the underlying disputes was *per se* unreasonable, and did not challenge the figure in its reply brief after the Union described the broader spectrum of fees awarded by courts in recent years to similarly situated attorneys in the local community.  If this were a case subject to the lodestar approach, it is reasonable to assume that the Union's counsel would be entitled to an hourly rate well in excess of the rate actually billed to the Union.

**ORDER**

The Employer shall immediately pay the Union the amount of four thousand, eight hundred and ten dollars ($4,810.00).  For the avoidance of doubt, "immediately" shall mean within fourteen (14) calendar days of the date of this Order.  The Employer shall also remain responsible for satisfying all other remedies that were previously ordered in this dispute.

With the issuance of this Order, my remedial jurisdiction has concluded.

SO ORDERED,

Michael T. Loconto, Esq.
Arbitrator
May 11, 2026

10