**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**VHS ACQUISITION NUMBER 7, INC.**
**d/b/a SAINT VINCENT HOSPITAL,**

**Petitioner,**

**and** **CASE 4:25-cv-40090-MRG**

**MASSACHUSETTS NURSES**
**ASSOCIATION,**

**Respondent.**
______________________________________/

**PETITIONER VHS ACQUISITION NUMBER 7, INC.**
**d/b/a ST. VINCENT HOSPITAL'S OPPOSITION TO RESPONDENT'S**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

Petitioner, VHS Acquisition Number 7, Inc., d/b/a St. Vincent Hospital ("St. Vincent" or "Hospital") files this Opposition to Respondent Massachusetts Nurses Association's ("MNA" or "Union") Motion for Judgement on the Pleadings [DKT. 55] and Memorandum in Support [DKT. 56] (collectively "Motion") and respectfully shows the Court as follows:

## I. INTRODUCTION

The Motion should be denied because MNA disregards the governing standard and makes merits arguments in favor of dismissal while claiming St. Vincent must prove its claims. Indeed, the factual allegations in the Amended Complaint clearly raise a right to relief above the speculative level and set forth sufficient facts to state claims plausible on their face.

For purposes of the instant Motion, the Court must accept all well-pleaded factual allegations (and inferences therefrom) as true and determine whether St. Vincent pled plausible claims to support vacatur of Michael Loconto's arbitration award. The Court must not (as MNA asks it to do) decide at this juncture whether St. Vincent will ultimately prevail on the merits of

those claims. Instead, the Motion must be denied because St. Vincent plausibly alleges, among other allegations, that Loconto:

1. demonstrated evident partiality in favor of MNA and against St. Vincent by, for example, applying different subpoena rules to the parties and reversing himself on substantive contract interpretation matters when it suited MNA's needs and in order to find for MNA irrespective of the evidence or plain and unambiguous language contained in the CBA and by soliciting an offer of proof from the Hospital regarding requested witness subpoenas, denying the subpoenas, and then falsely claiming in his Award that St. Vincent ever submitted the proffer;

2. engaged in misconduct and misbehavior substantially prejudicing the rights of St. Vincent by: (1) issuing differential treatment between the parties with respect to the pre-hearing subpoena rulings; (2) holding the hearing at a venue which was not properly disclosed to St. Vincent; (3) refusing to provide another day of hearing and denying post-hearing subpoena request;

3. exceeded his authority under the CBA by awarding MNA attorneys' fees in arbitration proceedings that were not pending before him and modifying the CBA to justify his Award;

4. dispensed his own brand of industrial justice by modifying the CBA to require AAA to administer all arbitrations between the parties and deciding he had jurisdiction over disputes decided by other arbitrators and awarding MNA attorneys' fees incurred in those cases, some of which were withdrawn by MNA;

5. issued an award unfounded in reason and fact because, for example, the award modified the CBA and awarded fees in arbitration proceedings that were not before Loconto and included orders which reversed earlier rulings in the same arbitration proceeding;

6. issued an award beyond the deadline established by AAA rules which the arbitrator ruled governed the arbitration proceedings;

7. exceeded his authority by modifying the terms of the CBA and ordering remedies in withdrawn arbitrations that were not before him, thereby issuing an award contrary to the terms of the governing CBA; and

8. engaged in misconduct by refusing to grant a hearing or permit limited discovery to the Hospital on the Remedial Award.

MNA asks the Court to reject these allegations and accept MNA's version of the facts. This the Court cannot (and should not) do. The Motion should be denied.

## II. LEGAL STANDARD

To survive a motion for judgment on the pleadings, the Amended Complaint must "contain sufficient factual matter to state a claim for relief that is actionable as a matter of law and 'plausible on its face'". *Iron Workers Dist. Council of New England Health & Welfare Fund v. Teva Pharm. Indus. Ltd.*, 757 F. Supp. 3d 91, 95 (D. Mass. 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Factual allegations in the Amended Complaint must be accepted as true, and all "reasonable inferences" must be drawn in favor of St. Vincent. *Id*. That is because a "judgment on the pleadings will be granted only if there is no relevant factual dispute and the moving party is entitled to judgment as a matter of law." *Amanda Le v. New England Swimming*, 2026 U.S. Dist. LEXIS 113839, *3 (D. Mass. 2026).

## III. ARGUMENT AND CITATION TO AUTHORITY

### A. MNA Applies the Wrong Standards in the Motion

MNA applies the wrong standards in its Motion and, instead, asks the Court to (1) weigh allegations and denials in favor of MNA rather than viewing the allegations in light most favorable to St. Vincent; and (2) dismiss the Complaint because St. Vincent has not *proven* its claims. Both demands lack foundation in the law.

First, MNA impermissibly asks the Court to construe or, alternatively, ignore certain allegations contained in the Amended Complaint. [*See e.g.*, DKT. 56, p. 28]. ("Despite those numerous averments straining to show perceived misconduct by Loconto, the Hospital's pleadings do not demonstrate bad faith or improper motives, but rather the Arbitrator generously and repeatedly offering the Hospital opportunities to present its case."); *Id.*, at 34 ("There is simply no way the Hospital can demonstrate it was prejudiced by the lack of an initial phone call.").

Of course, MNA's *interpretation* of the allegations contained in the Amended Complaint has no bearing on the Court's consideration of the Motion. And the Court should not ignore

allegations simply because they do not fit MNA's narrative that the Amended Complaint lacks merit. Indeed, the Court must construe the factual allegations (and inferences therefrom) in the Amended Complaint in light most favorable to St. Vincent. Those include for example, among others, that the Arbitrator had an improper motive for ruling against St. Vincent as demonstrated by his refusal to produce *ex parte* communications with LRC about the merits of the arbitration proceeding [DKT. 37, ¶¶ 27; 61-62] and that Loconto expressly ruled he would schedule a phone call to discuss any requested subpoenas and then only applying that rule to the Hospital [*Id.*, ¶¶_40-45], which, objectively and in light most favorable to St. Vincent, provides allegations showing prejudice or bias against the Hospital.

Second, MNA asks for dismissal because St. Vincent failed to ***prove*** its allegations for vacatur under the Federal Arbitration Act ("FAA") and Section 301 of the Labor Management Relations Act ("LMRA").[1] To wit:

- "Relief under Section 10(a)(2) [of the FAA] also **requires proof** that the arbitrator had an improper motive." [DKT. 56, at 21].

[1] In its Motion, MNA claims St. Vincent's Massachusetts state law claims are preempted by Section 301 of the LMRA. [DKT 56 at 15]. St. Vincent disagrees and, further, asserts MNA failed to identify any specific provision of the CBA that must be interpreted to resolve Counts I, II, III, VII, or IX of the Amended Complaint, or how adjudication of those claims is "inextricably intertwined" with the terms of the CBA. As the First Circuit explained in *Rose v. RTN Federal Credit Union*, 1 F.4th 56 (1st Cir. 2021), "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is preempted by [Section] 301." *Rose*, 1 F.4th 56 at 61. Instead, the question is whether adjudication of the state-law claim is "inextricably intertwined with consideration of the terms of" the labor contract. *Id.*

Nevertheless, St. Vincent has conferred with MNA about the state claims in Counts I, II, III, VII, and IX of the Amended Complaint. Since those claims provide the same relief available under federal law, and for the purposes of reducing the burden on the Court's resources addressing a dispute between the parties which has no practical import on the litigation, St. Vincent has agreed not to pursue those claims on the merits and will file a motion for leave to amend and/or further confer with MNA about a stipulation regarding such claims.

- The Petitioner must "**prove** substantial, direct facts that would require a reasonable person to conclude that Loconto was partial in favor of MNA", and that St. Vincent "has not carried its substantial burden of showing 'evident partiality.'" [*Id.* at 25.]

- Even assuming arguendo Loconto's rulings against St. Vincent alone could establish partiality to MNA – which they cannot absent any **evidence** of a substantial interest between MNA and the arbitrator . . . **there is no evidence** any of Loconto's rulings were improper or were prejudicial to St. Vincent." *Id.* at 28-29.

- "[i]n addition to presenting **no evidence to support** its clearly fictious theory…St. Vincent **introduced no evidence** to demonstrate that it was prejudiced…" *Id.* at 35.

- "[f]or St. Vincent to prevail…it must **establish facts** sufficient for a reasonable person to have to conclude Loconto acted with an improper motive…"; arguing St. Vincent "does not come close to meeting that standard" *Id.* at 45.

- "…to prevail…St. Vincent **must prove** unambiguous language exists…" *Id.* at 50.

(emphasis added).

St. Vincent is not obligated to *prove* the causes of action set forth in its Amended Complaint. The applicable standard requires St. Vincent to *allege* cognizable claims supported by facts that either have evidentiary support or will likely have evidentiary support after a reasonable opportunity for further investigation or discovery, which it has done. Notably, the Court already implicitly recognized the Amended Complaint allegations survive the instant Motion because it granted St. Vincent the ability to seek limited discovery from Loconto and LRC regarding, among other things, Loconto's financial interests and disclosure failures–allegations plainly pled by St. Vincent in support of its claim that Loconto was evidently partial against St. Vincent. [*See* DKT. 37, ¶¶ 31-37; 78-90 (the Hospital alleged LRC had a direct pecuniary interest in the outcome of an arbitration involving the Labor Relations Connection, in which Loconto issued an Award and held: "[t]he Employer violated Article XXI of the Agreement by unilaterally directing the Labor Relations Connection to cease administration of grievance arbitrations filed by the Union.").

MNA's request that the Court dismiss this action because St. Vincent has not *proved* its allegations is nothing more than an inappropriate request to rule on the merits. Because factual disputes obviously remain between the well-pled factual allegations in the Amended Complaint and MNA's denial of virtually every allegation in its Answer, the instant Motion must be denied. *Amanda Le,* 2026 U.S. Dist. LEXIS 113839, *3 (D. Mass. 2026) (factual disputes bar judgment on the pleadings).

## B. St. Vincent's Allegations Sufficiently State Cognizable Claims for Relief

### 1. Count I – The Award Must Be Vacated Based on the Arbitrator's Evident Partiality

Count I asserts Loconto demonstrated evident partiality in favor of MNA and against the Hospital and/or misconduct prejudicing the rights of the Hospital. MNA asserts St. Vincent failed to meet its burden to state facts in support of this claim that "show that the alleged partiality is or was direct, definite, and capable of demonstration rather than remote, uncertain or speculative. [DKT. 56, p. 18]. Not true.

St. Vincent pled numerous allegations which demonstrate partiality that is direct, definite, and capable of demonstration. St. Vincent's allegations about Loconto's evident partiality are not limited to his failure to disclose his business relationship with LRC, which in any case independently demonstrates direct partiality based on the fact that he generates income through his relationship with LRC and issued an Award requiring St. Vincent to use LRC for case administration. In fact, even the cases MNA cites in support of its position that an unfavorable ruling, standing alone, cannot support an inference that the arbitrator had a relationship with the opposing party (an argument the Hospital does not make), recognize that "[e]vident partiality can be found when the arbitrator's relationship with a party, including business dealings, creates an

impression of possible bias." *See e.g.*, *Aalfs Family P'ship v. GSL Holdings*, 2022 U.S. Dist. LEXIS 87358, at *36 (N.D. Iowa Apr. 11, 2022).

In addition to the Arbitrator's failure to disclose his business relationship with LRC, which is required by AAA rules and is grounds for recusal, St. Vincent's allegations regarding Loconto's evident partiality are robust and include, among others:

- Loconto failed to meet his obligations to disclose his interest in LRC even after St. Vincent demanded that he do so;

- Loconto interpreted the same provision of the CBA in <u>three different ways</u> throughout the process to assist the Union. He first found that the CBA was <u>silent</u> on the underlying issue in the arbitration (whether an arbitral agency could "administer" an arbitration). [DKT. 37, ¶¶ 52, 130]. Then, when it became clear his finding would preclude an evidentiary hearing sought by MNA to put on parole "past practice" evidence, he found the same language was <u>ambiguous</u>. [*Id.* ¶¶ 74-77]. And he then finally found the language to be "<u>clear on its face</u>" in MNA's favor. [*Id.* ¶¶ 129-131].

- Loconto applied AAA rules to the underlying proceeding in violation of the CBA language and then ignored those rules anyway, and always to the Hospital's detriment by, among other actions: issuing a late award [*Id.* ¶¶ 119-128]; allowing MNA more time to submit attorneys' fees materials over the objection of the Hospital [*Id.* ¶ 136]:[2] failing and refusing to disclose his interests in the underlying merits of the arbitration [*Id.* ¶ 33, 86]; holding a hearing that was not properly noticed with the date <u>and location</u> of the hearing at least 5 days before [*Id.* ¶¶ 92-104]; and denying the Hospital's demand that a court reporter attend the first day of hearing. [*Id.* ¶ 102].

- Loconto established a procedure for handling subpoenas which required a conference call to discuss the requested items, [*Id.* ¶ 41], but only used that procedure to address subpoenas requested by the Hospital–ignoring the procedure when the Hospital sought witness subpoenas (requiring the Hospital to submit an "offer of proof" instead, and then falsely stated in his award that the subpoenas were not issued because the Hospital never submitted an offer of proof, which it did). [*Id.* ¶ 41; fn 4.]. Loconto similarly ignored the procedure when MNA sought subpoenas–which he granted in full–opting instead to apply a never-before-disclosed "new process" for handling subpoenas. [*Id.* ¶¶ 53-55; 64-69].[3]

---

[2] Whether MNA took the additional time to submit its materials is irrelevant to the factual allegation that Loconto violated the rules he purported to apply to the proceedings to aid the Union. Whatever conclusion MNA draws from those facts is not relevant to this motion.

[3] In its Motion, MNA assertively claims St. Vincent "falsely pled" that Loconto "reversed" himself with respect to his treatment of the parties' respective subpoenas because the documents sought by MNA did not include any documents Loconto refused to allow the Hospital to obtain. [DKT. 56,

- Loconto limited the documents the Hospital could obtain from MNA on its "past practice" argument to a single self-selected document by MNA for each case of "past-practice" it intended to introduce at the hearing [*Id.* ¶ 41] while requiring the Hospital to fully comply with the Union's subpoena which Loconto admittedly explained sought "similar records from the Employer in its own subpoena. [*Id.* ¶ 71].

- Loconto refused to produce *ex-parte* correspondence between himself and representatives of LRC connected to any cases involving St. Vincent or its counsel and any communications between Loconto concerning LRC "cherry picking" him for any such cases. [*Id.* ¶¶ 78-90].

- Loconto told the Hospital it would not be prejudiced if it did not attend the first day of hearing in the underlying arbitration (to which the Hospital objected) [*Id.* ¶¶ 99-101] and promised the Hospital that it would have a second day of hearing in which to present its case and then refused to hold the second day of hearing after denying the Hospital subpoenas it requested to secure witnesses. [*Id.* ¶¶ 101-118].

St. Vincent's allegations are not simply that Loconto was evidently partial because he possessed an undisclosed financial interest, refused to recuse himself, and made rulings adverse to St. Vincent, although those facts are each independently sufficient to support cognizable grounds for vacatur. The allegations, on their face, are not petty slights or, as alleged by MNA in its Motion: "indulgence[s] in frivolousness due to the Hospital's sour grapes about failing to sabotage the arbitration process." [DKT 56., p. 45].

The allegations of evident partiality, which are specific, when viewed in the light most favorable to the Hospital, paint a mosaic from which St. Vincent has pled a cognizable claim of evident partiality. *JCI Communs., Inc. v. IBEW, Local 103, 324* F.3d 42, 45 (1st Cir. 2003) ("Evident partiality means…a reasonable person would have to conclude that an arbitrator was partial to one party to an arbitration") ; *see also Al Harbi v. Citibank, N.A.*, 318 U.S. App. D.C.

---

p. 34]. Contrary to MNA's claim, St. Vincent pled that the "reversal" at issue was Loconto's failure to conform to the procedure he ordered would apply to the subpoena process–opting instead to skip that process for subpoenas requested by the Union. [DKT. 37, ¶¶53-65]. St. Vincent also pled differential treatment because Loconto's grant of the Union's subpoena involved, as admitted by Loconto himself, "similar records from the Employer in its own subpoena." [*Id.* ¶¶ 70-73].

114, 85 F.3d 680, 683 (D.C. Cir. 1996) (Explaining the claimant has to show facts demonstrating improper motives on the part of the arbitrator).

**2. Count II – The Award Must Be Vacated Because Loconto Engaged in Misconduct and Misbehavior Substantially Prejudicing the Rights of the Hospital.**

The thrust of MNA's argument to dismiss Count II boils down to claims that, on the merits, Loconto did not engage in misconduct by: (1) issuing differential treatment between the parties with respect to the pre-hearing subpoena rulings; (2) holding the hearing at a venue which was not properly disclosed to St. Vincent; (3) refusing to provide another day of hearing and denying post-hearing subpoena request. Each of these arguments fail.

First, St. Vincent pled Loconto refusing to issue it the subpoenas it requested (both for documents from MNA and witness subpoenas to secure testimony) and then, throughout the process, changed the procedure for addressing subpoenas when it was to the benefit of MNA. That much is plainly clear from the citations above. [DKT. 37, ¶¶ 108-117]. Moreover, Loconto demanded from St. Vincent an offer of proof with respect to its requested witness subpoenas for the second day of hearing (which he never required before), denied those subpoenas, and then claimed in his Award that St. Vincent failed to present evidence the witnesses could have provided. [*Id.*, ¶¶ 37-50, 108-117]. That is more than enough factual pleading to state a cognizable claim for misconduct by an arbitrator – notwithstanding MNA's stubborn contention that St. Vincent failed to do so. [DKT. 56, p. 35]; *Hoteles Condado Beach, La Concha & Convention Ctr. v. Union de Tronquistas Local 901*, 763 F.2d 34, 40 (1st Cir. 1985) (upholding vacatur where arbitrator ignored plain language of the CBA and relevant evidence).

Second, MNA claims Loconto was privileged to unilaterally set the venue for the hearing on two days' notice–therefore St. Vincent cannot prove he engaged in misconduct. [DKT. 56, p. 38]. That position, of course, is a merits-based argument and, at a minimum, creates a factual issue.

Indeed, St. Vincent pled AAA Rule 17 requires that a hearing notice contain, among other information, the hearing location at least 5 days before a hearing commences [DKT. 37, ¶¶ 92-93] and that Loconto's contrary action in violation of that Rule violated its rights. *Kashner Davidson Sec. Corp. v. Mscisz*, 531 F.3d 68, 79 (1st Cir. 2008) ("[D]eference to an arbitrator's decision does not permit [the Court] to endorse such a manifest disregard of a rule that the parties agreed should apply to the resolution of their dispute").

Third, St. Vincent clearly pled Loconto denied it of a fair hearing throughout the Amended Complaint. In addition to the disparate subpoena issues discussed above, St. Vincent pled:

- Loconto assured St. Vincent it would suffer no prejudice if it did not attend the first day of the March 17 hearing because a second date had already been reserved, at which St. Vincent could present its case. [DKT. 37, ¶ 101].

- Relying on those assurances, St. Vincent did not attend the March 17 hearing. [*Id.*, ¶¶ 102-104].

- The day after the hearing, after telling St. Vincent it could present its case on the second hearing date, Loconto then required St. Vincent show "good cause for why a second hearing date was necessary". [*Id.*, ¶¶ 105-107; Exhibit 23].

- And then Loconto cancelled the second day of hearing after he denied St. Vincent the witness subpoenas it requested he issue to support the case it intended to put on as a defense to the underlying merits of the arbitration. [*Id.*, ¶ 116].

From this, it cannot be said that St. Vincent failed to state a cognizable claim for relief under Count II. *Hoteles Condado Beach*, 763 F.2d at 40; *Kashner Davidson Sec. Corp. v. Mscisz*, 531 F.3d at 79.

**3. Count III - The Award Must Be Vacated Because Loconto's Exceeded his Authority under the CBA**[4]

MNA claims Count III must be dismissed because Loconto's Award is "unassailable" and "there is no evidence pled in the Complaint that identifies any plain and unambiguous language" which foreclosed Loconto from interpreting the contract as requiring AAA or LRC to administer the arbitration. [DKT. 56, p. 54]. Not so. St. Vincent has undeniably pled that Loconto exceeded his authority.

First, and as discussed in more detail below, *see infra*, §§ 7, 9, St. Vincent pled Loconto awarded attorney's fees both in the proceeding before him and for separate arbitrations that were not before him, thereby exceeding his authority under the CBA. [DKT. 37, ¶¶ 132–135].

Second, St. Vincent alleged Loconto exceeded his authority to find AAA can "administer" arbitration proceedings because the grievance and arbitration provision contains no such language authorizing AAA to administer the same. [DKT. 37, ¶¶ 15-27]. Likewise, the Amended Complaint cites Article XXI of the CBA. [*Id.*]. In full, as contained in the CBA incorporated into the Amended Complaint, Article XXI reads as follows:

> Article XXI dictates the procedures for filing and processing grievances, which includes an express provision limiting an arbitrator's authority:

---

[4] In its Motion, MNA claims St. Vincent "waived" certain arguments. [DKT. 56, p. 53]. Waiver is an affirmative defense, and MNA bears the burden of establishing that St. Vincent relinquished the rights it now seeks to enforce. As demonstrated throughout this Opposition, and as will be demonstrated through further discovery, MNA cannot establish waiver, particularly where the Hospital expressly objected to Loconto's authority and asked him to recuse himself. Those actions are inconsistent with any claim that St. Vincent knowingly and intentionally acquiesced in his authority to decide the dispute. Indeed, the case MNA cites in support of waiver confirms that St. Vincent's express objection to Loconto's authority is inconsistent with waiver. *See Dorado Beach Hotel Corp. v. Local 610, The Hotel Emps. & Rest. Emps. Int'l Union*, 959 F.2d 2, 6 (1st Cir. 1992) (waiver appropriate because company went through the CBA and arbitration process without raising any reservation regarding applicability of Puerto Rico law mandating double damages).

> "**Step 1:** The aggrieved nurse shall first present the grievance to her/his department manager of designee within 30 calendar days of the occurrence giving rise to the grievance or from the time the grievant should have known of the facts giving rise to the grievance. The department manager or designee shall discuss the matter with the aggrieved nurse and the MNA department/unit representative and provide her/his answer no later than five working days after the time the grievance is presented to her/him. . . .
>
> **Step 2:** If the grievance is not adjusted satisfactorily in Step 1, it may be referred in writing to the CNO not later than five working days after the written answer of the department manager or designee has been received. A meeting shall take place within five working days after the receipt of the grievance in Step 2. The meeting shall be attended by the grievant, the MNA department/unit representative, the grievance chair or designee and the CNO and/or designee(s). . . . The CNO or designee shall give an answer in writing not later than five working days after the date of the meeting.
>
> **Step 3:** If the grievance is not adjusted satisfactorily in Step 2, it may be referred in writing by the MNA Staff representative to the Hospital's Director of Human Resources or designee, not later than five working days after the written answer of the CNO or designee has been received. The meeting at Step 3 shall take place within 10 working days after receipt of the grievance in Step 3. . . .
>
> If the grievance is not adjusted in Step 3, the MNA may file a demand for arbitration under Step 4 with AAA or LRC with simultaneous written notice to the Hospital's Chief Human Resources Officer not later than 30 working days after the written answer in Step 3 was received.
>
> **Step 4:** Should MNA request arbitration in accordance with the time limits specified herein, an arbitrator shall be <u>selected</u> pursuant to the Voluntary Labor Arbitration Rules of the American Arbitration Association . . . <u>The arbitrator shall have no authority to add to, subtract from, modify, alter, or disregard any of the provisions of this Agreement</u>. . . ."[5]

[DKT. 21; Exhibit 1, pp. 66-67 (emphasis added)].

Setting aside MNA's contentions regarding Loconto's ability to interpret the CBA are merits-based summary judgment arguments, the Motion (and Loconto's Award) are directly

[5] Article XXV, Completeness of Agreement, of the CBA also prohibits "additions, waivers, deletions, changes or amendments" to the agreement, and "an oral waiver or a failure to enforce any provision in a specific case shall not constitute a precedent or preclude either party from relying upon or enforcing such provision in another case." DKT. 37, Exhibit 1, p. 4).

contradicted by the unambiguous language contained in the very grievance and arbitration machinery article from which Loconto's authority derives and is expressly limited.

Indeed, nowhere in Article XXI did the parties agree to allow AAA (or LRC) to administer arbitrations. And considering that the parties agreed to have AAA "administer" arbitrations for mandatory overtime grievances [DKT. 37, ¶ 23, fn. 2], Loconto's Award undeniably adds, modifies, alters or disregards provisions of the CBA–which he was expressly prohibited from doing and, therefore, exceeded his authority under the CBA. *El Mundo Broad. Corp. v. USW*, 116 F.3d 7, 10 (1st Cir. 1997) ("the arbitrator's award…must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice").

**4. <u>Count IV - The Award Must Be Vacated Because Loconto Dispensed his Own Brand of Industrial Justice</u>**

MNA claims dismissal is appropriate because the Hospital's argument is an argument "about the merits and in no way meet[s] the standards applicable for vacating an arbitration award." [DKT. 56, p. 53]. To support its position, MNA argues Loconto's Award is "filled with references to the CBA, to the applicable LRC (and AAA) rules…," which, according to the Union, "plainly shows" Loconto based his decision on the contract language. [DKT. 56, pp. 53, 54].

The Hospital alleged the CBA's relevant provision was unambiguous, that Loconto acknowledged as much, and that he nevertheless modified the agreement by finding AAA could administer arbitrations–thereby imposing his own brand of industrial justice. [DKT. 37, ¶ 18; Exhibit 1 at 39]. The Union's assertion that the Award references the CBA and applicable arbitration rules does not warrant judgment in its favor. The question is not whether the arbitrator cited the agreement, but whether he applied it as unambiguously written. The Union's contention that he did so presents a merits dispute; it does not establish the Hospital's well-pleaded allegations

fail as a matter of law. As explained above, MNA cannot obtain judgment now by substituting its interpretation of the Award for the Hospital's well-pleaded allegations. [*See supra* § 3].

Moreover, the governing law is straightforward: "[i]f the language of an agreement is clear and unequivocal, an arbitrator cannot give it a meaning other than that expressed by the agreement." *Pol. Spring Corp. v. UFCW*, 314 F.3d 29, 33 (1st Cir. 2002). An arbitrator likewise is "without power to modify" the agreement's terms when the language is unambiguous. *Metro Chevrolet, Inc. v. Union de Tronquistas de P.R.*, 660 F. Supp. 741, 743 (D.P.R. 1987). In *Metro Chevrolet*, the court vacated an award because the arbitrator had inferred a just-cause requirement from "her own notions of fairness," contrary to the express terms of the collective bargaining agreement. *Id.* The arbitrator had thus imposed her own brand of industrial justice.

The same principle applies here. As the Hospital alleged, Loconto modified the CBA to insert a term that AAA could administer all arbitrations under the CBA, thereby imposing his own brand of "industrial justice".

### 5. <u>Count V - The Award Must Be Vacated Because Loconto's Decision was Made in Bad Faith and Is Unfounded in Reason and Fact</u>

MNA relies on the same arguments to seek dismissal of Count V that it advanced against Counts III and IV. [DKT. 56, p. 54]. But, as discussed above, the Union's disagreement with the Hospital's allegations and the Union's interpretation of the CBA do not establish the Hospital's claims fail as a matter of law. Moreover, the Union's position that "[t]here is no evidence pled in the Complaint that identifies any plain and unambiguous language of the contract that foreclosed Loconto from plausibly interpreting the contract as requiring AAA or LRC to administer the arbitration to its conclusion" undermines MNA's request for judgment as a matter of law: once again MNA has admitted there are disputes over material facts in this matter, which the Court has already ruled may be developed through discovery. [DKT. 56, p. 54].

The Hospital only needs to allege "sufficient factual matter to state a claim for relief". *Iron Workers*, 757 F. Supp. 3d 91 at 95. It has.

The Hospital alleged Loconto acted in bad faith and issued an award unfounded in reason and fact by departing from the parties' agreement and exercising authority the CBA expressly withheld. [DKT. 37, ¶¶ 22, 23; 119-163; 179-183]. Specifically, Loconto concluded that AAA or LRC could administer arbitrations despite the absence of any such authorization in Article XXI, [DKT. 37, ¶¶ 21–23], and he awarded attorney's fees both in the proceeding before him and for separate arbitrations that were not before him. [*Id.*, ¶¶ 132–135]. The Hospital alleges that neither the CBA nor the scope of Loconto's authority permitted those actions. These specific allegations identify both the contractual restrictions Loconto violated and the conduct giving rise to the Hospital's claims. The Union's disagreement with those allegations does not render them "conclusory" or worthy of dismissal.

The question is whether the Hospital adequately pled grounds for vacatur under the applicable standard–not whether MNA can offer a competing account and interpretation of the Award. Because the Union's arguments do not establish that the Hospital's allegations are legally insufficient, the Court should deny the motion for judgment on the pleadings.

**6. <u>Count VI - The Award Must Be Vacated Because Loconto Issued It Untimely</u>**

MNA argues Count VI must be dismissed on three grounds: (1) the Hospital waived its objection by failing to argue during the underlying arbitration that an untimely award was void; (2) the CBA provides no basis for declaring an award void or unenforceable if not issued within 30 days after the hearing concludes; and (3) no "legal precedent" supports the Hospital's claim. [DKT. 56, pp. 67–71]. None warrants judgment on the pleadings.

The Hospital alleged that, during the underlying arbitration, the parties were informed after the deadline for Loconto to submit his award had already expired that he would require additional time to complete it. [DKT. 37, ¶¶ 119-120]. The Hospital alleged it objected to Loconto's unilateral extension and alleged that AAA rules enforced by Loconto throughout the arbitration prohibited him from unilaterally extending the deadline for issuing an award. [*Id.*, ¶¶ 120–124]. As such, the Hospital did not "waive" this objection, and there is "legal precedent" for the Hospital's claim, despite MNA's assertion that no "applicable statute requires award issuance within 30 days." [*Id.*, p. 70; *see* AAA Rule 36 (stating that the award, "unless otherwise agreed by the parties", must be issued "no later than 30 days from the date of closing the hearing"); *see also* AAA Rule 34 (explaining that either AAA or the arbitrator may, "for good cause" extend all other deadlines established by AAA rules with the exception of the time proscribed for issuing the award)]. The Hospital further alleged that even AAA confirmed the deadline by which Loconto must issue the Award was June 9. [*Id.*, ¶¶ 123–127]. Those allegations directly rebut the Union's suggestion that the deadline was merely an objection the Hospital invented after the fact or, as MNA states, was merely "performative." [DKT. 56, p. 69]. MNA may dispute the legal consequences of Loconto's delay at the summary judgment stage.

Thus, MNA cannot avoid the central allegations underlying Count VI: the rules imposed by Loconto himself required he issue the Award within 30 days, any extension required the parties' consent, and Loconto issued the Award late without obtaining prior consent. [DKT. 37, ¶¶ 121–27]. At this stage, the Court must accept the Hospital's well-pleaded factual allegations as true, rather than resolve the parties' competing interpretations of the governing rules in the Union's favor. Accordingly, the Union's arguments provide no basis to dismiss Count VI.

### 7. Count VII - The Remedial Award Must Be Vacated Because Loconto Possessed no Jurisdiction and Dispensed His Own Brand of Industrial Justice

The Union's argument for dismissal of Count VII rests on a mischaracterization of the Hospital's allegations and an improper application of the pleading standard. MNA claims the Hospital failed to plead allegations that the Union believes necessary for the Hospital to support its claim and argues the Hospital's allegations should be "rejected". [DKT. 56, pp. 60-61]. Yet MNA cites no authority establishing that the Hospital's allegations are insufficient. Worse, MNA asks the Court to view those allegations in the light most favorable to it, rather than the Hospital. [*Id.*].

For example, MNA argues the Hospital failed to identify contractual language expressly prohibiting Loconto from interpreting "make whole" relief to include attorney's fees. [*Id.* p. 61]. MNA further contends Loconto could award attorney's fees arising from arbitrations outside his jurisdiction because he found, without being asked to do so, that the Hospital acted in "bad faith." [*Id.* at 60]. These arguments do not establish a pleading deficiency. They instead dispute the Hospital's allegations and the inferences supporting its claim–a dispute MNA cannot resolve in its favor on a motion for judgment on the pleadings.

Nevertheless, the Hospital specifically alleged the CBA does not authorize attorney's fees and that Loconto therefore exceeded his authority by awarding them. [DKT. 37, ¶¶ 132-135]. The Hospital further alleged Loconto issued the Remedial Award on matters that were not before him and over which he lacked jurisdiction, rendering the award unfounded in reason and fact and an exercise of his own brand of industrial justice. Specifically, the Hospital alleged that:

- Loconto found the Hospital engaged in bad faith because it took the exact position he originally took in reviewing the contract language [DKT. 37, ¶ 131];

- Loconto's award of attorneys' fees was not authorized by the CBA and that MNA did not request attorneys' fees as a remedy in its grievance, [*Id.* ¶ 132]; and

- Loconto issued MNA attorneys' fees on arbitrations that he was not the selected arbitrator on (and therefore had no personal knowledge of the arguments), and which could not be revisited by any arbitrator. [*Id.* ¶¶ 133-135].

The Union's disagreement with these allegations does not move the needle. Nor does its preferred interpretation of the CBA establish that Loconto acted within the scope of his authority. The Hospital has identified the contractual limitations, the relief MNA requested, and the ways Loconto exceeded his jurisdiction. Whether MNA can ultimately refute those allegations is not the question presented by its Motion. Accordingly, MNA cannot establish that the Hospital failed to state a cognizable claim for relief under Count VII.

**8. <u>Count VIII - The Remedial Award Must Be Vacated Because Loconto Exceeded His Authority Under the CBA and Manifestly Disregarded the Law.</u>**

MNA argues the Hospital failed to identify any CBA provision that prohibited Loconto from issuing the remedy he awarded and that the Hospital's factual allegations are merely "conclusory." [DKT. 56, p. 58]. That argument plainly ignores the allegations in the Amended Complaint. The Hospital clearly identified the CBA's express limits on Loconto's authority and alleged specific ways in which he exceeded them, including by awarding attorney's fees that the CBA did not authorize and extending that relief to matters outside the scope of the proceedings before him. [DKT. 37, ¶¶ 131–135.]

Article XXI expressly prohibits an arbitrator from adding to, subtracting from, modifying, altering, or disregarding any provision of the CBA. [DKT. 37, ¶¶ 21–23; Ex. 1 at 66–67]. The Hospital alleged Loconto violated those limitations by modifying the agreement and awarding attorney's fees without contractual authorization. [DKT. 37, ¶ 132]. The Hospital further alleged MNA had not requested attorney's fees as a remedy in its grievance and that Loconto awarded fees

arising from separate arbitrations in which he had not been the selected arbitrator and whose outcomes could not be revisited by another arbitrator. [*Id.* ¶¶ 132–135]. These are specific allegations identifying both the contractual restrictions and the ways in which Loconto exceeded his authority–not conclusory assertions.

Vacatur is appropriate when "'the award is contrary to the plain language of the contract,' or 'it is clear from the record that the arbitrator recognized the applicable law, but ignored it.'" *Kashner Davidson Sec. Corp.*, 531 F.3d at 74 (quoting *Wonderland Greyhound Park, Inc. v. Autotote Sys., Inc.*, 274 F.3d 34, 36 (1st Cir. 2001)); *Hoteles Condado Beach, La Concha & Convention Ctr. v. Union De Tronquistas Local 901*, 763 F.2d 34 (1st Cir. 1985) (upholding vacatur because arbitrator disregarded "clear and unambiguous language in the contract", thereby showing "manifest disregard" for it).

The Hospital's allegations fall squarely within that framework. Loconto did not merely interpret the CBA; he modified its terms by awarding relief the agreement did not authorize and extended that relief to matters beyond those for which he was appointed. The Union's assertion the Hospital failed to identify contractual language supporting its claim ignores the express limitations in Article XXI and the specific allegations concerning the unauthorized fee award. Whether Loconto's actions were permissible under the CBA is a merits question that MNA cannot ask the Court to resolve in its favor on a motion for judgment as a matter of law.

**9. <u>Count IX - The Award Must Be Vacated Because Loconto Engaged in Misconduct by Refusing to Grant a Hearing or Limited Discovery on the Remedial Award.</u>**

MNA claims Count IX must be dismissed because St. Vincent cannot "prevail in its averment" that Loconto's denial of discovery and a hearing on his Remedial Award amounted to prejudicial misconduct. [DKT. 56, p. 47]. In effect, MNA's contention is that Loconto's election to rely on written submissions regarding MNA's attorneys' fee request is not misconduct from which

a violation of law has occurred. (*Id.*). Like all its other contentions, MNA makes merits arguments on this point in its Motion which must be denied.

Moreover, Count IX is not predicated solely on Loconto's consideration of the attorneys' fees at issue on submission. As explained above, St. Vincent pled that Loconto engaged in misconduct with respect to the remedial award by, among other things:

- Awarding attorneys' fees on other arbitration matters (three of which were closed and thirteen of which had been withdrawn by MNA). [DKT. 37, ¶ 133-163].

- Ordering MNA to submit "invoices" supporting fees incurred in other arbitration matters and then relying on "reports" provided by MNA which all were created <u>after</u> the issuance of the original Award. [*Id.* ¶¶ 137-140].

- Refusing to permit discovery and hold an evidentiary hearing over the purported "invoices" MNA submitted to support its request for attorneys' fees, which would substantiate the fees and costs incurred during a particular period of time because the invoices were all dated form July 7, 2025 and purport to bill for services allegedly performed no less than sixteen months before the "invoices" were created. [*Id.* ¶¶ 150-154]; and

- Awarding MNA attorneys' fees based not on invoices (which Loconto demanded MNA produce) but instead "reports" MNA submitted while denying St. Vincent an evidentiary hearing to challenge the fees allegedly incurred and then claiming St. Vincent failed to provide "substantive evidence or analysis to advance its contentions that the Union's fees were unreasonable or otherwise unsubstantiated." [*Id.* ¶¶ 155-163].

These facts all cognizably plead misconduct for which a claim may be proven at the dispositive motion stage of the proceedings. *El Mundo Broad. Corp. v. USW*, 116 F.3d at 10 (vacating an award because "the arbitrator enlarged the agreement and exceeded his authority under the CBA"); *Hoteles Condado Beach*, 763 F.2d at 40 (vacating an award because the arbitrator "[denied] the parties a full and fair hearing" and "refused to consider relevant evidence").

## IV. <u>CONCLUSION</u>

Accordingly, Petitioner VHS Acquisition Subsidiary Number 7, Inc., d/b/a St. Vincent Hospital respectfully requests that the Court deny Respondent's Motion for Judgment on the Pleadings.

Respectfully submitted,

FORD & HARRISON LLP

By: */s/ David Roger Anderson*

Nancy Van der Veer Holt
Massachusetts Bar No. 668916
nholt@fordharrison.com
David Roger Anderson*
Texas Bar No. 24128388
danderson@fordharrison.com
Rachel Saady-Saxe
D.C. Bar No. 1738392
rsaady-saxe@fordharrison.com

Attorneys for St. Vincent Hospital
**Pro Hac Vice Admitted.*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2026, I electronically filed the foregoing ***PETITIONER VHS ACQUISITION NUMBER 7, INC. d/b/a ST. VINCENT HOSPITAL'S OPPOSITION TO RESPONDENT'S MOTION FOR JUDGMENT ON THE PLEADINGS*** with the Clerk of Court, using the CM/ECF system, that will send notification of such filing to all counsel of record.

*/s/ David R. Anderson*
Attorney